Stephen M. Sansom (#10678)
Brandon T. Christensen (#16420)
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101
Tel: (801) 799-5897
*smsansom@hollandhart.com*
*btchristensen@hollandhart.com*

Anthony R. Zeuli *(Pro Hac Vice pending)*
*tzeuli@merchantgould.com*
Thomas Johnson *(Pro Hac Vice pending)*
*tjohnson@merchantgould.com*
MERCHANT GOULD P.C.
2200 Fifth Street Towers
150 South Fifth Street
Minneapolis, MN 55402-4247
Tel: (612) 332-5300
Fax: (612) 332-9081

*Attorneys for Plaintiffs*

---

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH SOUTHERN REGION OF THE CENTRAL DIVISION

| | |
|---|---|
| CRYSTAL LAGOONS U.S. CORP. AND CRYSTAL LAGOONS TECHNOLOGIES INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>DESERT COLOR MANAGER LLC, DESERT COLOR ST. GEORGE LLC, AJ CONSTRUCTION, INC., TRI-STATE VENTURES, LLC d/b/a CAREFREE HOMES – UTAH, COLE WEST HOME LLC, HOLMES HOMES, INC., SULLIVAN HOMES LLC, and PACIFIC AQUASCAPE INTERNATIONAL, INC.,<br><br>Defendants. | **PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Case No. 2:20-cv-00851-BSJ<br><br>Judge Bruce S. Jenkins<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Crystal Lagoons U.S. Corp. and Crystal Lagoons Technologies Inc. (collectively "Crystal Lagoons") respectfully moves for a preliminary injunction to stop the theft of Plaintiffs' confidential information and proprietary technology and to stop Defendants' ongoing and illegal use of Crystal Lagoons' trademark to promote the sale of homes, townhomes and other properties at Desert Color while actively misleading the public by claiming the lagoon can be used for swimming. Based on the memorandum contained herein, the pleadings and papers on file in this action, and such other evidence as is presented to the Court for determination of the Motion, Crystal Lagoons respectfully requests that the Court enter an order in its favor:

(1) enjoining further development of the lagoon at the Desert Color development;

(2) enjoining use of CRYSTAL LAGOONS® or a confusingly similar mark; and

(3) ordering corrective advertising.

## I. Introduction

Crystal Lagoons invented a new worldwide industry: man-made, multi-acre lagoons for swimming and watersports with color, transparency and cleanness similar to tropical seas or swimming pools. But these lagoons are not traditional swimming pools. They are centerpieces of developments, towns, and cities centered around swimming and watersports. Crystal Lagoons' brand is known worldwide for these one-of-a-kind recreational bodies of water and its technology has been valued in excess of $3 billion.

Desert Color called Crystal Lagoons seeking to use its proprietary technology to build a multi-acre, man-made lagoon in St. George, Utah. A non-disclosure agreement

was signed between the parties, prohibiting Defendants' unauthorized use of Crystal Lagoons' Confidential Information, proprietary Technology, and Crystal Lagoons' trademarks. After more than 18 months of exchanging information such as concepts designs, construction details, cost information, details about systems and equipment used in the technology, and participating in site visits to Crystal Lagoons' other projects where detailed technical construction methods and information was shared, Defendant Desert Color broke off discussions telling Crystal Lagoons that the Desert Color lagoon was dead. However, Crystal Lagoons later learned that Desert Color had not only moved forward with the lagoon project, but did so using Crystal Lagoons' Confidential Information, Technology and trademarks.

An injunction is needed because Defendants are misleading the public in holding out their lagoon as being affiliated with or designed by Crystal Lagoons. Even more troubling, Defendants are telling the public that their lagoon is safe for swimming and permitted for such purpose, as would be the case with an authentic CRYSTAL LAGOONS® amenity. However, a Freedom of Information Act request ("FOIR") uncovered no such permits for the lagoon at Desert Color. There is significant risk that unless stopped, the public will be harmed. Only an immediate injunction can prevent this harm to the public and Crystal Lagoons.

## II.    Factual Background

### A.    Crystal Lagoons' founder invents multi-acre, man-made lagoons with color and transparency similar to tropical seas.

Crystal Lagoons is the creator, developer and inventor of proprietary and patented technology to build and maintain multi-acre, man-made lagoons with high transparency and excellent water quality at low costs. (Dkt. 1, ¶15.) Inventor Fernando Fischmann, a real estate developer and biochemist who founded Crystal Lagoons, grew up in Chile and began a real estate development on Chile's central coast. (*Id.*, ¶16.) The development had fantastic views of the sea but was unattractive for use due to cold-water temperatures. (*Id.*) Mr. Fischmann envisioned an enormous man-made lagoon with clear, turquoise water to provide a safe way to swim and enjoy watersports. (*Id.*) Such technology did not exist anywhere in the world. (*Id.*, ¶17.)

Mr. Fischmann has spent more than twenty years researching and developing several technologies for the construction and operation of large water bodies with high transparency and excellent water quality at low costs. For example, Mr. Fischmann spent over seven years researching and developing a technology to build a low-cost structure that included the use of a plastic liner, instead of a complete concrete shell, installed directly over soil or compacted sand to contain the large water body and several technical features that had never been used in crystal clear bodies of water of such large sizes. Additionally, Mr. Fischmann has developed several technologies and systems that allow constructing and operating large water bodies at low costs, such as water treatment

methods and technologies, localized disinfection systems, efficient filtration systems, bottom cleaning devices and systems, among others.

Mr. Fischmann first used the technology to construct a lagoon at San Alfonso del Mar, Chile, in 2006. (*Id.*, ¶20.)

**AERIAL VIEW OF SAN ALFONSO DEL MAR (20 ACRES)**



(Declaration of Javiera De la Cerda ("Decl."), ¶9, Ex. A.)

### B. Crystal Lagoons created an entire industry that previously did not exist.

Since introducing the lagoon at San Alfonso del Mar in 2006, Crystal Lagoons has established itself as the exclusive provider of the technology for designing, building and operating man-made, multi-acre lagoons for recreational use. Crystal Lagoons has amassed over 2,000 patents in 190 countries. (Dkt. 1, ¶24.) Crystal Lagoons is responsible for more than 60 projects already in operation and in construction, and more

than 1,000 projects in planning and negotiation stages worldwide. (*Id.*, ¶25.) In the U.S. there are six operational lagoons, including in Texas and Florida:

**PHOTOGRAPH OF EPPERSON LAGOON, FLORIDA (7 ACRES)**



**PHOTOGRAPH OF EPPERSON LAGOON, FLORIDA (7 ACRES)**



**PHOTOGRAPH OF LAGO MAR PROJECT, TEXAS (12 ACRES)**



**PHOTOGRAPH OF BALMORAL PROJECT, TEXAS (2 ACRES)**



**PHOTOGRAPH OF BEACHWALK PROJECT, FLORIDA (14 ACRES)**



(Decl., ¶¶11-14, Exs. B-D.)

Crystal Lagoons has grown into a well-known, highly regarded company. Mr. Fischmann has been honored with numerous awards and accolades for the Crystal Lagoons' technology, such as Ernst & Young's "Entrepreneur of the Year"; "Innovator of the Year"; and "Businessman of the Year," being the only executive to receive these three awards. In 2016, he received the Innovation Stevie Award in Italy, also known as the Oscars of the business world and previously awarded to Steve Jobs and Jeff Bezos, among many others. (Dkt. 1, ¶30.)

Crystal Lagoons owns a "family" of numerous CRYSTAL LAGOONS® trademark registrations covering a wide range of goods and services, including U.S. Registration Nos. 3,881,936; 5,465,084; 5,454,097; 5,312,449; 5,870,729; and 6,042,995. (Decl., ¶18, Ex. E.)

### C. Desert Color St. George negotiates with Crystal Lagoons to build a CRYSTAL LAGOONS® amenity in St. George, Utah.

Desert Color is a "master-planned community unlike any other" being developed in St. George, Utah. (Dkt. 1, ¶41.) The development includes single-family homes, condominiums and townhomes. (*Id.*, ¶¶41-42.) Around June 2017, Crystal Lagoons was contacted by Desert Color about providing a CRYSTAL LAGOONS® amenity for the Desert Color development. (*Id.*, ¶46.) To protect its proprietary technology and business secrets, Crystal Lagoons requires its clients to sign a Non-Disclosure Agreement at the commencement of a project before providing sensitive information. (*Id.*, ¶48.) On December 8, 2017, Crystal Lagoons and Desert Color St. George signed the Non-Disclosure Agreement ("the NDA"). (Decl., ¶21, Ex. F.) The NDA defined Technology,

Confidential Information and restricted their use and disclosure beyond the Purpose of the Agreement. (*Id.*, ¶¶1,2,7.) The NDA defined the Purpose as: "[T]o evaluate the potential execution of an agreement." Importantly, the parties agreed the "[NDA] will be binding on the parties, **their affiliates**, successors, and assigns." (*Id.*, ¶9 (emphasis added).) The parties also agreed the NDA would remain in effect regardless of whether Crystal Lagoons was chosen: "These obligations shall remain in full force and effect until information ceases to qualify as Confidential Information in accordance with Clause 3." (*Id.*, ¶5.)

> **D.** **Desert Color and its affiliates are using Crystal Lagoons' Confidential Information and Technology to develop a counterfeit at the Desert Color Development.**

After the NDA was signed, Crystal Lagoons shared Confidential Information and Technology with Desert Color, including but not limited to:

- Concept designs using Crystal Lagoons' trade dress, details of wall edges and beach access, cost information and details about the systems and equipment used in the technology.

- Technical construction methods, which were shared during a visit to Crystal Lagoons' Windsong Ranch in Prosper, Texas on March 8, 2019.

- Crystal Lagoons' Technology License and Support Agreement ("TLSA"), which includes detailed confidential information about the technology and business model. For example, Article 1 describes the process for developing the lagoon. Article 2 describes many systems associated to the

construction/operation of the lagoon. Exhibit II describes in detail the testing pool, water quality parameters, site visit schedule, dust control measures, lagoon maintenance, and modular treatment system.

- Crystal Lagoons' Economic Proposal, which contained detailed information about Crystal Lagoons' pricing, royalty fees, ancillary income, fixed fees and technical assistance requirements.

(Decl., ¶¶25-30, Ex. G.)  Desert Color and its affiliates are now using, illegally, at least the above Confidential Information and Technology to develop a multi-acre, man-made recreational lagoon.

No entity among the Defendants has ever successfully designed and built a multi-acre, man-made recreational lagoon with clear and transparent waters. Pacific Aquascape, the affiliate tasked with designing and building the Desert Color lagoon has previously only designed conventional pools and ornamental lakes with natural treatment methods that do not have crystal clear conditions as CRYSTAL LAGOONS®.  It has recently attempted a multi-acre, man-made recreational lagoon with clear and transparent waters at a different development site; however, it has failed. The lagoon built by Pacific Aquascape at the Hard Rock Seminole Hotel and Casino in Florida is at times neither clear nor transparent as lagoons powered by Crystal Lagoons' technology; it is green-ish most of the time, as can be seen when compared to the swimming pools to the right in the below photo (taken during warmer weather):



(Decl., ¶¶31-32, Ex. H.)

The above lagoon at the Hard Rock Seminole Hotel and Casino is currently part of a lawsuit filed October 19, 2019, by Crystal Lagoons and is ongoing.

> **E.    Desert Color and its affiliates market the development using Crystal Lagoons' federally registered trademarks in violation of the Non-disclosure Agreement.**

The NDA also prohibits Desert Color from using Crystal Lagoons' trademarks. (Decl., Ex. F, ¶8.) Nonetheless, Defendants are using the mark CRYSTAL LAGOONS® or confusingly similar marks in multiple Desert Color development online sales brochures and websites, without Crystal Lagoons' permission:



(Decl., ¶33, Ex. I);



## Project Description

Desert Color is a master-planned community built around a plan of connectivity, community and sustainability. It is a place where you will find the best of everything that Southern Utah has to offer. Located alongside I-15 and Southern Parkway, Desert Color is a comprehensive 3,500-acre mixed-use master planned community. It will feature a variety of primary and secondary residences, shopping, dining, entertainment, commercial, retail, hospitality, and recreational amenities. **Put simply, Southern Utah has never seen a community like Desert Color.**

Desert Color will be guided by a singular plan:
*Desert Color's unique setting creates a special opportunity to blend the natural features of the desert foothills with tried and true community design principles. It emphasizes social connections, open space, recreational diversity, walkable neighborhoods, convenient regional commercial and retail services, hospitality, and offers a variety of residential types and styles.*

## Commercial Hub

Desert Color's mixed-use commercial district will be the central hub and focal point of activity for the community. Its 103-acre design will include vertical mixed use (e.g., offices and residences above retailers) and horizontal mixed use (e.g., retailers, offices, and residences on separate parcels).

The mixed-use commercial district will feature:
- A sports park
- Recreation/entertainment centers
- Health and wellness facilities and services
- A crystal lagoon
- Shopping and dining districts
- Hotels and resorts
- Multi-specialty healthcare clinic
- Open space (e.g., parks, trails, courtyards)
- Access to transportation
- Public use facilities (e.g., 21st-century schools, church, cultural facility, hospital, library, and police and fire station)
- An innovation park for higher education



More Info



Flyer

(Decl., ¶34, Ex. J (emphasis added)). Defendants have also used the CRYSTAL LAGOONS mark in Facebook® posts by their sales agents:



(Decl., ¶35, Ex. K (emphasis added).) Defendants have also used the CRYSTAL LAGOONS® mark in communications with prospective buyers:





On Thu, Jun 18, 2020 at 2:38 PM Makayla Browning <makayla@sullivan-homes.com> wrote:
Hi,
This is MaKayla Browning with Sullivan Homes. The lagoon provider is Crystal Lagoons. You can check out their website  https://www.crystal-lagoons.com  to see some of their previous work. I have attached the plat map and a packet about desert color. The packet shows a drawing of the Desert Color community. It is not an exact replica of the development, but does give a pretty good idea of how close our homes are to the pool and lagoon. If you have any questions you can contact me directly via text, email or phone call. The HOA for our single family homes is $82 per month.
The clubhouse by  the lagoon will be for residents, and it is under construction and finishing up soon. The clubhouse will include:
3500 Sq Ft Pool
1300 Sq Ft Sunbathing Deck
2000 Sq Ft Restaurant / Cafeteria
Sports Bar with Alcohol
Community Welcome Center will be used to agnostically sell all builders in Desert Color
NFC (Near Field Communication) or Phone Access to Amenities

--
**MaKayla Browning**
Sullivan Homes
435-668-2235

(Decl., ¶36, Exs. L, M (emphasis added).) Defendants also refer to Crystal Lagoons on the Desert Color website.

Desert Color's Website (https://desertcolor.com/plans-unveiled/ (emphasis added) (last accessed December 2, 2020).)

F. **Defendants are selling property to the public based upon a lagoon that is not designed or approved by sanitary authorities for the swimming and bathing use as it is being marketed.**

Defendants are offering and selling homes with a counterfeit man-made lagoon as the complex's centerpiece. Crystal Lagoons' research and a FOIR show that Utah's regulatory and sanitary authorities were not told (or at least were not made aware) that the lagoon would be used for recreational swimming/bathing purposes (Decl., ¶¶38-39,

Ex. O.) As such, it is unlikely that Defendants have requested or received the necessary permits for swimming purposes of the lagoon. Further, the proper authorities are not regulating or reviewing what is being done on site. Defendants are deceiving the purchasing public who are suffering actual harm, since the lagoon is being marketed as allowing swimming.

Adhering to the local sanitation statutes and regulations is required from a compliance perspective and necessary from a safety perspective. Defendants' lagoon fails to comply with local statutes and regulations and, indeed, Desert Color's lagoon is not even being reviewed by the proper regulatory body. The Southwest Utah Public Health Department (SWUPHD) regulates public swimming pools and bathing beaches under Utah Administrative Code Rule 392-302. Rule R392-302-3 states that the rule for swimming pools "does not regulate any body of water larger than 30,000 square feet…<u>for which the design purpose is **not** swimming, wading, bathing, diving, a water slide splash pool, or children's water play activities</u>." (Decl., ¶38 (emphasis added)). The very purpose of Defendants' lagoon is swimming, wading, bathing, etc. The SWUPHD, however, as of the date of the FOIR, had no documentation regarding the Desert Color lagoon (Decl., ¶40, Ex. P) because Defendants have not represented to the regulatory bodies that the lagoon has swimming purposes. Purchasers of Defendants' homes and townhomes will not be getting what Defendants have advertised, i.e., access to a permitted swimmable/bathable lagoon on the complex property.

**G.  Defendants' lagoon poses a significant health risk to the general public.**

CRYSTAL LAGOONS® amenities have large sizes, and may be the size of 6,000 residential swimming pools or even more. (Dkt. 1, ¶18.) Large recreational water bodies have been known to develop microorganisms such as protozoa and amoebas, which include the amoeba *Naegleria fowleri* (commonly referred to as the "brain-eating amoeba"). (*Id.*, ¶105; Decl., ¶¶42, 46.)  Crystal Lagoons, however, has developed technology and practices to prevent such infestations. (Dkt. 1, ¶¶106-107; Decl., ¶¶43-45.) More importantly, Crystal Lagoons has developed an exceptional sanitation and safety record with respect to its lagoons. (*Id.*) Crystal Lagoons' technology has a track record of over 15 years with optimum sanitary results in more than 50 lagoons operating around the world in different types of climate conditions. (*Id.*)

The patented water treatment technology from Crystal Lagoons is designed to not only maintain microbiological levels according to regulations for recreational purposes, but also to control microorganisms such as protozoa and amoebas, which include the amoeba *Naegleria fowleri*, among others.  There have been many fatal cases of sanitary incidents around the world and in the U.S. in confined to large water bodies (that do not have an appropriate water quality management). (*Id.*)  The only technology that exists in the world for large water bodies used for recreational purposes, that is not conventional swimming pool technology, is the Crystal Lagoons' technology. (*Id.*)  Therefore, regarding the treatment of confined large water bodies, it is important to highlight that if such water bodies are not treated properly, there is a high risk for sanitary incidents.

### III. Legal Standards

To obtain a preliminary injunction, the requesting party must demonstrate four well-established factors: (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest. *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016).

### IV. Argument

For purposes of this motion, Crystal Lagoons relies solely upon its breach of contract and trademark infringement claims. Crystal Lagoons seeks a preliminary injunction to (1) prevent the continued use and dissemination of Crystal Lagoons' Confidential Information and Technology, (2) prevent the further and irreparable loss of Crystal Lagoons' valuable trademark rights (part of overall IP valued in excess of $3 billion), and (3) protect the public. Crystal Lagoons moves to enjoin Defendants from (1) further development of the lagoon at the Desert Color development, (2) using CRYSTAL LAGOONS® or a confusingly similar mark; and (3) corrective advertising to repair public damage following Defendants' illegal use of Crystal Lagoons' trademark for almost 15 months.

**A.** **Crystal Lagoons can show probable success on the merits of its breach of contract claim.**

Desert Color and the Builder Defendants[1] have breached the NDA. Under New York law (*see* Decl., Ex. F, ¶10) Crystal Lagoons "must prove four elements to prevail on a breach of contract claim: (1) the making of a contract; (2) plaintiff's performance; (3) defendant's breach; and (4) damages." *Olin Corp. v. Lamorak Ins. Co.*, 332 F. Supp. 3d 818, 839 (S.D.N.Y. 2018) (quoting *Evolution Markets, Inc. v. Alpental Energy Partners, LLC*, 221 F. Supp. 3d 361, 369 (S.D.N.Y. 2016).

**1.** **The Parties entered into a non-disclosure agreement.**

On December 8, 2017, Crystal Lagoons US Corp. entered into the NDA with Desert Color St. George, LLC. (Decl., Ex. F.) Desert Color promised to:

> 2.2 [N]ot disclose Confidential Information (or any part) to any of its employees other than those who must know for Recipient [Desert Color St. George] to carry out its business with the Disclosing Party [Crystal Lagoons];
>    ***
>
> 2.4 [O]nly use Confidential Information in accordance with the Purpose.

(Ex. F, ¶¶2.2, 2.4.) The NDA further stated that the "obligations shall remain in full force and effect until information ceases to qualify as Confidential Information in accordance with Clause 3" of the NDA. (*Id.*, ¶5.) Importantly, the Parties also agreed that

---

[1] The "Builder Defendants" are AJ Construction, Inc.; Tri-State Ventures, LLC d/b/a Carefree Homes – Utah; Cole West Home, LLC; Holmes Homes, Inc.; Sullivan Homes LLC.

the NDA binds their affiliates: "**will be binding on the parties, their affiliates,** successors, and assigns," which includes the Builder Defendants and Desert Color Manager. (*Id.*, ¶9, emphasis added.) Finally, the NDA prohibits Defendants from using Crystal Lagoons' trademarks. (*Id.*, ¶8.) Crystal Lagoons has proven the existence of an enforceable contract.

2. **Crystal Lagoons relied on the protections of the NDA and disclosed its Confidential Information**.

Following the signing of the NDA, the parties entered into formal negotiations regarding design and development of a CRYSTAL LAGOONS® amenity at the Desert Color development. Relying on the protections of the NDA, Crystal Lagoons shared its Confidential Information and Technology with Desert Color, including preliminary lagoon designs, construction details, details about systems and equipment used in the technology, technical details and information, cost information, and photographs, as well as participating in site visits to other Crystal Lagoons' projects where detailed technical construction methods and information was shared. (Decl., ¶¶25-30.) The negotiations also included signing an Economic Proposal that contained detailed information about pricing, royalty fees, and technical assistance requirements and also the TLSA that included detailed information about the technology and business model. (*Id.*) Crystal Lagoons substantially performed its obligations of the NDA.

### 3. Desert Color breached and continues to breach the non-disclosure agreement.

Desert Color breached and continues to breach the NDA. On or about June 24, 2019, Desert Color broke off negotiations with Crystal Lagoons regarding the installation of a CRYSTAL LAGOONS® amenity at the Desert Color development. (Decl., ¶22.) However, Desert Color did not destroy or return Crystal Lagoons' Confidential Information. (*Id.*) Instead, Desert Color began work with its affiliates to develop and market a Crystal Lagoons-style, multi-acre lagoon using Crystal Lagoons' Confidential Information and Technology in breach of the NDA. (Decl., ¶¶23-24.)

Desert Color and its affiliates have now broken ground on a Crystal Lagoons-style lagoon using Crystal Lagoons' Confidential Information and Technology. (Decl., ¶48; Ex. R.) Specifically, Desert Color has disclosed and used the Confidential Information and Technology shared with it, including: concept designs using Crystal Lagoons' trade dress, details about wall edges and beach access plans, costs, technical construction methods, Crystal Lagoons' Economic Proposal, water quality parameters, site visit information, lagoon maintenance, and modular treatment system. (Decl., ¶¶25-30.)

### 4. Crystal Lagoons is being damaged by Desert Color's use of Crystal Lagoons' Confidential Information and Technology.

Crystal Lagoons is the originator and industry creator of technology to build and maintain man-made, multi-acre lagoons for recreational use having the color and transparency of tropical seas or swimming pools. (Decl., ¶2.) Absent Crystal Lagoon's Confidential Information and Technology, such lagoons are not possible. (*Id.*) Desert

Color's affiliate Pacific Aquascape International has attempted, and failed, to replicate a CRYSTAL LAGOONS® amenity in Hollywood, Florida, also through suspected illegal use of Crystal Lagoons' Confidential Information and Technology. Without Crystal Lagoons' Confidential Information and Technology, Defendants would not have been able to even attempt to build such a lagoon. (*Id.*) Desert Color's breach has deprived Crystal Lagoons of control over its Confidential Information and Technology.

More critically, Desert Color's breach has deprived Crystal Lagoons of control over its trademark and brand. As shown above, creating man-made, multi-acre recreational lagoons that have the color and transparency of tropical seas is not easy. (Decl., ¶¶2-7.) The only technology in the world used to build and maintain such lagoons is Crystal Lagoons' technology. (Decl., ¶45.) Maintaining the clear-water appearance and adhering to regulated sanitation standards is of the utmost importance to the individuals using the lagoons. (Decl., ¶¶46-47.) Cloudy waters, such as those found most of the time in Pacific Aquascape's Florida-based lagoon are unappealing to the users of such lagoons. (Decl., Ex. H.)

Moreover, unsanitary conditions can lead to microorganisms such as protozoa and amoebas, which include the amoeba *Naegleria fowleri*, among others, which may be fatal to swimmers. (Decl., ¶¶42-43.) Because Crystal Lagoons is the well-known originator and designer of its lagoons and because Defendants have misappropriated and infringed Crystal Lagoons' registered trademark, customers—homeowners and lagoon users—will believe the source and technology behind the Desert Color lagoon was Crystal Lagoons,

putting Crystal Lagoons' reputation on the line for any appearance deficiencies, sanitation incidences, or complaints. This damage is directly attributable to Desert Color's breach of the NDA and its affiliates' misappropriation of Crystal Lagoons' Confidential Information. Crystal Lagoons has proven that it is likely to succeed on the merits of its breach of contract claim.

B. **Crystal Lagoons can also show probable success on the merits of its trademark infringement claim.**

The elements of federal trademark infringement are: (1) The plaintiff has a protectable interest in the trademark; (2) The defendant has used an identical or similar trademark in commerce; and (3) The defendant has likely confused customers by using a similar trademark. *Derma Pen, LLC v. 4EverYoung Ltd*., 773 F.3d 1117, 1118 (10th Cir. 2014) (vacating denial of preliminary injunction for infringement of trademark); 15 U.S.C. §1114(1). As shown below, Crystal Lagoons owns the CRYSTAL LAGOONS® mark, Defendants have used the CRYSTAL LAGOONS® mark in commerce, and Defendants' use of CRYSTAL LAGOONS® is likely to cause confusion.

1. **Crystal Lagoons has prior, federally registered rights in CRYSTAL LAGOONS®.**

A federally registered trademark provides *prima facie* evidence of the registrant's ownership of the mark. 15 U.S.C. §1057 (b). The CRYSTAL LAGOONS® mark has been federally registered since at least November 2010. (Decl., Ex. E.)  The U.S. Patent and Trademark Office has granted registration of an entire "family" of registrations for "CRYSTAL LAGOONS."  Defendants have been using the CRYSTAL LAGOONS®

mark illegally to market Desert Color. There is no issue as to who is first. Crystal Lagoons owns the CRYSTAL LAGOONS® mark, owns several federal registrations for that mark providing nationwide rights, and is the senior user.

### 2. Defendants have used and continue to use the CRYSTAL LAGOONS® mark in commerce.

Defendants have used, and continue to use, the identical CRYSTAL LAGOONS® mark, or confusingly similar marks, in commerce. Without permission, Defendants have used the CRYSTAL LAGOONS® mark to market the Desert Color development, the man-made lagoon, and to sell properties at the Desert Color development using online advertisements. *See* Section II(E), *supra*. (*See* Dkt. 1, ¶¶77-79; Decl., ¶¶33-37, Exs. I-N.) It is indisputable that Defendants have used Crystal Lagoons' registered trademark in commerce and without permission to do so.

### 3. Defendants' use of the CRYSTAL LAGOONS® mark is likely to cause confusion.

Courts in this Circuit consider the following factors in determining whether a likelihood of confusion exists:

(1) the degree of similarity between the marks;

(2) the intent of the alleged infringer in adopting its mark;

(3) evidence of actual confusion;

(4) similarity of products and manner of marketing;

(5) the degree of care likely to be exercised by purchasers; and

(6) the strength or weakness of the marks.

*Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002) (citing *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089-90 (10th Cir. 1999); *see also Equitable Nat'l Life Ins. Co. v. AXA Equitable Life Ins. Co.*, 434 F. Supp. 3d 1227, 1245 (D. Utah 2020). Application of these factors to the instant case shows that confusion is likely, and in fact, has already occurred.

> **a.** **The Parties have used the identical CRYSTAL LAGOONS® mark.**

The similarity of the marks is the "first and most important factor." *Equitable Nat'l Life Ins. Co.*, 434 F. Supp. 3d at 1246 (quoting *Hornady Manufacturing Co., Inc. v. Doubletap, Inc.*, 746 F.3d 995, 1001 (10th Cir. 2014). "The degree of similarity is tested on three levels as encountered in the marketplace: sight, sound, and meaning." *Id.* (quoting *First Sav. Bank v. First Bank Sys., Inc.*, 101 F.3d 645, 653 (10th Cir. 1996). The marks used by the Parties are commercially identical. *See* Section IV(B)(2).

As to "sight," the marks are identical. Both Crystal Lagoons and Defendants use the word CRYSTAL adjacent to LAGOON. As to "sound," which refers to pronunciation, both Crystal Lagoons and Defendants use the same standard pronunciation of both the word CRYSTAL and the word LAGOON. As to "meaning," the meaning is identical—lagoons with high transparency and excellent water quality akin to high-quality glass or minerals (i.e., crystals).

Defendants' use of a singular form of LAGOON is of no moment. Using a singular form of LAGOON instead of the plural LAGOONS does not change the overall impression in the mark. *Evol Nutrition Assocs. v. Supplement Ctr., LLC*, No. 1:17-CV-

01572-ELR, 2017 U.S. Dist. LEXIS 220450, at *8 (N.D. Ga. Aug. 16, 2017). In addition, LAGOONS was disclaimed—meaning that Crystal Lagoons claims no exclusivity in LAGOONS or LAGOON other than when used with CRYSTAL. The marks are identical in the minds of the consuming public, which supports a finding of likelihood of confusion.

        ***b.***     ***Defendants' intent in adopting Crystal Lagoons' mark supports a finding that confusion is likely.***

"Evidence that the alleged infringer chose a mark with the intent to copy, rather than randomly or by accident, typically supports an inference of likelihood of confusion." *Equitable Nat'l Life Ins. Co.*, 434 F. Supp. 3d at 1247 (quoting *Hornady Manufacturing*, 746 F.3d at 1003). Here, Desert Color was initially enthusiastic to be affiliated with Crystal Lagoons. It was prepared to pay. It signed the NDA with Crystal Lagoons and expressly agreed: "Neither Party shall use the other's name or trademark, unless authorized in writing. Recipient may not imply or represent that it has any mandate or representation powers from the Disclosing Party [Crystal Lagoons]." (Decl., Ex. F, ¶8.) Desert Color and its affiliates knew of Crystal Lagoons; knew of Crystal Lagoons' reputation for designing and developing appealing and safe lagoons; and knew of Crystal Lagoons' trademarks. Defendants did not randomly or accidently choose to use the CRYSTAL LAGOONS® mark. Defendants knew the value of the mark; but instead of paying for it, they stole it. Defendants' intent to infringe supports a finding of likelihood of confusion.

### c.    Actual confusion

Defendants' unlawful use of Crystal Lagoons' mark has already led to actual confusion in the marketplace. "Actual confusion in the marketplace is often considered the best evidence of likelihood of confusion." *Heartland Animal Clinic, P.A. v. Heartland SPCA Animal Med. Ctr., LLC*, 503 F. App'x 616, 621 (10th Cir. 2012). Crystal Lagoons was contacted by a vendor working on the lagoon at Desert Color, mistakenly believing it was working on a CRYSTAL LAGOONS® project. (Decl., ¶23.)

### d.    The parties use similar manners of marketing to market identical products.

Defendants are using Crystal Lagoons' registered trademark to market the very products that Crystal Lagoons makes and sells—man-made, multi-acre, recreational lagoons. (Decl., ¶¶33-37.) This factor is analyzed by separately considering (1) the similarity of products and (2) the similarity in how the products are marketed. *Equitable Nat'l Life*, 434 F. Supp. 3d at 1250 (citing *Sally Beauty*, 304 F.3d at 974).    The greater the similarity between the [parties'] products, the greater the likelihood of confusion." *Id.* (alteration in original).

The products are identical—man-made, multi-acre, recreational lagoons.    All parties advertise on social media and other online media, as shown above. Thus, the Parties' products are identical, enhancing the likelihood of confusion.

### e. The low degree of care of a purchaser verifying the vendors of the advertised amenities increases the likelihood of confusion.

Purchasers of properties at the Desert Color development are unlikely to verify the vendors of the advertised amenities. In evaluating this factor, courts look to the degree of care expected of an ordinary purchaser of the parties' products. The nature of the product, its cost and the conditions of purchase often bear on the degree of purchaser care. In the instant case, consumer care is unlikely to be high.

While the purchase of a property at the Desert Color development is not inexpensive (i.e., $250,000-$450,000+), the focus of a purchaser is on the quality of the home unit (i.e., square footage, layouts, countertops, etc.). While purchasers are interested in the amenities that the development offers, especially the centerpiece water amenity, they are unlikely to investigate the claims made by the developers. Purchasers will rely on the veracity of the marketing materials.

### f. Crystal Lagoons' mark is strong.

Crystal Lagoons has a strong mark meriting protection. (Decl., ¶¶17-18.) It is registered and has been used since 2007. A strong and distinctive mark is entitled to greater protection than a weak one. *Equitable Nat'l Life*, 434 F. Supp. 3d at 1251 (quoting *First Sav. Bank*, 101 F.3d at 653). In assessing the relative strength of a mark, "one must consider the two aspects of strength: (1) Conceptual Strength: the placement of the mark on the distinctiveness . . . spectrum; and (2) Commercial Strength: the

marketplace recognition value of the mark." *Id.* (quoting *King of the Mountain Sports*, 185 F.3d at 1093.

Crystal Lagoons' mark is conceptually strong. The categories of trademarks in ascending order of relative strength are: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Sally Beauty*, 304 F.3d at 975-76. While suggestive, arbitrary, and fanciful marks are inherently distinctive, descriptive marks may only be registered upon a showing of secondary meaning. *Id.* at 976. During prosecution, CRYSTAL LAGOONS® registered without a showing of secondary meaning. CRYSTAL LAGOONS® is not a descriptive mark. At least a suggestive mark, CRYSTAL LAGOONS® is inherently distinctive. A suggestive mark "suggests rather than describes a characteristic of the product and requires the consumer to use imagination and perception to determine the product's nature." *First Sav. Bank*, 101 F.3d at 655.

As the world leader in man-made, recreational lagoons, Crystal Lagoons has also established a commercially strong mark. To evaluate commercial strength, courts consider (1) the length and manner of the mark's use, (2) the nature and extent of advertising and promotion of the mark, and (3) the efforts made to promote a conscious connection, in the public's mind, between the mark and a particular product. *Id.* (quoting *Hornady Manufacturing*, 746 F.3d at 1007-08) (internal quotation omitted). Crystal Lagoons has been using its mark in commerce since at least 2007. (Decl., Ex. E.) Crystal Lagoons' mark has been used extensively in advertising its lagoons and services. Crystal Lagoons has projects in the United States, South Africa, Dubai, Indonesia, Thailand,

Egypt, Spain, Turkey, Vietnam, Chile, Peru, Bolivia, Paraguay, Argentina, among other countries. *See* https://www.crystal-lagoons.com/real-estate-projects/, (last accessed December 2, 2020).

### g. *Confusion Is Likely.*

All of the relevant likelihood of confusion factors support a finding of trademark infringement. In addition, Crystal Lagoons has a registered trademark that Defendants were aware of, said they would not use without permission, and are now using to sell their new development. Therefore, Crystal Lagoons has proven that it is likely to succeed on the merits of its trademark infringement claim.

### C. Crystal Lagoon will be irreparably harmed unless Defendants are enjoined from their activities.

Damages alone will not fully compensate Crystal Lagoons for Defendants' conduct. "[A] plaintiff satisfies the irreparable harm requirement by demonstrating a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." *Equitable Nat'l Life*, 434 F. Supp. 3d at 1252 (alteration in original) (quoting *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009)). "[A] showing that there is a 'significant risk' of irreparable harm meets the burden." *Id.* at 1252-53 (quoting *RoDa Drilling*, 552 F.3d at 1210). Harm to Crystal Lagoons is real and ongoing.

The Desert Color lagoon has been marketed as being developed with Crystal Lagoons' technology, which is extremely harmful since Defendants are selling property to the public based upon a lagoon that is not affiliated with Crystal Lagoons; approved by

sanitary authorities for the swimming and bathing uses as it is being marketed; and will soon be delivered to end customers if not stopped. Money damages alone will not protect Crystal Lagoons from these harms, for example, if the lagoon is closed by regulatory authorities, or if swimming and bathing is not allowed, or it has a deficient aesthetics, or if there is any sanitary accidents, then such problems will be immediately associated with Crystal Lagoons, its brand and technology.

When Desert Color fails to provide a CRYSTAL LAGOONS® amenity with high transparency and excellent water quality, a significant risk exists that home owners and real estate developers will believe that Crystal Lagoons is no longer building and maintaining quality man-made, multi-acre, recreational lagoons, negatively impacting Crystal Lagoons' ability to sell lagoons in other locations. *Equitable Nat'l Life*, 434 F. Supp. 3d at 1253 (quoting *Tsunami Softgoods, Inc. v. Tsunami Int'l, Inc.*, No. 2:00-cv-738, 2001 U.S. Dist. LEXIS 22277, 2001 WL 670926, at *5 (D. Utah Jan. 19, 2001).

Crystal Lagoons has been deprived of control over its Confidential Information and industry-leading proprietary technology. *RoDa Drilling Co. v. Siegal*, 552 F.3d at 1210. Crystal Lagoons is now being forced to compete against its own technology. As Defendants have unlawfully taken Crystal Lagoons' technology, nothing prevents Defendants from continuing to use Crystal Lagoons' technology at subsequent developments, further requiring Crystal Lagoons to compete against its own information. *Veeco Instruments Inc. v. SGL Carbon, LLC*, No. 17-CV-2217 (PKC), 2017 U.S. Dist. LEXIS 181935, at *95-96 (E.D.N.Y. Nov. 2, 2017).

Defendants' use of Crystal Lagoons' trademark also irreparably harms Crystal Lagoons' consumer goodwill and impacts its reputation. *Equitable Nat'l Life*, 434 F. Supp. 3d at 1253 ("Several courts have held that loss of control over a business's reputation and loss of goodwill can constitute irreparable harm"). While Crystal Lagoons is no longer involved in the Desert Color development (Decl., ¶19), Defendants continue to use the CRYSTAL LAGOONS® mark (Decl., ¶¶33-37). The general public and real estate developers are being misled to believe that Crystal Lagoons is connected to Desert Color. (Decl., ¶¶33-37.)

Finally, Defendants' conduct opens Crystal Lagoons up to significant commercial and reputational damage based on harm to public safety. Crystal Lagoons focuses on complying with the sanitation statutes and regulations in each state and municipality to ensure the cleanliness and safety of its Crystal Lagoons. (Decl., ¶43.) Based on Defendants', in particular Pacific Aquascape's, inability to develop a man-made, multi-acre, recreational lagoon with high transparency and excellent water quality, a significant risk exists that (1) Defendants are not in compliance with all state and municipal statutes and regulations and (2) the sanitation conditions of the Desert Color lagoon will fail to meet Crystal Lagoons' high standards for safety and sanitation. (Decl., ¶¶38-42.) Because Defendants have led the public to believe the lagoon at Desert Color is being provided by Crystal Lagoons, Crystal Lagoons will be liable in the public's perception for any health code violations or user illnesses. This factor favors the entry of an immediate injunction.

**D.    The balance of hardships tips sharply in Plaintiffs' favor.**

Balancing the potential harm to Defendants, which is purely monetary, against the harm to Crystal Lagoons, who has spent years promoting its industry-leading, man-made lagoons, establishing goodwill therein, and keeping the market place clear of infringers, yields a clear answer to this inquiry. Every day that Defendants are permitted to (1) continue development of the lagoon at Desert Color and (2) continue advertising using Crystal Lagoons' trademark irreparably injures Crystal Lagoons.  It must be stopped.

"The Tenth circuit has held that 'when the case for infringement is clear, a defendant cannot avoid a preliminary injunction by claiming harm to a business built upon that infringement.'" *Kodiak Cakes LLC v. Cont'l Mills, Inc*., 358 F. Supp. 3d 1219, 1237 (D. Utah 2019) (quoting *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1229 (10th Cir. 2007)). Any hardship that Defendants face from their intentional misconduct "merits little equitable consideration." *Atari, Inc. v. North American Philips Consumer Elecs. Corp.*, 672 F.2d 607, 620 (7th Cir.). Defendants' "harms are self-inflicted and could have been avoided, eliminating or at least lessening their weight in the analysis." *Property Mgmt. Bus. Solutions v. Averitte*, No.: 2:18-cv-552, 2018 U.S. Dist. LEXIS 154644, at *21 (D. Utah Sept. 10, 2018) (citing *Sierra Club, Inc. v. Bostick*, 539 Fed. Appx. 885, 894 (10th Cir. 2013).  The loss of control over Crystal Lagoons' Confidential Information and Technology outweighs any monetary loss to Defendants, who brought this on themselves.

**E.** **Enjoining Defendants' infringing activities will serve the public interest.**

A preliminary injunction is required to serve the public interests in this case. Defendants' conduct is contrary to the public interest on multiple fronts. First, the "public has a strong interest in the enforcement of valid contracts . . ." *Property Mgmt. Bus.*, 2018 U.S. Dist. LEXIS 154644, at *21. Next, "[w]hile public interest favors intermarket competition, that competition must be fair. Public interest in fair competition dictates that Defendants should not be allowed to profit off the efforts of Plaintiffs in achieving their commercial success. Public interest also disfavors allowing competition at the expense of customer confusion." *Kodiak Cakes*, 358 F. Supp. 3d at 1237. Finally, "[t]rademark infringement is 'inherently contrary to the public interest.'" *Equitable Nat'l Life*, 434 F. Supp. 3d at 1255 (quoting *Harris Research, Inc. v. Lydon*, 505 F. Supp. 2d 1161, 1169 (D. Utah 2007)). Here, it is indisputable that the public interest disfavors Defendants' breach of contract, willful trademark infringement, and public risk.

## V. CONCLUSION

Finding that Crystal Lagoons has satisfied the preliminary injunction requirements, *see Dine Citizens*, 839 F.3d at 1281, the Court should enter a preliminary injunction enjoining Defendants. Preliminary injunctions are designed to maintain the status quo. Here, the status quo is (1) no man-made lagoon exists at the Desert Color development, (2) Crystal Lagoons is the owner of the CRYSTAL LAGOONS® mark and has not given permission to Defendants, and (3) Defendants are advertising the lagoon as swimmable. A preliminary injunction properly enjoins Defendants from (1) further

development of the lagoon, (2) using CRYSTAL LAGOONS® or a confusingly similar mark, and (3) protecting the public from a potentially unsafe lagoon. Such an injunction is narrowly tailored to enjoin only Defendants' unlawful conduct.

Date: December 3, 2020

By: _/s/ Stephen M. Sansom_
Stephen M. Sansom
Brandon T. Christensen
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101
Tel: (801) 799-5897

Anthony R. Zeuli *(Pro Hac Vice pending)*
Thomas Johnson *(Pro Hac Vice pending)*
MERCHANT GOULD P.C.
2200 Fifth Street Towers
150 South Fifth Street
Minneapolis, MN 55402-4247
Tel: (612) 332-5300
Fax: (612) 332-9081

*Counsel for Plaintiffs*
*Crystal Lagoons US Corp and Crystal Lagoons*
*Technologies, Inc.*

## <u>LOCAL RULE 7.1(c) CERTIFICATION</u>

I hereby certify that PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, filed on December 3, 2020, complies with the word limit imposed by DUCivR 7-1(a)(3) with a total word count of 6,401, excluding face sheet, table of contents, table of authorities, signature block, certificate of service and exhibits.

DATED: December 3, 2020.

Respectfully submitted,

*/s/ Stephen M. Sansom*
Stephen M. Sansom

15821136_v1