Stephen M. Sansom (#10678)
Brandon T. Christensen (#16420)
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT  84101
Tel: (801) 799-5897
*smsansom@hollandhart.com*
*btchristensen@hollandhart.com*

Anthony R. Zeuli *(Admitted Pro Hac Vice)*
*tzeuli@merchantgould.com*
Thomas Johnson *(Admitted Pro Hac Vice)*
*tjohnson@merchantgould.com*
MERCHANT GOULD P.C.
2200 Fifth Street Towers
150 South Fifth Street
Minneapolis, MN  55402-4247
Tel: (612) 332-5300
Fax: (612) 332-9081

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH, SOUTHERN REGION OF THE CENTRAL DIVISION

| | |
|---|---|
| CRYSTAL LAGOONS U.S. CORP. AND CRYSTAL LAGOONS TECHNOLOGIES INC., <br><br> Plaintiffs, <br><br> vs. <br><br> DESERT COLOR MANAGER LLC, DESERT COLOR ST. GEORGE LLC, AJ CONSTRUCTION, INC., COLE WEST HOME LLC, HOLMES HOMES, INC., SULLIVAN HOMES LLC, and PACIFIC AQUASCAPE INTERNATIONAL, INC., <br><br> Defendants. | **FIRST AMENDED COMPLAINT** <br><br> **(REDACTED VERSION – EXHIBIT 9 FILED UNDER SEAL)** <br><br> Case No. 2:20-cv-00851-BSJ <br><br> Judge Bruce S. Jenkins <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Crystal Lagoons U.S. Corp. and Crystal Lagoons Technologies Inc. ("Crystal Lagoons"), through their undersigned attorneys, for their First Amended Complaint against Defendants Desert Color Manager LLC, Desert Color St. George LLC (collectively "Desert Color"), AJ Construction, Inc. ("AJ Construction"), Cole West Home LLC ("Cole West"), Holmes Homes, Inc. ("Holmes"), Sullivan Homes LLC ("Sullivan") (collectively the "Builder Defendants"), and Pacific Aquascape International, Inc. ("Pacific Aquascape") (collectively "Defendants") alleges as follows:

## THE PARTIES

1.      Crystal Lagoons U.S. Corp. is a Delaware corporation with its principal place of business at 2 Alhambra Plaza, PH1B, Coral Gables, FL 33134.

2.      Crystal Lagoons Technologies Inc. is a Delaware corporation with its principal place of business at 1209 Orange Street Wilmington, New Castle, DE 19801.

3.      On information and belief, Desert Color Manager LLC is a Utah corporation with its principal place of business at 730 N 1500 W, Orem, UT 84057.

4.      On information and belief, Desert Color St. George LLC is a Utah corporation with its principal place of business at 730 N 1500 W, Orem, UT 84057.

5.      On information and belief, AJ Construction, Inc. is a Utah corporation with its principal place of business at 265 West Tabernacle, #200, St. George, UT 84770.

6.      On information and belief, Cole West Home LLC is a Utah corporation with a principal place of business at 1222 West Legacy Crossing Blvd, Suite 6, Centerville, UT 84014.

7.      On information and belief, Holmes Homes, Inc. is a Utah corporation with a principal place of business at 126 West Sego Lily Drive, Suite 250, Sandy, UT 84070.

8.      On information and belief, Sullivan Homes LLC is a Utah corporation with a principal place of business at 558 East Riverside Drive, Suite 102, St. George, UT 84790.

9.      On information and belief, Pacific Aquascape International, Inc. is a Utah corporation with its principal place of business at 17520 Newhope Street, #120, Fountain Valley, California 92780.

## JURISDICTION

10.      This is an action for trademark and trade dress infringement, unfair competition, and false advertising arising under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, violations of the Utah Truth in Advertising Act, UT Code §§ 13-11a-1 *et seq.*, breach of contract under Utah state law, common law conversion and unjust enrichment, and patent infringement arising under the Patent Act, 35 U.S.C., §§ 101 *et seq*.

11.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a), 1338(b), 1367 and 1400.

12.      This Court has personal jurisdiction over Defendants because each Defendant resides in Utah or has a principal place of business located in Utah, or both.

13.      Venue is proper in this District under 28 U.S.C. §1391 and/or 1400(b) because all Defendants reside in this district, have their principal places of business here, or both. In addition, a substantial part of the events giving rise to the claims occurred in this district.

## BACKGROUND

14.      Crystal Lagoons has developed and patented a technology that allows building and maintaining large man-made lagoons with high transparency and excellent water quality at low costs, and that is changing the lifestyle of people worldwide. Crystal Lagoons' technology is

3

one of the most innovative and important technologies of recent years in the world. With over 2,000 patents in 190 countries, Crystal Lagoons is responsible for more than 70 projects already in operation and in construction stages, and more than 1,000 projects globally in negotiation and planning stages worldwide, bringing beach life to every corner of the world.

15.     Inventor Fernando Fischmann, a real estate developer and biochemist, had started planning a second-home real estate development called San Alfonso del Mar, in a small town on Chile's central coast. Although the site had a fantastic view of the sea and was close to Santiago (Chile's capital), the local shoreline was unattractive due to cold-water temperatures, as well as the dangerous waves and undercurrents, which posed a risk to bathers, who were forbidden to swim or practice watersports in the area. Mr. Fischmann envisioned creating an enormous lagoon 0.6 miles long and 20 acres in surface area, with crystalline turquoise waters that could provide a safe way to swim and enjoy watersports in a clean and family-friendly environment.

16.     Mr. Fischmann traveled around the world to the United States, Australia, Germany, and other countries looking for a company that was able to turn his vision into a reality, and he was repeatedly told that the only technology that existed to provide recreational water bodies was conventional swimming pool construction and operation technology and that it was not viable to have such large water bodies with excellent water quality and transparency, and he would never succeed in creating such a technology.

17.     The San Alfonso del Mar lagoon envisioned by Mr. Fischmann is equivalent to 6,000 residential pools, and therefore using traditional pool construction and operation technologies would require, for example, a complete concrete shell for creating the lagoon

structure and expensive coatings, more than 2,000 inlets, and 6,000 doses of chlorine and 6,000 filters to operate, making such a structure unviable technically and economically.

18.     Mr. Fischmann, a trained biochemist, conducted research for more than 7 years to develop a technology that allowed building a low cost structure to maintain such a large water body, and also for maintaining the water with an innovative water treatment technology that uses up to 100 times less chemicals and up to 50 times less electricity than conventional swimming pool technology. This state-of-the-art technology allows creating and operating recreational water bodies of any size with excellent water quality and transparency at low costs.

19.     Specifically, Mr. Fischmann invented a new structure, with specific technical features and elements, in order to create a low cost structure to contain large water bodies used for recreational purposes, which was first used in the construction of the first lagoon at San Alfonso del Mar. This technology included, among others, the use of a plastic liner that is able to be thoroughly cleaned, instead of a complete concrete shell, where the liner is mostly installed directly over soil or compacted sand. This had not been done anywhere else in the world to create large man-made lagoons with crystalline water similar to tropical seas for recreational purposes. Further, Mr. Fischmann invented a new water treatment technology that uses flocculation to settle particles and contaminants to the bottom of the large water bodies, and removing such settled material with a bottom cleaning system.

20.     Over the years, Mr. Fischmann has invented many technologies, including systems and methods for water treatment, bottom cleaning, efficient filtration systems, business methods, localized disinfection systems, construction methods, hydraulic systems and techniques, among others, creating a 2,000+ patent portfolio worldwide.

21.     Crystal Lagoons' technology is one of the most innovative and sought-after technologies of recent years in the world. It has received numerous awards and two Guinness Book of World Records. It turned a mirage into reality: creating beautiful clear water bodies for bathing and the practice of water sports, bringing beach life to all corners of the world. These man-made lagoons are not only used for swimming and bathing, but also for practicing water sports, such as kayaking, sailing, rowing, and windsurfing, in designated areas within the lagoon.

22.     On information and belief, all large man-made lagoons with crystal clear waters used for direct contact recreational purposes, such as swimming, bathing, and also for the practice of water sports around the world, are built, operated, and maintained with Crystal Lagoons' technology.

23.     Crystal Lagoons has developed and patented various technologies that have enabled a change in peoples' lifestyle around the world. Today they have a portfolio of over 2,000 patents in 190 countries around the world. Their scientific efforts are also focused on the development of a wide variety of industrial applications that allow them to help solve pressing global sustainability issues, which include water and energy scarcity, as well as environmental degradation.

24.     Mr. Fischmann's revolutionary innovations for building and maintaining large man-made lagoons with excellent water quality at low costs and in a sustainable manner allowed for the first lagoon in San Alfonso del Mar and paved the way for the rest of the world, having today more than 70 projects in different stages of operation and construction, and more than 1,000 projects in planning and negotiations stages, with lagoons of more than 30 acres of water surface. Crystal Lagoons has projects in the United States, South Africa, Dubai, Indonesia,

Thailand, Egypt, Spain, Turkey, Vietnam, Chile, Peru, Bolivia, Paraguay, Argentina, among other countries. Some examples can be seen below from photos of projects using Crystal Lagoons' technology:

**Figure 1: Epperson Project, Florida (7 acres)**



**Figure 2: Epperson Project, Florida (7 acres)**



**Figure 3: Photograph of Lago Mar Project, Texas (12 acres)**



**Figure 4: Photograph of Lago Mar Project, Texas (12 acres)**



**Figure 5: Photograph of the Balmoral project, Texas (2 acres)**



**Figure 6: Photograph of the Sole Mia Project, Florida (7 acres)**



**Figure 7 Photograph of Windsong Ranch Project Houston Texas (5 Acres)**



25.     The following is a web link to a video of the Epperson Project, located in Florida and the Lago Mar project, located in Texas, which shows the concept and technology from Crystal Lagoons, providing clear differentiation from a conventional swimming pool. Link Epperson Project: https://vimeo.com/445038143/5896695be3. Link Lago Mar Project: https://vimeo.com/445038144/95ef018e89.

26.     This innovation has allowed developers to create real estate projects where residents have access to beach life at the doorsteps of their home, enjoying the man-made crystalline lagoon far from the sea, and recently, through his latest concept of the Public Access Lagoons, bringing beach life to an urban setting having a ticketed access to the lagoon complex, changing the lifestyle of people in cities. Instead of having to drive long hours or fly to a tourist beach destination, the nearby population will be able to visit the beach through the Public Access

Lagoon™ or PAL™ concept just steps away from their homes, having access to several recreational, commercial, and cultural facilities and experiences, such as restaurants, practicing water sports, concerts, among others, changing the lifestyle of cities around the world.

27.     Similar to the beginning of public parks 200 years ago, when the first city parks were created in England bringing natural forest to cities, this innovation brings a piece of the ocean to cities, incorporating the beach into an urban context.

28.     This new Public Access Lagoon™ or PAL™ concept has gained so much drive that from October 2019 to date 130 projects around the world have been signed as part of Master Agreements with estimated royalties for Crystal Lagoons that exceed US $3.8 billion.

29.     The importance of Crystal Lagoons' technology is further backed by many facts. First, Crystal Lagoons became the first Chilean "Unicorn" only one and half years after its creation. "Unicorns" are start-up companies valued in over $1 billion dollars. Secondly, Mr. Fischmann has been honored many times with prestigious international awards, such as Ernst & Young's "Entrepreneur of the Year," "Innovator of the Year," and "Businessman of the Year," being the only executive to receive these three awards. In 2016, he received the Innovation Stevie Award in Italy, also known as the Oscars of the business world and previously awarded to Steve Jobs and Jeff Bezos, and the "Real Innovator Award," by the London Business School, as well as the "Green Apple Award" received in the House of Commons at Westminster Palace, London, among many others. Mr. Fischmann is also director of the German Institute for applied science Fraunhofer Institute FCR. Thirdly, Mr. Fischmann has also been keynote speaker at events organized by the Harvard Business School, MIT, Duke, Babson College, London Business School, Berkeley, among many other events and was recently interviewed by Stanford

University radio for 40 minutes. Mr. Fischmann has also been given the O-1 visa in the U.S., for Individuals with Extraordinary Ability or Achievements. All of this as a result of the impact of his technologies on the lifestyle of people around the world.

30. Finally, in January of 2020, Crystal Lagoons Technologies Inc. (holder of Crystal Lagoons' US intellectual property portfolio) became incorporated as a U.S. company, which required a valuation of its Intellectual Property for tax purposes, resulting in a value of more than US $3 billion. Today, the company is a technology company with patents in over 190 countries, where all Crystal Lagoons' patents have been granted in 100% of the countries and territories where they have been examined.

## CRYSTAL LAGOONS' INTELLECTUAL PROPERTY

31. Crystal Lagoons Technologies, Inc. owns the rights in Crystal Lagoons' intellectual property in the U.S. including patents, trademarks, trade dress and copyrights. Indeed, Crystal Lagoons and related entities own more than 2,000 patents worldwide in more than 190 countries and more than 350 designs to protect its valuable and proprietary technology. Crystal Lagoons reserves the right to assert claims for relief due to Defendants' actions regarding these patents. Crystal Lagoons U.S. Corp is the exclusive licensee of Crystal Lagoons' intellectual property, including the asserted patent and trademarks, and has the exclusive right to sub-license the intellectual property in the United States.

32. On November 22, 2011, the United States Patent and Trademark Office ("PTO") duly and legally issued U.S. Patent No. 8,062,514 (the "Patent in Suit" or "the '514 Patent") to Crystal Lagoons Corporation, LLC.  The '514 Patent claims priority to U.S. patent application

13

no. 11/819,017, filed on June 25, 2007.  The '514 Patent also claims priority to Serial No. 3225-2006, filed November 21, 2006 in Chile.

33.    Crystal Lagoons (Curacao) B.V. received all right, title and interest in the '514 patent by way of assignment recorded in the U.S. Patent and Trademark Office on March 8, 2013.

34.    Crystal Lagoons (Curacao) B.V. then entered into a written exclusive license agreement on November 19, 2019, with Plaintiff Crystal Lagoons U.S. Corp.

35.    In December 2019, Crystal Lagoons (Curacao) B.V., due to a comprehensive international restructuring process, migrated to the United States and converted into a Delaware corporation called Crystal Lagoons Technologies, Inc., also a named plaintiff in the present action, while retaining nominal title to and ownership in the '514 patent.

36.    A true and correct copy of the '514 patent is attached hereto as Exhibit 1.

37.    In addition to the '514 patent, Crystal Lagoons U.S. Corp. is an exclusive licensee in several other patents for related technology licensed from Crystal Lagoons Technologies, Inc., including:

37.1.   U.S. Patent No. 9,708,822, titled: "Process to maintain large clean recreational water bodies" ("the '822 Patent) which was duly and legally issued on July 18, 2017 from U.S. Patent.  Application No. 11/444,781 filed on July 28, 2014, claims priority to Application No. 11/819,017, filed on June 25, 2007, and also claims priority to Serial No. 3225-2006, filed November 21, 2006 in Chile, and

37.2.   U.S. Patent No. 8,753,520, titled: "Localized disinfection system for large water bodies" ("the '520 Patent) which was duly and legally issued on June 17, 2014

14

from U.S. Patent.  Application No. 13/955,699 filed on July 31, 2013, which claims

priority to PCT/EP2012/076170 filed on December 19, 2012.

38.      The name "Crystal Lagoons®" has become famous and synonymous with the

crystal-clear man-made lagoons built using Mr. Fischmann's innovative technology. Throughout

the world the name "Crystal Lagoons®" evokes images of man-made lagoons with crystalline

blue, crystal-clear waters lapping on white sand beaches. This is no less true in the United States,

where more than 6 lagoons powered by Crystal Lagoons' technology are already in operation

and more than 30 are under contract or construction.

39.      As such, Crystal Lagoons has filed for and obtained numerous U.S. trademark

registrations on the name "Crystal Lagoons®" and related terms, covering a wide range of goods

and services. These registrations include:

| Registration No. | Date of Registration | Trademark |
|---|---|---|
| 3,881,936 | November 30, 2010 | CRYSTAL LAGOONS |
| 5,312,449 | October 17, 2017 | CRYSTAL LAGOONS |
| 5,454,097 | April 28, 2018 | CRYSTAL LAGOONS |
| 5,465,084 | May 8, 2018 | CRYSTAL LAGOONS |
| 5,870,729 | October 1, 2019 | CRYSTAL LAGOONS |
| 6,042,995 | April 28, 2020 | CRYSTAL LAGOONS |

(Exhibit 2.)

40.      In addition to its trademarks, Crystal Lagoons has created a trade dress associated

with the look and feel of the lagoons powered by its innovative technology and its combined use

with some of its immediate surroundings. Crystal Lagoons has developed this trade dress with

the purpose that customers will instantly recognize that a project is developed with Crystal

Lagoons' technology without necessarily having to see the Crystal Lagoons trademark anywhere

on the premises.

41.     The Crystal Lagoons' Trade Dress consists of the design and layout of an urban beach recreational complex. The urban beach recreational complex includes a man-made tropical-style lagoon with pristine clear waters, as in tropical seas, as its centerpiece, with the look and feel of a tropical lagoon, including a light colored, smooth bottom mostly covered with a plastic membrane and not painted concrete as in conventional swimming pools.

42.     Further, in Crystal Lagoons' Trade Dress, the edges of the lagoon are generally rounded and designed in curved shapes and geometries and the lagoon: (1) has at least one zero-entry zone that resembles a tranquil tropical beach; and (2) has a swimming zone and a water sports zone, which are not physically separated, instead the lagoon's deeper waters may be used for practicing water sports, while the sloped areas are mostly for bathing and swimming.

43.     The urban beach recreational complex also includes sandy beaches, recreational areas, and may include docks and/or piers. Beach areas feature elements that evoke a tropical beach, while also including sunshades.

44.     Crystal Lagoons' Trade Dress is non-functional, in that it is not essential to the use or purpose of the recreational water feature, and use of the Trade Dress does not affect the cost of creating a recreational water feature.

45.     An example of Crystal Lagoons' Trade Dress is reproduced below:

**Figure 7: Example of Crystal Lagoons' trade dress**



Pristine, clear waters

Curved shape with rounded edges

Ligt-colored, smooth, liner-covered bottom

Swimming zone not physically separated from deeper water-sport zone

Recreational areas, beaches

Zero-entry zone resembling a tropical beach

## DEFENDANTS' RELATIONSHIPS WITH EACH OTHER

46.     Defendant Desert Color is a "master-planned community unlike any other" being developed in southern Utah. Its website mentions that it does not have a golf course. The "centerpiece" is a swimmable, multi-acre, man-made lagoon designed and being built by Defendant Pacific Aquascape. It is located in St. George, Utah.

47.     On information and belief, Pacific Aquascape provided the final design, engineering, and construction of the Desert Color lagoon, and Desert Color is selling houses/lots within its development, which have access to the Desert Color lagoon. Therefore, Pacific Aquascape designed and is building the lagoon, while Desert Color is commercializing the project's lagoon.

48.     The name "Desert Color®" is registered to Desert Color, LLC. Upon information and belief, Defendant Desert Color Manager LLC manages the Desert Color project, while Defendant Desert Color St. George LLC is the corporate owner of the development project itself.

49.     Defendant Pacific Aquascape is designing, overseeing construction, and will provide maintenance of the "centerpiece" man-made lagoon.

50.     Desert Color has five builder affiliates: Defendants AJ Construction, Holmes Homes, Sullivan, Carefree Homes, and Cole West Homes:

### Figure 8: Extract from Desert Color Website



## CRYSTAL LAGOONS' RELATIONSHIP WITH DEFENDANTS DESERT COLOR

51.     Around June 2017, Crystal Lagoons was contacted by Desert Color about providing a Crystal Lagoons® lagoon for the Desert Color development to be located in St. George, Utah. Initially, the plan conceived by Desert Color included a mixed commercial district with the concept drawings showing at least 3 lagoons to be developed with Phase 1 including a 2.5 acre recreational lagoon.

### Figure 9: Images from Desert Color's website



52.     As noted above, Crystal Lagoons has significant intellectual property including more than two thousand patents, as well as trademarks, trade dress and copyrights. Crystal

Lagoons provides consultancy from the start of every project. It delivers the information needed (including architectural services and basic and detailed engineering plans and specifications) for any local professional contractor to be able to execute the project without any problem. To ensure quality, specialized Crystal Lagoons professionals provide supervision of the construction, filling and implementation of the lagoon. They also train maintenance personnel to ensure the quality standards are followed. Furthermore, Crystal Lagoons supplies special equipment and additives and remotely controls the physicochemical variables of the water and the system's operating valves. This is so it can ensure permanent compliance with high quality standards for its clients.

53.     To protect its proprietary intellectual property and business secrets, Crystal Lagoons requires every client to enter into a Non-Disclosure Agreement ("NDA") at the commencement of a project before providing sensitive information.

54.     On December 8, 2017, Crystal Lagoons and Desert Color signed an NDA. (*See* Exhibit 3.) The NDA contained a number of provisions meant to protect the parties' confidential information, ideas and innovations, and intellectual property.

55.     The NDA defined what the parties considered to be "Confidential Information" as:

> [A]ll information (whether marked Confidential or not) in any media including, but not limited to, all rendering, sketches, drawings, economic proposals, business model, data, know-how, formulae, processes, designs, documents, software, programs, photographs and other material related to the dealings between the parties…. Any and all information relating to the Technology is also Confidential Information.

(Exhibit 3, ¶ 1.) The NDA also included within the definition of Confidential Information "[a]ny information created by Recipient [Desert Color] using any part of the Confidential Information."

(*Id*.)

56.     The NDA prohibited the Recipient of Confidential Information from "publish[ing] or disclos[ing] Confidential Information (or any part) to any third party without prior written consent of the Disclosing Party." (*Id.*, ¶ 2.1.)

57.     The NDA specifically noted that it did not grant a license nor transfer any patents, copyrights, trademarks, ideas, brand or other intellectual or industrial property held by Crystal Lagoons or Crystal Lagoons' business group. (*Id.*, ¶ 7)

58.     The NDA also expressly stated that "[n]either Party shall use the other's name or trademark, unless authorized in writing. Recipient [Desert Color] may not imply or represent that it has any mandate or representation powers from the Disclosing Party [Crystal Lagoons]." (*Id.*, ¶ 8.) **Additionally, the NDA bound the parties, "their affiliates, successors, and assigns."** (*Id.* (emphasis added).)

59.     Crystal Lagoons has never given Desert Color, or any of its affiliates, successors or assigns, written permission to disclose the details of its proposals to any third party or to use Crystal Lagoons' name or trademark in advertisements or promotional materials.

60.     As part of the initial process, Desert Color provided a preliminary plan to Crystal Lagoons of potential sites for lagoons based on initial concepts of the project. However, on or about January 1, 2018, Crystal Lagoons presented its first preliminary, proprietary concept to Desert Color, which included a single, large lagoon rather than three smaller lagoons. Desert Color's plan and Crystal Lagoons' initial proposal are reproduced below.

**Figure 10: First Proposal based on original concept**



Desert Color Plan | Crystal Lagoons Proposal

61.     Shortly thereafter, on January 11, 2018, Desert Color made a public

announcement about moving forward with the plan including an explicit reference to a "resort

facility with crystal lagoons." (*See* Exhibit 4 (printout of:

https://www.cedarcityutah.com/news/archive/2018/01/11/kss-plans-unveiled-for-master-

planned-community-in-st-george-comprising-10000-new-residences/#.Xyg7HyhKhhG).)

62.     The very next day, in a January 12, 2018 email, Lisa Moore, Crystal Lagoons'

Regional Director, warned Desert Color about using its trademarked name. Specifically, Ms.

Moore stated: "That's great news about Weaver announcing the project at the Summit yesterday,

as I hope this means we will get to continue to work together in incorporating our lagoon

technology into your development. I will try and reach you by phone today as we need to discuss

the sensitivities in announcing that you are working with Crystal Lagoons before we have a

signed deal. Our company is very particular about this, so it's best/easier to discuss via phone."

(Exhibit 5 (emphasis added).)

63.     Crystal Lagoons and Desert Color continued working together through 2018. On

March 27, 2018, Crystal Lagoons began working on, among other things, water study numbers

for public relations purposes, construction plans for the cross section of the wall, a technical tour

21

to be held in May 2018, a revenue model for including a public access lagoon at the Desert Color

site, and reworking terms for a royalty structure for the proposed lagoon. (Exhibit 6.)

64.     Crystal Lagoons also undertook preliminary studies to ensure that its lagoon

would meet Utah regulations for a swimmable body of water and began planning a Technical

Tour for members of the Desert Color team. (Exhibit 7.)

65.     In May 2018, Desert Color representatives attended a technical tour of the Crystal

Lagoons® at The Balmoral Beach Club in Houston, Texas, during which Crystal Lagoons' team

provided project background information and lagoon construction was demonstrated. After

which, Desert Color and its team were invited to ask questions. (Exhibit 8.) All such

demonstrations were covered by the NDA. Desert Color was given a second technical tour in

March of 2019 as set forth below.

66.     After more than one year of working together, by February 2019, Crystal Lagoons

had put together a full Economic Proposal for Desert Color, which was accepted and signed by

Desert Color on February 15, 2019. (Exhibit 9.) The Economic Proposal included proprietary

details regarding construction costs, maintenance costs, and royalty rates associated with using

Crystal Lagoons' intellectual property. Like Crystal Lagoons' Proposal and tours, the

information contained in the Economic Proposal was confidential and subject to the NDA.

Desert Color and its affiliates accepted the Economic Proposal and continued to move forward.

67.     On March 6, 2019, after the Economic Proposal was accepted, Crystal Lagoons

sent Desert Color a Technology Licensing and Support Agreement ("TLSA"). It is standard that

all Crystal Lagoons' customers sign a TLSA, which provides the terms for the customers' license

to Crystal Lagoons' cutting-edge technology and intellectual property. Crystal Lagoons will not

permit anyone to use its intellectual property, including its trademarks and innovative patented technology, without a signed TLSA.

68.     After it received the TLSA, while still under the NDA, Desert Color attended a second technical tour, this time of the Windsong Ranch in Prosper, Texas, on March 8, 2019. Brook Cole and two members of Desert Color's construction team attended. The Windsong Ranch Lagoon was still under construction. About 20% of the lagoon liner had been laid down. (Exhibit 10.)

69.     Topics covered during this visit were mostly technical and covered the general construction methods of how to build and phase the lagoon. The tour was during the time the liner was being applied, so the liner application process, foundation, and beach entries were major topics.

70.     On March 9, 2019, following the Windsong Ranch technical tour, Brook Cole wrote Lisa Moore and Eric Cherasia at Crystal Lagoons:

> Just wanted to send you both a quick note thanking you for the your time and hosting us this week for the technical tour. **I know seeing the finished lagoon last fall was helpful for our builders who will be building in the resort area at Desert Color, but I thought the technical tour this week was even more helpful with our construction guys.** Please pass along our appreciation to Josh, David and Craig for their time as well. I am sorry that your attorney did not feel well and hope he is recovering.
>
> I will be in touch shortly to review the TSLA

(Exhibit 11 (emphasis added).)

71.     In late June 2019, Desert Color attended the Grand Opening of the Crystal Lagoons® at Windsong Ranch. (Exhibit 12.)

72.     After months of back and forth between the parties on the TLSA, in late June 2019, negotiations came to a halt ostensibly due to disagreements over IP issues related to the TLSA.

73.     On June 24, 2019, Mitchell Dansie from Desert Color contacted Ms. Moore informing her that Desert Color no longer wanted to pursue construction of a lagoon. Mr. Dansie cited high construction and operation costs as Desert Color's reasons for discontinuing the project, although negotiations had been halted for IP issues. Crystal Lagoons' understanding was that Desert Color was not going forward with a lagoon at the project.

74.     During a follow-up "debriefing" call, held on October 28, 2019, Brook Cole from Desert Color thanked Crystal Lagoons' representatives for all the hard work and time put into developing the project, but reiterated that Desert Color would not be including a lagoon in their development project. Mr. Cole indicated that Desert Color decided not to move forward in large part because its IP counsel would not agree to certain clauses in Crystal Lagoons' TLSA related to protections Crystal Lagoons sought for its intellectual property rights. The conversation ended with Mr. Cole stating that he would reach out to Crystal Lagoons in the future about collaborating on other projects in the pipeline.

75.     Discussions and negotiation about the project lasted for more than 18 months, including many phone conversations, site visits to lagoons powered by Crystal Lagoons' technology during construction and operation phases, discussion of the economic proposal and license agreement, among others, where Defendant Desert Color was able to gather information about Crystal Lagoons' intellectual property and technology.

76.     During such time, Crystal Lagoons shared confidential information protected by the signed NDA, including concept designs using Crystal Lagoons' trade dress, details of wall edges and beach access, cost information and details about the systems and equipment used in the technology. Additionally, technical construction methods, which were shared at least during visits to Balmoral and Windsong Ranch projects.

77.     Less than 3 months after terminating negotiations with Crystal Lagoons, Desert Color had entered into a contract with Pacific Aquascape to build a lagoon on the exact same Desert Color site.

## CRYSTAL LAGOONS RELATIONSHIP WITH DEFENDANT PACIFIC AQUASCAPE

78.     Pacific Aquascape is the entity behind the design, engineering and construction of the man-made lagoon under construction at the Desert Color project, located in St. George, Utah.

79.     Pacific Aquascape also was the entity in charge of the construction of the Hard Rock Hollywood 2-acre man-made lagoon, located at the Hard Rock Seminole project in Hollywood, Florida. The design and engineering of such lagoon was done by Cloward H2O LLC, a Utah based company mainly involved in the business of conventional swimming pools and water parks.

80.     The lagoon at the Hard Rock Seminole project is currently part of a lawsuit filed October 19, 2019, by Crystal Lagoons against Cloward H2O LLC. Cloward H2O received Crystal Lagoons' confidential and proprietary information illegally from their client and from a Florida project that has a lagoon designed, constructed and operating using Crystal Lagoons' technology.

81.      Upon information and belief, Pacific Aquascape received Crystal Lagoons'
Confidential Information and Technology from Desert Color in violation of the NDA, and being
the builder of the Hard Rock Seminole lagoon, had access to the detailed plans and engineering
prepared by Cloward H2O—based, in large part, on Crystal Lagoons' confidential and
proprietary information shared illegally with Cloward H2O—and gained experience in this type
of water feature (which is not a conventional swimming pool but a lagoon using Crystal
Lagoons' technology).

82.      Such information is being used to replicate the same type of lagoon at the Desert
Color project.

**DEFENDANTS DESERT COLOR AND PACIFIC AQUASCAPE USED CRYSTAL
LAGOONS' CONFIDENTIAL INFORMATION AND INTELLECTUAL PROPERTY
TO DESIGN, CONSTRUCT, AND PROMOTE THE LAGOON AT DESERT COLOR**

83.      In June 2020, Crystal Lagoons was alerted by a vendor who believed it was
working on a Crystal Lagoons' project at Desert Color that the Desert Color project was moving
forward with a man-made lagoon.

84.      Crystal Lagoons investigated the vendor's claim and discovered that Defendants
had, in fact, decided to move forward with a 2.5 acre man-made lagoon, which is currently still
being constructed. Specifically, Pacific Aquascape provided the design, construction and
engineering of the Desert Color lagoon, and Desert Color and its affiliates, the Builder
Defendants, are selling lots and residential facilities that have access to the Desert Color lagoon
as part of the Desert Color development.

85.      After having received extensive technical and proprietary information from
Crystal Lagoons that directly related to the Desert Color project, and rather than pay Crystal

Lagoons for a real Crystal Lagoons® lagoon, Desert Color contracted with another company, Pacific Aquascape, to build and commercialize a knock-off lagoon using the innovations, technology, and intellectual property developed by Mr. Fischmann.

86.     Indeed, as one of Desert Color's sales agents put it in a text message with a prospective buyer, Desert Color did not want to work with Crystal Lagoons because "they charge ongoing royalties just to use the name," so instead Desert Color contracted with Pacific Aquascape." (Exhibit 13.)

87.     Not satisfied with stealing its technology, Desert Color and its affiliates used Crystal Lagoons' name to pass off its lagoon as one manufactured by Crystal Lagoons!

88.     The Desert Color lagoon has been advertised and marketed as being developed with Crystal Lagoons' technology. This will cause irreparable damage to Crystal Lagoons due to at least the following:

a.     Defendants are selling property to the public based upon a lagoon that is not designed or approved by sanitary authorities for the swimming and bathing uses for which it is being marketed;

b.     Defendants' lagoon poses a significant health risk to the general public, since if the lagoon is not treated with Crystal Lagoons' technology, there is a high risk for sanitary accidents as seen in many cases around the world and in the U.S.;

c.     the lagoon is being developed and soon to be delivered to end customers, engaging in an illegal activity; and

d.     if the lagoon is closed by regulatory authorities for not having proper permits, or if swimming and bathing is not allowed, or it has a deficient aesthetics, or if there is any sanitary accidents, then such problems will be immediately associated with Crystal Lagoons, its brand and technology, causing irreparable damage to Crystal Lagoons.

**DESERT COLOR AND ITS AFFILIATES USED CRYSTAL LAGOONS' TRADEMARKS TO ADVERTISE AND PROMOTE DESERT COLOR'S PLANNED WATER FEATURE IN BREACH OF THE NON-DISCLOSURE AGREEMENT AND <u>VIOLATION OF THE LANHAM ACT</u>**

89.     Crystal Lagoons also discovered that Desert Color and its affiliates, the Builder Defendants, have been advertising and referring to the planned lagoon as a "Crystal Lagoon" including by using photographs of actual lagoons powered by Crystal Lagoons' technology and comparing the Desert Color lagoon to lagoons built by Crystal Lagoons in other parts of the country.

90.     Examples of Defendants' use of "Crystal Lagoon" are shown below.

91.     Desert Color made a public announcement stating they were moving forward with the plan including an explicit reference to a "resort facility with crystal lagoons" using Crystal Lagoons' trademarks. (*See* Exhibit 4; Exhibit 5.)

92.     Desert Color's Chief Operating Officer, in a public announcement in 2018 identified that the Desert Color resort was using Crystal Lagoons®. No agreement had been reached at that time. Thereafter, Desert Color's website subsequently advertised its property using those same word, i.e. "…a resort facility with crystal lagoons…." (Desert Color's Website (https://desertcolor.com/plans-unveiled/ (last accessed December 2, 2020) (emphasis added).)

93.     Desert Color also engaged an agent, Colliers International, a marketing firm to promote its Desert Color project. In marketing Desert Color, Colliers used Crystal Lagoons' trademark as set forth below:

**Figure 11: Desert Color brochure available online
(http://crepromo.com/pmail/thain/sg_desert_color/SG_Desert%20Color.pdf (last accessed December 2, 2020).)**



**Figure 12: Desert Color Brochure available online**
(**http://crepromo.com/pmail/thain/sg_desert_color/** **(last accessed December 2, 2020).)**



Project Description

Desert Color is a master-planned community built around a plan of
connectivity, community and sustainability. It is a place where you will find
the best of everything that Southern Utah has to offer. Located alongside I-
15 and Southern Parkway, Desert Color is a comprehensive 3,500-acre
mixed-use master planned community. It will feature a variety of primary and
secondary residences, shopping, dining, entertainment, commercial, retail,
hospitality, and recreational amenities. **Put simply, Southern Utah has
never seen a community like Desert Color.**

Desert Color will be guided by a singular plan:
*Desert Color's unique setting creates a special opportunity to blend the
natural features of the desert foothills with tried and true community design
principles. It emphasizes social connections, open space, recreational
diversity, walkable neighborhoods, convenient regional commercial and retail
services, hospitality, and offers a variety of residential types and styles.*

Commercial Hub

Desert Color's mixed-use commercial district will be the central hub and focal
point of activity for the community. Its 103-acre design will include vertical
mixed use (e.g., offices and residences above retailers) and horizontal mixed
use (e.g., retailers, offices, and residences on separate parcels).

The mixed-use commercial district will feature:
- A sports park
- Recreation/entertainment centers
- Health and wellness facilities and services
- A crystal lagoon
- Shopping and dining districts
- Hotels and resorts
- Multi-specialty healthcare clinic
- Open space (e.g., parks, trails, courtyards)
- Access to transportation
- Public use facilities (e.g., 21st-century schools, church, cultural facility,
  hospital, library, and police and fire station)
- An innovation park for higher education



More Info



Flyer

**Figure 13: Desert Color's Website (https://desertcolor.com/plans-unveiled/ (last accessed February 1, 2021).)**



94.     Builder Defendant Cole West LLC advertised its vacation homes located at Desert Color through its sales agent Dixie Dan as "on the beach of a new crystal lagoon!" as shown below:

**Figure 14: Facebook Post by Sales Agent for Cole West**
**(https://www.facebook.com/watch/dixiedandotcom/ (last accessed December 2, 2020).)**



95.     Another one of the Builder Defendants' (Sullivan Homes LLC) sales agents

repeatedly represented that the water feature being built is a Crystal Lagoons' lagoon, clearly not

referring to a generic term but mentioning Crystal Lagoons' website to direct home buyers to the

company behind the lagoon, as shown below:

**Figure 15: Desert Color Agent mention of Crystal Lagoons**

---------- Forwarded message ---------
From: **Makayla Browning** <makayla@sullivan-homes.com>
Date: Fri, Jun 19, 2020 at 11:11 AM
Subject: Re: Desert Color Inquiry
To: Santiago Bedoyah <santiago.bedoyah@gmail.com>

Hi,
Thanks for reaching out. It is the same company that did Windsong Ranch. The company is called Crystal Lagoons. Desert Color won't be exactly the same as other Lagoons, but their website gallery will show very similar lagoons. You can check out their website at www.crystal-lagoons.com
Feel free to call, text or email me if you have any questions.
Thanks!

On Thu, Jun 18, 2020 at 2:38 PM Makayla Browning <makayla@sullivan-homes.com> wrote:
Hi,
This is MaKayla Browning with Sullivan Homes. The lagoon provider is Crystal Lagoons. You can check out their website  https://www.crystal-lagoons.com  to see some of their previous work. I have attached the plat map and a packet about desert color. The packet shows a drawing of the Desert Color community. It is not an exact replica of the development, but does give a pretty good idea of how close our homes are to the pool and lagoon. If you have any questions you can contact me directly via text, email or phone call. The HOA for our single family homes is $82 per month.
The clubhouse by  the lagoon will be for residents, and it is under construction and finishing up soon. The clubhouse will include:
3500 Sq Ft Pool
1300 Sq Ft Sunbathing Deck
2000 Sq Ft Restaurant / Cafeteria
Sports Bar with Alcohol
Community Welcome Center will be used to agnostically sell all builders in Desert Color
NFC (Near Field Communication) or Phone Access to Amenities

--
**MaKayla Browning**
Sullivan Homes
435-668-2235

96.     When describing Desert Color's lagoon, Builder Defendant Holmes Homes Inc. described the water feature as:

Tucked away in the beautiful setting of Southern Utah, your morning view at Desert Color will include vast mountain vistas and kayakers peacefully paddling by in the lake. As the heart of the community, the lake will forever change the way you view St. George living. With only six in the nation, this body of water is bringing a caribbean beach-life experience to the Utah desert. And it's not just a paradise getaway. It's home.

(https://www.holmeshomes.com/st-george-desert-color/ (last accessed January 19, 2021).)

97.     Crystal Lagoons is the only man-made swimming lagoon provider in the U.S. and has six other U.S. installations.  It often advertised the Caribbean-beach-life experience.

98.     On information and belief, Pacific Aquascape is involved in other projects that have also used Crystal Lagoons' trademarks, in local permitting processes and documents, to advertise and sell Pacific Aquascape's lagoon-building services, including a project in Texas.

99.     Desert Color's and its affiliates' use of Crystal Lagoons' name and trademark violates the NDA between Crystal Lagoon and Desert Color.

100.    This use of Crystal Lagoons' name and trademark has injured, and will continue to injure, Crystal Lagoons' reputation and goodwill, which has been carefully and painstakingly built and maintained over the last decade-plus as a result of Crystal Lagoons' dedication to providing only the highest quality products and services and permitting only those parties similarly dedicated to providing such quality and service to use Crystal Lagoons' mark.

101.    Developers throughout the United States, and indeed the world, recognize the Crystal Lagoons® mark as signifying the source of high-quality, highly innovative lagoons, with their white sand beaches and clear blue water reminiscent of a Caribbean beach. The use of Crystal Lagoons' famous mark in association with a lagoon that does not use Crystal Lagoons' innovative technology or meet Crystal Lagoons' standard for quality will dilute the association of that mark with high quality that Crystal Lagoons has worked so hard to establish.

102.    It is important to note that although the negotiations with Desert Color ended around June 2019, Defendants, including Desert Color and affiliates, have continued using Crystal Lagoons' trademarks for more than 15 months, including a publication in Desert Color's own website, publications and brochures, sales information, marketing, among others, and therefore has been a reiterated misuse of Crystal Lagoons' trademarks from several different persons for many months.

34

**DEFENDANTS' PLANNED LAGOON INFRINGES CRYSTAL
<u>LAGOONS' TRADE DRESS</u>**

103.    The planned lagoon at Desert Color is little more than a knock-off of a Crystal

Lagoons® lagoon. Thus, it is not surprising that it makes use of Crystal Lagoons' distinctive

trade dress.

104.    Indeed, the design submitted with Desert Color's zoning application for its first

planned water feature shows nearly all the features of Crystal Lagoons' Trade Dress as shown in

the reproduced and annotated figure below (beach areas shaded):



105.    Defendants Desert Color and Pacific Aquascape have also utilized Crystal

Lagoons' patented technology, despite not being licensed to do so, in order to create the pristine,

clear blue waters for which a Crystal Lagoons® lagoon is world-famous. Desert Color's lagoon

utilizes a light-colored, liner-covered bottom, rather than using painted or coated concrete as in

standard swimming pools.

106.    Desert Color's design is, in fact, a nearly direct copy of a number of Crystal Lagoons' registered concept designs, all of which utilize Crystal Lagoons' Trade Dress, as can be seen in the comparisons below with registered designs from Crystal Lagoons, registered in Chile with registration numbers 279545, 291063, 237978, 279545, A2020A6416, A2020A4669, A2020A4671, among others:

**Figure 16: Crystal Lagoons' registered designs**







107.     Defendants' use of Crystal Lagoons' Trade Dress has caused and is likely to continue to cause confusion as to the source or origin of Defendants' lagoon. In June of 2020, a vendor was actually confused, informing Crystal Lagoons that they were working on a Crystal Lagoons' project with Desert Color.

**DESERT COLOR USED CRYSTAL LAGOONS' IMAGES TO MISREPRESENT THE SOURCE AND QUALITY OF THE LAGOON**

108.     Crystal Lagoons uses images of its innovative and breathtaking lagoons to advertise and promote its business throughout the world.

109.     In a publicly filed zoning application, Desert Color copied three such images owned by Crystal Lagoons (shown below circled in red) and presented them as representative of the lagoon being built by Desert Color.

**Figure 17: Zoning application excerpt including an image from Crystal Lagoons and showing the lagoon at the Diamante Project at Cabo San Lucas, Mexico, using Crystal Lagoons technology**



This phase also includes the development of the first lagoon. This lagoon will cover 120,051 square feet or 2.76 acres. The lagoons will be available for the residents of Desert Color.

Crystal Lagoons photo from Diamante lagoon at Cabo San Lucas, Mexico

**Figure 18: Zoning application excerpt include two images from Crystal Lagoons, for lagoons with Crystal Lagoons technology at projects in Argentina and Mexico.**



Crystal Lagoons photo from Lagoon Pilar in Argentina

Crystal Lagoons photo from Diamante lagoon at Cabo San Lucas, Mexico

110.    Despite the fact that the Desert Color lagoon designed and being built by Pacific

Aquascape will not achieve the same quality of crystal-clear, sparkling, blue waters without

using Crystal Lagoons' patented technology, which neither Desert Color nor Pacific Aquascape have license to use, by using Crystal Lagoons' images Desert Color and Pacific Aquascape have represented, falsely, that their planned project will be of the same high quality as a Crystal Lagoons® lagoon.

111.    Upon information and belief, Pacific Aquascape, the contractor in charge of the design and construction of the Desert Color lagoon, is not able to provide the same quality of water as Crystal Lagoons and has a greenish tonality most of the time, as can be seen in the pictures below, taken at the Seminole Hard Rock Hotel & Casino in Hollywood, FL during warmer weather, which has a lagoon built by Pacific Aquascape. Pacific Aquascape has previously designed conventional pools and ornamental lakes with natural treatment methods that do not achieve crystal clear conditions as Crystal Lagoons.

**Figure 19: Hard Rock Hollywood Lagoon constructed by Pacific Aquascape**



**Figure 20: Hard Rock Hollywood Lagoon constructed by Pacific Aquascape**



 

**DEFENDANTS HAVE NOT OBTAINED SANITARY PERMITS FOR SWIMMING,
DESPITE REPRESENTING TO PROSPECTIVE BUYERS THAT THE WATER
FEATURE WILL BE SWIMMABLE AND OF THE SAME QUALITY AS A LAGOON
BY CRYSTAL LAGOONS**

112.    Crystal Lagoons, given its innovative background and one-of-a-kind technology, has had to work with different regulatory entities throughout the world to be able to classify, build and operate lagoons powered by Crystal Lagoons' technology and allow their use for direct contact recreational purposes without needing to comply with conventional swimming pool construction and operation requirements.

113.    Crystal Lagoons has worked for over seven (7) years in the U.S. with the different health and environmental regulatory agencies across several states in order to create new regulations for the construction and operation of lagoons using Crystal Lagoons' technology, which are different than conventional swimming pool regulations. This process took years, as this concept and technology were an innovation and did not exist before, and therefore no regulations existed for these large man-made lagoons with high transparency and excellent water quality for recreational purposes such as swimming and bathing but also for the practice of water sports at very low building and operation costs.

114.    For example, in Florida, the lagoons using Crystal Lagoons' technology are classified as Public Bathing Places, a completely separate definition than swimming pools, with different construction and operation requirements. At the time this regulation was being developed, Florida's former governor, Rick Scott, travelled to Chile and visited the lagoons with Crystal Lagoons' technology. In Texas, since there was no category for these types of lagoons, a new category was created by the Legislature by passing legislation, a process spearheaded by Crystal Lagoons. The result was that in Texas, the lagoons using Crystal Lagoons' technology

are classified as "Artificial Swimming Lagoons," which allow for different construction and operation requirements than swimming pools to still provide a swimmable recreational water body. A similar process was followed in North Carolina, where a new category of "Artificial Swimming Lagoons" was created through legislation since there were no regulations suitable for these large man-made lagoons, also requiring different construction and operation requirements than swimming pools, among others.

115.    States have their own regulatory regime governing bodies of water for recreational use. Title 26, Chapter 15, Section 2 of the Utah Code regulates public swimming pools and bathing beaches. The Southwest Utah Public Health Department (SWUPHD) regulates public swimming pools and bathing beaches under Utah Administrative Code Rule 392-302. Monitoring and enforcement is done by the Environmental Health Division of SWUPHD.

116.    Utah Administrative Code Rule R392-302 governs the Design, Construction and Operation of Public Pools. It establishes minimum standards for the design, construction, operation, and maintenance of public pools and bathing beaches, and provides for the prevention and control of health hazards associated with public pools which are likely to affect public health.

117.    Rule R392-302-3 states that the Rule for swimming pools "does not regulate any body of water larger than 30,000 square feet…for which the design purpose is not swimming, wading, bathing, diving, a water slide splash pool, or children's water play activities." (emphasis added).

118.    Defendants are selling property to the public based upon a lagoon that is not designed or approved for the uses it is being marketed. Defendants have not requested or

received the necessary permits to comply with Utah Administrative Code Rule R392-302 for swimming and bathing purposes of the lagoon.

119.    A Freedom of Information Request ("FOIR") to SWUPHD seeking any permits or information relating to the Desert Color project was filed. (Exhibit 14.) On July 6, 2020, this request was rejected on the grounds that "no records specified by the requestor" existed. (Exhibit 15.)

120.    The person requesting the FOIR followed up on the request via telephone and spoke with Clint Frye and Jeremy Rogers of the Environmental Health Division of SWUPHD. Mr. Frye and Mr. Rogers referred to the Desert Color lagoon as a "duck pond" and both stated that the "duck ponds" being built would fall under the Utah EPA's recreational body guidance per DEQ R.317-2, because the builder had represented that they were over 30,000 square feet and *would not be used for swimming*. The only design plan that either Mr. Frye or Mr. Rogers had seen seeking approval was for a typical swimming pool which is another water feature of the Desert Color project and that is on the vicinity of the lagoon, as it can be seen below.

**Figure 21: Desert Color Conventional Swimming Pool (separate from the lagoon)**



121.    Plaintiffs conducted a follow up call with the Environmental Health Division of SWUPHD. In that call, SWUPHD confirmed that the lagoon is not being regulated by any Federal, State, or local health agency.

122.    Notwithstanding what Desert Color, Pacific Aquascape, or its representatives represented to the Environment Health Division of SWUPHD, <u>Defendants are advertising and promoting the planned water feature as a swimmable body of water</u>, as can be seen in the numerous communications between Defendants' agents and prospective buyers reproduced below:

**Figure 22: Conversation confirming the Desert Color lagoon will be used for swimming**



**Figure 23: Conversations confirming the Desert Color lagoon will be used for swimming**

**Figure 24: Conversations confirming the Desert Color lagoon will be used for swimming**



123.    Because of the misrepresentation, upon information and belief, the lagoon designed and being built by Pacific Aquascape and being commercialized by Desert Color and its affiliates, the Builder Defendants, will not be regulated or monitored by the state to ensure that it is healthy for human swimming or bathing activities. And yet, Defendants' agents are representing to buyers that the water feature will be safe for swimming and all manner of water activities.

124.    Defendants' misrepresentations to prospective buyers are dangerous to the public health.

125.    There have been many cases of sanitary accidents around the world in confined large water bodies (that do not have an appropriate water technology), with fatal outcomes. An emblematic case is the one at Disney's River Country and the one at the National Whitewater Rafting Center in North Carolina, with fatal results due to microorganisms present in the water such as *Naegleria fowleri*. These amoebas, such as the *Naegleria fowleri* or Acanthamoebas are particularly dangerous when the bottom sediment re-suspends into the surface and they enter the human organism through the nose or eyes, which is an even more important risk in water bodies with water movement.

126.    Crystal Lagoons technology has a track record of over 15 years with optimum sanitary results and more than 45 lagoons operating around the world in different types of climate conditions. The patented water treatment technology is designed to not only maintain microbiological levels according to direct contact regulations for recreational purposes, but also to control microorganisms such as protozoa and amoebas, which include the amoeba *Naegleria fowleri* (commonly referred to as the "brain-eating amoeba").

127.    The only technology that exists in the world for large water bodies used for recreational purposes, that is not conventional swimming pool technology applied in large water volumes, is the Crystal Lagoons technology.

128.    Therefore, regarding the treatment of confined large water bodies, it is important to highlight that if such water bodies are not treated with conventional swimming pool technology, or Crystal Lagoons' technology, there is a high risk for sanitary accidents.

129.    Defendants' misrepresentations are also, when combined with Defendants' continued use of Crystal Lagoons' trademarks, injurious to Crystal Lagoons. Defendants are

creating an association between their unregulated, and possibly dangerous, water feature, and

Crystal Lagoons' reputation for high quality, clean, and sanitary man-made lagoons.

130.    Therefore, either the customers are being lied to by Defendants (saying that the

lagoon will be for swimming), or the lagoon will not have sanitary regulations and will not be

approved nor overseen by sanitary entities, which poses serious health threats to consumers.

131.    All of the aforementioned actions are not simple mistakes or errors. Defendants

Desert Color intentionally gathered information about Crystal Lagoons under confidentiality

agreements, and then Desert Color and associates began marketing a swimmable lagoon to

consumers without proper sanitary permits and using Crystal Lagoons' trademark, making

reference to Crystal Lagoons' website, and using Crystal Lagoons' images and designs, among

others.

## COUNT I – BREACH OF CONTRACT AGAINST DESERT COLOR, PACIFIC AQUASCAPE AND THE BUILDER DEFENDANTS

132.    Crystal Lagoons incorporates Paragraphs 1-131 by reference as if set forth fully as

part of this count.

133.    The NDA entered into by Crystal Lagoons and Desert Color is a valid contract,

binding on both signing parties and their "affiliates, successors, and assigns."

134.    Crystal Lagoons has abided by all terms of the NDA.

135.    Defendants have breached the NDA by: (1) upon information and belief,

disclosing designs, plans, technical information and other Confidential Information belonging to

Crystal Lagoons to Pacific Aquascape; and (2) using Crystal Lagoons' name and trademarks

without written permission.

136.     Crystal Lagoons has suffered damages, in an amount to be determined at trial, as a result of this breach.

137.     Crystal Lagoons has no adequate remedy at law and will continue to suffer irreparable injury unless Desert Color and the Builder Defendants are enjoined from continuing to breach the NDA.

## COUNT II – FEDERAL TRADEMARK INFRINGEMENT AGAINST ALL DEFENDANTS

138.     Crystal Lagoons incorporates Paragraphs 1-131 by reference as if set forth fully as part of this count.

139.     Crystal Lagoons owns multiple valid U.S. Trademark registrations for marks consisting of or containing "Crystal Lagoons" for products and services related to the construction, maintenance, and promotion of man-made bodies of water.

140.     Desert Color and its affiliates, the Builder Defendants, have been using Crystal Lagoons' marks to refer to the knock-off lagoon being built at Desert Color.

141.     On information and belief, Pacific Aquascape is involved in other projects that have also used Crystal Lagoons' trademarks, in local permitting processes and documents, to advertise and sell Pacific Aquascape's lagoon-building services, including a project in Texas.

142.     This use of Crystal Lagoons' mark has caused actual confusion as to the source of the Desert Color lagoon, including the confused vendor that contacted Crystal Lagoons, and is likely to cause continued confusion in the future.

143.     Crystal Lagoons has suffered damages, including at least a need to undertake corrective advertising to mitigate the effect of the false association between Crystal Lagoons®

and the Desert Color lagoon, in an amount to be determined at trial, as a result of the unauthorized use of its marks.

144.    Crystal Lagoons is entitled to an accounting and Defendants should be disgorge of any profits.

145.    Crystal Lagoons has no adequate remedy at law and will continue to suffer irreparable injury unless Desert Color and the Builder Defendants are enjoined from continuing to infringe upon its trademark rights.

## COUNT III – TRADEMARK DILUTION AGAINST ALL DEFENDANTS

146.    Crystal Lagoons incorporates Paragraphs 1-131 by reference as if set forth fully as part of this count.

147.    The Crystal Lagoons mark is distinctive and widely recognized by the relevant consuming public as a designation of source of innovative and breathtaking man-made lagoons resembling tropical seas.

148.    Defendants' use of the mark started well after Crystal Lagoons' reputation and the fame of its mark was established.

149.    Defendants have used Crystal Lagoons' mark in advertising and promotional materials published online and in commercial communications with prospective buyers both inside and outside of Utah.

150.    Such use is likely to dilute or diminish the prestige, reputation, and goodwill associated with Crystal Lagoons' mark, which Crystal Lagoons has carefully and painstakingly developed for over a decade.

151.    Crystal Lagoons has suffered damages, including at least a need to undertake corrective advertising to mitigate the effect of the false association between Crystal Lagoons® and the Desert Color lagoon, in an amount to be determined at trial, as a result of this dilution.

152.    Crystal Lagoons has no adequate remedy at law and will continue to suffer damage unless Defendants are enjoined from continuing to infringe upon and dilute its trademark rights.

### COUNT IV – FEDERAL UNFAIR COMPETITION AGAINST ALL DEFENDANTS

153.    Crystal Lagoons incorporates Paragraphs 1-131 by reference as if set forth fully as part of this count.

154.    Crystal Lagoons owns a protectable interest in the trademarks it has been using throughout the United States and the world for over a decade.

155.    Defendants have been using Crystal Lagoons' marks to refer to the knock-off lagoon being built at Desert Color.

156.    This use of Crystal Lagoons' mark has caused actual confusion as to the source of the Desert Color lagoon and is likely to cause continued confusion in the future.

157.    Crystal Lagoons has suffered damages, including at least a need to undertake corrective advertising to mitigate the effect of the false association between Crystal Lagoons® and the Desert Color lagoon, in an amount to be determined at trial, as a result of the unauthorized use of its marks.

158.    Crystal Lagoons is entitled to an accounting and Defendants should be disgorge of any profits.

159.    Crystal Lagoons has no adequate remedy at law and will continue to suffer

damage unless Defendants are enjoined from continuing to infringe upon its trademark rights.

## COUNT V – FEDERAL FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a) AGAINST ALL DEFENDANTS

160.    Crystal Lagoons incorporates Paragraphs 1-131 by reference as if set forth fully as

part of this count.

161.    Defendants' association of its man-made bodies of water with the phrase "Crystal

Lagoon" and its attempt to otherwise associate its products with Crystal Lagoons, constitutes a

false or misleading representation of fact regarding the source of its products.

162.    Defendants also misrepresented to the Environment Health Division of SWUPHD

that the lagoon for the Desert Color project was not going to be used for swimming, yet

Defendants are nonetheless advertising and promoting the planned lagoon as a swimmable body

of water to the determent of the public.

163.    Defendants have misrepresented that Crystal Lagoons was the technology

company behind the Desert Color lagoon.

164.    Defendants' use of false or misleading representations of fact in commercial

advertising or promotion misrepresents the nature, characteristics, or qualities of Defendants'

goods.

165.    Defendants' use of false or misleading representations of fact has the tendency to

deceive a substantial portion of the target consumer audience, or actually deceives the target

consumers.

166.    Defendants' false or misleading representations of fact are material because they

are likely to influence the purchasing decision of the target consumers.

167.     Defendants' falsely or misleadingly represented products are advertised, promoted, sold and distributed in interstate commerce.

168.     Crystal Lagoons has been and continues to be injured by Defendants' false or misleading representations of fact through the diversion of sales or loss of goodwill.

169.     Defendants know that its representations of fact are false or misleading.

170.     Defendants' false or misleading representations of fact were done with bad faith and malice or reckless indifference to Crystal Lagoons' and consumers' interests.

171.     Defendants' bad faith false or misleading representations of fact regarding the source of its products makes this an exceptional case within the meaning of 15 U.S.C. § 1117.

172.     Defendants continue to make false or misleading representations of fact regarding the patented status of their products and will continue to do so unless enjoined by this Court as provided by 15 U.S.C. § 1116.

173.     Crystal Lagoons is entitled to an award of damages in an amount to be determined at trial which is to including an award of Defendants' profits due to sales of the falsely or misleadingly represented products, any damages sustained by Crystal Lagoons, the costs of corrective advertising, and the costs of the action, pursuant to 15 U.S.C. § 1117.

### COUNT VI – TRADE DRESS INFRINGEMENT AGAINST ALL DEFENDANTS

174.     Crystal Lagoons incorporates Paragraphs 1-131 by reference as if set forth fully as part of this count.

175.     Crystal Lagoons owns trade dress rights in its man-made bodies of water. The unique features of Crystal Lagoons' man-made lagoons have acquired distinctiveness and have created a secondary meaning associated with the look and feel of the lagoons.

176.    Customers recognize that a project is developed with Crystal Lagoons technology without necessarily having to see the Crystal Lagoons trademark anywhere on the premises.

177.    Defendants have been using Crystal Lagoons' trade dress in the construction, maintenance, and promotion of man-made bodies of water.

178.    Defendants' use of Crystal Lagoons' trade dress has caused actual confusion as to the source of Defendants' lagoon and is likely to cause continued confusion in the future.

179.    Crystal Lagoons has suffered damages, in an amount to be determined at trial, as a result of Defendants' use of its trade dress.

180.    Crystal Lagoons has no adequate remedy at law and will continue to suffer damage unless Defendants are enjoined from continuing to infringe upon its trade dress rights.

## COUNT VII – VIOLATION OF THE UTAH TRUTH IN ADVERTISING ACT § 13-11a-3(1) AGAINST ALL DEFENDANTS

181.    Crystal Lagoons incorporates Paragraphs 1-131 by reference as if set forth fully as part of this count.

182.    Defendants' association of their man-made bodies of water with the phrase "Crystal Lagoon" constitutes a misrepresentation of fact regarding its products.

183.    Defendants also misrepresented to the Environment Health Division of SWUPHD that the water feature for the Desert Color project was not going to be used for swimming, yet Defendants are nonetheless advertising and promoting the planned lagoon as a swimmable body of water to the determent of the public.

184.    Defendants have misrepresented that Crystal Lagoons was the technology company behind the Desert Color lagoon.

185.    Defendants know that their representations of fact are false and misleading.

186.    Defendants' misrepresentations are calculated to deceive consumers under the ordinary conditions which prevail in the commercial water feature trade.

187.    Defendants' false or misleading representations of fact will have the natural and probable result of deceiving a portion of the target consumer audience as to the source, sponsorship, approval, or certification of goods or services.

188.    Defendants' false or misleading representations of fact will have the natural and probable result of deceiving a portion of the target consumer audience as Defendants are representing their goods or services have sponsorship, approval, characteristics, or qualities that Defendants' good or services do not have.

189.    Defendants' false or misleading representations of fact will have the natural and probable result of deceiving a portion of the target consumer audience as Defendants' are representing their goods or services are of a particular standard, quality, or grade when they are not.

190.    Crystal Lagoons and the consuming public have been and will continue to be injured (both economically and potentially physically) by Defendants' false or misleading representations of fact through the diversion of sales or loss of goodwill.

191.    Defendants' false or misleading representations of fact were done with bad faith and malice or reckless indifference to Crystal Lagoons' and consumers' interests.

192.    Crystal Lagoons has suffered damages, including at least a need to undertake corrective advertising to mitigate the effect of the false association between Crystal Lagoons® and Defendants' lagoon, in an amount to be determined at trial, as a result of Defendants' false or misleading representations.

193.    Crystal Lagoons has no adequate remedy at law and will continue to suffer damage unless Defendants are enjoined from continuing to make these and similar false and misleading representations.

## COUNT VIII – COMMON LAW UNJUST ENRICHMENT
## AGAINST ALL DEFENDANTS

194.    Crystal Lagoons incorporates Paragraphs 1-131 by reference as if set forth fully as part of this count.

195.    Crystal Lagoons conferred a benefit on Defendants in the form of designs, plans, technical information and other Confidential Information owned by Crystal Lagoons that was shared with Desert Color and its affiliates under the NDA.

196.    Defendants were aware of and accepted the benefit conferred by Crystal Lagoons.

197.    Rather than pay the fair price for Crystal Lagoons' innovative technology and know-how, Desert Color contracted with Pacific Aquascape to design, build, and commercialize a knock-off lagoon using Crystal Lagoons' designs and plans as at least a starting point. It would be unjust to permit Defendants to benefit from this information and know-how without compensating Crystal Lagoons, in an amount to be determined at trial.

## COUNT IX –TRADEMARK INFRINGEMENT UTAH CODE
## ANN. § 70-3-101 *et al.* AGAINST ALL DEFENDANTS

198.    Crystal Lagoons incorporates Paragraphs 1-131 by reference as if set forth fully as part of this count.

199.    The marks "Crystal Lagoons" and "Crystal Lagoon" have developed a reputation and goodwill for Crystal Lagoons business and its products or services, and through time,

money, and effort, the words have acquired secondary meaning for products and services related to the construction, maintenance, and promotion of man-made bodies of water.

200.    Defendants have been using the Crystal Lagoons® mark in way that is sufficiently similar to Crystal Lagoons' use of the mark to produce confusion among the public consuming these goods and services.

201.    This use of Crystal Lagoons' mark has caused actual confusion as to the source of the Desert Color lagoon and is likely to cause continued confusion in the future.

202.    Crystal Lagoons has suffered damages, including at least a need to undertake corrective advertising to mitigate the effect of the false association between Crystal Lagoons® and the Desert Color lagoon, in an amount to be determined at trial, as a result of the unauthorized use of its marks.

203.    Crystal Lagoons has no adequate remedy at law and will continue to suffer damage unless Defendants are enjoined from continuing to infringe upon its trademark rights.

## COUNT X –COMMON LAW UNFAIR COMPETITION ALL DEFENDANTS

204.    Crystal Lagoons incorporates Paragraphs 1-131 by reference as if set forth fully as part of this count.

205.    Crystal Lagoons' name and products have a reputation for excellent quality and service through Crystal Lagoons' expenditure of time, money, and effort, for products and services related to the construction, maintenance, and promotion of man-made bodies of water.

206.    Defendants have been engaged in a scheme to have their goods or services "pass" in the marketplace as those of the Crystal Lagoons' to the consuming public of these goods and services.

207.    Defendants have seized for their own benefit the value Crystal Lagoons has built up through time, money, or effort, which is then generally used to compete against Plaintiff.

208.    Crystal Lagoons has suffered damages, including at least a need to undertake corrective advertising to mitigate the effect of the false association between Crystal Lagoons® and the lagoon designed, constructed and commercialized by Defendants, in an amount to be determined at trial, as a result of Defendants' misuse of Crystal Lagoons' goodwill in its name and products.

209.    Crystal Lagoons will continue to suffer damage unless Defendants are enjoined from continuing to infringe upon its goodwill in its name and products.

**COUNT XI - PATENT INFRINGEMENT AGAINST DESERT COLOR AND PACIFIC AQUASCAPE**

**THE '514 PATENT (STRUCTURE PATENT) IS BEING INFRINGED**

210.    Crystal Lagoons incorporates Paragraphs 1-131 by reference as if set forth fully as part of this count.

211.    Crystal Lagoons has developed and patented technology that allows building and maintaining large man-made lagoons with excellent water quality at low costs.  Patents have been presented and granted confirming that structures to contain large water bodies, construction methods, water treatment processes, bottom cleaning systems, and localized disinfection systems, among others, represent a significant advance over conventional swimming pool technology.

212.    On November 22, 2011, United States Patent No. 8,062,514, entitled Structure To Contain A Large Water Body Of At Least 15,000 $M^3$ was duly and legally issued to Crystal Lagoons Corporation, LLC. As explained above, through a series of assignments and name

changes, plaintiff Crystal Lagoons Technologies, Inc. is the owner of the '514 patent and

plaintiff Crystal Lagoons U.S. Corp. is the exclusive license.

213.   The lagoon at Desert Color infringes at least claim 1 of the '514 patent.

214.   Claim 1 of the '514 Patent (structure patent) states as follows: "A structure to

contain a large water body, including a water body larger than 15,000 m³, for recreational use

with color, transparency and cleanness characteristics similar to swimming pools or tropical seas,

wherein the structure includes a bottom and walls covered with a plastic liner made of a non-

porous material able to be thoroughly cleaned; wherein the depth of the structure to the bottom is

about 0.5 meters or higher, wherein the structure includes a system of skimmers for the removal

of impurities and surface oils, a fresh water feeding pipe system that allows entrance of fresh

water and results in water removal by displacement of surface water through the skimmer

system, and a pumping system including a coupling means connected to a moveable suction

device for cleaning the plastic liner." Each of the elements of the claim is infringed as shown

below:

| | Claim Language | Presence in Accused Lagoon at Desert Color ("Desert Color Lagoon") |
|---|---|---|
| | **Claim 1** | |
| 1.1 | A structure to contain a large water body, including a water body larger than 15,000 m³, for recreational use with color, transparency and cleanness characteristics similar to swimming pools or tropical seas, | To the extent the preamble of claim 1 is limiting, the Desert Color Lagoon contains a large water body, as depicted below:  |

| | Claim Language | Presence in Accused Lagoon at Desert Color ("Desert Color Lagoon") |
|---|---|---|
| | | *Figure 2: Desert Color lagoon with a few weeks filling (with sediments already)*<br><br><br><br>**Lagoon Amenities**<br><br>At roughly 2.5 acres of surface area and a half-mile of white-sand shoreline, the Shores Resort Lagoon is the largest private body of water in the St. George area. The crystal clear waters will be the perfect place to swim, kayak, paddle-board and much more. Resort pools, beaches, nightly-rentals and homes surrounding the lagoon offer a lifestyle of relaxation and recreation.<br><br>https://www.desertcolorresort.com/amenities/lagoon<br><br>This phase also includes the development of the first lagoon. This lagoon will cover 120,051 square feet lagoons will be available for the residents of Desert Color.<br><br>3/26/2019 Planning Commission Agenda Report at 2.<br><br><br><br>3/26/2019 Planning Commission Agenda Report<br><br>The Desert Color Lagoon comprises at least 2.5 acre (~10,117.1 sq meter) surface area body of water. Given that the lagoon is designed for swimming, kayaking, paddle-boarding, and more, the average depth of the lagoon is over 5 feet (See lagoon depth from 2602 to |

| | Claim Language | Presence in Accused Lagoon at Desert Color ("Desert Color Lagoon") |
|---|---|---|
| | | 2594➔8 feet depth) putting the total volume of the lagoon over 15,000m$^3$.<br><br><br><br>3/26/2019 Planning Commission Agenda Report<br><br>As shown in the images above, the Desert Color Lagoon has presented color, transparency, and cleanness characteristics similar to swimming pools or tropical seas. The Lagoon is advertised to have crystal clear waters. |
| 1.2 | wherein the structure includes a bottom and walls covered with a plastic liner made of non-porous material able to be thoroughly cleaned; | As it can be seen below, the vertical walls, sloped walls, and bottom of the structure are covered with a plastic liner:<br><br> |

| | Claim Language | Presence in Accused Lagoon at Desert Color ("Desert Color Lagoon") |
|---|---|---|
| | |  |

| | Claim Language | Presence in Accused Lagoon at Desert Color ("Desert Color Lagoon") |
|---|---|---|
| | | <br><br>Photos of the Desert Color lagoon demonstrate that the Desert Color Lagoon includes a bottom and walls and that the bottom and walls are covered with a plastic liner made of non-porous material able to be thoroughly cleaned.  Upon information and belief, the liner is made of polyethylene. |
| 1.3 | wherein the depth of the structure to the bottom is about 0.5 meters or higher; | Desert Colors plans for the Desert Color Lagoon indicate that the Desert Color Lagoon has bottom depths of up to 8 feet (about 2.4 meters): |

| | Claim Language | Presence in Accused Lagoon at Desert Color ("Desert Color Lagoon") |
|---|---|---|
| | | <br><br>3/26/2019 Planning Commission Agenda Report<br><br>Depth of lagoon varies from 2602 to 2594, 8 feet.<br><br>Eight feet is equivalent to approximately 2.44 meters, which is greater than 0.5 meters. |
| 1.4 | wherein the structure includes a system of skimmers for the removal of impurities and surface oils, | Desert Color's Lagoon includes a system of skimmers for the removal of impurities and surface oils:<br><br> |

|  | Claim Language | Presence in Accused Lagoon at Desert Color ("Desert Color Lagoon") |
|---|---|---|
|  |  | The skimmers are used to remove impurities and surface oils from the water of the Desert Color Lagoon. |
| 1.5 | a fresh water feeding pipe system that allows entrance of fresh water and results in water removal by displacement of surface water through the skimmer system, and | The Desert Color Lagoon includes a fresh water feeding pipe system that allows entrance of fresh water.<br><br><br><br>As fresh water is added through the fresh water feeding pipe system, it will displace surface water already in the Desert Color Lagoon, which will be removed through the skimmer system discussed in connection with claim element 1.4 above. |
| 1.6 | a pumping system including a coupling means connected to a moveable suction device for cleaning the plastic liner. | Photographs of the Desert Color Lagoon show that it has pumping systems connected to a movable suction (vacuum) device for cleaning the plastic liner of the Desert Color Lagoon: |

| | Claim Language | Presence in Accused Lagoon at Desert Color ("Desert Color Lagoon") |
|---|---|---|
| | |  |

215.    Crystal Lagoons has complied with the marking requirements of 35 U.S.C. § 287, at least through notifying Defendants before this amended complaint was filed that it was infringing the '514 Patent through its filing and service of the original complaint.

216.    Upon information and belief, Defendants have had actual knowledge of the '514 patent for several years.  Defendant Pacific Aquascape had knowledge based on the lawsuit of the lagoon it built in Florida.  Defendant Desert Color had knowledge since beginning work with Crystal Lagoons in 2017.  As such, Defendants' infringement was and is willful.

217.    Crystal Lagoons has been damaged by Desert Color and Pacific Aquascape's infringement of the '514 Patent and the tarnishing of the reputation of lagoon-sized recreational water structures. Crystal Lagoons will also continue to be damaged by Desert Color and Pacific

Aquascape's actions in the future unless Desert Color and Pacific Aquascape are permanently enjoined from infringing, directly and/or indirectly, the '514 Patent.

218.   Damages are due in an amount not less than a reasonable royalty to be determined at trial.

219.   The lost profits for which Desert Color and Pacific Aquascape are liable are only a fraction of the damages Crystal Lagoons has and is likely to suffer from the infringement. To date, Crystal Lagoons has been the exclusive provider of its patented and revolutionary large scale tropical-quality water structures in the U.S., and is known worldwide as the only provider of these prestigious and valuable facilities. Crystal Lagoons' valuation and ability to secure financing is greatly enhanced by this exclusivity. The valuation of Crystal Lagoons intellectual property is estimated to be in excess of $3.3 billion dollars.

220.   Desert Color and Pacific Aquascape's infringement has damaged the exclusivity Crystal Lagoons has earned by virtue of its R&D efforts and intellectual property. The lost exclusivity is likely to significantly reduce the valuation of Crystal Lagoons and could impede its ability to secure financing for further growth.

221.   Desert Color and Pacific Aquascape's infringement also creates the risk of damaging the reputation of high-quality lagoon-sized water facilities that Crystal Lagoons has carefully developed over many years.

222.    Monetary damages are significant but will be inadequate to fully compensate Crystal Lagoons for these various forms of damages. A permanent injunction is also necessary to redress the full extent of the harm caused by the infringement as described herein.

223.     Upon information and belief based on what has been observed at the Desert Color Lagoon and which may be confirmed during the discovery process, Defendants are infringing or will be infringing other Crystal Lagoons' patents.

### REQUEST FOR RELIEF

WHEREFORE, based on the foregoing allegations and claims, Crystal Lagoons requests the following relief and prays that the Court award it judgment against Defendants jointly and severally

a.    A judgment that Desert Color and Pacific Aquascape infringed United States Patent No. 8,062,514 and that such infringement was willful;

b.    An injunction enjoining and restraining Desert Color and Pacific Aquascape, their officers, directors, agents, servants, employees, attorneys, and all others acting under or through them from directly or indirectly infringing United States Patent No. 8,062,514.

c.    A judgment and order requiring Defendants to pay all damages arising out of Desert Color and Pacific Aquascape's infringement of United States Patent No. 8,062,514, with interest.

d.    For compensatory damages in an amount to be determined at trial;

e.    For exemplary, treble and punitive damages in an amount to be determined at trial;

f.    For an injunction enjoining and restraining Defendants, their officers, directors, agents, servants, employees, attorneys, and all others acting under or through it from further use of Crystal Lagoons' Intellectual Property including but not

limited to its trademarks, trade dress, copyrights, as well as enjoin them from any

further representations regarding any association with Crystal Lagoons.

g.      For corrective advertising;

h.      For an accounting and a disgorgement of profits by the Defendants;

i.      For reasonable costs and attorney's fees;

j.      For pre- and post-judgment interest at the maximum legal rate;

k.      Such other and further relief as this Court may deem just and equitable.

**<u>DEMAND FOR JURY TRIAL</u>**

Crystal Lagoons hereby demands that all issues so triable be determined by jury.


                              Respectfully submitted,

Date:  February 2, 2021        By:  */s/ Stephen M. Sansom*
                               Stephen M. Sansom
                               Brandon T. Christensen
                               HOLLAND & HART LLP
                               222 South Main Street, Suite 2200
                               Salt Lake City, UT  84101
                               Tel: (801) 799-5897

                               Anthony R. Zeuli *(Admitted Pro Hac Vice)*
                               Thomas Johnson *(Admitted Pro Hac Vice)*
                               MERCHANT GOULD P.C.
                               2200 Fifth Street Towers
                               150 South Fifth Street
                               Minneapolis, MN 55402-4247
                               Tel: (612) 332-5300
                               Fax: (612) 332-9081

                               *Counsel for Plaintiffs*
                               *Crystal Lagoons US Corp and Crystal Lagoons*
                               *Technologies, Inc.*