Jared Braithwaite (Utah Bar No. 12455)
*jbraithwaite@mabr.com*
MASCHOFF BRENNAN
111 S. Main Street, Ste. 600
Salt Lake City, Utah 84111
(801) 297-1850

R. Parrish Freeman (Utah Bar No. 7529)
*pfreeman@mabr.com*
MASCHOFF BRENNAN
1389 Center Dr., Ste. 300
Park City, Utah 84098
(435) 252-1360

Attorneys for Defendants Desert Color St. George, LLC;
Desert Color Manager, LLC; and Pacific Aquascape International, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **Crystal Lagoons U.S. Corp.**, and **Crystal Lagoons Technologies, Inc.,** | Civil No. 2:20-cv-00851-BSJ |
| Plaintiffs, | |
| v. | **Desert Color Manager, LLC, Desert Color St. George, LLC, and Pacific Aquascape International, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint** |
| **Desert Color Manager, LLC**; **Desert Color St. George, LLC**; **AJ Construction, Inc.**; **Cole West Home, LLC**; **Holmes Homes, Inc.**; **Sullivan Homes, LLC**; and **Pacific Aquascape International, Inc.,** | |
| Defendants. | District Judge Bruce S. Jenkins |

# TABLE OF CONTENTS

MOTION TO DISMISS ................................................................................1

MEMORANDUM IN SUPPORT OF THE MOTION ...............................................4

I.      INTRODUCTION ...............................................................................4

II.     BACKGROUND ................................................................................5

        A.      Desert Color and Crystal Lagoons negotiate but ultimately fail to
                agree on engagement regarding the design and construction of the
                lagoon for the Desert Color development in St. George. ...........................5

        B.      Pacific Aquascape is selected as the designer and builder of the
                Desert Color lagoon, and Crystal Lagoons concludes without
                support that the lagoon uses its unspecified technology. ..........................6

        C.      The First Amended Complaint fails to allege facts to support use of
                the "Crystal Lagoons" trademark—as opposed to the descriptive
                words—by each of the Defendants. .......................................................7

III.    ARGUMENT .................................................................................10

        A.      Count 1 for breach of contract should be dismissed because there
                are insufficient facts to plausibly find a contract applicable to each
                of the Plaintiffs and each of the Defendants, and there are
                insufficient facts to support Crystal Lagoons' conclusory breach
                allegations. ..................................................................................11

        B.      The First Amended Complaint adds several trademark-based
                claims against Pacific Aquascape—based on the addition of only
                one conclusory paragraph, which is insufficient to support such
                claims. ........................................................................................16

        C.      Counts 2–4 for trademark infringement, trademark dilution, and
                unfair competition under the Lanham Act should be dismissed
                because the alleged uses of the mark are not "uses in commerce." ..........17

D.   Counts 5 and 7 should be dismissed because the alleged misrepresentations fail to satisfy statutory pre-requisites for those claims, and no other basis is pleaded with particularity...........................20

E.   Count 6 for trade dress infringement should be dismissed because the factual allegations do not recite plausible trade dress claims—as already found by this Court in another Crystal Lagoons case. ............23

1.   Crystal Lagoons does not allege facts to support a plausible claim that its trade dress is either inherently distinctive or has acquired secondary meaning....................................................25

2.   Crystal Lagoons does not allege facts to support a plausible claim that its trade dress is non-functional. ...................................27

F.   Count 8 for unjust enrichment should be dismissed because it is contrary to Crystal Lagoons' factual allegations and because legal remedies are available. ................................................................29

G.   Count 9 for trademark infringement should be dismissed because Crystal Lagoons has not used its marks in Utah as a predicate to a claim under the current statute. .............................................30

H.   Count 10 for unfair competition should be dismissed for lack of factual allegations that either Desert Color or Pacific Aquascape are passing off their goods or services as those of Crystal Lagoons........31

IV.   CONCLUSION ...............................................................................32

# TABLE OF AUTHORITIES

## Cases

*1-800 Contacts, Inc. v. Lens.com, Inc.*,
 722 F.3d 1229 (10th Cir. 2013) ..........................................................................18

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................... 10, 13

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ..........................................................................................10

*Brave Law Firm, LLC v. Truck Accident Lawyers Group, Inc.*,
 No. 17-1156-EFM-GEB, 2018 WL 3122172 (D. Kan. Jun. 26, 2018) ...............20

*Buckner v. Kennard,* 99 P.3d 842 (Utah 2004) ..........................................................5

*Comfort Inn Oceanside v. Hertz Corp.*,
 No. 11-cv-1534-JG-JMA, 2011 WL 5238658 (S.D.N.Y. Nov. 1, 2011) ..............11

*Craft Smith, LLC v. EC Design, LLC*,
 388 F. Supp. 3d 1385 (D. Utah 2019) *aff'd* 969 F.3d 1092 (10th Cir. 2020).......25

*Crystal Lagoons et al. v. Cloward H2O LLC*,
 No. 2:19-cv-796-BSJ, Docket No. 37 (D. Utah May 11, 2020) ................... 24, 28

*Desert Miriah, Inc. v. B & L Auto, Inc.*,
 2000 UT 83, 12 P.3d 580 ...................................................................................29

*Forney Indus., Inc. v. Daco of Missouri, Inc.*,
 835 F.3d 1238 (10th Cir. 2016) ................................................................... 24, 25

*Gen. Motors Co. v. Urban Gorilla, LLC*,
 No. 2:06-cv-00133 BSJ, 2010 WL 5395065 (D. Utah Dec. 27, 2010) ......... 27, 28

*Hammerton, Inc. v. Heisterman*,
 No. 2:06-cv-00806 TS, 2008 WL 2004327 (D. Utah May 9, 2008) ...................26

*Harsco Corp. v. Segui*,
 91 F.3d 337 (2d Cir.1996) .................................................................................11

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*,
456 U.S. 844 (1982) ...........................................................................27

*Kansas Penn Gaming, LLC v. Collins*,
656 F.3d 1210 (10th Cir. 2011)..........................................................10

*MediaNews Group, Inc. v. McCarthey*,
432 F. Supp. 2d 1213 (D. Utah 2006) ................................................29

*Nat'l Union Fire Ins. Co. of Pittsburg v. Beelman Truck Co.*,
203 F. Supp. 3d 312 (S.D.N.Y. 2016)..................................................12

*Pace v. Swerdlow*,
519 F.3d 1067 (10th Cir. 2008) ..........................................................10

*Proctor & Gamble Co. v. Haugen*,
947 F. Supp. 1551 (D. Utah 1996).......................................................23

*Proctor & Gamble Co.*,
222 F.3d 1262 (10th Cir. 2000) ..........................................................22

*Savant Homes, Inc. v. Collins*,
809 F.3d 1133 (10th Cir. 2016)...........................................................24

*Sebastian Brown Prods. LLC v. Muzooka Inc.*,
No. 15-CV-01720-LHK, 2016 WL 949004 (N.D. Cal. Mar. 14, 2016)..............15

*Snap Advances LLC v. SHG of Illinois, LLC*,
No. 2:18-cv-16-BSJ, 2019 WL 7505555 (D. Utah Feb. 12, 2019) .....................23

*Strauss v. Angie's List, Inc.*,
951 F.3d 1263 (10th Cir. 2020) ..........................................................22

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
529 U.S. 205 (2000) ................................................................... 25, 26

**Statutes**

Utah Code Ann. § 26A-1-114 ............................................................................4

Utah Code Ann. § 70-3a-103 ..........................................................................31

Utah Code Ann. § 70-3a-302 ..........................................................................31

Utah Code Ann. § 70-3a-402 ..........................................................................31

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ........................................................1

Federal Rule of Civil Procedure 8 ..............................................................1, 17

Federal Rule of Civil Procedure 9 ................................................................20

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) .........................................................13

## MOTION TO DISMISS

Pursuant to Rule 8 and Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Desert Color St. George, LLC and Desert Color Manager, LLC (collectively, "Desert Color") and Pacific Aquascape International, Inc. ("Pacific Aquascape") respectfully move to dismiss the causes of action in the First Amended Complaint ("FAC," Docket No. 79) filed by Plaintiffs Crystal Lagoons U.S. Corp. and Crystal Lagoons Technologies, Inc. (collectively, "Crystal Lagoons").

Desert Color and Pacific Aquascape move to dismiss Count 1 for alleged breach of contract because none of the Defendants except Desert Color is a party to the underlying agreement and because there is a lack of pleaded facts to plausibly state that any breach occurred.

Desert Color and Pacific Aquascape move to dismiss Counts 2–4 for trademark infringement, dilution, and unfair competition under the Lanham Act because the factual allegations are insufficient to support plausible claims of a likelihood of consumer confusion.

Desert Color and Pacific Aquascape move to dismiss Counts 5 and 7 for false advertising under the Lanham Act and the Utah Truth in Advertising Act because (1) the alleged false statements were not commercial advertising or promotion

sufficient to support a Lanham Act false advertising claim; (2) the predicate notice requirements of the Utah Truth in Advertising Act were not fulfilled; (3) Pacific Aquascape is not alleged to have made any false statements; and (4) any alleged false statements other than those pleaded with particularity are insufficiently pleaded under Rule 9.

Desert Color and Pacific Aquascape move to dismiss Count 6 for trade dress infringement because (1) Crystal Lagoons' alleged trade dress cannot be inherently distinctive as a matter of law; (2) there are insufficient facts that the alleged trade dress has acquired secondary meaning; and (3) the alleged trade dress is unprotectable as functional.

Desert Color and Pacific Aquascape move to dismiss Count 8 for unjust enrichment because the equitable remedy of unjust enrichment is unavailable in light of legal remedies available to Crystal Lagoons.

Desert Color and Pacific Aquascape move to dismiss Count 9 for Utah statutory trademark infringement because Crystal Lagoons has not used its marks in Utah sufficient for a cause of action under the current statute.

Desert Color and Pacific Aquascape move to dismiss Count 10 for common law unfair competition because there are no factual allegations sufficient to support

a plausible claim that either of them attempted to pass-off their services to relevant

consumers as the services of Crystal Lagoons.

Accordingly, the Court should dismiss the FAC and cause of actions 1–10

purportedly stated therein against Desert Color and Pacific Aquascape.

Dated: February 16, 2021.        Respectfully Submitted,

MASCHOFF BRENNAN

By: */s/ Jared J. Braithwaite*
      R. Parrish Freeman
      Jared J. Braithwaite

      Attorneys for Defendants
      Desert Color St. George, LLC;
      Desert Color Manager, LLC; and
      Pacific Aquascape International, Inc.

**MEMORANDUM IN SUPPORT OF THE MOTION**

## I.   INTRODUCTION

Desert Color is the developer of the Desert Color community and resort project in St. George, Utah, which includes a man-made lagoon as one of the resort's features. At its core, Crystal Lagoons' grievance is that Desert Color selected Pacific Aquascape over Crystal Lagoons for the design and construction of the Desert Color lagoon. Crystal Lagoons uses its non-selection to manufacture a litany of causes of action against Desert Color, Pacific Aquascape, and the home builders in the development (even though there are zero factual allegations against some of them). In other words, the FAC puts quantity of claim-count over substance, which leads to half-baked pleading. And each of the causes of action in Crystal Lagoons' FAC suffers from legal defects or insufficient allegations of fact such that each one should be dismissed.

Crystal Lagoons also improperly uses the FAC to advance the baseless allegation that the Desert Color lagoon is not regulated by any governmental agency. (*See* FAC ¶ 121.) Such an allegation is absurd because the local Health Department has regulatory authority and the ability to shut down any public place that poses a risk to public health. *See* Utah Code Ann. § 26A-1-114. And the local

4

Health Department is aware of and has even visited the Desert Color lagoon. *See*
(De La Cerda Declaration, Docket No. 73-2 at p. 7 of 13.)

Crystal Lagoons' bombastic allegations are instead based on its belief that the
Desert Color lagoon should be subject to the swimming pool rules—despite
Crystal Lagoons' knowledge that the Health Department did not say that it was not
regulating the lagoon at all but rather "expressed the view that the Desert Color
lagoon fell within an exemption to the Utah Department of Health's pool rules and
was not subject to regulation under those rules." (*Id.*) But there is no private right
of action to overrule the determinations of the Utah Health Department and seek
private enforcement of Utah's pool regulations in an intellectual property case. *Cf.*
*Buckner v. Kennard,* 99 P.3d 842, 853–56 (Utah 2004). Crystal Lagoons'
allegations regarding supposed non-regulation of the Desert Color lagoon are an
irrelevant effort to slander the Defendants through this lawsuit and are contrary to
law and Crystal Lagoons' own materials submitted to the Court.

## II.  BACKGROUND

### A.  Desert Color and Crystal Lagoons negotiate but ultimately fail to agree on engagement regarding the design and construction of the lagoon for the Desert Color development in St. George.

According to the FAC, Desert Color is the developer of the Desert Color
community and resort project in St. George, Utah. (FAC ¶¶ 46–48.) In

December 2017, Desert Color St. George, LLC and Crystal Lagoons U.S. Corp.
entered into a non-disclosure agreement ("NDA," Docket No. 79-3) to facilitate
Desert Color's evaluation of whether it would engage Crystal Lagoons to provide
consulting services relating to a proposed lagoon at the Desert Color development.
(NDA ¶ 79-3; FAC ¶ 54.) Desert Color and Crystal Lagoons continued discussions
and negotiations through June 2019 at which time negotiations between the parties
ended without an agreement. (FAC ¶¶ 63–67, 72.)

    **B.**   **Pacific Aquascape is selected as the designer and builder of the
Desert Color lagoon, and Crystal Lagoons concludes without support
that the lagoon uses its unspecified technology.**

Desert Color engaged Pacific Aquascape to design and engineer the Desert
Color lagoon. (FAC ¶ 84.) Without any supporting allegations, the FAC alleges that
"Desert Color contracted with another company, Pacific Aquascape, to build and
commercialize a knock-off lagoon using the innovations, technology, and
intellectual property developed by [Crystal Lagoons]." (*Id.* ¶ 85.) Crystal Lagoons
claims to be the inventor of superior water treatment technology over that of
conventional swimming pool systems and concludes, without supporting facts, that
Pacific Aquascape and Desert Color must be using its technology even though it
also alleges that conventional swimming pool technology may be applied to large
water bodies. (FAC ¶¶ 18, 84, 127.)

**C. The First Amended Complaint fails to allege facts to support use of the "Crystal Lagoons" trademark—as opposed to the descriptive words—by each of the Defendants.**

The FAC also alleges that "Desert Color used Crystal Lagoons' name to pass off its lagoon as one manufactured by Crystal Lagoons!" but Exhibit 7 to the FAC unequivocally says the exact opposite:



(FAC Ex. 7, Docket No. 79-13 (emphasis added).) The only other instance in which Desert Color itself is alleged to have used the words "crystal lagoons" in connection with the Desert Color lagoon was buried in an announcement about the development in January 2018, during the time period in which Desert Color was still negotiating with Crystal Lagoons for the Desert Color lagoon:



As part of the plan, Desert Color will feature nearly 210 acres of developed parks and trails circulated throughout the community. Trail systems, parks and nature preserves will provide opportunities for residents, visitors and activity seekers to feel a deeper connection to the community and the land.

"The Desert Color vision is a big one," Weaver said, "(to include) 10,000 residences with single-family apartments and townhomes, 103-acre commercial district with office space, shopping, recreation, health facilities, schools, cultural activities and a resort facility with crystal lagoons, 1,100 rooms that will be a mixture of hotel, resort and vacation condos, a recreation area with parks, trails and activities that promote a healthy lifestyle, and a golf entertainment experience for golfers of all skill and age levels."

(FAC ¶ 61; FAC Ex. 4, Docket No. 79-4.)

It is worth noting that there are no allegations that Defendants AJ Construction, Inc. or Holmes Homes, Inc. ever used "crystal lagoons" in connection with the Desert Color Lagoon. For the remaining Builder Defendants, the FAC alleges that a Cole West sales contractor used the generic descriptor "a new crystal lagoon" in a December 2019 post to his personal Facebook page "dixiedandotcom" and that a Sullivan Homes representative responded to two email inquiries by incorrectly naming Crystal Lagoons as the company behind the Desert Color lagoon project. (FAC ¶¶ 94–95.)

The only other two instances of descriptive and nominal use of "crystal lagoon" are not by Desert Color or any of the other defendants. These are to publications by non-party Colliers International ("Colliers"), not from Desert Color, as can be seen on the face of each cited document. (FAC ¶¶ 93; *see also* Docket Nos. 11-9 and 11-10 (documents cited by FAC).) Both documents are and apparently have been unavailable since before the filing of the original Complaint.

(Complaint ¶¶ 78, Figures 11–12 (citing defunct Internet links and last availability in July 2020).)[1] Nevertheless, each document notes that Colliers—not Desert Color—created and distributed the content of the documents:



(Docket No. 11-9 (footer on each page, emphasis added); *compare with* Docket No. 60-3 at Page 7 of 7 (current Colliers brochure with higher resolution footer).)



(Docket No. 11-10 (emphasis added).)

Lastly, in the original Complaint, Pacific Aquascape was not accused of any act of trademark infringement, dilution, or Lanham Act unfair competition. (*See* Complaint, Counts 2–4 and 9.) Yet, the FAC now purports to assert these causes of action against Pacific Aquascape based on addition of a single, conclusory allegation, which is unrelated to the Desert Color project and does not even allege that Pacific Aquascape used any trademark. (FAC ¶ 98.)

---

[1] Crystal Lagoons inexplicably revised the "last accessed" in the First Amended Complaint from July 29, 2020 to December 2, 2020. But documents have been and are unavailable regardless.

## III.  ARGUMENT

"To withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Tenth Circuit has noted that this pleading requirement "serves two purposes: 'to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense,' and 'to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim.'" *Kansas Penn Gaming*, 656 F.3d at 1215 (quoting *Pace v. Swerdlow*, 519 F.3d 1067, 1076 (10th Cir. 2008)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679. Whether a complaint states a plausible claim for relief will be a context-specific undertaking, "[b]ut where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Crystal Lagoons fails to allege sufficient facts to support its stated claims as against Desert Color and Pacific Aquascape. Accordingly, claims 1–10 should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

**A.  Count 1 for breach of contract should be dismissed because there are insufficient facts to plausibly find a contract applicable to each of the Plaintiffs and each of the Defendants, and there are insufficient facts to support Crystal Lagoons' conclusory breach allegations.**

Count 1 is a cause of action against each of the Defendants for breach of the non-disclosure agreement ("NDA," Docket No. 79-3), which was entered into by and between Desert Color St. George, LLC and Crystal Lagoons U.S. Corp. (FAC ¶¶ 132–137; NDA ¶¶ 1-2.)

"To state a claim for breach of contract under New York law, a plaintiff must adequately allege each of the following elements: '(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *Comfort Inn Oceanside v. Hertz Corp.*, No. 11-cv-1534-JG-JMA, 2011 WL 5238658, *3 (S.D.N.Y. Nov. 1, 2011) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir.1996)). Through nebulous treatment of various defendants, and mere conclusion that they are all affiliates whose conduct may be attributed to one another, Crystal Lagoons blurs the support for its allegations. But there is no legal or alleged factual support to

treat the defendants as one-and-the-same, and there are insufficient facts to state a claim for breach of contract against the separate defendants.

Crystal Lagoons' claim against Desert Color St. George, LLC and the other defendants is based on the conclusion that they are bound to the terms of the NDA as "affiliates" of the parties to the NDA. The NDA does not define "affiliate" to carry a definition any different than its ordinary meaning under New York law, which governs the NDA's "construction, validity, and performance." (NDA ¶ 10.) On similar facts, one New York court turned to the term's usage in relevant state and federal statutes and regulations and held that an "affiliate" is "a corporation related to another corporation by shareholdings or other means of control." *Nat'l Union Fire Ins. Co. of Pittsburg v. Beelman Truck Co.*, 203 F. Supp. 3d 312, 319–20 (S.D.N.Y. 2016); *see also*, *AFFILIATE*, Black's Law Dictionary (11th ed. 2019) ("A corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation.")

Crystal Lagoons does not plead any facts to plausibly claim that all defendants are under common ownership or control.[2] Without more, Crystal Lagoons merely concludes that all of the Builder Defendants are affiliates of Desert Color with no

---

[2] There are also not sufficient facts to support both Plaintiffs being parties to the NDA sufficient to both have standing for any claimed breach thereof.

supporting factual allegations. (FAC ¶ 50.) And the Court need not accept such conclusory allegations as true. *Iqbal*, 556 U.S. at 678.

Notably, the FAC, like the original Complaint, does not make the conclusory allegation that Pacific Aquascape is an affiliate. (*See* FAC ¶ 50.) Also, the original Complaint did not allege breach of the NDA against Pacific Aquascape. (Complaint, ¶¶ 112–117.) Crystal Lagoons now asserts the breach of NDA claim against Pacific Aquascape as well—all without the addition of a single factual allegation to the First Amended Complaint that would make Pacific Aquascape a party to the NDA.

Crystal Lagoons' breach allegations are equally nebulous and conclusory. With respect to the alleged breaches of (1) "upon information and belief, disclosing designs, plans, technical information, and other Confidential Information belonging to Crystal Lagoons to Pacific Aquascape; and (2) using Crystal Lagoons' trademarks without written permission." (FAC ¶ 135.)

First, Crystal Lagoons equivocates with respect to whether Desert Color disclosed any designs, plans, technical information, or other Confidential Information to Pacific Aquascape. When Crystal Lagoons alleges that the Desert Color lagoon will allegedly be unsanitary or that it will not have clear water, Crystal Lagoons affirmatively alleges that Pacific Aquascape is not using Crystal

Lagoons' information or technology. (FAC ¶¶ 110–111, 127–129.) But Crystal Lagoons also alleges that the mere existence of the Desert Color lagoon means that Pacific Aquascape must, by necessity, be using Crystal Lagoons information and technology allegedly received from Desert Color. (FAC ¶¶ 85, 135.)[3] Yet, Crystal Lagoons also admits that conventional swimming pool technology is an alternative water treatment system to the Crystal Lagoons technology. (FAC ¶ 127 ("[t]he only technology that exists in the world for large water bodies used for recreational purposes, *that is not conventional swimming pool technology applied in large water volumes*, is the Crystal Lagoons technology"; emphasis added.)

Notably, Crystal Lagoons fails to make any factual allegations to support any conclusion that the Desert Color lagoon does not use conventional swimming pool technology. And "plausibility" means "more than a sheer possibility." Facts that are "consistent" with liability but are also consistent with nonliability fall short of "plausibility." *Iqbal*, 556 U.S. at 678. Under the allegations of the FAC, the Desert Color lagoon can (and is) making lawful use of conventional swimming pool

---

[3] The original Complaint alleged that Pacific Aquascape did not receive information from Desert Color but rather from non-party Cloward H2O LLC. (Complaint ¶¶ 68–69.) Upon notice of that deficiency, Crystal Lagoons now states the conclusory allegation, on information and belief, that Pacific Aquascape also received the unspecified confidential information from Desert Color as well. (*Compare* Complaint ¶ 69 *with* FAC ¶ 81.)

technology. Thus, the factual allegations fall short of a plausibly claim that Crystal Lagoons confidential information is being used in breach of the NDA.

Even if Crystal Lagoons were to allege facts to support the Desert Color lagoon not using conventional swimming pool technology but instead employing Crystal Lagoons technology, such allegation would be inconsistent with the disclosure of any confidential information under the NDA. The NDA explicitly excludes public information, and Crystal Lagoons' allegation is that its lagoon information and technology are patented and, thus, public knowledge.[4] (FAC ¶ 23.) There are no facts alleged to support an allegation that anything covered as Confidential Information under the NDA was disclosed by Desert Color to Pacific Aquascape.

Moving on to alleged breach through use of alleged use of Crystal Lagoons' trademarks, there are no factual allegations that Desert Color itself or anyone under its control (or the other defendants) used Crystal Lagoons' trademarks. The only allegations of trademark use are directed to generic and nominative uses by others, including non-parties.

---

[4] For example, Crystal Lagoons also asserts a patent infringement claim based on U.S. Patent Nos. 8,062,514. (FAC ¶¶ 210–223.) *See also Sebastian Brown Prods. LLC v. Muzooka Inc.*, No. 15-cv-01720-LHK, 2016 WL 949004, *5 n.1 (N.D. Cal. Mar. 14, 2016) ("Patents are matter[s] of public record and the proper subject of judicial notice.") (internal quotation omitted).

There are no well-pleaded facts to put Desert Color and Pacific Aquascape on notice of or to support a breach of contract claim based on acts attributable to either. Accordingly, the Court should dismiss Count 1 for breach of contract.

### B. The First Amended Complaint adds several trademark-based claims against Pacific Aquascape—based on the addition of only one conclusory paragraph, which is insufficient to support such claims.

One of the amendments made by Crystal Lagoons to the First Amended Complaint was the addition of trademark infringement, dilution and Lanham Act unfair competition claims against Pacific Aquascape. The original Complaint did not bring any of these claims against Pacific Aquascape. (*See* Complaint, Counts 2–4 and 9.) Yet, the FAC now purports to assert these causes of action against Pacific Aquascape based on addition of a single, conclusory allegation:

> 98.    On information and belief, Pacific Aquascape is involved in other projects that have also used Crystal Lagoons' trademarks, in local permitting processes and documents, to advertise and sell Pacific Aquascape's lagoon-building services, including a project in Texas.

(FAC ¶ 98; *id* ¶ 141 (identical allegation).)

This additional allegation does not allege that Pacific Aquascape used Crystal Lagoons' trademarks at all—instead only that Pacific Aquascape is "involved in" other unidentified projects in which the trademarks were supposedly used by

unidentified others. The allegation is also not related at all to the Desert Color

project but to some unnamed other project supposedly in Texas.

Based on the addition of this one conclusory allegation—that does not even

allege trademark use by Pacific Aquascape—Crystal Lagoons now tries to advance

Count 2 for Lanham Act trademark infringement, Count 3 for trademark dilution,

Count 4 for Lanham Act unfair competition, and Count 9 for Utah statutory

trademark infringement. This threadbare and conclusory pleading fails to provide

basic notice under Federal Rule of Civil Procedure 8 and fails the plausible

pleading standard established by *Iqbal*/*Twombly*. Therefore, Counts 2–4 and 9

should be dismissed with respect to Pacific Aquascape.

### C.   Counts 2–4 for trademark infringement, trademark dilution, and unfair competition under the Lanham Act should be dismissed because the alleged uses of the mark are not "uses in commerce."

Crystal Lagoons attempts to set forth multiple causes of action against the

Defendants for alleged misuse of Crystal Lagoons' trademarks: Count 2 for

infringement of Crystal Lagoons' registered trademarks; Count 3 for trademark

dilution based on allegations that Crystal Lagoons' trademarks are famous; and

Count 4 for unfair competition based on allegations that the defendants are

attempting to "pass-off" the Desert Color lagoon as a Crystal Lagoons lagoon.

Trademark infringement requires proof of rights in the asserted mark, use in commerce by the defendant of the same or similar mark, and a resulting likelihood of consumer confusion. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013) (noting nearly identical elements for §§ 1114 and 1125(a) claims except that a trademark registration provides prima facie evidence of rights to the mark for § 1114 claims). The issue here on this motion to dismiss is the lack of allegations regarding "use" of the alleged trademark by each of the defendants sufficient to *plausibly* state a likelihood of confusion sufficient for claims of trademark infringement, dilution, or unfair competition.

The solitary alleged "use" of the words "crystal lagoons," by Desert Color occurred at a time when Desert Color was negotiating with Crystal Lagoons, are insufficient to *plausibly* state a claim that the lone use is likely to cause consumer confusion. The one-time alleged use of the words "crystal lagoons" without capitalization or other means of highlighting as a trademark is not a plausible use of the CRYSTAL LAGOONS trademark.



As part of the plan, Desert Color will feature nearly 210 acres of developed parks and trails circulated throughout the community. Trail systems, parks and nature preserves will provide opportunities for residents, visitors and activity seekers to feel a deeper connection to the community and the land.

"The Desert Color vision is a big one," Weaver said, "(to include) 10,000 residences with single-family apartments and townhomes, 103-acre commercial district with office space, shopping, recreation, health facilities, schools, cultural activities and a resort facility with crystal lagoons, 1,100 rooms that will be a mixture of hotel, resort and vacation condos, a recreation area with parks, trails and activities that promote a healthy lifestyle, and a golf entertainment experience for golfers of all skill and age levels."

(FAC ¶ 61; FAC Ex. 4, Docket No. 79-4.)

It is simply impractical to describe crystal-clear water without using the words "crystal" or "crystalline," such that those words can and must be used (not in a trademark sense) when discussing water features. Crystal Lagoons' own briefs and evidence illustrate the point as there are nine such uses in the FAC itself. (FAC ¶¶ 15, 19, 22, 26, 38 (three times), 110–111.)

The solitary alleged use by a Cole West sales contractor similarly used the generic descriptor "a new crystal lagoon" in a December 2019 post to his personal Facebook page "dixiedandotcom." And there are no allegations that Defendants Pacific Aquascape, AJ Construction, Inc., or Holmes Homes, Inc. ever used "crystal lagoons" in connection with the Desert Color Lagoon.

Notably, the FAC does not allege that Desert Color has described its lagoon as a "crystal lagoon" other than the one time two years ago. There is no allegation of any advertising campaign, signage, or other online marketing statements by Desert Color that have attempted to even describe the lagoon as crystalline or a crystal

lagoon. The solitary use of "crystal lagoons" attributed to Desert Color is insufficient to state a plausible trademark infringement claim because it is de minimis, and no facts are alleged to plausibly suggest that such a one-time, isolated, and descriptive use is likely to cause confusion among consumers as to the source of the Desert Color lagoon. The Court should, therefore, dismiss Counts 2–4.

### D. Counts 5 and 7 should be dismissed because the alleged misrepresentations fail to satisfy statutory pre-requisites for those claims, and no other basis is pleaded with particularity.

Crystal Lagoons' alleges that all of the defendants are liable for false advertising under the Lanham Act (Count 5) and the Utah Truth in Advertising Act (Count 7). Under both Counts 5 and 7, Crystal Lagoons alleges that the Defendants acted intentionally and knew the representations were misleading. (FAC ¶¶ 169, 185.) Such claims of intentional and knowing false statements sound in fraud and must be pleaded with particularity. *See* Federal Rule of Civil Procedure 9(b); *Brave Law Firm, LLC v. Truck Accident Lawyers Group, Inc.*, No. 17-1156-EFM-GEB, 2018 WL 3122172, *6 (D. Kan. Jun. 26, 2018) (applying Rule 9(b)'s particularity requirement to false advertising claims based on intentional or knowing misrepresentations and noting other 10th Circuit decisions holding the same). Thus, specificity regarding what was said, who said it, and to

whom it was said are all required factual allegations in order for the Court to determine whether such alleged statements are actionable as false advertising under the Lanham Act or Utah Truth in Advertising Act.

The predicate statements for both alleged counts appear to be the same. Crystal Lagoons alleges that each of the Defendants used the phrase "Crystal Lagoon" or otherwise attempted to associate their products with Crystal Lagoons (FAC ¶¶ 161, 163, 182, 184) and that each of the "Defendants also misrepresented to the Environmental Health Division of SWUPHD that the lagoon for the Desert Color Project was not going to be used for swimming" (FAC ¶¶ 162, 183). Crystal Lagoons also states that "Defendants continue to make false or misleading representations of fact regarding the patent status of their products." (FAC ¶ 172.) But Crystal Lagoons fails to identify a single representation by Desert Color, Pacific Aquascape, or any of the other defendants regarding the patented status of the Desert Color lagoon, which makes the claim implausible—especially in light of the Rule 9(b)'s requirement for particularity.

Claims for false advertising require allegation that the defendant was engaged in "commercial advertising or promotion," which "must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services ... [and]

(4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Strauss v. Angie's List, Inc.*, 951 F.3d 1263, 1267 (10th Cir. 2020) (citing *Proctor & Gamble Co.*, 222 F.3d 1262, 1273–74 (10th Cir. 2000)).

As set forth above in Section III.B, none of the alleged uses of "crystal lagoon" supports the allegation that each of the Defendants used "Crystal Lagoon" (capitalized) in the trademark sense as opposed to a general description of a crystal-clear body of water. And Pacific Aquascape and many of the other Builder Defendants are not accused of even these isolated and descriptive uses. The lone identified use attributed to Desert Color is insufficient to plausibly claim sufficient dissemination to the relevant purchasing public to constitute advertising or promotion within the industry. (And of course, there are no such statements attributed to Pacific Aquascape such that there is no alleged dissemination at all with respect to it.)

The additional alleged misrepresentation was allegedly made to the Environmental Health Division of SWUPHD and suffers from the same defects. It is not an alleged misrepresentation made as part of an advertisement, promotion, or to any potential consumer to influence purchasing decisions. Rather, despite the particularity requirement, the alleged misstatement is not attributed to anyone in

particular and is made not to a consumer but to a State agency. Thus, this allegation fails as a predicate for a false advertising claim.

The Utah Truth in Advertising claim further suffers from a lack of facts supporting the notice prerequisite for such a claim. "[T]he preconditions to any lawsuit under the TIAA are that (1) the prospective defendant receive notice from the aggrieved party; and (2) the prospective defendant not issue a correction within ten days after receiving that notice." *Proctor & Gamble Co. v. Haugen*, 947 F. Supp. 1551, 1556 (D. Utah 1996); *see also Snap Advances LLC v. SHG of Illinois, LLC*, No. 2:18-cv-16-BSJ, 2019 WL 7505555, *2 (D. Utah Feb. 12, 2019) (noting that the required notice is a perquisite to any relief on the Truth in Advertising Act). Crystal Lagoons does not allege that it ever gave such notice to the Defendants, which is fatal to the Truth in Advertising Act claim.

Accordingly, because neither the predicate bases for the Lanham Act nor Utah Truth in Advertising Act have been satisfied, the Court should dismiss both claims.

**E.   Count 6 for trade dress infringement should be dismissed because the factual allegations do not recite plausible trade dress claims—as already found by this Court in another Crystal Lagoons case.**

Crystal Lagoons alleges that each of the defendants is infringing Crystal Lagoons' alleged trade dress. The Court already dismissed Crystal Lagoons' specious trade dress claims in another case, *Crystal Lagoons et al. v. Cloward H2O*

*LLC*, No. 2:19-cv-796-BSJ, Docket No. 37 (D. Utah May 11, 2020) (Order

dismissing First Amended Complaint). In tacit recognition of the dubiousness of its

trade dress allegations, Crystal Lagoons did not re-plead them in *Crystal Lagoons*

*v. Cloward H2O* after the Court's dismissal. *See Crystal Lagoons v. Cloward H2O*,

Case 2:19-cv-796-BSJ, Docket No. 39 (Second Amended Complaint). Yet, Crystal

Lagoons has brought them again in this case, and they should be again dismissed

by the Court for the same reasons as before.

To obtain relief for trade dress infringement, a plaintiff must show "(1) The

trade dress is inherently distinctive or has become distinctive through secondary

meaning; (2) There is a likelihood of confusion among consumers as to the source

of the competing products; and (3) The trade dress is nonfunctional." *Savant*

*Homes, Inc. v. Collins*, 809 F.3d 1133, 1147 (10th Cir. 2016).

But even before a plaintiff asserting an unregistered trade dress can allege

these requirements, it must specifically articulate the elements that comprise its

trade dress. *Forney Indus., Inc. v. Daco of Missouri, Inc.*, 835 F.3d 1238, 1252

(10th Cir. 2016). According to the FAC, Crystal Lagoons claims trade dress rights

in a man-made lagoon with (1) clear water (2) a light-colored plastic bottom; (3)

curved shapes and geometries; (4) at least one zero-entry zone resembling a beach;

24

(5) a swimming zone and a sports zone that are not physically separated; and (6) recreational areas. (FAC ¶¶ 41–45.)

> **1.  Crystal Lagoons does not allege facts to support a plausible claim that its trade dress is either inherently distinctive or has acquired secondary meaning.**

When a purported trade dress is one of product design, as opposed to product packaging, "secondary meaning is the only avenue available for proving distinctiveness … because a product's design … is not inherently distinctive." *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 215 (2000) ("[T]o the extent there are close cases, ... courts should err on the side of caution and classify ambiguous trade dress as product design, thereby requiring secondary meaning."); *Forney Indus., Inc.*, 835 F.3d at 1247; *Craft Smith, LLC v. EC Design, LLC*, 388 F. Supp. 3d 1385, 1407 (D. Utah 2019) *aff'd* 969 F.3d 1092 (10th Cir. 2020). "It is particularly difficult to prove that a product design has acquired secondary meaning." *Craft Smith, LLC*, 388 F. Supp. 3d at 1407. Regarding this difficulty in product design cases, the District of Utah has observed that courts should "exercise[] particular 'caution' when extending protection to product designs" as opposed to its packaging, because the "potential for misuse of trade dress law is of particular concern in product design cases, as 'product design almost invariably serves purposes other than source identification.'" *Hammerton, Inc. v. Heisterman*,

No. 2:06-cv-00806-TS, 2008 WL 2004327, at *6 (D. Utah May 9, 2008) (quoting *Wal–Mart Stores*, 529 U.S. at 213).

Crystal Lagoons fails to allege facts to plausibly support any conclusion that its trade dress is inherently distinctive—and Crystal Lagoons cannot plausibly allege inherent distinctiveness as a matter of law. This is because Crystal Lagoons' purported trade dress is based on the appearance of Crystal Lagoons' lagoons themselves, i.e., its design. (FAC ¶¶ 103–104.) The purported trade dress is therefore one for "product design" as opposed to "product packaging," and Crystal Lagoons' claimed trade dress cannot be inherently distinctive as a matter of law. *Wal-Mart Stores, Inc.*, 529 U.S. at 215.

Apart from Crystal Lagoons' inability to allege inherent distinctiveness, it also fails to allege facts to plausibly show that its purported trade dress has acquired secondary meaning. Instead, Crystal Lagoons states only the bald conclusion that "[t]he unique features of Crystal Lagoons' man-made lagoons have acquired distinctiveness and have created a secondary meaning associated with the look and feel of the lagoons." (FAC ¶ 175.) Missing are any facts to support this claim. There is also no allegation that the purpose of design is to serve *primarily* as a source identifier rather than serving as a useful design for bodies of water to swim

in or for other recreational uses. There are no facts alleged to adequately support a claim of secondary meaning of the trade dress.

### 2. Crystal Lagoons does not allege facts to support a plausible claim that its trade dress is non-functional.

"A product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 851 (1982). Whether a feature of trade dress is functional turns on whether "protection of the configuration would hinder competition or impinge upon the rights of others to compete effectively in the sale of goods." *Gen. Motors Co. v. Urban Gorilla, LLC*, No. 2:06-cv-00133-BSJ, 2010 WL 5395065, at *13 (D. Utah Dec. 27, 2010).

Crystal Lagoons does not allege facts to make it plausible that its asserted trade dress is non-functional, nor could it possibly do so. Crystal Lagoons' allegations actually show that the structures embodying the purported trade dress *are* functional, i.e. they are bodies of water designed to be used as recreational bodies of water. (FAC ¶ 20.) Specifically, Crystal Lagoons describes the lagoons as "clear water bodies *for bathing and the practice of water sports*." (*Id*. ¶ 21 (emphasis added).)

When the Court dismissed Crystal Lagoons' trade dress claims in the *Crystal Lagoons v. Cloward H2O* matter, Crystal Lagoons' pleading specifically called the

lagoon structures "functional." *See* Case 2:19-cv-796-BSJ, Docket No. 37, p. 4 (Order, noting Crystal Lagoons description of the lagoons as a "functional structure"). This time around, Crystal Lagoons carefully avoids the term "functional" and even offers the bare conclusion that the alleged trade dress is non-functional. (FAC ¶ 44.) But such cautious wording and conclusions do not make the alleged trade dress any less functional.

Each purported trade dress element individually and collectively describes functional aspects of many public swimming pools or other water features. Crystal Lagoons cannot claim a monopoly over all commercial swimming pools and water features through trade dress because hindering competition by prohibiting others from offering pools and water features shows that the purported trade dress is functional. *See Gen. Motors Co. v. Urban Gorilla, LLC*, No. 2:06-cv-00133 BSJ, 2010 WL 5395065, at *13 (D. Utah Dec. 27, 2010).

Accordingly, the FAC lacks factual allegations sufficient to plausibly state that its purported trade dress has acquired secondary meaning or is non-functional. For these reasons, the Court should dismiss Crystal Lagoons' trade dress claims here, which are merely a reincarnation of Crystal Lagoons' defunct trade dress claims from the *Crystal Lagoons v. Cloward H2O* case.

**F.  Count 8 for unjust enrichment should be dismissed because it is contrary to Crystal Lagoons' factual allegations and because legal remedies are available.**

The doctrine of unjust enrichment is only available as an equitable remedy where one does not exist at law. *MediaNews Group, Inc. v. McCarthey*, 432 F. Supp. 2d 1213, 1238 (D. Utah 2006). The Court should dismiss Count 8 for the equitable remedy of unjust enrichment because it is entirely premised on Crystal Lagoons' allegations of breach of the NDA or alleged use of Crystal Lagoons "innovative technology and know-how" for which there are available remedies at law. (FAC ¶ 195.) Of course, Crystal Lagoons already attempts to allege a breach of contract claim and makes repeated reference to other intellectual property claims. (FAC ¶¶ 31, 132–137.)

Additionally, a claim for unjust enrichment requires allegations that Crystal Lagoons conferred a benefit to the defendant. *See Desert Miriah, Inc. v. B & L Auto, Inc.*, 2000 UT 83, ¶ 13, 12 P.3d 580. "As a matter of law, [a plaintiff] may not succeed on an unjust enrichment claim by asserting that [a defendant] obtained a benefit through its own actions or the actions of a third party." *MediaNews*, 432 F. Supp. 2d at 1240. The FAC contains no allegations in which it alleges that Crystal Lagoons itself conferred a benefit on Pacific Aquascape or any of the other defendants other than Desert Color against which it brings a breach of contract

claim. Crystal Lagoons' allegations are that Crystal Lagoons *did not* confer rights to intellectual property to the various defendants. (FAC ¶¶ 31, 59.) Crystal Lagoons elsewhere alleges that the defendants are not using its technology at all, which is the basis for Crystal Lagoons' false accusations of the Desert Color lagoon being unsanitary. (*Id.* ¶ 129.) Thus, the very concept of an unjust enrichment claims is antithetical to the allegations in the FAC.

Because a claim unjust enrichment is precluded by the availability of legal remedies and because there are no factual allegations to support the claim, the Court should dismiss Crystal Lagoons' Count 8 for unjust enrichment.

### G. Count 9 for trademark infringement should be dismissed because Crystal Lagoons has not used its marks in Utah as a predicate to a claim under the current statute.

The FAC purports to state a cause of action against Defendants for trademark infringement under Utah Code Ann. § 70-3a-101. (FAC ¶¶ 198–203.)[5] Utah's current trademark statute limits infringement actions to those based on marks registered or entitled to registration in Utah. The Utah statute provides causes of action for alleged reproduction, counterfeit, copy, or colorable limitation of a "mark," which is defined as a trademark or service mark entitled to registration

---

[5] The First Amended Complaint references "Utah Code Ann. § 70-3-101 *et al.*", which does not exist. This Motion assumes that Crystal Lagoons meant Utah Code Ann. § 70-3a-101 *et seq.*

under the Utah statue. *See* Utah Code Ann. §§ 70-3a-103(3) and 70-3a-402. And

registration of marks under the Utah statute is limited to marks "used" on "goods

[that] are sold or transported in commerce in this state" or "services [that] are

rendered in this state" Utah Code Ann. §§ 70-3a-302 (limited to applications for

registration of marks that are "used") and 70-3a-103(2)(a)(ii) and 103(2)(b)(ii)

(noting that a mark is only "in use" when used "in this state").

Crystal Lagoons makes no allegations that it has used its marks in connection

with actual goods sold in this state or services rendered in this state. Accordingly,

the FAC lacks a factual basis for trademark infringement under Utah's trademark

statute.

### H.   Count 10 for unfair competition should be dismissed for lack of factual allegations that either Desert Color or Pacific Aquascape are passing off their goods or services as those of Crystal Lagoons.

The FAC simply lacks allegations that either Desert Color or Pacific

Aquascape are "engaged in a scheme to have their goods or services 'pass' in the

marketplace as those of the Crystal Lagoons' [sic] to the consuming pubic of these

goods and services." (*See* FAC ¶ 206.)

Crystal Lagoons identifies a single statement in which the words "crystal

lagoon" are buried, which is attributed to a press release involving Desert Color

over two years ago. This isolated incident from a time during which Desert Color

was still negotiating with Crystal Lagoons is insufficient to plausibly state a claim for unfair competition against Desert Color for passing-off the Desert Color lagoon as a Crystal Lagoons lagoon.

Pacific Aquascape is the designer, engineer, and builder of the Desert Color lagoon. And, as set forth above, there are no allegations that Pacific Aquascape has even used the descriptive words "crystal lagoon" in connections with the lagoon or Pacific Aquascape's services.

And as set forth above Count 6 for trade dress infringement is not passing-off at all because the alleged trade dress is not plausibly distinctive or protectable.

Accordingly, Count 10 for unfair competition is no more than a bare conclusion, which is insufficient to support a claim under *Iqbal/Twombly*. It should therefore be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss Crystal Lagoons' FAC and causes of action 1–10 therein.

Dated: February 16, 2021.                    Respectfully Submitted,

                                             MASCHOFF BRENNAN

                                   By:  */s/ Jared J. Braithwaite*
                                        R. Parrish Freeman
                                        Jared J. Braithwaite

                                        Attorneys for Defendants
                                        Desert Color St. George, LLC;
                                        Desert Color Manager, LLC; and
                                        Pacific Aquascape International, Inc.

**CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMIT**

The undersigned hereby certifies that the foregoing paper complies with the word count limit of DUCivR 7-1(b)(3)(A). The word count is 6,459 excluding face sheet, table of contents, table of authorities, signature block, certificate of service, and exhibits.

Dated: February 16, 2021            */s/ Jared J. Braithwaite*
                                         Jared J. Braithwaite