**ANDERSON & KARRENBERG**
Jason E. Greene (#13990)
Samantha E. Hawe (#17615)
50 West Broadway, Suite 700
Salt Lake City, Utah 84101-2035
Telephone: (801) 534-1700
Facsimile: (801) 364-7697
jgreene@aklawfirm.com
shawe@aklawfirm.com

*Attorneys for Defendant Holmes Homes, Inc.*

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| **CRYSTAL LAGOONS U.S. CORP**, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>**DESERT COLOR MANAGER, LLC**, et al.<br><br>Defendants. | **MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Case No. 2:20-CV-00851 BSJ<br><br>Judge Bruce S. Jenkins |

**TABLE OF CONTENTS**

INTRODUCTION AND BACKGROUND ................................................................1

STATEMENT OF ALLEGED FACTS ...................................................................3

    I.       Description of the Desert Color Lagoon on Holmes Homes' Website ..................4

    II.      Generalized Allegations Regarding Holmes Homes ...............................................4

          A.     Disclosure of Crystal Lagoons' Confidential Information. .......................5

          B.     Use of Crystal Lagoons' Trademarks and Trade Dress. ............................7

          C.     Safety of the Lagoon at the Desert Color Development .............................8

    III.     Crystal Lagoons' Purported Injuries .....................................................................10

ARGUMENT ....................................................................................................10

    I.       Crystal Lagoons Lacks Article III Standing against Holmes Homes. ..................10

    II.      The Amended Complaint's Generalized and Conclusory Allegations Fail to State a Claim for Relief on any of Crystal Lagoons' Causes of Action against Holmes Homes ................................................................................13

          A.     Crystal Lagoons Fails to Adequately Allege that Holmes Homes Is Bound by the NDA. .............................................................................15

          B.     Crystal Lagoons Fails to Adequately Allege that Holmes Homes Received or Distributed Crystal Lagoons' Confidential Information. ......................................................................................17

          C.     Crystal Lagoons Fails to Adequately Allege that Holmes Homes Used Crystal Lagoons' Trademark or Trade Dress. ................................18

          D.     Crystal Lagoons Fails to Allege that Holmes Homes' Website has Led to any Consumer Confusion ...........................................................19

          E.     Crystal Lagoons Fails to Adequately Allege that Holmes Homes Engaged in False Advertising ...............................................................21

CONCLUSION ...............................................................................................24

Defendant Holmes Homes, Inc., by and through undersigned counsel, hereby submits this motion to dismiss each of the claims asserted against it in Plaintiffs' First Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Holmes Homes agrees with the grounds for dismissing this action that are set forth in the motion to dismiss that was filed by Defendants Desert Color Manager, LLC, Desert Color St. George, LLC, and Pacific Aquascape International, Inc. (Dkt. No. 89) and incorporates the reasoning and arguments set forth in that motion in their entirety pursuant to DUCivR 7-1(a)(4). In this motion, Holmes Homes sets forth additional arguments for dismissal that are founded on the specific allegations (or lack thereof) against Holmes Homes.

## INTRODUCTION AND BACKGROUND

This case arises out of the construction of a man-made lagoon at a residential development in southern Utah named Desert Color (hereinafter the "Desert Color Development"). Plaintiffs Crystal Lagoons U.S. Corp. and Crystal Lagoons Technologies, Inc. (collectively "Crystal Lagoons") allege that, in June 2017, Defendants Desert Color Manager, LLC and Desert Color St. George, LLC (collectively "Desert Color") approached Crystal Lagoons to discuss the possibility of Crystal Lagoons designing and constructing a lagoon at the Desert Color Development and engaged in negotiations to that effect until approximately June 2019. Ultimately, Crystal Lagoons alleges, its negotiations with Desert Color broke down and Desert Color instead hired Defendant Pacific Aquascape International, Inc. ("Pacific Aquascape") to design and construct the lagoon.

Upset that it lost Desert Color as a customer, and apparently believing that it is the only company in the entire world capable of constructing safe and sanitary man-made lagoons, Crystal Lagoons initiated this anticompetitive lawsuit, vaguely alleging that Desert Color and Pacific Aquascape stole its proprietary designs and technology to construct what is now a "knock off" of the superior lagoon that Crystal Lagoons purportedly would have constructed at the Desert Color Development. The amended complaint also alleges that Desert Color improperly used Crystal

Lagoons' intellectual property, engaged in false advertising by misrepresenting that the lagoon constructed by Pacific Aquascape would be safe for swimming, and was unjustly enriched.

Not satisfied with seeking retaliation against Desert Color and Pacific Aquascape, Crystal Lagoons chose to expand the target of its action, asserting each of the claims that it had asserted against Desert Color, except its new claim for patent infringement, against five so-called "Builder Defendants," including Holmes Homes.

Holmes Homes is in the business of constructing and selling residential single-family homes, townhomes, and condominiums across Utah. It is currently one of several home builders that is constructing residences at the Desert Color Development. Holmes Homes is *not* in the business of designing or constructing man-made lagoons. It has had *no involvement* in the design or construction of the lagoon at issue in this case. Nor does Crystal Lagoons allege that it has.

Moreover, beyond its contractual agreement to build homes in the Desert Color Development, Holmes Homes is not affiliated with Desert Color in any way. Holmes Homes and Desert Color have no common ownership. Nor is Holmes Homes a subsidiary, parent, or sister corporation to Desert Color. Desert Color has no right to control any of Holmes Homes' activities, beyond the rights that typical contracting parties have to enforce the terms of their agreements.

Here, Crystal Lagoons' pleadings include virtually no specific allegations regarding Holmes Homes whatsoever. Crystal Lagoons' amended complaint specifically reference Holmes Homes only five times—(1) in the caption; (2) in the introductory paragraph, where Holmes Homes is defined as one of the "Builder Defendants"; (3) in paragraph 7, which includes pro forma allegations for jurisdictional purposes; (4) in paragraph 50, where Crystal Lagoons makes the conclusory assertion, without any supporting factual allegations, that Holmes Homes is an "affiliate" of Desert Color; and (5) in paragraph 96, where Crystal Lagoons alleges that Holmes Homes describes the lagoon at issue in this case on its website, including by using the phrase "caribbean beach-life experience." (*See* First Am. Compl., Dkt. No. 79.) Beyond the reference to

2

Holmes Homes' website, the amended complaint includes *no* allegations regarding Holmes Homes' specific conduct, let alone its conduct relating to the Desert Color Development or the construction of the lagoon at issue in this case.

With respect to Crystal Lagoons' allegations regarding Holmes Homes' use of the phrase "caribbean beach-life experience," Crystal Lagoons does not actually allege that it owns a trademark in that phrase, or in any other words that appear on Holmes Homes' website. (*See generally id.*) Nor has Crystal Lagoons alleged that any content appearing on Holmes Homes' website has caused any consumer confusion regarding the source of the Desert Color lagoon. (*See generally id.*) Accordingly, Crystal Lagoons' new allegations regarding Holmes Homes' website do not support any of the causes of action that have been asserted against Holmes Homes.

Rather than making specific allegations that together state a plausible basis for the claims asserted against Holmes Homes, the amended complaint instead asserts several vague and generalized allegations against undifferentiated groups of Defendants that sometime include Holmes Homes.[1] In most cases, these vague allegations amount to nothing more than a recitation of the elements of the causes of action that Crystal Lagoons has asserted. As such, the amended complaint falls far short of Rule 12(b)(6)'s requirement that it state a plausible claim for relief.

The absence of any specific allegations that Holmes Homes' conduct caused any actual injury to Crystal Lagoons also demonstrates that Crystal Lagoons lacks standing. As a result, the Court lacks subject matter jurisdiction and should dismiss this case on that basis as well.

## STATEMENT OF ALLEGED FACTS

Although, as noted above, specific allegations regarding the conduct of Holmes Homes are nearly absent from Desert Color's amended complaint, Holmes Homes will summarize the more

---

[1]     For example, the amended complaint makes general allegations against the "Builder Defendants," which is defined to include Holmes Homes and three other independent home builders in the Desert Color Development. (*See* First Am. Compl. at Intro., Dkt. No. 79.) And, although it does not define this term, the amended complaint occasionally asserts allegations against Desert Color's "affiliates," which is presumably intended to include Holmes Homes.

generalized allegations that Crystal Lagoons has made against the "Builder Defendants" to put this motion in its proper context. It should be noted that Holmes Homes emphatically disputes several of these allegations, at least to the extent that they are asserted against Holmes Homes, but realizes that for purposes of this motion the Court must assume that they are true.

## I.   Description of the Desert Color Lagoon on Holmes Homes' Website.

The only specific allegation regarding the conduct of Holmes Homes is Crystal Lagoons' allegation, in paragraph 96, that Holmes Homes included the following description of the lagoon at issue in this case on its website:

> Tucked away in the beautiful setting of Southern Utah, your morning view at Desert Color will include vast mountain vistas and kayakers peacefully paddling by in the lake. At the heart of the community, the lake will forever change the way you view St. George living. With only six in the nation, this body of water is bringing a caribbean beach-life experience to the Utah desert. And it's not just a paradise getaway. It's home.

(*See* First Am. Compl. at ¶ 96, Dkt. No. 79.)

Notably, Crystal Lagoons does not allege ownership of any trademarks in any of the words or phrases used on Holmes Homes' website. (*See generally id*.) Nor does it allege that the description quoted in paragraph 96 has resulted in any consumer confusion regarding the source or origin of the Desert Color lagoon or any other matter. (*See generally id*.)

## II.   Generalized Allegations Regarding Holmes Holmes.

Crystal Lagoons' claims against the Builder Defendants are generally premised on three broad allegations. First, that the Builder Defendants are "affiliates" of Desert Color and breached a non-disclosure agreement entered between Crystal Lagoons and Desert Color (hereinafter the "NDA") by disclosing Crystal Lagoons' "Confidential Information" to Pacific Aquascape. Second, that the Builder Defendants used Crystal Lagoons' trademarks and trade dress in violation

of Utah and Federal Law. And third, that the Builder Defendants engaged in false advertising by representing that the lagoon at issue in this action would be "swimmable."

### A.   Disclosure of Crystal Lagoons' Confidential Information.

In or around June 2017, Desert Color and Crystal Lagoons began negotiations regarding the possibility of Crystal Lagoons designing and constructing a man-made lagoon at the Desert Color Development. (*See* First Am. Compl. at ¶ 51, Dkt. No. 79.) In connection with those negotiations, Desert Color and Crystal Lagoons entered a non-disclosure agreement to protect each other's confidential and proprietary information, including intellectual property, ideas, and innovations. (*See id*. at ¶¶ 53-56.) The NDA, which is attached and incorporated into the amended complaint, was signed by Lisa Moore on behalf of Crystal Lagoons US Corp. and Brook Cole on behalf of Desert Color St. George, LLC. (*See id*. at Ex. 3.) It purports to be binding on "the parties, their affiliates, successors, and assigns." (*See id*. at Ex. 3 (¶ 9).)

Although Holmes Homes is not a party to the NDA, and is not referenced at all in the NDA, Crystal Lagoons alleges that Holmes Homes is bound by its terms as an "affiliate" of Desert Color. (*See id*. at ¶¶ 50, 58, and 133-37.) The amended complaint, however, fails to make more than a conclusory assertion that Holmes Homes and the other Builder Defendants are Desert Color's "affiliates." (*Id*. at ¶ 50.) The amended complaint contains no allegations regarding the relationship between Desert Color and the Builder Defendants. (*See generally id*.) It does not allege that Desert Color and the Builder Defendants have any common ownership or that the Builder Defendants are subsidiary, parent, or sister corporations of Desert Color. (*See generally id*.) It does not even allege that Desert Color and the Builder Defendants have a contractual relationship. (*See generally id*.) It simply asserts, without further explanation, that the Builder Defendants, including Holmes Homes, are Desert Color's affiliates. (*Id*. at ¶ 50.)

The amended complaint also fails to allege any facts regarding the mutual understanding of the term "affiliate" by Desert Color and Crystal Lagoons, the parties to the NDA. (*See generally*

*id*.) The NDA itself does not define the term "affiliate." (*See id*. at Ex. 3.) And Crystal Lagoons does not allege that it and Desert Color had any discussions or other communications regarding the intended meaning of that term. (*See generally id*.)

Crystal Lagoons also fails to allege that Holmes Homes, or any of the other Builder Defendants, assumed any obligations under the NDA, understood that they were bound by the NDA, or were even aware of the existence of the NDA. (*See generally id*.) Nor does it allege that Desert Color had authority to bind the Builder Defendants, including Holmes Homes, to the terms of the NDA without their knowledge or consent. (*See generally id*.)

Crystal Lagoons alleges that it shared its Confidential Information during its negotiations with Desert Color, including "concept designs using Crystal Lagoons' trade dress, details of wall edges and beach access, cost information and details about the systems and equipment used in the technology." (*Id*. at ¶ 76.) It also alleges that "technical construction methods" were shared during two visits to lagoons using Crystal Lagoons' purported technology. (*Id*.)

The amended complaint, however, does not allege that this information, or any other "Confidential Information" belonging to Crystal Lagoons, was shared with Holmes Homes or the other Builder Defendants by Crystal Lagoons, Desert Color, or anyone else. (*See generally id*.) Nor does it allege that Holmes Homes or the other Builder Defendants were present at the visits described in paragraph 76. (*See generally id*.)

The amended complaint asserts the conclusory allegation, "upon information and belief," that Desert Color and the Builder Defendants disclosed "designs, plans, technical information and other Confidential Information belonging to Crystal Lagoons to Pacific Aquascape." (*Id*. at ¶ 135.) The body of Crystal Lagoons' amended complaint, however, includes no factual allegations to support that conclusory assertion, at least with respect to the Builder Defendants.

To the contrary, the amended complaint alleges that Pacific Aquascape obtained Crystal Lagoons' proprietary information from Cloward H2O, a non-party to this lawsuit, in connection

with Pacific Aquascape's design and construction of a lagoon in Florida, and from Desert Color.[2] (*See id*. at ¶¶ 79-81.) And it alleges that the information obtained from Cloward H2O "is being used to replicate the same type of lagoon at the Desert Color project." (*Id*. at ¶ 82.)

The amended complaint never alleges facts showing that the Builder Defendants disclosed any of Crystal Lagoons' Confidential Information to Pacific Aquascape or, as discussed above, that the Builder Defendants ever even received such information. (*See generally id*.)

**B.     Use of Crystal Lagoons' Trademarks and Trade Dress.**

Six of Crystal Lagoons' claims against Holmes Homes are premised on the conclusory assertion that the Builder Defendants "used" or "have been using" Crystal Lagoons' valid trademarks and trade dress. (*See id*. at ¶¶ 140, 148-49, 155, 177, 200, and 206.) Crystal Lagoons alleges that it owns the CRYSTAL LAGOONS® mark, but does not allege any other trademark ownership. (*See id*. at ¶¶ 38-39.) The amended complaint, however, is completely devoid of any allegations of any specific use of Crystal Lagoons' trademarks or trade dress by Holmes Homes. (*See generally id*.)

The amended complaint does allege some minimal uses of Crystal Lagoons' trademark by other Defendants, but not Holmes Homes. Examples of these purported uses are set forth in paragraphs 90-95 of the amended complaint. The amended complaint misleadingly asserts that these examples show use of Crystal Lagoons' trademark by the "Builder Defendants," as though each of the Builder Defendants were responsible for the conduct of the others. (*See id*. at ¶ 77.) But none of the examples show any use of the CRYSTAL LAGOONS mark, or any similar mark,

---

[2]     In its original complaint. Crystal Lagoons only alleged that Pacific Aquascape had received Crystal Lagoons' Confidential Information from Cloward H2O. In the amended complaint, however, Crystal Lagoons has added a conclusory assertion that Confidential Information was also provided to Pacific Aquascape by Desert Color. (*See* First Am. Compl. at ¶ 81.) There is no allegation, conclusory or otherwise, that Pacific Aquascape received any information from Holmes Homes or any of the other Builder Defendants.

by Holmes Homes. (*See id*. at ¶¶ 90-95.) And the amended complaint alleges no basis for imputing the actions of other Builder Defendants to Holmes Homes. (*See generally id*.)

The amended complaint also alleges use of Crystal Lagoons' purported trade dress by Desert Color, pointing to a zoning application that allegedly shows a planned water feature that included "nearly all the features of Crystal Lagoons' Trade Dress" and Crystal Lagoons' concept designs registered in Chile. (*Id* at ¶¶ 103-106.) The amended complaint, however, fails to allege facts showing any use of Crystal Lagoons' purported trade dress by Holmes Homes or any of the other Builder Defendants. (*See generally id*.) Nor does it allege that Holmes Homes had any involvement, at all, in making design decisions or constructing the lagoon at issue in this action. (*See generally id*.)

**C.   Safety of the Lagoon at the Desert Color Development.**

Finally, Crystal Lagoons asserts two claims against Holmes Homes for false advertising that are premised, in part, on the conclusory allegation that Desert Color and the Builder Defendants, including Holmes Homes, purportedly misrepresented to regulatory officials that the lagoon would not be used for swimming, while representing to the public that the lagoon would be a swimmable body of water.[3]

 Crystal Lagoons alleges that "Defendants" have not "requested or received the necessary permits for swimming purposes of the lagoon." (*See id*. at ¶¶ 115-18.) Moreover, it alleges that Desert Color has misled relevant regulators by representing that the lagoon at issue would not be used for swimming, exempting it from usual sanitation regulations for public swimming pools and bathing beaches. (*See id*. at ¶¶ 119-20.)

The amended complaint does not allege any facts, however, to show that Holmes Homes had any involvement in the design and construction of the lagoon, any involvement in the

---

[3]   Crystal Lagoons also alleges that Holmes Homes and other Defendants engaged in false advertising through use of Crystal Lagoons' trademark. Details regarding this allegation are discussed in the previous section.

regulatory process for the lagoon, or any obligation, itself, to seek a permit for the lagoon. (*See generally id*.) Nor are there any allegations that Holmes Homes was aware of, or had any influence on or involvement with, Desert Color's communications with regulatory officials regarding the lagoon. (*See generally id*.)

The amended complaint also alleges that "Defendants are advertising and promoting the planned water feature as a swimmable body of water." (*Id*. at 122.) While Crystal Lagoons does not allege any specific advertisement or promotion by Holmes Homes to this effect, the amended complaint does include screenshots from two text message conversations with Holmes Homes' independent contractors that represented that the lagoon would be available for swimming. (*See id*. at ¶ 122 at Figure 24.) The amended complaint does not allege the identity of the contractors whose text messages are reproduced in paragraph 122. (*See id*.) Nor does it allege facts that would show that Holmes Homes is legally responsible for the content of those text messages. (*See generally id*.)

The amended complaint also fails to allege any facts to show that the statements made by Holmes's contractors were disseminated to the public as advertisements or promotions. (*See generally id*.) Or that Crystal Lagoons is a commercial competitor of Holmes Homes. (*See generally id*.)

And, importantly, the amended complaint never alleges that the lagoon at issue has been deemed, or is likely to be deemed, unsafe for swimming. (*See generally id*.) Nor does the amended complaint allege that the lagoon actually *is* unsafe for swimming, or that it will be unsafe for swimming when it is completed and ready for use by Desert Color residents.[4] (*See generally id*.)

---

[4]     Crystal Lagoon alleges that the lagoon in question is still in the process of being constructed. (*See* First Am. Compl. at ¶ 84.)

### III.    Crystal Lagoons' Purported Injuries.

Crystal Lagoons' alleged injuries stem exclusively from the purported use of the CRYSTAL LAGOONS trademark and trade dress by Defendants other than Holmes Homes.

Crystal Lagoons vaguely alleges that its reputation and goodwill has been or will be harmed as a result of having its CRYSTAL LAGOONS trademark and its trade dress associated with the lagoon being constructed at the Desert Color Development. (*See id.* at ¶¶ 88, 100-101, 107, 129.) This conclusory assertion is repeated, without any specific factual support, in nearly all of Crystal Lagoons' causes of action, including its non-trademark infringement claims. (*See id.* at ¶¶ 142, 150, 156, 168, 178, 190, 201, and 208.)

The only other injury alleged in the amended complaint is Crystal Lagoons' vague and conclusory assertion that Defendants' purported false advertising has and will continue to cause a "diversion of sales." (*See id.* at ¶¶ 168, 190.) The amended complaint offers no specific allegations, however, as to what sales have or will be diverted from Crystal Lagoons as a result of Defendants' purported representations that the lagoon at issue is swimmable. (*See generally id.*)

### **ARGUMENT**

### I.    Crystal Lagoons Lacks Article III Standing against Holmes Homes.

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (citing U.S. Const., art. III, § 2). "The doctrine of standing gives meaning to these constitutional limits by identifying those disputes which are appropriately resolved through the judicial process." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (cleaned up). Thus, where there is no standing, the Court lacks Article III jurisdiction and the case must be dismissed. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109-10 (1998) ("Having found that none of the relief sought by respondent would likely remedy its alleged injury in fact, we must conclude that respondent lacks standing to maintain this suit, and that we and the lower courts lack jurisdiction to entertain it.").

"The party invoking federal jurisdiction bears the burden of establishing standing." *Susan B. Anthony List*, 573 U.S. at 158 (cleaned up). Moreover, a "plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (citation omitted); *Am. Humanist Ass'n, Inc. v. Douglas Cty. Sch. Dist. RE-1*, 859 F.3d 1243, 1250 (10th Cir. 2017) ("Each plaintiff must have standing to seek each form of relief in each claim.").

To establish standing, a plaintiff must prove three elements: (1) that it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of such that the injury is "fairly traceable to the challenged action of the defendant"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61 (cleaned up).

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Kansas Nat. Res. Coal. v. United States Dept. of Interior*, 971 F.3d 1222, 1231 (10th Cir. 2020) (quoting *Lujan*, 504 U.S. at 561). "However, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (cleaned up). And "[i]t is a long-settled principle that standing cannot be inferred argumentatively from the party's averments, but rather must affirmatively appear in the record." *Am. Forest & Paper Ass'n v. United States Env't Prot. Agency*, 154 F.3d 1155, 1159 (10th Cir. 1998).

Here, Crystal Lagoons fails to allege Article III standing because it has not alleged facts to show that its purported injuries are "fairly traceable to the challenged action of [Holmes Homes]."

As noted above, Crystal Lagoons alleges that it has and will continue to experience reputational harm as a result of the purported use of the CRYSTAL LAGOONS trademark and its trade dress in connection with the lagoon being constructed at the Desert Color Development. (*See* First Am. Compl. at ¶¶ 88, 100-101, 107, 129.) Crystal Lagoons also alleges, in a vague and

11

conclusory manner, that Defendants' purported use of its trademarks and representations that the lagoon in question is swimmable have caused a "diversion of sales." (*See id*. at ¶¶ 168, 190.)

Even assuming for the sake of argument that Crystal Lagoons' allegations demonstrate that these purported harms constitute a concrete and personalized "injury-in-fact," Crystal Lagoons must also allege that a causal connection exists between its injuries and the purported conduct of Holmes Homes to sustain its invocation of federal standing.

Crystal Lagoons has failed to allege such a causal connection. Indeed, as discussed above, Crystal Lagoons' amended complaint is virtually devoid of any specific allegations regarding the conduct of Holmes Homes at all. (*See generally id*.) There is no allegation that Holmes Homes used the CRYSTAL LAGOONS trademark or Crystal Lagoons' trade dress. (*See generally id*.) Nor is there any allegation that Holmes Homes received or distributed any of Crystal Lagoons' Confidential Information or that Holmes Homes had any involvement, whatsoever, in the design and construction of the lagoon in question. (*See generally id*.)

The closest the amended complaint comes to alleging any actual conduct on the part of Holmes Homes is its quotation of a single paragraph from Holmes Homes' website and its inclusion of two screenshots of text messages from Holmes Homes' independent contractors representing that the lagoon at issue would be swimmable. (*See id*. at ¶ 122 at Figure 24.)

The amended complaint fails to allege any injury to Crystal Lagoons' stemming from any of the content on Holmes Homes' website. It does not allege that Holmes Homes' website has led to any consumer confusion regarding the source or origin of the Desert Color lagoon. (*See generally id*.) Nor does it allege that any sales have been diverted from Crystal Lagoon as a result of anything that appears on Holmes Homes' website. (*See generally id*.)

With respect to the text messages, the amended complaint fails to include any specific allegations regarding the source of the text messages. (*See id*.) Nor does it allege facts sufficient to demonstrate that the sales agents' statements can be imputed to Holmes Homes. (*See id*.)

Moreover, even if the sales agents' representations could be imputed to Holmes Homes, those statements, by themselves, are not sufficient to demonstrate the existence of a causal connection between Holmes Homes' purported conduct and Crystal Lagoons' alleged injuries. To the extent statements about the lagoon at issue being swimmable could plausibly cause Crystal Lagoons' any injury at all, which is doubtful, it would only be the result of Crystal Lagoons' purported association with the lagoon at the Desert Color Development. And, as the amended complaint itself alleges, that purported association was caused by the alleged use of Crystal Lagoons' trademark and trade dress by other Defendants. But, again, the amended complaint does not allege any use of Crystal Lagoons' trademarks or trade dress by Holmes Homes. Accordingly, allegations regarding the purported representations about the lagoon being safe to swim in are not sufficient to demonstrate that Holmes Homes caused Crystal Lagoons any injury.

Because Crystal Lagoons has failed to allege that Holmes Homes' conduct caused it any injury, Crystal Lagoons lacks Article III standing and its claims against Holmes Homes should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## II.     The Amended Complaint's Generalized and Conclusory Allegations Fail to State a Claim for Relief on any of Crystal Lagoons' Causes of Action against Holmes Homes.

It is now well-established that, under Rule 8(a) of the Federal Rules of Civil Procedure, an complaint filed in federal court "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, a plaintiff "must offer *specific factual allegations* to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (citing *Twombly*, 550 U.S. at 555) (emphasis added). The facts alleged must "give the defendant fair notice of what the claim is and the grounds upon which it rests, raise a right to relief above the speculative level, and raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 555-56 (cleaned up). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677.

While a court must accept a plaintiff's factual allegations as true when considering a motion to dismiss brought under Rule 12(b)(6), that tenet does not apply to conclusory assertions. *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a valid claim for relief. *See Iqbal*, 556 U.S. at 677. Such conclusory assertions can, and should, be disregarded by this Court when evaluating the sufficiency of Crystal Lagoons' amended complaint here. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) ("[I]n ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable.").

As will be demonstrated herein, Crystal Lagoons' amended complaint is filled with the types of generalized and conclusory assertions that are not sufficient under federal pleading standards. They do not provide Holmes Homes with sufficient notice to be able to defend itself against the serious claims that have been asserted in the amended complaint. Nor do they show that Crystal Lagoons has a plausible chance of succeeding on the merits of its claims. It is evident from the conclusory nature of Crystal Lagoons' assertions that its claims do not rise above the speculative level. Thus, Crystal Lagoons should not be permitted to use the powerful tools of federal discovery to engage in a fishing expedition for the purpose of drumming up evidence for claims that it does not currently have sufficient knowledge to support.[5]

---

[5]    Another serious problem with the nature of Crystal Lagoons' allegations is its habit of alleging facts against all Defendants, or the five "Builder Defendants," generally. This Court addressed a similar problem in *Warnick v. Cooley*, No. 2:14-cv-00486-JNP-PMW, 2017 WL 1184017 at *7 (D. Utah Mar. 229, 2017) (unpublished). In *Warnick*, the Court held that the plaintiff failed to state a claim for relief where he stated "in conclusory fashion that all of the County Defendants violated his constitutional rights," but failed to "differentiate[] between any of the

### A.   Crystal Lagoons Fails to Adequately Allege that Holmes Homes Is Bound by the NDA.

In its first cause of action, Crystal Lagoons alleges that Holmes Homes is liable for breaching the NDA. Crystal Lagoons fails to allege specific facts, however, to demonstrate that Holmes Homes is bound by the NDA.

Under New York law,[6] "[i]t is well settled that a nonparty to a contract cannot be named as a defendant in a breach of contract action unless the nonparty assumed the obligations under the agreement." *N.F. Gozo Corp. v. Kiselman*, 960 N.Y.S.2d 846, 848 (N.Y. App. Term 2012) (citing *Bartsch v. Bartsch*, 388 N.Y.S.2d 347, 348 (N.Y. App. Div. 1976)). This is true even where a party may have been an intended third-party beneficiary of the agreement. *Id.* ("While the status of an intended third-party beneficiary gives that individual a right to sue on a contract to which that individual is not a party, this status does not confer upon one of the parties to the agreement the right to sue the third-party beneficiary.").

Here, Crystal Lagoons has not made any specific allegations to show that Holmes Homes was a party to the NDA or that Holmes Homes assumed any obligations under the NDA. Indeed, the NDA, which is attached to the Amended complaint and therefore can be considered in this motion to dismiss, suggests the opposite. The NDA was not signed by Holmes Homes. (*See* First

County Defendants." *Id.* Instead, the amended complaint "simply allege[d] without elaboration that ***each and every defendant was somehow involved in each and every alleged deprivation***." *Id.* (emphasis added). The amended complaint was therefore deficient because it failed to "make clear exactly who is alleged to have done what to whom." *Id.* (citation omitted). As a result, the individual defendants were not provided with "fair notice as to the basis of the claims against him or her." *Id.* (citation omitted). As discussed elsewhere herein, Crystal Lagoons' amended complaint is replete with similar kinds of assertions against Defendants, or the "Builder Defendants" generally. Such allegations do not give Holmes Homes sufficient notice of what it is alleged to have actually done.

[6] The NDA provides that the "construction, validity and performance of this Agreement shall be governed by the laws of State of New York, except with regard to its conflict of law principles." (*See* First Am. Compl. at Ex. 3 (¶ 10).) For purposes of this motion, the Court may assume that this choice of law provision is enforceable and applicable to Crystal Lagoons' breach of contract claim against Holmes Homes.

Am. Compl. at Ex. 3.) Nor does the NDA make any specific reference to Holmes Homes. (*See id*.) Crystal Lagoons has made no specific allegation to show that Holmes Homes was even aware that the NDA existed prior to this action, let alone that it manifested its assent to be bound by the NDA's terms or assumed any obligations under it. And Crystal Lagoons has made no allegations to demonstrate that Desert Color had authority to bind Holmes Homes to the terms of the NDA without Holmes Homes' knowledge or consent.

Rather than alleging facts sufficient to demonstrate that Holmes Homes is a party to the NDA, or assumed its obligation, Crystal Lagoons appears to rely on the NDA's assertion that it "will be binding on the parties, their ***affiliates***, successors, and assigns." (First Am. Compl. at Ex. 3 (¶ 9) (emphasis added).) Crystal Lagoons alleges, in a conclusory manner and without any specific factual support, that Holmes Homes is an "affiliate" of Desert Color and, although it does not clearly allege it anywhere in the amended complaint, implies that Holmes Homes is bound by the NDA as a result of that "affiliate" relationship. (*See id*. at ¶ 113.)

Even assuming that the NDA's assertion that it is binding on Desert Color's affiliates is enforceable, despite the fact that Holmes Homes is not a party to the NDA and did not voluntarily assume its obligations, Crystal Lagoons' "affiliate" theory would still fail as a matter of law because the amended complaint alleges no specific facts to demonstrate that Holmes Homes actually is an "affiliate" of Desert Color. (*See generally id*.)

The NDA does not specifically define the term "affiliate." (*See id*. at Ex. 3.) And the Amended complaint does not allege any facts to demonstrate that Crystal Lagoons and Desert Color intended the meaning of "affiliate" to mean something different than its standard legal meaning. Accordingly, when determining whether Crystal Lagoons has alleged facts sufficient to show that Holmes Homes is an "affiliate" for purposes of the NDA, the Court should apply the standard legal meaning of that term. *See Nat'l Union Fire Ins. Co. of Pittsburg v. Beelman Truck Co.*, 203 F. Supp. 3d 312- 319-20 (S.D.N.Y. 2016) (adopting definition of "affiliate" consistent

with Black's Law Dictionary where contract did not define term and there was no evidence that the parties intended an alternative meaning).

The standard legal meaning of "affiliate," as set forth in Black's Law Dictionary, is "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." AFFILIATE, Black's Law Dictionary (11th ed. 2019).

Crystal Lagoons has not alleged any facts to show that Holmes Homes is related to Desert Color "by shareholdings or other means of control." Nor has it alleged facts sufficient to show that Holmes Homes is a "subsidiary, parent, or sibling corporation" of Desert Color. Accordingly, the Court should conclude that Crystal Lagoons has failed to allege facts sufficient to demonstrate that Holmes Homes is an "affiliate" of Desert Color and that Holmes Homes, therefore, is not bound by the terms of the NDA. On that basis, the Court should dismiss Crystal Lagoons' first cause of action against Holmes Homes.

### B.   Crystal Lagoons Fails to Adequately Allege that Holmes Homes Received or Distributed Crystal Lagoons' Confidential Information.

Crystal Lagoons breach of contract claim is also premised, in part, on the conclusory allegation that Holmes Homes disclosed Crystal Lagoons' Confidential Information to Defendant Pacific Aquascape. (*See* First Am. Compl. at ¶ 135.) Crystal Lagoons' eighth cause of action for unjust enrichment is also based on this purported distribution of Crystal Lagoons' Confidential Information by Holmes Homes (*See id*. at ¶¶ 195-97.)

The amended complaint, however, contains no specific allegations to show that Holmes Homes ever received any Confidential Information belonging to Crystal Lagoons, let alone that it distributed such information to Pacific Aquascape. (*See generally id*.) Without any specific allegations showing that Holmes Homes received or distributed Crystal Lagoons' Confidential Information, the amended complaint fails to state a plausible claim for breach of contract or unjust enrichment. Accordingly, Crystal Lagoons first cause of action for breach of contract, to the extent

it is based on disclosure of Confidential Information, and its eight cause of action in its entirety should be dismissed pursuant to Rule 12(b)(6).

### C.   Crystal Lagoons Fails to Adequately Allege that Holmes Homes Used Crystal Lagoons' Trademark or Trade Dress.

The amended complaint also asserts nine causes of action[7] against Holmes Homes that are premised on the allegation that Holmes Homes improperly used Crystal Lagoons' CRYSTAL LAGOONS® trademark[8] and/or Crystal Lagoons' trade dress. (*See* First Am. Compl. at ¶¶ 135, 140, 148, 155, 161, 177, 182, 200, and 206.)

The amended complaint, however, contains no specific allegations to show that Holmes Homes has ever used the CRYSTAL LAGOONS® mark and/or Crystal Lagoons' trade dress in any context. (*See generally id.*) Without any specific allegations showing that Holmes Homes used

---

[7]      The only claim that is not based, at least in part, on the allegation that Holmes Homes used Crystal Lagoons' trademark and trade dress is Crystal Lagoons' eighth cause of action for unjust enrichment (*see* First Am. Compl. at ¶¶ 194-97), which, as discussed above, should be dismissed because Crystal Lagoons failed to allege any specific facts to show that Holmes Homes received or distributed Crystal Lagoons' Confidential Information.

[8]      In its reply in support of its motion for a preliminary injunction, Crystal Lagoons suggests that it owns a trademark in the phrase "Caribbean beach-life experience" or some other portion of the quotation from Holmes Homes' website that appears in paragraph 96 of the amended complaint. (*See* Reply Supp. Mot. for Prelim. Inj. at 11, Dkt. No. 73.) Crystal Lagoons' amended complaint, however, does not allege ownership of a trademark, either registered or unregistered, in any portion of the contents of Holmes Homes' website, including the phrase "Caribbean beach-life experience." (*See generally* First Am. Compl., Dkt. No. 79.) Accordingly, Crystal Lagoons' allegations regarding Holmes Homes' website cannot provide a basis for stating a claim against Holmes Homes for trademark infringement. Nevertheless, even if Crystal Lagoons *had* alleged that it owned a trademark in the phrase "Caribbean beach-life experience," or any derivative thereof, those allegations would fail to state a claim for relief against Holmes Homes because the amended complaint also fails to allege facts sufficient to show that Crystal Lagoons has ever used the phrase "Caribbean beach-life experience" or that this descriptive phrase has acquired any secondary meaning that would associate it with Crystal Lagoons. (*See generally id.*) The deficiencies in Crystal Lagoons' suggestion that it owns a trademark in the phrase "Caribbean beach-life experience" are set forth, in detail, in Holmes Homes' surreply opposing preliminary injunction, which is incorporated herein by reference. (*See* Surreply Opp. Mot. for Prelim. Inj., Dkt. No. 86.)

18

Crystal Lagoons' trademark or trade dress, the amended complaint fails to state a plausible claim for breach of contract, trademark infringement, trademark dilution, trade dress infringement, unfair competition, or false advertising to the extent those claims are based on allegations of trademark or trade dress infringement. Accordingly, Crystal Lagoons first, second, third, fourth, fifth, sixth, seventh, ninth, and tenth causes of action should be dismissed pursuant to Rule 12(b)(6).

### D.   Crystal Lagoons Fails to Allege that Holmes Homes' Website has Led to Any Consumer Confusion.

Two of Crystal Lagoons causes of action—its claims for false advertising under the Lanham Act and for common law unfair competition—might also be construed to allege that Holmes Homes is liable for statements on its website that, while not constituting trademark infringement, are purportedly misleading regarding the source or origin of the Desert Color lagoon. (*See* First Am. Compl. at ¶¶ 161, 206.) Neither cause of action, however, states a valid claim for relief against Holmes Homes on this basis.

Crystal Lagoons' federal false advertising claim against Holmes Homes is brought pursuant to 15 U.S.C. § 1125(a)(1)(A).[9] In order to state a claim under section 1125(a)(1)(A), Crystal Lagoons must allege, among other things, that Holmes Homes made a representation that "is likely to cause confusion, or to cause mistake, or to deceive" consumers regarding the source or origin of the Desert Color lagoon. Similarly, the Utah Supreme Court has held that, to establish a claim for common law unfair competition, a plaintiff must prove that a defendant's representations have caused, or are likely to cause, confusion or deception. *See Overstock.com,*

---

[9]   Crystal Lagoons' federal false advertising claim, at least to the extent it is premised on allegations regarding the content of Holmes Homes' website, could not be brought under 15 U.S.C. § 1125(a)(1)(B) because that provision only applies to representation regarding the "nature, characteristics, qualities, or *geographic origin*" of a good or service. (Emphasis added). Because Crystal Lagoons' claim is premised on allegations regarding Holmes Homes' purported representations regarding the *source* of the Desert Color lagoon, and not its *geographic origin*, section 1125(a)(1)(B) is not applicable. Accordingly, the claim must be construed as being brought under section 1125(a)(1)(A), which, as discussed above, requires proof of a likelihood of confusion, mistake, or deception.

*Inc v. SmartBargains, Inc.*, 2008 UT 55, ¶ 13, 192 P.3d 858 (affirming summary judgment where there was no evidence that advertisements were deceptive or likely to cause confusion).

Here, Crystal Lagoons' amended complaint does not include any allegation, conclusory or otherwise, that anything appearing on Holmes Homes' website has deceived or confused, or is likely to deceive or confuse, consumers regarding the source of the Desert Color lagoon. (*See generally* First Am. Compl., Dkt. No. 79.) Without such allegations, Crystal Lagoons' federal false advertising and common law unfair competition causes of action fail to state a claim against Holmes Homes and should be dismissed.

Furthermore, Crystal Lagoons has failed to allege specific facts that are sufficient to show that anything appearing on Holmes Homes' website is actually false or misleading. Crystal Lagoons is likely to argue that Holmes Homes' reference to six other similar "lakes,"[10] and its use of the phrase "caribbean beach-life experience" may mislead unsuspecting consumers into believing that the lagoon at Desert Color was designed and constructed by Crystal Lagoons. (*See id.* at ¶ 97.) But Holmes Homes' reference to the number of similar bodies of water in the United States is simply a statement of fact. Crystal Lagoons has not alleged any facts to demonstrate that even a single consumer would infer that the Desert Color lagoon was designed and constructed by Crystal Lagoons based solely on Holmes Homes' representation that there are six other similar bodies of water in the nation. (*See generally id.*)

Moreover, Crystal Lagoons has failed to allege facts that would show that consumers associate the phrase "Caribbean beach-life experience" with Crystal Lagoons. (*See generally id.*) It self-servingly asserts, in a conclusory manner, that it "often advertised the Caribbean-beach-life experience," (*id.* at ¶ 97), but it does not allege a single instance where it has actually used the phrase or anything similar to it (*see generally id.*). And it never alleges that the descriptive phrase

---

[10]    Notably, Holmes Homes' website does not even use the word "lagoon." (*See* First Am. Compl. at ¶ 96, Dkt. No. 79.)

"Caribbean beach-life experience" has acquired a secondary meaning, associated with Crystal Lagoons, in the minds of consumers. (*See generally id.*)

It is simply implausible, based on the allegations actually asserted, to conclude that any consumer would be misled into believing that the Desert Color lagoon was designed or constructed by Crystal Lagoons by anything appearing on Holmes Homes' website. Accordingly, Crystal Lagoons fails to state a claim based on its allegation that Holmes Homes' website attempts to "pass off" the Desert Color lagoon as one originating from Crystal Lagoons, and its claims for federal false advertising and common law unfair competition should be dismissed.

### E.     Crystal Lagoons Fails to Adequately Allege False Advertising.

Finally, Crystal Lagoons asserts two causes of action for alleged false advertising based on alleged representations that the Desert Color lagoon will be swimmable. Crystal Lagoons' fifth cause of action alleges that Holmes Homes engaged in false advertising in violation of the federal Landham Act. (*See* First Am. Compl. at ¶¶ 161-73.) And Crystal Lagoons' seventh cause of action alleges that Holmes Homes violated the Utah Truth in Advertising Act. (*See id.* at ¶¶ 182-93.) Both of these claims are premised, in part, on allegations that Holmes Homes misrepresented to regulatory authorities that the lagoon at issue would not be used for swimming, while representing to the public that the lagoon would be swimmable. (*See id.* at ¶¶ 162, 183.)

The amended complaint, however, fails to assert any specific factual allegations to demonstrate that Holmes Homes made any representations to any regulators, or had any involvement in Desert Color's or any other parties' communications with regulators, regarding the intended use of the lagoon at the Desert Color Development. Thus, to the extent such communications are actionable under federal and state false advertising statutes, which is doubtful, they cannot provide a basis for stating a claim against Holmes Homes.

That leaves Crystal Lagoons' allegation that Holmes Homes engaged in false advertising by representing to potential customers that the lagoon at issue would be swimmable. The amended complaint falls short with respect to this allegation as well.

Indeed, the amended complaint never actually alleges, with specific facts, that Holmes Homes made any representations regarding the safety of the lagoon for swimming. (*See generally id*.) Instead, as is the case throughout the amended complaint, Crystal Lagoons generally alleges that the "Defendants are advertising and promoting the planned water feature as a swimmable body of water" without specifically identifying which Defendant said what to whom. (*See id*. at ¶ 122). The amended complaint then includes a series of screenshots of text message conversations from unidentified participants discussing the lagoon. (*See id*.) Although the amended complaint does not allege the specific identity of the people that sent these text messages, two of the text message strings, included in Figure 24, include messages sent by two of Holmes Homes' independent contractors. (*See id*.) In one message, the contractor said that the lagoon was "built for swimming," and in the other, the contractor stated, with respect to the lagoon, that "you will be able to swim in it." (*See id*.) Crystal Lagoons has alleged no facts to demonstrate that the statements of these independent contractors can be imputed to Holmes Homes for purposes of the false advertising claims. (*See generally id*.) Nor does it allege facts sufficient to show that Holmes Homes can be held vicariously liable for the statements of these contractors. *See L-3 Commc'ns Corp. v. Jaxon Eng'g and Maint., Inc.*, 863 F. Supp. 2d 1066, 1085 (D. Colo. 2012) ("L3's Lanham Act claims against the various employees of Jaxon must stand or fall based on the extent to which the Amended complaint alleges sufficient facts to show that these employees acted as agents of Jaxon in bringing about the alleged false advertising.").

Moreover, the amended complaint does not allege specific facts sufficient to show that the statements of these two contractors constitute "commercial advertising or promotion" for purposes of the Lanham Act. 15 U.S.C.A. § 1125(a)(1)(B) provides a private right of action against anyone

22

who, through "***commercial advertising or promotion***, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." (Emphasis added). The statute does not define the terms "advertising" or "promotion," but the Tenth Circuit has adopted a four-part test for determining whether certain commercial speech falls within the scope of the Lanham Act's protections. *See Strauss v. Angie's List, Inc.*, 951 F.3d 1263, 1267 (10th Cir. 2020). To constitute "commercial advertising or promotion" for purposes of Section 1125(a), a statement must be "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; and (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Id.* (cleaned up).

Here, Crystal Lagoons has failed to allege facts sufficient to establish the second or fourth elements of the test outlined in *Strauss*. With respect to the second element, Crystal Lagoons does not allege that it is in commercial competition with Holmes Homes. (*See generally* First Am. Compl.) Holmes Homes is a home builder, while Crystal Lagoons is purportedly the designer and builder of man-made swimming lagoons. (*See id.* at ¶¶ 14, 84.) Because the amended complaint does not specifically allege that Holmes Homes and Crystal Lagoons are commercial competitors, Crystal Lagoons' false advertising claim fails as a matter of law. *See Strauss*, 951 F.3d at 1268-69 (upholding four-part test that required showing that plaintiff and defendant are competitors).

With respect to the fourth element, Crystal Lagoons does not allege that any statements that can be imputed to Holmes Homes were "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within [the] industry." *See id.* at 1267. Under this prong, courts have held that only statements that are "part of an organized campaign to penetrate the market" fall within the scope of Section 1125(a) of the Lanham Act. *See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002). Thus, individual communications with particular customers do not qualify as "commercial advertising or

promotion." *See, e.g.*, *Boltex Mfg. Co., L.P. v. Galperti, Inc.*, 827 F. App'x 401, 406 n.2 (5th Cir. 2020) (emails sent to two customers were not sufficiently disseminated to qualify as "commercial advertising or promotion" for purposes of the Lanham Act).

Even if it is assumed that the representations of Holmes Homes' contractors can be imputed to Holmes Homes, they do not qualify as "commercial advertising or promotion" for purposes of the Lanham Act because there is no allegation that they were disseminated widely to the public as part of an organized campaign. Thus, the Lanham Act's false advertising provisions do not apply and Crystal Lagoons' false advertising claim should be dismissed.

Finally, and perhaps most significantly, the amended complaint also fails to allege that the statements identified in Figure 24 of the Amended complaint constitute misrepresentations. Despite its lengthy discussion of Crystal Lagoons' purported safety record, the amended complaint contains no specific allegation that the lagoon at the Desert Color Development has been deemed, or will be deemed, unsafe to swim in by regulatory authorities. (*See generally* First Am. Compl.) Nor does it allege that the lagoon is, or will be when it is completed, unsafe to swim in. (*See id.*) And there is no allegation that swimming in the lagoon will not be permitted. (*See id.*) Without such allegations, Crystal Lagoons has failed to state a plausible claim for false advertising and its fifth and seventh causes of action should be dismissed.

<u>**CONCLUSION**</u>

For the reasons stated herein, Holmes Homes respectfully requests that the Court dismiss Crystal Lagoons' amended complaint, to the extent it asserts claims against Holmes Homes, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

**DATED:**       February 16, 2021.

                          **ANDERSON & KARRENBERG**

                          */s/ Jason E. Greene*
                          Jason E. Greene
                          Samantha E. Hawe
                          ***Attorney for Defendant Holmes Homes***

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of February, 2021, I caused a true and correct copy of the foregoing **MOTION TO DISMISS FIRST AMENDED COMPLAINT** to be served via the court's electronic notification system to the following:

Stephen M. Sansom
Brandon T. Christensen
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101
smsansom@hollandandhart.com
btchristensen@hollandandhart.com
*Attorneys for Plaintiffs*

Anthon R. Zeuli
Thomas Johnson
Joseph Dubis
MERCHANT GOULD, P.C.
2200 Fifth Street Towers
150 South Fifth Street
Minneapolis, MN 55402
tzeuli@merchantgould.com
tjohnson@merchantgould.com
jdubis@merchantgould.com
*Attorneys for Plaintiffs*

Barry N. Johnson
Jared L. Inouye
BENNETT FUELLER JOHNSON & DEERE
3165 East Millrock Drive, Suite 500
Salt Lake City, UT 84121
bjohnson@btjd.com
jinouye@btjd.com
*Attorneys for Defendant Cole West Home, LLC*

Jared Braithwaite
MASCHOFF BRENNAN
111 South Main Street, Suite 600
Salt Lake City, UT 84111
jbraithwaite@mabr.com
*Attorney for Defendants Desert Color St. George, LLC; Desert Color Manager, LLC; and Pacific Aquascape International, Inc.*

R. Parrish Freeman
MASCHOFF BRENNAN
1389 Center Drive, Suite 300
Park City, UT 84098
pfreeman@mabr.com
*Attorney for Defendants Desert Color St. George, LLC; Desert Color Manager, LLC; and Pacific Aquascape International, Inc.*

M. Eric Olmstead
BARNEY MCKENNA & OLMSTEAD, P.C.
43 South 100 East, Suite 300
St. George, UT 84770
eric@bmo.law
*Attorneys for Defendant AJ Construction, Inc.*

Curtis M. Jensen
Jeffrey R. Miles
SNOW JENSEN & REECE, P.C.
Tonaquint Business Park
912 West 1600 South, Suite B-200
St. George, UT 84770
cjensen@snowjensen.com
jmiles@snowjensen.com
*Attorneys for Defendant Tri-State Ventures,*
*LLC dba Carefree Homes - Utah*

*/s/ Rachel L. Dodge*