Stephen M. Sansom (#10678)
Brandon T. Christensen (#16420)
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101
Tel: (801) 799-5897
*smsansom@hollandhart.com*
*btchristensen@hollandhart.com*

Anthony R. Zeuli (*Admitted Pro Hac Vice*)
Thomas Johnson (*Admitted Pro Hac Vice*)
Joseph Dubis (*Admitted Pro Hac Vice*)
MERCHANT GOULD P.C.
2200 Fifth Street Towers
150 South Fifth Street
Minneapolis, MN 55402-4247
Tel: (612) 332-5300
*tzeuli@merchantgould.com*
*tjohnson@merchantgould.com*
*jdubis@merchantgould.com*

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## SOUTHERN REGION OF THE CENTRAL DIVISION

| | |
|---|---|
| CRYSTAL LAGOONS U.S. CORP. AND CRYSTAL LAGOONS TECHNOLOGIES INC., <br><br> Plaintiffs, <br><br> vs. <br><br> DESERT COLOR MANAGER LLC, DESERT COLOR ST. GEORGE LLC, AJ CONSTRUCTION, INC., COLE WEST HOME LLC, HOLMES HOMES, INC., SULLIVAN HOMES LLC, and PACIFIC AQUASCAPE INTERNATIONAL, INC., <br><br> Defendants | **(PROPOSED) JOINT PRELIMINARY INJUNCTION PRETRIAL ORDER** <br><br><br> Case No. 2:20-cv-00851-BSJ <br><br> Judge Bruce S. Jenkins <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Crystal Lagoons U.S. Corp. and Crystal Lagoons Technologies Inc. ("Crystal Lagoons") and Defendants Desert Color Manager LLC, Desert Color St. George LLC (collectively "Desert Color"), Cole West Home LLC ("Cole West"), Holmes Homes, Inc. ("Holmes Homes"), (collectively the "Builder Defendants"), and Pacific Aquascape International, Inc. ("Pacific Aquascape") (collectively "Defendants") submit the following proposed Joint Pretrial Order:

**I.      General nature of the parties' claims.**

      **A.      Plaintiffs' brief statement of the case.**

            **1.      <u>Background of the Parties.</u>**

Crystal Lagoons' founder, Fernando Fischmann, is the inventor of a new worldwide industry: man-made, multi-acre lagoons for swimming and watersports with color, transparency, and cleanness similar to tropical seas or swimming pools. However, these lagoons are not traditional swimming pools. They are the centerpieces of developments, towns, and cities centered around swimming and watersports. Crystal Lagoons' brand is known worldwide for these one-of-a-kind recreational bodies of water and its technology's intellectual property has been valued in excess of $3 billion.

In June 2017, Desert Color contacted Crystal Lagoons seeking to use its proprietary technology to build a multi-acre, man-made lagoon in St. George, Utah. A non-disclosure agreement was signed between the parties prohibiting Defendants' unauthorized use of Crystal Lagoons' Confidential Information, proprietary Technology, and Crystal Lagoons' name and trademarks. After more than 18 months of working together, exchanging information such as concepts designs, construction details, cost information, details about systems and equipment

used in the technology, and participating in several site visits to Crystal Lagoons' other projects where detailed technical construction methods and information were shared, Defendant Desert Color broke off discussions telling Crystal Lagoons that the Desert Color was not going forward with a lagoon. However, Crystal Lagoons discovered in summer 2020 that Desert Color had not only moved forward with the lagoon project, but did so using Crystal Lagoons' Confidential Information, Technology, name and trademarks.  This lawsuit and motion for preliminary injunction followed.

Defendants have been holding out their lagoon as being affiliated with or designed by Crystal Lagoons. Defendants are also telling the public that their lagoon is safe for swimming and permitted for such purpose, as would be the case with an authentic CRYSTAL LAGOONS® amenity. However, no such permits for the lagoon at Desert Color have been acquired and no health authority is regulating such lagoon. There is significant risk that unless stopped, the public will be harmed.

### Crystal Lagoons' founder invents multi-acre, man-made lagoons with color and transparency similar to tropical seas.

Crystal Lagoons is the owner of proprietary and patented technology to build and maintain multi-acre, man-made lagoons with high transparency and excellent water quality at low costs. Inventor Fernando Fischmann, a real estate developer and biochemist who founded Crystal Lagoons, grew up in Chile and began a real estate development on Chile's central coast. The development had fantastic views of the sea but was unattractive for use due to cold-water temperatures. Mr. Fischmann envisioned an enormous man-made lagoon with clear, turquoise water to provide a safe way to swim and enjoy watersports. Such technology did not exist anywhere in the world.

3

Mr. Fischmann has spent more than twenty years researching and perfecting numerous technologies for the construction and operation of large water bodies with high transparency and excellent water quality at low costs. As an example, Mr. Fischmann spent over seven years researching and developing a technology to build a low-cost structure that included the use of a plastic liner, instead of a complete concrete shell, installed directly over soil or compacted sand to contain the large water body and several technical features that had never been used in crystal clear bodies of water of such large sizes. Additionally, Mr. Fischmann has developed several technologies and systems that allow constructing and operating large water bodies at low costs, such as water treatment methods and technologies, localized disinfection systems, efficient filtration systems, and bottom cleaning devices and systems, among others.

Mr. Fischmann first used the Crystal Lagoons' technology to construct a lagoon at San Alfonso del Mar, Chile, in 2006.



**AERIAL VIEW OF SAN ALFONSO DEL MAR (20 ACRES)**



(Exhibit 1.)

Crystal Lagoons created an entire industry that previously did not exist. Since introducing the lagoon at San Alfonso del Mar in 2006, Crystal Lagoons has established itself as the exclusive provider of the technology for designing, building and operating man-made, multi-acre lagoons for recreational use. Crystal Lagoons has amassed over 2,000 patents in 190 countries. (Dkt. 1, ¶24.) The U.S. Patent & Trademark Office has also issued six trademark registrations for the CRYSTAL LAGOONS mark.  Crystal Lagoons is responsible for more than 60 projects already in operation and in construction, and more than 1,000 projects in planning and negotiation stages worldwide. (*Id.*, ¶25.) In the United States, there are six operational lagoons, including in Texas and Florida, among many other projects under construction and signed:

**PHOTOGRAPH OF LAGO MAR PROJECT, TEXAS (12 ACRES)**



(Exhibit 2.)

**PHOTOGRAPH OF BALMORAL PROJECT, TEXAS (2 ACRES)**



(Exhibit 3.)

**PHOTOGRAPH OF WINDSONG RANCH PROJECT, TEXAS (5 ACRES)**



(Exhibit 4.)

### 2.   Litigation between the Plaintiffs and the Defendants

On December 3, 2020, Plaintiffs sued for breach of the non-disclosure agreement (NDA); trademark and trade dress infringement, unfair competition, and false advertising arising under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*; violations of the Utah Truth in Advertising Act, UT Code §§ 13-11a-1, *et seq.*; and common law conversion and unjust enrichment. On February 2, 2021, Plaintiff filed an amended complaint adding a claim for patent infringement arising under the Patent Act, 35 U.S.C., §§ 101, *et seq.*

### 3.   Preliminary Injunction

Plaintiffs also filed a motion for a preliminary injunction to prevent the use of a lagoon that has been marketed and sold as affiliated with Crystal Lagoons' technology, without the proper health permits, and that can result in health issues and fatal sanitary accidents and cause irreparable harm to the public and Crystal Lagoons.  Defendants are telling the public that their lagoon is a "Crystal Lagoon," safe for swimming and permitted for such purpose. However, Desert Color's lagoon is not affiliated with Crystal Lagoons and is not being regulated by any public health agency. Consequently, there is significant risk that unless stopped, the public will be harmed and that Crystal Lagoons will be associated with that harm.  Only this Court can prevent that from happening.

### 4.   Trademarks and Branding

Crystal Lagoons owns a "family" of numerous CRYSTAL LAGOONS® trademark registrations covering a wide range of goods and services, including U.S. Registration Nos. 3,881,936; 5,465,084; 5,454,097; 5,312,449; 5,870,729; and 6,042,995. (Exhibit 5.)

| Registration No. | Date of Registration | Trademark |
|---|---|---|
| 3,881,936 | November 30, 2010 | CRYSTAL LAGOONS |
| 5,312,449 | October 17, 2017 | CRYSTAL LAGOONS |
| 5,454,097 | April 28, 2018 | CRYSTAL LAGOONS |
| 5,465,084 | May 8, 2018 | CRYSTAL LAGOONS |
| 5,870,729 | October 1, 2019 | CRYSTAL LAGOONS |
| 6,042,995 | April 28, 2020 | CRYSTAL LAGOONS |

As shown below, Defendants have used illegally Crystal Lagoons' name and trademark.

Plaintiffs have marketed and promoted their lagoons through the United States and the World. Crystal Lagoons has more than 60 projects already in construction and operation, and today there are six operational lagoons in currently the U.S.

### 5.     The Litigation between the Plaintiffs and the Defendants

**Desert Color St. George negotiates with Crystal Lagoons to build a CRYSTAL LAGOONS® amenity in St. George, Utah.**

Desert Color is a "master-planned community unlike any other" being developed in St. George, Utah. The development includes single-family homes, condominiums, and townhomes. Around June 2017, Crystal Lagoons was contacted by Desert Color about providing a CRYSTAL LAGOONS® amenity for the Desert Color development. (Exhibit 6.) To protect its proprietary technology and business secrets, Crystal Lagoons requires its clients to sign a Non-Disclosure Agreement at the commencement of a project before providing sensitive information. On December 8, 2017, Crystal Lagoons and Desert Color St. George signed the Non-Disclosure Agreement ("the NDA"). (Exhibit 7.) The NDA defined Crystal Lagoons' Confidential Information and Technology, and restricted Desert Color's use and disclosure beyond the Purpose of the Agreement. (*Id.*, ¶¶ 1, 2, 7.) The NDA defined the Purpose as: "[T]o evaluate the

potential execution of an agreement." Importantly, the parties agreed the "[NDA] will be binding on the parties, **their affiliates**, successors, and assigns." (*Id.*, ¶9 (emphasis added).) The parties also agreed the NDA would remain in effect: "These obligations shall remain in full force and effect until information ceases to qualify as Confidential Information in accordance with Clause 3." (*Id.*, ¶5.)

> **Desert Color and its affiliates are using Crystal Lagoons' Confidential Information and Technology to develop a counterfeit lagoon at the Desert Color Development.**

After the NDA was signed, Crystal Lagoons shared Confidential Information and Technology with Desert Color, including but not limited to:

- Concept designs using Crystal Lagoons' trade dress, details of wall edges and beach access, cost information and details about the systems and equipment used in the technology. (Exhibit 8.)

- Crystal Lagoons' Economic Proposal, which contained detailed information about Crystal Lagoons' pricing, royalty fees, ancillary income, fixed fees and technical assistance requirements. (Exhibit 9)

- Technical construction methods, which were shared during a visit to Crystal Lagoons' Windsong Ranch in Prosper, Texas on March 8, 2019. (Exhibit 10.)

- Crystal Lagoons' Technology License and Support Agreement ("TLSA"), which includes detailed confidential information about the technology and

business model. For example, Article 1 describes the process for

developing the lagoon. Article 2 describes many systems associated to the

construction/operation of the lagoon. Exhibit II describes in detail the

testing pool, water quality parameters, site visit schedule, dust control

measures, lagoon maintenance, and modular treatment system. (Exhibit 11.)

During a follow-up "debriefing" call, held on October 28, 2019, Brook Cole from

Desert Color thanked Crystal Lagoons' representatives for all the hard work and time put

into developing the project, but reiterated that Desert Color would not be including a

lagoon in their development project. Mr. Cole indicated that Desert Color decided not to

move forward in large part because its IP counsel would not agree to certain clauses in

Crystal Lagoons' TLSA related to protections Crystal Lagoons sought for its intellectual

property rights. The conversation ended with Mr. Cole stating that he would reach out to

Crystal Lagoons in the future about collaborating on other projects in the pipeline.

(Exhibit 12.)  It was a lie.  The current counterfeit lagoon is the centerpiece of Desert

Color, as seen in its website www.desertcolor.com:



In June 2020, Crystal Lagoons was alerted by a vendor who believed it was working on a Crystal Lagoons' project at Desert Color, mentioning that the Desert Color project was moving forward with a man-made lagoon. Crystal Lagoons investigated the vendor's claim and discovered that Defendants had, in fact, decided to not only move forward with a 2.5 acre man-made lagoon, but doing so benefiting from Crystal Lagoons' brand and reputation. For example, in a submission to the City of St. George Planning Commission, Desert Color included photos (owned by and of Crystal Lagoons) and details of the planned community that clearly showed a lagoon feature:

**ZONING APPLICATION EXCERPT INCLUDING AN IMAGE FROM CRYSTAL LAGOONS FROM THE CABO SAN LUCAS PROJECT IN MEXICO:**



This phase also includes the development of the first lagoon. This lagoon will cover 120,051 square feet or 2.76 acres. The lagoons will be available for the residents of Desert Color.

Crystal Lagoons photo from Diamante lagoon at Cabo San Lucas, Mexico

**ZONING APPLICATION EXCERPT INCLUDING TWO IMAGES FROM CRYSTAL LAGOONS, FROM PROJECTS IN ARGENTINA AND MEXICO:**



Lagoon

2.76 acres
120,051 square feet

Crystal Lagoons photo from Lagoon Pilar in Argentina

Crystal Lagoons photo from Diamante lagoon at Cabo San Lucas, Mexico

(Exhibit 13.)

Even on its own website, Desert Color describes the lagoon with Crystal Lagoons' name and trademark:

**DESERT COLOR WEBSITE:**



(Exhibit 14 (emphasis added).)

So too did several of the affiliates and Builder Defendants, who not only mentioned Crystal Lagoons, but also directly included links to Crystal Lagoons' website as being the lagoon provider, as it can be seen below:

**EMAILS FROM BUILDER DEFENDANTS**

---------- Forwarded message ----------
From: **Makayla Browning** <makayla@sullivan-homes.com>
Date: Fri, Jun 19, 2020 at 11:11 AM
Subject: Re: Desert Color Inquiry
To: Santiago Bedoyah <santiago.bedoyah@gmail.com>

Hi,
Thanks for reaching out. It is the same company that did Windsong Ranch. The company is called Crystal Lagoons. Desert Color won't be exactly the same as other Lagoons, but their website gallery will show very similar lagoons. You can check out their website at www.crystal-lagoons.com
Feel free to call, text or email me if you have any questions.
Thanks!

(Exhibit 15 (emphasis added).)

## EMAILS FROM BUILDER DEFENDANTS





(*Id*. (emphasis added).)

A search of Desert Color's and its affiliates' websites and Facebook pages also showed that the Defendants are selling lots by promoting the "Crystal Lagoon" as part of the Desert Color development, as it can be seen below:

**PROMOTION FROM BUILDER DEFENDANTS:**



(Exhibit 16 (emphasis added).)

Similarly, Desert Color's brochures used Crystal Lagoons' name and trademark:

**BROCHURES OF DESERT COLOR:**



(Exhibit 17.)

## <u>BROCHURES OF DESERT COLOR:</u>



### Project Description

Desert Color is a master-planned community built around a plan of connectivity, community and sustainability. It is a place where you will find the best of everything that Southern Utah has to offer. Located alongside I-15 and Southern Parkway, Desert Color is a comprehensive 3,500-acre mixed-use master planned community. It will feature a variety of primary and secondary residences, shopping, dining, entertainment, commercial, retail, hospitality, and recreational amenities. **Put simply, Southern Utah has never seen a community like Desert Color.**

Desert Color will be guided by a singular plan:
*Desert Color's unique setting creates a special opportunity to blend the natural features of the desert foothills with tried and true community design principles. It emphasizes social connections, open space, recreational diversity, walkable neighborhoods, convenient regional commercial and retail services, hospitality, and offers a variety of residential types and styles.*

### Commercial Hub

Desert Color's mixed-use commercial district will be the central hub and focal point of activity for the community. Its 103-acre design will include vertical mixed use (e.g., offices and residences above retailers) and horizontal mixed use (e.g., retailers, offices, and residences on separate parcels).

The mixed-use commercial district will feature:
- A sports park
- Recreation/entertainment centers
- Health and wellness facilities and services
- A crystal lagoon
- Shopping and dining districts
- Hotels and resorts
- Multi-specialty healthcare clinic
- Open space (e.g., parks, trails, courtyards)
- Access to transportation
- Public use facilities (e.g., 21st-century schools, church, cultural facility, hospital, library, and police and fire station)
- An innovation park for higher education





(*Id.*)

The above evidence of Defendants' breach of the NDA and use of Crystal Lagoons' name and trademark is what Crystal Lagoons' could gather without formal discovery and within a brief period of time.  It is likely merely the tip of the iceberg and formal discovery will reveal numerous other violations.

Further, when describing Desert Color's lagoon, Builder Defendant Holmes Homes Inc. described the water feature as:

### HOLMES HOMES' WEBSITE:

Tucked away in the beautiful setting of Southern Utah, your morning view at Desert Color will include vast mountain vistas and kayakers peacefully paddling by in the lake. As the heart of the community, the lake will forever change the way you view St. George living. With only six in the nation, this body of water is bringing a caribbean beach-life experience to the Utah desert. And it's not just a paradise getaway. It's home.

(http://holmeshomes.com/st-george-desert-color/ (last accessed January 19th, 2021).) (Exhibit 18 (emphasis added).)  Crystal Lagoons has exactly six other lagoons in the U.S., a clear affiliation with Crystal Lagoons.  Similarly, Holmes Homes' reference to "a caribbean beach-life" is also a clear association with Crystal Lagoons.  Crystal Lagoons was recently highlighted in an article by CNBC's Real Estate Page entitled: "Caribbean-like lagoons give homebuyers the benefits of the beach without the risk." "Caribbean-like lagoons give homebuyers the benefits of the beach without the risk," CNBC Real Estate, February 13, 2020, https://www.cnbc.com/2020/02/12/caribbean-like-lagoons-give-homebuyers-beachbenefits-without-risk.html.  Crystal Lagoons included a link to this article on its website. https://www.crystal-lagoons.com/press/caribbean-like- lagoons-give-homebuyers-the-benefits-of-the-beach-without-the-risk/. (Exhibit 19.)

Crystal Lagoons' lagoon at Windsong Ranch, which some of the Defendants toured, is described as "giving our residents unprecedented access to a Caribbean lifestyle, right here in Prosper, Texas!", Windsong Ranch, https://windsongranchliving.com/crystal-lagoons-windsong-ranch/. BusinessWire wrote an article in June 2018 describing Crystal Lagoons by its "Caribbean-style waterfront destinations." "Crystal Lagoons Announces 21st Man-made Lagoon Project in the U.S.," BusinessWire, January 6, 2018, https://www.businesswire.com/news/home/20180606006279/en/Crystal-Lagoons- Announces-21st-Man-made-Lagoon-Project-in-the-U.S. (*Id.*)

> **Defendants are selling property to the public based upon a lagoon marketed for swimming and bathing for which it is not regulated.**

Crystal Lagoons filed two Freedom of Information Act/Government Records Access and Management Act Requests asking for all records and/or permits related to any and all lagoons. (Exhibit 20.) Both times, SWUPHD has responded that no responsive documents exist. (*Id.*)

Notwithstanding what Desert Color, Pacific Aquascape, or its representatives represented to the Environment Health Division of SWUPHD, Defendants are advertising and promoting the planned water feature as a swimmable body of water, as can be seen in Desert Color's resort website:

**DESERT COLOR RESORT WEBSITE:**



(Exhibit 21 (emphasis added).)

The SWUPHD, however, as of the date of the FOIR, had no documentation regarding the Desert Color lagoon because no regulatory entity is overseeing or regulating such lagoon. Purchasers of Defendants' homes and townhomes will not be getting what Defendants have advertised, i.e., access to a permitted swimmable lagoon on the property. (Exhibit 20.)

Even more concerning, the public and this Court should be concerned because the builder of the lagoon at Desert Color, Defendant Pacific Aquascape, is the same builder of the failing lagoon at the Hard Rock Hotel and Casino, in Florida.

## HARD ROCK SEMINOLE PROJECT, FLORIDA:



(Exhibit 22.)

No entity among the Defendants has ever successfully designed and built a multi-acre, man-made recreational lagoon with clear and transparent waters. Pacific Aquascape, the affiliate tasked with designing and building the Desert Color lagoon has recently attempted a multi-acre, man-made recreational lagoon with clear and transparent waters at a different development site; however, it has failed. The lagoon built by Pacific Aquascape at the Hard Rock Seminole Hotel and Casino in Florida is at times neither clear nor transparent as lagoons powered by Crystal Lagoons' technology; it is green-ish most of the time, as can be seen when compared to the swimming pools to the right in the photograph above (taken during warmer weather). It is important to highlight that such

Florida lagoon looks greenish given high turbidity and a high amount of sediments, which may contain dangerous microorganisms such as freshwater and saltwater amoebas. Such Florida lagoon can only stay open since it is on Tribal land and does not need to follow normal regulatory nor overseeing standards, as it does not comply with swimming pool rules and in other cases it would have been closed to the public. On the other hand, the Desert Color lagoon has been filled fairly recently, and therefore has been subject to very low ambient temperatures which minimizes microorganism growth, but still in this case the filtration system on site is not able to clean the lagoon and therefore when warmer temperatures arise, potentially lethal microorganisms will appear and will not be able to be removed from the lagoon, putting the people in danger.

Crystal Lagoons was ultimately able to obtain aerial photographs of the Desert Color St. George build site confirm that Desert Color had not only proceed with its plan to construct a lagoon but had made substantial progress using not only Crystal Lagoons' name and trademark, but also its Confidential Information and Technology.

### <u>DESERT COLOR AERIAL PHOTOGRAPH:</u>



(Exhibit 23.) Crystal Lagoons brought suit shortly thereafter.

Adhering to the local sanitation statutes and regulations is required from a compliance perspective and necessary from a safety perspective. Defendants' lagoon fails to comply with local statutes and regulations and, indeed, Desert Color's lagoon is not even being reviewed by the proper regulatory body. The Southwest Utah Public Health Department (SWUPHD) regulates public swimming pools and bathing beaches under Utah Administrative Code Rule 392-302. Rule R392-302-3 states that the rule for swimming pools "does not regulate any body of water larger than 30,000 square feet … <u>for which the design purpose is **not** swimming, wading, **bathing**, diving, a water slide splash pool, or children's water play activities</u>." (Exhibit 25.)

Large recreational water bodies have been known to develop microorganisms such as protozoa and amoebas, which include the amoeba *Naegleria fowleri* (commonly referred to as the "brain-eating amoeba"). Crystal Lagoons, however, has developed technology and practices to prevent such infestations. Crystal Lagoons' technology has a track record of over 15 years with optimum sanitary results in more than 45 lagoons operating around the world in different types of climate conditions.

There have been many fatal cases of sanitary incidents around the world and in the U.S. in confined to large water bodies (that do not have an appropriate water quality management). An emblematic case is the one at Disney's River Country and the one at the National Whitewater Rafting Center in North Carolina, with fatal results due to microorganisms present in the water such as *Naegleria fowleri*. The only technology that exists in the world for large water bodies used for recreational purposes, that is not conventional swimming pool technology, is the Crystal Lagoons' technology. Therefore, regarding the treatment of confined large water bodies, it is important to highlight that if such water bodies are not treated properly, there is a high risk for sanitary incidents.

Given the above, only a preliminary injunction from this Court can prevent the public from being harmed by an unregulated, dangerous lagoon and also prevent this nascent industry and its creator, Crystal Lagoons, from being harmed by Defendants' unlawful association with Crystal Lagoons' name and trademark.

B.    **The Defendants' brief statement of its case.**

    1.    **<u>Crystal Lagoons' motion for preliminary injunction is based on only its breach of contract and trademark infringement claims and only for the requested relief of enjoining development, enjoining trademark use, and corrective advertising.</u>**

Federal Rule of Civil Procedure 7 and DUCivR 7-1 both require motions to particularly state their grounds and the particular relief sought to prevent parties from shifting positions. Yet that is exactly what Crystal Lagoons has been doing on its motion for preliminary injunction. In the motion itself, Crystal Lagoons was unequivocal that it "relies solely upon its breach of contract and trademark infringement claims" and seeks to "enjoin Defendants from (1) further development of the lagoon at the Desert Color development, (2) using CRYSTAL LAGOONS® or a confusingly similar mark; and (3) corrective advertising …." (Motion, Docket No. 10, at 19.) At the time of Crystal Lagoons' motion for preliminary injunction, Defendants' opposition thereto, and Crystal Lagoons' reply brief, Crystal Lagoons has not asserted the breach of contract or trademark infringement claims against Pacific Aquascape. (*See* Complaint, Docket No. 2, at 43 (showing no claim for breach of contract against Pacific Aquascape).)

Defendants' Opposition showed that Crystal Lagoons' breach of contract and trademark claims have no basis. Since then, Crystal Lagoons has shown its intent to focus on other claims and even unasserted theories, such as the assertion that Crystal Lagoons as a private party should be able to bring a non-existent private cause of action to overrule the Health Departments of the State of Utah and enforce Utah's regulations according to Crystal Lagoons' interpretation—all through a breach of contract and trademark infringement case. Crystal Lagoons has no such claim.

The issues of fact and law for a preliminary injunction hearing are based on Crystal Lagoons' stated bases and requested relief for its Motion and not its forays into its other grounds, theories, or requests.

### 2.        The Non-Disclosure Agreement

The non-disclosure agreement ("NDA") at issue in this case was entered into in December 2017 to facilitate Desert Color's evaluation of whether it would engage Crystal Lagoons to provide consulting services relating to a proposed multi-acre man-made lagoon project at the Desert Color development. The NDA's expressly stated purpose was that of "evaluat[ing] the potential execution of an agreement." (NDA, ¶ 1.) Desert Color's evaluation concluded in June 2019 when Desert Color determined that it did not wish to engage Crystal Lagoons or make any use of any non-public information conveyed under the NDA.

The parties to the NDA are Desert Color St. George, LLC and Crystal Lagoons U.S. Corp. Crystal Lagoons' contention is that the non-contracting-parties are "affiliates" of Desert Color St. George, LLC. But the Builder Defendants and Pacific Aquascape are all completely independent of Desert Color. Pacific Aquascape is the company Desert Color engaged to design and build the Desert Color lagoon project, after deciding against engaging Crystal Lagoons, and each of the Builder Defendants is a company that designs, builds, or sell homes within the Desert Color development. There is no evidence that any of the Builder Defendants or Pacific Aquascape are affiliates under the NDA to give rise to a potential breach of contract claim against them.

Beyond the fact that most of Defendants are not parties to the NDA, Crystal Lagoons has failed to articulate what confidential information was supposedly misused or disclosed in alleged

breach of the NDA. There is no evidence of breach of the NDA—let alone evidence sufficient to show a likelihood of success on the merits—and no evidence that Crystal Lagoons has been or will be irreparably harmed by any breach or prospective breach.

### 3.      The Alleged Use of the Generic Descriptor "crystal lagoons"

Desert Color has never had an official or concerted campaign to associate the Desert Color lagoon project with Crystal Lagoons or with the "Crystal Lagoons" trademark. The only evidence of the words "crystal lagoons" being used are uses by independent third parties not controlled by the Defendants. Even then, such uses are extremely rare and in a descriptive sense and not as trademarks.

There was, however, a use in January 2018 of the generic descriptor "crystal lagoons" made verbally by the Chief Operating Officer of Clyde Companies, Inc., a Desert Color parent company. In announcing the Desert Color development on January 11, 2018, to the attendees of the St. George Area Economic Development Summit, the Clyde Companies officer listed the development's planned features and amenities as including "10,000 residences with single-family apartments and townhomes, 103-acre commercial district with office space, shopping, recreation, health facilities, schools, cultural activities and a resort facility with crystal lagoons, 1,100 rooms that will be a mixture of hotel, resort and vacation condos, a recreation area with parks, trails and activities that promote a healthy lifestyle, and a golf entertainment experience for golfers of all skill and age levels." This is a two-year old lone instance of a use by Desert Color using the words "crystal lagoons" or "crystal lagoon," and the purpose was only to generically describe the Desert Color lagoon as having crystal-clear water. That isolated utterance is hardly a campaign to associate Desert Color with Crystal Lagoons.

Crystal Lagoons heavily relies on a mistake by Sullivan Homes employee that responded to two email inquiries by incorrectly naming Crystal Lagoons as the company behind the Desert Color lagoon project. But Sullivan Homes, independent of the other defendants, entered into a consent injunction, presumably correcting its mistake in the process. Crystal Lagoons also relies on an old and currently unavailable brochure from Colliers International, an independent leasing and sales agent for the Desert Color development. There is no evidence to attribute the mistake of the Sullivan Homes employee or the independent, but outdated, statements of Colliers to Desert Color or the other Defendants.

Pacific Aquascape is not accused of any act of trademark infringement for purposes of the motion for preliminary injunction, and there is no evidence that Pacific Aquascape has used the phrase "crystal lagoon(s)."

Cole West has never used the "Crystal Lagoons" trademark, and Crystal Lagoons has no evidence to demonstrate otherwise. While Crystal Lagoons alleges that a third party used the phrase "on the beach of a new crystal lagoon!" on the third party's Facebook page, there is no evidence that Cole West authorized the third party's acts. Nor is there evidence that any consumers have been confused or misled by the third party's use of the phrase on his website or that the phrase has acquired any secondary meaning that would associate it, in any way, with Crystal Lagoons.

The same is true for Holmes Homes. There is no evidence that Holmes Homes has ever used the phrase "crystal lagoon(s)." Because of the lack of evidence that Holmes Homes ever uttered the words "crystal lagoon," Crystal Lagoons for the first time in its reply brief asserted that Holmes Homes' alleged infringement was through—not "crystal lagoons" but—"Caribbean

beach-life experience." There is no evidence that Crystal Lagoons has any trademark rights in such a phrase, that consumers associate the phrase with Crystal Lagoons, or that there is any likelihood of confusion based on Holmes Homes' use of the phrase as a descriptor as opposed to a trademark.

Crystal Lagoons' patterns remain the same. When it lacks evidence, it shifts to new theories, whether asserted or not, in order to hide the scant support for its claims. There is no evidence that Crystal Lagoons has a likelihood of success on its trademark infringement claims and no evidence that Crystal Lagoons has been or will be irreparably harmed by any alleged infringement.

### 4.    The Desert Color lagoon employs safe and conventional pool technology

Entirely separate from any breach of contract or trademark infringement claim, Crystal Lagoons spends a considerable amount of energy arguing that the Desert Color lagoon project will be unsanitary and therefore unsafe. Crystal Lagoons argues that people will not be able to swim in the lagoon or that the public will be harmed. There is no evidence of any of this and it is all unsubstantiated argument by Crystal Lagoons.

Besides being unrelated to the claims that form the basis of Crystal Lagoons' motion, Crystal Lagoons' argument fails because it is premised on the unsupported assumption that the Desert Color lagoon project does not employ conventional swimming pool technology, which Crystal Lagoons admits would avoid health risks. And as explained by Pacific Aquascape, the design and implementation of the Desert Color lagoon uses conventional swimming pool technology, including a conventional filtration system and conventional chemical treatment

regimen, but on a very large, multi-acre scale. And this concept for the Desert Color lagoon was independently developed and implemented by Pacific Aquascape.

But, in an unrelated patent claim, Crystal Lagoons also asserts that Pacific Aquascape is using Crystal Lagoons' technology instead of conventional pool technology. Crystal Lagoons' assertion in the patent claim is that the Desert Color lagoon has "color, transparency, and *cleanness* characteristics similar to swimming pools or tropical seas." (First Amended Complaint, Docket No. 79, at 61 (emphasis added).)

Notwithstanding Crystal Lagoons' inconsistent argument, its efforts seem directed to enforcement of Utah's swimming pool code to the Desert Color lagoon. It argues that the Health Department is abdicating its responsibility to public health and that the lagoon is not regulated by any governmental agency. The truth—of which Crystal Lagoons is fully aware—is that the Southwest Utah Public Health Department is aware of the Desert Color lagoon, has inspected the lagoon, and has already "expressed the view that the Desert Color lagoon fell within an exemption to the Utah Department of Heath's pool rules and was not subject to regulation under those rules." (Docket No. 73-2 at p. 7 of 13 (letter from Crystal Lagoons attorney recognizing the Health Department's determination).) In other words, the Desert Color lagoon is not subject to all the requirements of the swimming pool rules. But the Health Department nonetheless has regulatory authority and the ability to shut down any public place that poses a risk to public health—whether subject to swimming pools rules or not. Utah Code Ann. § 26A-1-114.

Crystal Lagoons' bombastic allegations are instead based on its unilateral wish to override the determinations of the Health Department and shut down the Desert Color lagoon as allegedly non-compliant with the swimming pool rules. But there is no private right of action to

overrule the Health Department and seek private enforcement of Utah's swimming pools rules. *Cf. Buckner v. Kennard*, 99 P.3d 842, 853–56 (Utah 2004). The misguided attempt to backdoor such a claim through a breach of contract or trademark infringement action should not be entertained. But there is also no evidence to support it in any event: no evidence that the Desert Color lagoon does not use conventional filtration and chemical treatment, no evidence the lagoon is unsafe, and no evidence that it is not "swimmable."

\* \* \*

**II.     Without evidence to show a likelihood of success or irreparable harm on either its breach of contract or trademark infringement claims, Crystal Lagoons resorts to unsupported allegations that the Desert Color lagoon is unsafe and unregulated. But those allegations do not relate to the motion for preliminary injunction, and Crystal Lagoons' own evidence and contentions in the matter show them to be untrue. Accordingly, Defendants respectfully request that the Court deny the entirety of Crystal Lagoons motion for preliminary injunction. Relief Requested by Plaintiffs**

Crystal Lagoons seeks a preliminary injunction to: (1) prevent the continued use and dissemination of Crystal Lagoons' Confidential Information and Technology; (2) prevent the further and irreparable loss of Crystal Lagoons' valuable trademark rights through association with the lagoon at Desert Color; and (3) protect the public from a potentially dangerous, unregulated lagoon.

Crystal Lagoons specifically seeks an order enjoining Defendants from (1) further development and operation of the lagoon at the Desert Color development; (2) using CRYSTAL LAGOONS® or a confusingly similar mark; and (3) associating the lagoon at Desert Color in anyway with Crystal Lagoons.

**III.    Contested Issues for Preliminary Injunction by Plaintiff**

1.    Whether Plaintiffs have demonstrated: (1) a substantial likelihood of prevailing on at least one of its claims against the Defendants; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest. *See Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016).

1.(a)    Whether Plaintiffs have demonstrated a substantial likelihood of prevailing on their breach of the NDA against Defendants.

1.(b)    Whether Plaintiffs have demonstrated a substantial likelihood of prevailing on their trademark infringement claims against Defendants.

**IV.    Relief sought by the Defendants.**

Defendants seek denial of Crystal Lagoons' motion for preliminary injunction and the relief sought by Plaintiff therein (Docket No. 10).

Defendants also seek denial of Crystal Lagoons' requested relief in this proposed pretrial order that was not requested by Crystal Lagoons in its motion for preliminary injunction. Specifically, Crystal Lagoons request for operation of the Desert Color lagoon was not requested in Crystal Lagoons' motion, nor are there grounds in the motion to support a request to enjoin operation of the lagoon. And while Defendants do not wish to associate the Desert Color lagoon with Crystal Lagoons, Crystal Lagoons' motion did not request an injunction against any association of the lagoon in any way with Crystal Lagoons. Crystal Lagoons' request is vague and non-compliant with the specificity requirements for injunctions under Rule 65, as well as an

improper attempt to expand the scope of the motion to include other claims on which Crystal Lagoons did not base its motion (e.g., trade dress claims, dilution, etc.).

## V.      Contested Issues for Preliminary Injunction by Defendants

### A.      Issues of Law

1.      Whether Crystal Lagoons has standing to obtain a preliminary injunction against the Builder Defendants.

2.      Has Crystal Lagoons' motion for preliminary injunction become moot?

3.      Does Crystal Lagoons have standing to enforce Utah State regulations for which there is no private right of action?

4.      Does Crystal Lagoons have standing to supersede the determinations of the Southwest Utah Public Health Department and request enforcement of Utah State regulations through a breach of contract or trademark infringement claim?

5.      Can Desert Color be held liable for the conduct of other Defendants in this action based on the unsupported assertion that it is "acting in concert" with them?

6.      Can Cole West be held liable for the conduct of other Defendants in this action based on the unsupported assertion that it is "acting in concert" with them?

7.      Can Holmes Homes be held liable for the conduct of other Defendants in this action based on the unsupported assertion that it is "acting in concert" with them?

### 1.      Breach of Contract

8.      Has Crystal Lagoons shown a likelihood of success on the merits of its breach of contract claim against Desert Color?

9.      Has Crystal Lagoons shown a likelihood of irreparable harm to Crystal Lagoons based on any alleged breach of the NDA by Desert Color or prospective breach should an injunction not issue?

10.     Has Crystal Lagoons shown that the threatened injury of prospective breach of the NDA outweighs the harm that the preliminary injunction may cause to Desert Color?

11.     Is Cole West bound by the NDA entered between Crystal Lagoons US Corp. and Desert Color St. George LLC?

12.     Has Crystal Lagoons shown a likelihood of success on the merits of its breach of contract claim against Cole West?

13.     Has Crystal Lagoons shown a likelihood of irreparable harm to Crystal Lagoons based on any alleged breach of the NDA by Cole West or prospective breach should an injunction not issue?

14.     Has Crystal Lagoons shown that the threatened injury of prospective breach of the NDA outweighs the harm that the preliminary injunction may cause to Cole West?

15.     Is Holmes Homes bound by the NDA entered between Crystal Lagoons US Corp. and Desert Color St. George LLC?

16.     Has Crystal Lagoons shown a likelihood of success on the merits of its breach of contract claim against Holmes Homes?

17.     Has Crystal Lagoons shown a likelihood of irreparable harm to Crystal Lagoons based on any alleged breach of the NDA by Holmes Homes or prospective breach should an injunction not issue?

18.     Has Crystal Lagoons shown that the threatened injury of prospective breach of the NDA outweighs the harm that the preliminary injunction may cause to Holmes Homes?

19.     Has Crystal Lagoons shown that the injunction, if issued against any of the Defendants, will not adversely affect the public interest?

        2.       **Trademark Infringement**

20.     Does Crystal Lagoons have valid and enforceable trademark rights in the name "Crystal Lagoons" for bodies of water?

21.     Are "crystal" or "crystal lagoon" generic and non-distinctive for bodies of water?

22.     Is the alleged mark "Caribbean beach-life experience" a distinctive indicator of the source of goods and services?

23.     Has the phrase "Caribbean beach-life experience" acquired secondary meaning as a source indicator in the minds of the consuming public?

24.     What is the relevant geographical area of trademark rights, if any, for which the phrase "Caribbean beach-life experience" has been used as a trademark and acquired secondary meaning?

25.     Does Crystal Lagoons have valid and enforceable trademark rights in the phrase "Caribbean beach-life experience"?

26.     What is the strength, if any, of the mark "Crystal Lagoons"?

27.     What is the strength, if any, of the mark "Caribbean beach-life experience"?

28.     Does Crystal Lagoons have valid and enforceable trademark rights in the phrase "on the beach of a new crystal lagoon"?

29.     Has Crystal Lagoons shown a likelihood of success on the merits of its trademark infringement claims against Desert Color?

30.     Has Crystal Lagoons shown a likelihood of irreparable harm to Crystal Lagoons based on any alleged trademark infringement by Desert Color or prospective infringement should an injunction not issue?

31.     Has Crystal Lagoons shown that the threatened injury of prospective breach of the NDA outweighs the harm that the preliminary injunction may cause to Desert Color?

32.     Has Crystal Lagoons shown a likelihood of success on the merits of its trademark infringement claims against Cole West?

33.     Has Crystal Lagoons shown a likelihood of irreparable harm to Crystal Lagoons based on any alleged trademark infringement by Cole West or prospective infringement should an injunction not issue?

34.     Has Crystal Lagoons shown that the threatened injury of prospective breach of the NDA outweighs the harm that the preliminary injunction may cause to Cole West?

35.     Has Crystal Lagoons shown a likelihood of success on the merits of its trademark infringement claims against Holmes Homes?

36.     Has Crystal Lagoons shown a likelihood of irreparable harm to Crystal Lagoons based on any alleged trademark infringement by Holmes Homes or prospective infringement should an injunction not issue?

37.     Has Crystal Lagoons shown that the threatened injury of prospective breach of the NDA outweighs the harm that the preliminary injunction may cause to Holmes Homes?

38.     Has Crystal Lagoons shown that the injunction, if issued against any of the Defendants, will not adversely affect the public interest?

39.     Would requiring Defendants to promulgate corrective advertising violate their first amendment right against compelled speech?

### B.     Issues of Fact

1.     Does Crystal Lagoons' 6-month delay in filing suit and the motion for preliminary injunction show that there is no likelihood of irreparable harm for any of Crystal Lagoons' claims forming the basis of the motion for preliminary injunction?

2.     Did the Builder Defendants have any involvement in the design, construction, or permitting process for the Desert Color lagoon?

### 1.     Breach of Contract[1]

3.     Did Crystal Lagoons disclose confidential information to Desert Color?

4.     If so, what was the scope of confidential information disclosed by Crystal Lagoons to Desert Color?

5.     Did Desert Color use any confidential information in breach of the NDA.

6.     Are the actions of other Defendants that Crystal Lagoons contends are in breach of the NDA attributable to Desert Color?

7.     Is Crystal Lagoons likely to suffer irreparable harm as a result of any alleged breach or prospective breach of the NDA by Desert Color?

---

[1] Crystal Lagoons' motion for preliminary injunction is not based on any claim of breach of contract against Pacific Aquascape. (*See* Complaint, Docket No. 2, at 43 (showing no claim for breach of contract against Pacific Aquascape at the time of the motion, opposition, and reply).) If it were, the factual issues for each of the other Defendants would be the same for Pacific Aquascape.

8.      Are Cole West and Desert Color under common ownership?

9.      Does Desert Color have any control over Cole West, or does Cole West have control over Desert Color?

10.     Is Cole West an affiliate of Desert Color?

11.     Did Cole West agree to assume any of Desert Color's obligations under the NDA?

12.     Did Desert Color have authority to bind Cole West to the terms of the NDA?

13.     Did Cole West receive, use, or distribute any confidential information covered by the NDA.

14.     Are the actions of other Defendants that Crystal Lagoons contends are in breach of the NDA attributable to Cole West?

15.     Is Crystal Lagoons likely to suffer irreparable harm as a result of any alleged breach or prospective breach of the NDA by Cole West?

16.     Are Holmes Homes and Desert Color under common ownership?

17.     Does Desert Color have any control over Holmes Homes, or does Holmes Homes have control over Desert Color?

18.     Is Holmes Homes an affiliate of Desert Color?

19.     Did Holmes Homes agree to assume any of Desert Color's obligations under the NDA?

20.     Did Desert Color have authority to bind Holmes Homes to the terms of the NDA?

21.     Did Holmes Homes receive, use, or distribute any confidential information covered by the NDA.

22.     Are the actions of other Defendants that Crystal Lagoons contends are in breach of the NDA attributable to Holmes Homes?

23.     Is Crystal Lagoons likely to suffer irreparable harm as a result of any alleged breach or prospective breach of the NDA by Holmes Homes?

### 2.     Trademark Infringement[2]

24.     Has Crystal Lagoons used the mark "Crystal Lagoons" in commerce as a source indicator of lagoons?

25.     Has Crystal Lagoons used the phrase "Caribbean beach-life experience" in commerce as a trademark?

26.     Does the consuming public understand the phrase "Caribbean beach-life experience" as an indicator of the source of goods and services?

27.     If so, does the consuming public associate uses of the phrase "Caribbean beach-life experience" with only Crystal Lagoons?

28.     Has Desert Color used "Crystal Lagoons" or similar mark in commerce as a trademark, i.e., source indicator?

29.     Are alleged uses by third-parties or other Defendants attributable to Desert Color?

30.     What are the similarities, if any, between Crystal Lagoons' trademarks and the allegedly infringing words used by Desert Color?

---

[2] Crystal Lagoons' motion for preliminary injunction is not based on any claim of trademark infringement against Pacific Aquascape. (*See* Complaint, Docket No. 2, at 44, 50 (showing no claim for breach of contract against Pacific Aquascape at the time of the motion, opposition, and reply).) If it were, the factual issues for each of the other Defendants would be the same for Pacific Aquascape.

31.     Did Desert Color have any intent to adopt any Crystal Lagoons' trademark to confuse consumers?

32.     Has there been any actual confusion among consumers with respect to Crystal Lagoons' trademarks and any alleged use thereof by Desert Color?

33.     Is Crystal Lagoons likely to suffer irreparable harm as a result of any alleged use or prospective uses of Crystal Lagoons' trademarks by Desert Color?

34.     Has Cole West used "Crystal Lagoons" or similar marks in commerce as a trademark, i.e., source indicator?

35.     Are alleged uses by third-parties or other Defendants attributable to Cole West?

36.     What are the similarities, if any, between Crystal Lagoons' trademarks and the allegedly infringing words used by Cole West?

37.     Did Cole West have any intent to adopt any Crystal Lagoons' trademark to confuse consumers?

38.     Has there been any actual confusion among consumers with respect to Crystal Lagoons' trademarks and any alleged use thereof by Cole West?

39.     Is Crystal Lagoons likely to suffer irreparable harm as a result of any alleged use or prospective uses of Crystal Lagoons' trademarks by Cole West?

40.     Has Holmes Homes used "Crystal Lagoons" or similar mark in commerce as a trademark, i.e., source indicator?

41.     Are alleged uses by third-parties or other Defendants attributable to Holmes Homes?

42.     What are the similarities, if any, between Crystal Lagoons' trademarks and the allegedly infringing words used by Holmes Homes?

43.     Did Holmes Homes have any intent to adopt any Crystal Lagoons' trademark to confuse consumers?

44.     Has there been any actual confusion among consumers with respect to Crystal Lagoons' trademarks and any alleged use thereof by Holmes Homes?

45.     Is Crystal Lagoons likely to suffer irreparable harm as a result of any alleged use or prospective uses of Crystal Lagoons' trademarks by Holmes Homes?

46.     What level of care is exercised by the purchasing public with respect to the relevant goods and services, i.e., large bodies of water?

47.     Are each of the Defendants and Crystal Lagoons commercial competitors?

## VI.     Plaintiffs' Exhibit List.

| Exhibit No. | Description |
|---|---|
| 01 | Photograph of San Alfonso Del Mar |
| 02 | Photograph of Lago Mar Project in Texas |
| 03 | Photographs of the Balmoral Project in Texas |
| 04 | Photographs of the Windsong Project in Texas |
| 05 | CRYSTAL LAGOONS®, U.S. Registration No. 3,881,936; 5,465,084; 5,454,097; 5,312,449; 5,870,729; and 6,042,995 |
| 06 | Cole email dated 11/28/2017 |
| 07 | Crystal Lagoons and Desert Color signed a Non-Disclosure Agreement (NDA) dated 12/8/2017 |
| 08 | Emails showing back and forth on technical information:<br>• Lisa Moore email dated 3/27/2018<br>• Lisa Moore email dated 4/5/2018<br>• Lisa Moore email dated 5/14/2018<br>• Brook Cole email dated 3/7/2019<br>• Brook Cole email dated 3/9/2019<br>Lisa Moore email dated 6/19/2019 |
| 09 | Economic Proposal for Desert Color dated 2/15/2019 |
| 10 | Technical construction methods, which were shared during a visit to Crystal Lagoons' Windsong Ranch in Prosper, Texas on March 8, 2019. |

| Exhibit No. | Description |
|---|---|
| 11 | Crystal Lagoons' Technology License and Supply Agreement (TLSA) |
| 12 | Lisa Moore email dated 10/22/2019 |
| 13 | City of St. George's Planning Commission's Notice of Meeting to discuss the zoning application filed by Desert Color St. George, LLC. |
| 14 | Desert Color website pages |
| 15 | Emails sent on June 18, 2020 and June 19, 2020 from Makayla Browning at Sullivan Homes |
| 16 | Facebook Post by Sales Agent for Cole West https://www.facebook.com/watch/dixiedandotcom/ |
| 17 | Desert Color Brochures available online at http://crepromo.com/pmail/thain/sg_desert_color/ and website. |
| 18 | Advertising from Holmes Homes' website. |
| 19 | Printouts of:<br><br>• CNBC Real Estate, February 13, 2020, https://www.cnbc.com/2020/02/12/caribbean-like-lagoons-give-homebuyers-beachbenefits-without-risk.html;<br><br>• https://www.crystal-lagoons.com/press/caribbean-like- lagoons-give-homebuyers-the-benefits-of-the-beach-without-the-risk/<br><br>• https://windsongranchliving.com/crystal-lagoons-windsong-ranch/<br><br>• BusinessWire, January 6, 2018, https://www.businesswire.com/news/home/20180606006279/en/Crystal-Lagoons-Announces-21st-Man-made-Lagoon-Project-in-the-U.S. |
| 20 | Freedom of Information Requests ("FOIR") to SWUPHD<br><br>• FOIR submitted 6/26/2020<br>• Denial received 7/6/2020<br>• FOIR submitted 12/14/2020<br><br>Denial received 12/28/2020 |
| 21 | Desert Color's resort website page(s) |
| 22 | Photograph of the lagoon built by Pacific Aquascape at the Hard Rock Seminole Hotel and Casino in Florida |
| 23 | Photographs taken on or around September 3, 2020, showing the current condition of the Desert Color project in St. George, Utah |
| 24 | Civins CV |
| 25 | Utah Admin Code – Rule R392-302. Design, Construction and Operation of Public Pools |
| 26 | Letter Haynes Boone sent to the SWUPHD on January 13, 2021 (Javiera S) |
| 27 | June 15, 2020 Email from Lindsay Kissel to Crystal Lagoons |
|  | Those exhibits identified by Defendants. |

## VII.   Defendants' Exhibit List.

| Exhibit No. | Description |
|---|---|
| A | Crystal Lagoons website page(s) |
| B | Colliers flyer available online at http://www2.colliers.com/p-USA1073350 |
| C | Photos of the lagoon at the Hard Rock Hotel and Casino in Florida available on at the Google Maps location for the Hard Rock Hotel and Casino (various dates). |
| D | Photos of the lagoons at the Hard Rock Hotel and Casino in Florida available in the Third Amended Complaint filed on November 16, 2020 in Case No. 2:19-cv-796-BSJ |
| E | U.S. Patent No. 8,602,514 |
| F | U.S. Patent No. 4,948,296 |
| G | Text message exchange attached as Exhibit 7 to the Complaint. |
|  | Those exhibits identified by Crystal Lagoons |

## VIII.   Witness lists.

### A.   The Plaintiff.

#### 1.   Will call.

1. Javiera De la Cerda

2. Jeffrey Civins

#### 2.   May call.

3. Fernando Fischmann

4. Lisa Moore

5. Eric Cherasia

6. Any witness identified by the Defendants.

### B.   The Defendants.

#### 1.   Will call.

1. Cory Severson

2. Mitchell Dansie

#### 2.   May call.

3. Brook Cole

4.    Spencer Holmes

5.    Colin Wright

6.    Tony Hill

7.    Dave Nielsen

8.    Dan Mooy

9.    Witnesses identified by Crystal Lagoons, except Jeffrey Civins.[3]

**IX.    Depositions.**

No depositions have been taken.

ORDERED this _____ day of March ___, 2021.

BY THE COURT:


_____
Honorable Bruce S. Jenkins
U. S. District Court Judge

---

[3] Jeffrey Civins is Crystal Lagoons' counsel—not a percipient witness—and has no legitimate reason to be a witness in this matter.

**APPROVED AS TO FORM**

Date: February 26, 2021                By: */s/ Stephen M. Sansom*
                                       Stephen M. Sansom
                                       Brandon T. Christensen
                                       HOLLAND & HART LLP
                                       222 South Main Street, Suite 2200
                                       Salt Lake City, UT 84101
                                       Tel: (801) 799-5897

                                       Anthony R. Zeuli (*Admitted Pro Hac Vice*)
                                       Thomas Johnson (*Admitted Pro Hac Vice*)
                                       Joseph Dubis (*Admitted Pro Hac Vice*)
                                       MERCHANT GOULD P.C.
                                       2200 Fifth Street Towers
                                       150 South Fifth Street
                                       Minneapolis, MN 55402-4247
                                       Tel: (612) 332-5300

                                       *COUNSEL FOR PLAINTIFFS*
                                       *CRYSTAL LAGOONS US CORP AND*
                                       *CRYSTAL LAGOONS TECHNOLOGIES,*
                                       *INC.*

Date: February 26, 2021                By: */s/ Jared Braithwaite*
                                       Jared Braithwaite (Utah Bar No. 12455)
                                       jbraithwaite@mabr.com
                                       MASCHOFF BRENNAN
                                       111 S. Main Street, Ste. 600
                                       Salt Lake City, Utah 84111
                                       Telephone: (801) 297-1850
                                       Facsimile: (435) 252-1361

                                       R. Parrish Freeman (Utah Bar No. 7529)
                                       pfreeman@mabr.com
                                       MASCHOFF BRENNAN
                                       1389 Center Dr., Ste. 300

Park City, Utah 84098
Telephone: (435) 252-1360
Facsimile: (435) 252-1361
*COUNSEL FOR DESERT COLOR ST.*
*GEORGE, LLC; DESERT COLOR*
*MANAGER, LLC; and PACIFIC*
*AQUASCAPE INTERNATIONAL, INC.*

Date: February 26, 2021        By: */s/ Jared L. Inouye*_____
                               Barry N. Johnson (#6255)
                               Jared L. Inouye (#9776)
                               BENNETT TUELLER JOHNSON &
                               DEERE
                               3165 East Millrock Drive, Suite 500
                               Salt Lake City, Utah 84121
                               Telephone: (801) 438-2000
                               Email: bjohnson@btjd.com;
                               jinouye@btjd.com

                               *COUNSEL FOR COLE WEST HOME, LLC*

Date: February 26, 2021        By: */s/ Jason E. Greene*_____
                               ANDERSON & KARRENBERG
                               Jason E. Greene (#13990)
                               Samantha E. Hawe (#17615)
                               50 West Broadway, Suite 700
                               Salt Lake City, Utah 84101-2035
                               Telephone: (801) 534-1700
                               Facsimile: (801) 364-7697
                               jgreene@aklawfirm.com
                               shawe@aklawfirm.com

                               *COUNSEL FOR DEFENDANT HOLMES*
                               *HOMES, INC.*

16261022_v1