Stephen M. Sansom (#10678)
Brandon T. Christensen (#16420)
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101
(801) 799-5897
*smsansom@hollandhart.com*
*btchristensen@hollandhart.com*

Anthony R. Zeuli *(Admitted Pro Hac Vice)*
Thomas Johnson *(Admitted Pro Hac Vice)*
Joseph Dubis *(Admitted Pro Hac Vice)*
MERCHANT GOULD P.C.
2200 Fifth Street Towers
150 South Fifth Street
Minneapolis, MN 55402-4247
(612) 332-5300
*tzeuli@merchantgould.com*
*tjohnson@merchantgould.com*
*jdubis@merchantgould.com*

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
SOUTHERN REGION OF THE CENTRAL DIVISION**

| | |
|---|---|
| CRYSTAL LAGOONS U.S. CORP. AND CRYSTAL LAGOONS TECHNOLOGIES INC., <br><br> Plaintiffs, <br><br> vs. <br><br> DESERT COLOR MANAGER LLC, DESERT COLOR ST. GEORGE LLC, AJ CONSTRUCTION, INC., TRI-STATE VENTURES, LLC d/b/a CAREFREE HOMES – UTAH, COLE WEST HOME LLC, HOLMES HOMES, INC., SULLIVAN HOMES LLC, and PACIFIC AQUASCAPE INTERNATIONAL, INC., | **ATTORNEY PLANNING MEETING REPORT** <br><br> Case No. 2:20-cv-00851-BSJ <br><br> Judge Bruce S. Jenkins <br><br> **Jury Trial Demanded** |

| | |
|---|---|
| Defendants<br><br>DESERT COLOR MANAGER LLC, DESERT COLOR ST. GEORGE LLC, and PACIFIC AQUASCAPE INTERNATIONAL, INC.,<br><br>Counterclaim Plaintiffs<br><br>vs.<br><br>CRYSTAL LAGOONS U.S. CORP. AND CRYSTAL LAGOONS TECHNOLOGIES INC.,<br><br>Counterclaim Defendants. | |

1. **PRELIMINARY MATTERS**:

    a. Describe the nature of the claims and affirmative defenses:

**Plaintiffs' Statement:**

Crystal Lagoons has developed one of the most innovative technologies in recent years. The only large, clear lagoons used for swimming and the practice of water sports capable of permanently maintaining high transparency and water quality around the world use Crystal Lagoons' technology. Crystal Lagoons has applied for patents covering this technology in over 190 countries and territories, and Crystal Lagoons' patents have been granted in 100% of the countries and territories where applications have been examined. In January 2020, Crystal Lagoons' intellectual property, which includes these patents, was valued in the United States at $3.3 billion. These patents include the patent in suit, U.S. Patent No. 8,062,514 (the "'514 patent"). Today, the net value of all royalties from licensing agreements covering this intellectual

property is more than $2.2 billion, demonstrating that people all over the world are willing to pay for licensing this technology. This is proof of the uniqueness and high value of Crystal Lagoons' technology.

Crystal Lagoons' revolutionary innovations for building and maintaining large man-made lagoons with excellent water quality at low costs and in a sustainable manner paved the way for its implementation all over the world. Today more than 77 projects employing Crystal Lagoons' technology are in different stages of operation and construction, and 600 projects are in planning and negotiations stages. In the US, Crystal Lagoons' technology has already been used to build and operate 6 lagoons, with a seventh lagoon opening soon and is planning more than 30 additional projects.

Crystal Lagoons' innovations have allowed the creation of real estate projects where residents have access to beach life at the doorsteps of their home, enjoying the man-made, multi-acre lagoon, often far away from the sea. Recently Crystal Lagoons has also developed the concept of Public Access Lagoons that allows taking beach life to an urban setting with ticketed access, changing the lifestyle of people in cities. Instead of having to drive long hours or fly to a tourist beach destination, the nearby population will be able to visit the beach through the Public Access Lagoon concept just steps away from their homes simply by purchasing a ticket. These Public Access Lagoons projects will provide access to several recreational, commercial, and cultural facilities and experiences, such as restaurants, access to practicing water sports, and concerts. This is already happening in the U.S., with the Lago Mar Project in Texas City, Texas, and the Epperson Ranch Project near Tampa, Florida.

In 2015, Crystal Lagoons was introduced to representatives from Defendants Desert Color Manager LLC and Desert Color St. George LLC ("Desert Color") that were contemplating a new development in Utah using lands held in the state trust, SITLA. In 2016, a representative from the State of Utah traveled with Desert Color personnel to tour a lagoon with Crystal Lagoons' technology in Mexico. In June 2017, Desert Color contacted Crystal Lagoons seeking to use its proprietary technology to build a multi-acre, man-made lagoon in St. George, Utah.

As it does with all customers, a non-disclosure agreement (NDA) was signed between the parties in December 2017 prohibiting Defendants' unauthorized use of Crystal Lagoons' Confidential Information, proprietary Technology, and Crystal Lagoons' name and trademarks. In February 2018, the parties signed an Economic Proposal that included a rendering of the proposed lagoon.  After more than 18 months of working together for the Utah project, and more than 3 years of exchanging information such as renderings, photographs, concept designs, construction details, cost information, details about systems and equipment used in the technology, and participating in several site visits to Crystal Lagoons' other projects where detailed technical construction methods and information were shared, Defendant Desert Color in June 2019 told Crystal Lagoons that it was not going forward with a lagoon. However, Crystal Lagoons discovered in summer 2020 that Desert Color had not only moved forward with the lagoon project, but did so using Crystal Lagoons' Confidential Information, Technology, name, trademarks, and patented technology.  Desert Color engaged Defendant Pacific Aquascape International Inc. ("Pacific Aquascape") to design and build the Desert Color lagoon.

Crystal Lagoons contends that Desert Color has directly and indirectly infringed, and are infringing, the '514 patent by commercializing a man-made lagoon at the Desert Color project in

St. George, Utah that has all elements from at least claim 1 of the '514 patent. Crystal Lagoons further believes that discovery and expert analyses will demonstrate that Desert Color has infringed other patents related to Crystal Lagoons' water treatment technologies. Crystal Lagoons further contends that Desert Color has breached the parties' NDA and infringed Crystal Lagoons' trademarks.

Crystal Lagoons contends that Defendant Pacific Aquascape International Inc. ("Pacific Aquascape") has directly infringed, and is infringing, the '514 patent by designing, providing the engineering and technical specifications, and building a man-made lagoon at the Desert Color project in St. George, Utah that has all elements from at least claim 1 of the '514 patent. Crystal Lagoons further believes that discovery and expert analyses will demonstrate that Pacific Aquascape has infringed other patents related to Crystal Lagoons' water treatment technologies.

**Defendants' Statement:**

Defendants, Desert Color Manager LLC and Desert Color St. George, LLC (collectively, "Desert Color") are both entities involve in a master-planned community development project known as "Desert Color" in St. George, Utah, which will feature residences, shopping, dining, entertainment, commercial, retail, hospitality, and recreation. Among the amenities at Desert Color is a lagoon, which is the focus of this lawsuit. Defendant Pacific Aquascape International, Inc. ("Pacific Aquascape") is the company that Desert Color engaged to design and build the lagoon.  is an engineering and design firm in Provo, Utah.

In December 207, Desert Color and Crystal Lagoons entered into a non-disclosure agreement to facilitate Desert Color's evaluation of whether it would engage Crystal Lagoons to provide consulting services relating to a proposed lagoon project at the Desert Color

development. Desert Color's evaluation concluded in June 2019 when Desert Color determined that it did not wish to engage Crystal Lagoons. Instead, Desert Color engaged a Pacific Aquascape to provide design and construction services for the proposed Desert Color lagoon project. The design proposed by Pacific Aquascape and agreed to by Desert Color for the Desert Color lagoon project was to use conventional swimming pool technology, including a conventional filtration system and chemical treatment regimen, but on a very large, multi-acre scale. The concept was independently developed and implemented by Pacific Aquascape. Desert Color provided general feedback and direction on the project on matters such as dimensions and aesthetics but did not supply any technical information that was unconventional or not already in the public domain.

Crystal Lagoons asserts claims for breach of contract, trademark infringement, trademark dilution, unfair competition, false advertising, unjust enrichment, and patent infringement—all because it was rejected as the designer of the Desert Color lagoon. But Desert Color did not breach the NDA, did not infringe any of Crystal Lagoons' purported trademark or seek to associate the Desert Color lagoon with Crystal Lagoons after determining that it would not engage Crystal Lagoons for the project. And the Desert Color lagoon employs traditional filtration technology that Crystal Lagoons has admitted is not covered by its asserted patent. Thus, this is a baseless lawsuit by Crystal Lagoons not intended to redress legitimate claims but intended to burden Defendants because Crystal Lagoons was not selected as the designer of the lagoon. Accordingly, Defendants deny Crystal Lagoons' allegations and any liability for breach of contract, trademark infringement, trademark dilution, unfair competition, false advertising,

unjust enrichment, patent infringement, any other claim or allegation by Crystal Lagoons however styled.

Defendants assert defenses and counterclaims of non-infringement of both patent and trademark rights as well as for declarations that Defendants have not engaged in false advertising or unfair competition.

Defendants also assert a counterclaim to cancel Crystal Lagoons' registered trademarks because the terms "crystal" and "crystal lagoon(s)" are generic or descriptive terms for clear or transparent water bodies and the words are understood and employed by the public (and by Crystal Lagoons itself) in the generic and descriptive sense, which warrants cancelation of Crystal Lagoons' trademark registrations.

Defendants also assert a defense and counterclaim for patent invalidity based other water structures around the world, which all significantly pre-date the priority date for Crystal Lagoons' asserted patent. Crystal Lagoons' patent discloses no more than well-known water purification principles, which were well known and used in recreational and non-recreational water structures and treatment long before the priority date of the asserted patent. By this lawsuit Plaintiffs attempt to extend the asserted patent to cover material that Crystal Lagoons represented was not covered by the patent claims in statements made to the U.S. Patent and Trademark Office during prosecution of the asserted patent and its related patents. As such, Plaintiffs' present patent assertions are over broad and show fraud on the Patent Office.

Defendants also lacked knowledge of the asserted patent prior to the alleged infringement, which forecloses any claim for indirect or willful patent infringement.

Among their other defenses, Defendants also allege that Crystal Lagoons is engaged in patent misuse and anti-trust violations for using the patents to restrain trade beyond the enforcement of the exclusive rights afforded by the patents.

    b.    This case is   __X__   not referred to a magistrate judge

              _____ referred to magistrate judge _____

                    _____under 636(b)(1)(A)

                    _____under 636(b)(1)(B)

              _____ assigned to a magistrate judge under General Order 07-001

              and

                  ____ all parties consent to the assignment for all proceedings or

                  ____ one or more parties request reassignment to a district judge

    c.    Pursuant to Fed. R. Civ. P. 26(f), a meeting was held on July 12, 2021 via telephone conference.

The following attended:

    *Anthony Zeuli and Thomas Johnson ,*

    counsel for *Plaintiffs Crystal Lagoons*

    *Jared Braithwaite and Alexis Juergens,*

    counsel for *Desert Color Manager LLC; Desert Color St. George, LLC; and Pacific Aquascape International, Inc.*

    d.      The parties __X__ have exchanged the initial disclosures required by Rule 26(a)(1).

    e.      Pursuant to Fed. R. Civ. P. 5(b)(2)(D), the parties agree to receive all items required to be served under Fed. R. Civ. P. 5(a) by either (i) notice of electronic filing, or (ii) email transmission. Such electronic service will constitute service and notice of entry as required by those rules. Any right to service by USPS mail is waived.

**2.**     **DISCOVERY PLAN**: The parties jointly propose to the court the following discovery plan: *Use separate paragraphs or subparagraphs as necessary **if the parties disagree.***

    a.      Discovery is necessary on the following subjects: *all subjects permitted by the Federal Rules of Civil Procedure.*

    b.      Discovery Phases
*Discovery will proceed pursuant to the Local Patent Rules of the United States District Court for the District of Utah ("LPR").*

    c.      Designate the discovery methods to be used and the limitations to be imposed.

        (1)    *For oral exam depositions, (i) specify the maximum number for the plaintiff(s) and the defendant(s), and (ii) indicate the maximum number of hours unless extended by agreement of the parties.*

           Oral Exam Depositions

           Plaintiff(s) __10__ [1]

           Defendant(s) __10__ [2]

           Maximum number of hours per deposition __7__

        (2)    *For interrogatories, requests for admissions, and requests for production of documents, specify the maximum number that will be served per side.*

---

[1] Excluding depositions of experts. The parties also agree that each Rule 30(b)(6) deposition will count as a single deposition regardless of the number of persons designated to testify about the Rule 30(b)(6) deposition topics.

[2] Excluding depositions of experts. The parties also agree that each Rule 30(b)(6) deposition will count as a single deposition regardless of the number of persons designated to testify about the Rule 30(b)(6) deposition topics.

        Interrogatories   25

        Admissions[3]   50

        Requests for production of documents   200

(3)   Other discovery methods: *This case may require inspections of domestic and foreign facilities or issuance of foreign subpoenas. Depositions may be conducted by videoconference. The Court Reporter need not be in the same room as the witness.*

d.   Discovery of electronically stored information should be handled as follows:

In general, the parties agree that ESI will be produced to the requesting party in a single-page TIFF image format, with searchable text, and load files, as specified below. Files that are not easily converted to image format, such as spreadsheet, PowerPoint, database, audio visual and drawing files, shall be produced in native format. The parties shall also comply with reasonable requests for the production of any document in native format.

Black and white hard-copy documents should scanned and produced as single-page, TIFF images, Group IV compression format and imaged at 300 DPI. Color hard-copy documents must be JPEG, single page, JPEG compression format, and imaged at 300 DPI. All hard-copy documents must be produced with an image load file (.OPT file or .LFP file) and a delimited database/metadata load file (.DAT or .CSV). All documents are to be provided with per document searchable text (.TXT) files that contain full text extraction. In the event a document is scanned into TIFF format, the text file should contain that document's OCR text. The documents should be logically unitized (i.e., distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. The text and image load files should indicate page breaks. The following fields should be included in the load files: BEGDOC#, ENDDOC#, PGCOUNT, CONFIDENTIALITY, and TEXT PATH.

Electronically-stored documents shall be produced as TIFF images. TIFF images shall be produced in single-page TIFFs in Black & White TIFF format, not grayscale, unless color is necessary to understand the meaning of the document. A party may request certain documents or categories of documents to be produced natively or in color also. All TIFF images should be at a compression rate of 300 DPI or higher. Parent-child relationships (such as those associated between emails and attachments) will be preserved for all natively-produced and TIFF-imaged documents, with child document produced consecutively after the parent document. Families will be associated using the BEGATTACH and ENDATTACH metadata field. The following fields should be included in the load files: BEGDOC#, ENDDOC#, BEGATTACH#, ENDATTACH#, DATE CREATED, DATE LAST MODIFIED, PGCOUNT, and CONFIDENTIALITY.

---

[3] Excluding Requests for Admission to authenticate documents.

        In the case of email, if relevant email is ordinarily stored on and produced from an email server/client, the corresponding text file shall include the following fields: TO, FROM, CC, BCC, RE or SUBJECT, SENT, RECEIVED.

        A delimited text file (.DAT or .CSV) that can be loaded into commercially acceptable database software (e.g., Concordance or Relativity) shall be provided. In addition, an image load file that can be loaded into commercially acceptable production software (e.g., Opticon, iPro) shall be provided. Each TIFF in a production must be referenced in the corresponding image load file.

        If discoverable information requires unanticipated or different forms of production other than as set forth above, the parties will address those issues as they arise during the course of discovery.

    e.    The parties have agreed to an order regarding claims of privilege or protection as trial preparation material asserted after production, as follows:

        The parties have agreed that attorney-client communications and work product regarding this lawsuit and post-dating the filing of the original Complaint do not need to be logged pursuant to Federal Rule of Civil Procedure 26(b)(5).

    f.    Last day to serve written discovery   <u>2/4/2022</u>

    g.    Close of fact discovery   <u>3/7/2022</u>

**3.    AMENDMENT OF PLEADINGS AND ADDITION OF PARTIES**:

    a.    The cutoff dates for filing a motion to amend pleadings are:  *specify date*

        Plaintiff(s) <u>September 27, 2021</u>    Defendant(s) September 27, 2021

    b.    The cutoff dates for filing a motion to join additional parties are:  *specify date*

        Plaintiff(s) <u>September 27, 2021</u>    Defendants(s) September 27, 2021

        ***(NOTE:  Establishing cutoff dates for filing motions does not relieve counsel from the requirements of Fed. R. Civ. P. 15(a))***.

**4.    EXPERT REPORTS**:

    a.    The parties will disclose the subject matter and identity of their experts on

        (*specify dates*):

        Party(ies) bearing burden of proof <u>28 days after the Court's claim construction</u>

            <u>ruling</u>

        Counter Disclosures <u>56 days after the Court's claim construction ruling</u>

b.    Reports from experts under Rule 26(a)(2) will be submitted on (*specify dates*):

        Party(ies) bearing burden of proof <u>28 days after the Court's claim construction ruling</u>

        Counter Reports <u>56 days after the Court's claim construction ruling</u>

5.    **OTHER DEADLINES**:

    a.    Expert Discovery cutoff:  <u>91 days after the Court's claim construction ruling</u>

    b.    Deadline for filing dispositive[4] or potentially dispositive motions including motions to exclude experts where expert testimony is required to prove the case. <u>119 days after the Court's claim construction ruling</u>

    c.    Deadline for filing partial or complete motions to exclude expert testimony <u>179 days after the Court's claim construction ruling</u>

6.    **ADR/SETTLEMENT**:

*Use separate paragraphs/subparagraphs as necessary if the parties disagree.*

    a.    The potential for resolution before trial is:  ___ good  __X__ fair  ____ poor

    b.    The parties intend to file a motion to participate in the Court's alternative dispute resolution program for:  settlement conference (with magistrate judge): __N/A__  arbitration: __N/A__  mediation: __N/A__

    c.    The parties intend to engage in private alternative dispute resolution for: arbitration: __N/A__  mediation: __N/A__

---

[4] Dispositive motions, if granted, resolve a claim or defense in the case; nondispositive motions, if granted, affect the case but do not resolve a claim or defense.

d.  The parties will re-evaluate the case for settlement/ADR resolution on (*specify date*): <u>30 days after the Court's claim construction ruling</u>

**7.  TRIAL AND PREPARATION FOR TRIAL:**

a.  The parties should have <u>  14  </u> days after service of final lists of witnesses and exhibits to list objections under Rule 26(a)(3) (if different than the 14 days provided by Rule).

b.  This case should be ready for trial by: <u>365 days after the Court's claim construction ruling</u>

*Specify type of trial*: Jury <u>  X  </u>  Bench<u>      </u>

c.  The estimated length of the trial is: *specify days* <u>  10 days  </u>

<u>/s/ Stephen M. Sansom                        </u>  Date:  July 19, 2021

Signature and typed name of Plaintiff(s) Attorney

<u>/s/ Jared Braithwaite (signed with permission)   </u>  Date:  July 19, 2021

Signature and typed name of Defendant(s) Attorney