Stephen M. Sansom (#10678)
Brandon T. Christensen (#16420)
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT  84101
Tel: (801) 799-5897
*smsansom@hollandhart.com*
*btchristensen@hollandhart.com*

Anthony R. Zeuli *(Admitted Pro Hac Vice)*
*tzeuli@merchantgould.com*
Thomas Johnson *(Admitted Pro Hac Vice)*
*tjohnson@merchantgould.com*
Joseph Dubis *(Admitted Pro Hac Vice)*
*jdubis@merchantgould.com*
MERCHANT GOULD P.C.
2200 Fifth Street Towers
150 South Fifth Street
Minneapolis, MN  55402-4247
Tel: (612) 332-5300
Fax: (612) 332-9081

*Attorneys for Plaintiffs*

---

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH SOUTHERN REGION OF THE CENTRAL DIVISION

| | |
|---|---|
| CRYSTAL LAGOONS U.S. CORP. AND CRYSTAL LAGOONS TECHNOLOGIES INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>DESERT COLOR MANAGER LLC, DESERT COLOR ST. GEORGE LLC, AJ CONSTRUCTION, INC., COLE WEST HOME LLC, HOLMES HOMES, INC., SULLIVAN HOMES LLC, and PACIFIC AQUASCAPE INTERNATIONAL, INC.,<br><br>Defendants. | **AMENDED PROPOSED JOINT PRELIMINARY INJUNCTION PRETRIAL ORDER**<br><br>Case No. 2:20-cv-00851-BSJ<br><br>Judge Bruce S. Jenkins<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Crystal Lagoons U.S. Corp. and Crystal Lagoons Technologies Inc. (collectively, "Crystal Lagoons") and Defendants Desert Color Manager LLC, Desert Color St. George LLC (collectively, "Defendants" or "Desert Color") submit the following amended proposed Joint Pretrial Order:

## I. General Nature of the Parties' Claims.

### A. Plaintiffs' Brief Statement of the Case.

#### 1. Background.

Crystal Lagoons' founder, Fernando Fischmann, is the inventor of a new worldwide industry: man-made, multi-acre lagoons for swimming and watersports with color, transparency, and cleanness similar to tropical seas or swimming pools. However, these lagoons are not traditional swimming pools. They are the centerpieces of developments, towns, and cities centered around swimming and watersports. Since 2006, Crystal Lagoons' brand has become known worldwide for these one-of-a-kind recreational bodies of water and its technology and intellectual property has been valued in excess of $3 billion.  Crystal Lagoons has spent millions of dollars on advertising, has two Guinness Book of World Records, numerous awards and significant press coverage. Its brand is the "gold" standard in this industry.

In 2015, Crystal Lagoons was introduced to representatives from Desert Color that were contemplating a new development in Utah using lands held in the state trust, SITLA.  In 2016, a representative from the State of Utah traveled with Desert Color personnel to tour a lagoon with CRYSTAL LAGOONS® technology in Mexico.  In June

2017, Desert Color contacted Crystal Lagoons seeking to use its proprietary technology to build a multi-acre, man-made lagoon in St. George, Utah.

As it does with all customers, a non-disclosure agreement (NDA) was signed between the parties in December 2017 prohibiting Defendants' unauthorized use of Crystal Lagoons' Confidential Information, proprietary Technology, and Crystal Lagoons' name and trademarks. In February 2018, the parties signed an Economic Proposal that included a rendering of the proposed lagoon.  After more than 18 months of working together, exchanging information such as renderings, photographs, concept designs, construction details, cost information, details about systems and equipment used in the technology, and participating in several site visits to Crystal Lagoons' other projects where detailed technical construction methods and information were shared, Defendant Desert Color in June 2019 told Crystal Lagoons that it was not going forward with a lagoon. However, Crystal Lagoons discovered in summer 2020 that Desert Color had not only moved forward with the lagoon project, but did so using Crystal Lagoons' Confidential Information, Technology, name and trademarks.  This lawsuit and motion for preliminary injunction followed.

Defendants have continued to hold out their lagoon as being affiliated or associated with Crystal Lagoons, yet Plaintiffs have no control over the lagoon at Desert Color. Defendants are also telling the public that their lagoon is safe for swimming and permitted for such purpose, as would be the case with an authentic CRYSTAL LAGOONS® amenity. However, the health authority is not regulating the Desert Color

lagoon. There is significant risk that unless stopped, the public and Crystal Lagoons will be harmed.

### 2.   **Litigation between the Plaintiffs and the Defendants**

On December 3, 2020, Crystal Lagoons sued for breach of the NDA, trademark and trade dress infringement, unfair competition, and false advertising arising under the Lanham Act, 15 U.S.C. §§ 1051, *et seq*.; violations of the Utah Truth in Advertising Act, UT Code §§ 13-11a-1, *et seq.*; and common law conversion and unjust enrichment. On February 2, 2021, Crystal Lagoons filed an amended complaint adding a claim for patent infringement arising under the Patent Act, 35 U.S.C., §§ 101, *et seq*.  Defendants Desert Color, Pacific Aquascape, Holmes Homes, Inc. and Cole West Homes LLC filed motions to dismiss claims against them (other than the patent claims asserted against Desert Color and Pacific Aquascape). The motion was granted as to Defendant Holmes Homes, Inc. and Pacific Aquascape on Counts I- X of the First Amended Complaint.

Defendants AJ Construction, Inc., Tri-State Ventures, LLC d/b/a/ Carefree Homes – Utah, Cole West Home LLC, and Sullivan Homes LLC have all consented to injunctions being entered against them and have been dismissed from this case without prejudice.

### 3.   **Preliminary Injunction**

Contemporaneously with filing its Complaint, Crystal Lagoons also filed a motion for a preliminary injunction to prevent use of a lagoon that has been marketed and sold as affiliated or associated with Crystal Lagoons and its brand, but which was not designed, approved or operated by Crystal Lagoons.  In other words, Crystal Lagoons alleges that Defendants' breach, false association, and trademark infringement has caused Crystal

Lagoons to lose control of its brand and reputation and for which money damages are not sufficient.  The builder of the lagoon at Desert Color is the same builder of the troubled lagoon at the Hard Rock Hotel and Casino in Florida:



In addition to loss of quality control of its brand and reputation, without the proper regulation (that can result in health issues and fatal sanitary accidents), Defendants' acts cause irreparable harm to the public and Crystal Lagoons.  Defendants are advertising their lagoon as a "crystal lagoon(s)" safe for swimming and permitted for such purpose. However, Desert Color's lagoon is not affiliated with or approved by Crystal Lagoons and is not being regulated by the public health agency. Consequently, there is significant risk that unless stopped, the public will be harmed and that Crystal Lagoons will be associated with that harm.  Defendants have argued that the lagoon at Desert Color is exempt from regulation, however, that argument has now failed. The Utah Department of Health has recently ordered that the regulations apply.  Nevertheless, the lagoon is still

not being regulated and is open for swimming, putting the public and Crystal Lagoons at risk. Only this Court can prevent that from happening.

### 4.   **Irreparable Harm**

Large recreational water bodies have been known to develop microorganisms such as protozoa and amoebas, which include the amoeba *Naegleria fowleri* (commonly referred to as the "brain-eating amoeba"). Crystal Lagoons, however, has developed technology and practices to prevent such infestations. Crystal Lagoons' technology has a track record of over 15 years with optimum sanitary results in more than 45 lagoons operating around the world in different types of climate conditions.

There have been many fatal cases of sanitary incidents around the world and in the U.S. in confined large water bodies (that do not have an appropriate water quality management). An emblematic case is the one at Disney's River Country and the one at the National Whitewater Rafting Center in North Carolina, with fatal results due to microorganisms present in the water such as *Naegleria fowleri*. The only technology that exists in the world for large water bodies used for recreational purposes, that is not conventional swimming pool technology, is the Crystal Lagoons' technology. Therefore, regarding the treatment of confined large water bodies, it is important to highlight that if such water bodies are not treated properly, there is a high risk for sanitary incidents.

Given the above loss of control over Crystal Lagoons' reputation, loss of quality control and potential public harm, only a preliminary injunction from this Court can prevent the public from being harmed by an unregulated, dangerous lagoon and also

prevent this nascent industry and its creator, Crystal Lagoons, from being harmed by

Defendants' unlawful association with Crystal Lagoons' name and trademark.

     5.   **Proposed Order**

Crystal Lagoons respectfully requests that the Court enter a preliminary injunction

order against these Defendants consistent with the Consent Injunctions already entered in

this case, including at least the following:

1. Cease all use of any kind of the CRYSTAL LAGOONS mark or substantially similar names or marks, including but not limited to the mark CRYSTAL in connection with any water amenity and those listed on Ex. A;

2. Remove, take down and destroy within 30 days any and all uses of CRYSTAL LAGOONS mark or substantially similar names or marks, including but not limited to the mark CRYSTAL in connection with any water amenity;

3. Cease all use of any kind of Crystal Lagoons' images, photographs, or renderings, including but not limited to those listed on Ex. B;

4. Remove, take down and destroy within 30 days any and all Crystal Lagoons images, photographs and renderings listed on Ex. B;

5. Instruct all third-party affiliates and partners to stop all use of the CRYSTAL LAGOONS mark or substantially similar names or marks, including but not limited to the mark CRYSTAL in connection with any water amenity, including but not limited to those listed on Ex. A., and stop all use of any kind of Crystal Lagoons' images, photographs, or renderings, including but not limited to those listed on Ex. B; and

6. Stop construction/operation of the lagoon at Desert Color and ensure that no person enters the lagoon at Desert Color for any purposes, especially swimming, until the lagoon is regulated by the proper health authority and complies with all such regulations.

**B.     The Defendants' Brief Statement of their Case.**

1.     **Crystal Lagoons' motion for preliminary injunction is based solely on its breach of contract and trademark infringement claims, and the only requested relief is that of enjoining development, enjoining trademark use, and corrective advertising.**

Federal Rule of Civil Procedure 7 and DUCivR 7-1 both require motions to particularly state their grounds and the particular relief sought in order to prevent parties from shifting positions. Yet Crystal Lagoons has consistently attempted to rework its motion for preliminary injunction, the grounds on which it was based, and the relief that it requested. In the motion itself, Crystal Lagoons was unequivocal that it "relies solely upon its breach of contract and trademark infringement claims" and seeks only to "enjoin Defendants from (1) further development of the lagoon at the Desert Color development, (2) using CRYSTAL LAGOONS® or a confusingly similar mark; and (3) corrective advertising …." (Motion, Docket No. 10, at 19.)

Defendants' Opposition showed that Crystal Lagoons' breach of contract and trademark claims have no basis. So, since the Opposition, Crystal Lagoons has shown its intent to focus on other claims and even unasserted theories, such as the assertion that Crystal Lagoons as a private party should be able to bring a non-existent private cause of action to overrule the Health Departments of the State of Utah and enforce Utah's regulations according to Crystal Lagoons' own interpretations. Specifically, Crystal Lagoons has asked the Court to overrule the Health Department's determination that the

Desert Color lagoon is excepted from the pool code. Crystal Lagoons has no such claim, and no such private right of action exists.

This is an example of Crystal Lagoons' overreach and its collateral efforts to obfuscate the only issues actually involved in the preliminary injunction motion—breach of contract and trademark infringement. Desert Color has criticized it as such, but Crystal Lagoons has characterized that criticism as an assertion by Desert Color that it need not comply with health code regulations or ensure the lagoon is safe for public use. This is yet another misdirection tactic. Obviously Desert Color intends to operate and maintain the lagoon to be safe and sanitary—and it is doing so right now using conventional swimming pool cleaning technology.

The Southwest Utah Public Health Department is aware of the Desert Color lagoon, has inspected the lagoon, and previously "expressed the view that the Desert Color lagoon fell within an exemption to the Utah Department of Health's pool rules and was not subject to regulation under those rules." (Docket No. 73-2 at p. 7 of 13 (letter from Crystal Lagoons' attorney recognizing the Southwest Health Department's determination).) And, whether the pool code applies or not, the Health Department always has regulatory authority and the ability to shut down any public place that poses a risk to public health—whether subject to swimming pools rules or not. Utah Code Ann. § 26A-1-114(b). Although the Health Department recently issued an order declaring that its swimming pool regulations do indeed apply to large man-made bodies intended for swimming (Docket No. 140-1), this does not change the fact that the Southwest Utah

Public Health Department is still aware of the Desert Color lagoon and its ongoing operation, and still has, and has always had, the ability to close the lagoon if it believes that it poses a public health risk—it has not done so. Accordingly, Crystal Lagoons' improper and hyperbolic pleas for Court intervention to save the public from the lagoon are even more irrelevant and misplaced than ever.

Crystal Lagoons is also now attempting to expand the scope of the preliminary injunction motion to include "false association" claims, i.e., not trademark infringement but some other alleged improper association. Because this claim did not form the basis of Crystal Lagoons' motion for preliminary injunction, it was not briefed for the Court, and was not part of efforts to prepare and marshal evidence for any preliminary injunction hearing. The issues of fact and law for a preliminary injunction hearing are based on Crystal Lagoons' stated bases and requested relief for its Motion and not its forays into its other grounds, theories, or requests.

2.    **The Non-Disclosure Agreement**

While Crystal Lagoons has alleged that Desert Color misused or disclosed information in breach of an NDA, Crystal Lagoons has failed to articulate what confidential information was supposedly misused or disclosed. There is no evidence of breach of the NDA—let alone evidence sufficient to show a likelihood of success on the merits—and no evidence that Crystal Lagoons has been or will be irreparably harmed by any breach or prospective breach. Indeed, Crystal Lagoons' requested relief is entirely unmoored from any alleged use or disclosure of confidential information.

### 3.      **The Alleged Use of the Generic Descriptor "crystal lagoons"**

Desert Color has never had any official or concerted campaign to associate the Desert Color lagoon project with Crystal Lagoons or with the "Crystal Lagoons" trademark. The only evidence of Desert Color using the words "crystal lagoons" comes from one single oral use in announcing the project, which was picked up and included in an online article by a local news outlet. The other handful of instances are uses by independent third parties not controlled by Desert Color and are similarly descriptive, in any event. Such uses are *de minimis*, descriptive, and do not amount to trademark usage.

In fact, Crystal Lagoons' own alleged evidence of trademark infringement shows affirmative efforts to *disassociate* Crystal Lagoons from the Desert Color development:



Outdated, isolated utterances of "crystal lagoon(s)"—and even then in a descriptive sense—hardly show a campaign to associate Desert Color with Crystal Lagoons. And there is no evidence that these uses resulted in any actual confusion among consumers or any likelihood of confusion.

Lacking evidence to prove a likelihood of success on its breach of contract or trademark claims, Crystal Lagoons shifts to new theories, whether asserted or not, in order to hide the scant support for its claims.

    4.    **The Desert Color lagoon employs safe and conventional pool technology.**

Entirely separate from any breach of contract or trademark infringement claim, Crystal Lagoons spends a considerable amount of energy arguing that the Desert Color lagoon project will be unsanitary and therefore unsafe. Separate from the fact that this has no relevance to the claims upon which Crystal Lagoons' motion is based, there is no evidence of any of this, and it is all unsubstantiated argument by Crystal Lagoons.

Besides being unrelated to the claims that form the basis of Crystal Lagoons' motion, Crystal Lagoons' argument fails because it is premised on the unsupported assumption that the Desert Color lagoon project does not employ conventional swimming pool technology, which Crystal Lagoons admits would avoid health risks if used. And as explained by the designer of the Desert Color lagoon, Pacific Aquascape, the design and implementation of the Desert Color lagoon uses conventional swimming pool technology, including a conventional filtration system and conventional chemical treatment regimen, but on a very large, multi-acre scale. And this concept for the Desert Color lagoon was independently developed and implemented by Pacific Aquascape. And Crystal Lagoon admits that this conventional pool technology is safe and effective at cleaning large bodies of water.

In Crystal Lagoons' patent infringement claim against Desert Color (not part of the preliminary injunction motion), Crystal Lagoons also asserts that Desert Color is using Crystal Lagoons' technology instead of conventional pool technology. Crystal Lagoons' assertion is that the Desert Color lagoon has "color, transparency, and *cleanness* characteristics similar to swimming pools or tropical seas." (First Amended Complaint, Docket No. 79, at 61 (emphasis added).) Assuming Crystal Lagoons has a good faith basis for its patent infringement claim, Crystal Lagoons itself already admits that the Desert Color lagoon is clean and safe like a swimming pool.

Notwithstanding Crystal Lagoons' inconsistent argument, its efforts seem directed to enforcement of Utah's swimming pool code to the Desert Color lagoon. It argues that the Health Department is abdicating its responsibility to public health and that the lagoon is not regulated by any governmental agency. The truth—of which Crystal Lagoons is fully aware—is that the Health Department has regulatory authority and the ability to shut down any public place that poses a risk to public health—whether subject to swimming pools rules or not. Utah Code Ann. § 26A-1-114(b). And despite the Southwest Utah Public Health Department's knowledge of the Desert Color lagoon and its ongoing operations, it has not taken any action against the Desert Color lagoon. Instead, Desert Color and the Southwest Utah Public Health Department are addressing the Department's prior determination that the pool code did not apply and will be working together regarding the Health Department's recent pronouncement about

modification of pool code provisions to address large, man-made bodies of water, such as the Desert Color lagoon.

Crystal Lagoons' arguments are an attempt to usurp the authority of the Southwest Utah Public Health Department over the Desert Color lagoon. There is, however, no private right of action to overrule the Health Department and seek private enforcement of Utah's swimming pools rules. *Cf. Buckner v. Kennard*, 99 P.3d 842, 853–56 (Utah 2004). Crystal Lagoons' misguided attempt to backdoor such a claim through a breach of contract or trademark infringement action should not be entertained. In its requested relief request in the motion for preliminary injunction, Crystal Lagoons did not ask for a Court order preventing any person from entering the Desert Color lagoon, and such a request is unrelated to the breach of contract or trademark infringement claims that form the basis of the motion.

There is also no evidence to support Crystal Lagoons unfounded safety allegations: no evidence that the Desert Color lagoon does not use conventional filtration and chemical treatment (which Crystal Lagoons admits is safe), no evidence the lagoon is in fact unsafe or poses any safety risk, and no evidence that it is not "swimmable." Crystal Lagoons purports to ask in this document for an order stopping operation of the Desert Color lagoon "until the lagoon is regulated by the proper health authority," but Crystal Lagoons made no such demand in its Motion. The Court should disregard it as improper and unsupported, but also as mooted by the Health Department's recent decision to regulate the lagoon.

\* \* \*

Without evidence to show a likelihood of success or irreparable harm on either its breach of contract or trademark infringement claims, Crystal Lagoons resorts to unsupported allegations that the Desert Color lagoon is unsafe and unregulated. But those allegations do not relate to the motion for preliminary injunction, and Crystal Lagoons' own evidence and contentions in the matter show them to be untrue. Accordingly, Desert Color respectfully requests that the Court deny the entirety of Crystal Lagoons' motion for preliminary injunction.

## II.      Theories of Liability for Preliminary Injunction

"In order to receive a preliminary injunction, the plaintiff must establish the following factors: (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016).

**A.** **Breach of Contract against Desert Color**

1. Has Crystal Lagoons shown a likelihood of success that Desert Color breached paragraph 8 of the NDA by using Crystal Lagoons' "name or trademark, unless authorized in writing"?

2. Has Crystal Lagoons shown a likelihood of success that Desert Color breached paragraph 8 of the NDA by "imply[ing] or represent[ing] that it has any mandate or representation powers from" Crystal Lagoons?

3. Has Crystal Lagoons shown a likelihood of success that Crystal Lagoons disclosed Confidential Information to Desert Color and that Desert Color breached paragraph 2 of the NDA by publishing, disclosing, or using any Confidential Information received from Crystal Lagoons?

4. Has Crystal Lagoons shown the Crystal Lagoons' information allegedly published, disclosed or used by Desert Color was not freely available in the public domain, known to Desert Color or any recipient of the allegedly confidential information prior to the alleged time of disclosure, or disclosed to Desert Color in good faith by a party not bound to a duty of confidentiality pursuant to paragraph 3 of the NDA?

5. Has Crystal Lagoons shown a likelihood of irreparable harm to Crystal Lagoons based on any alleged breach of paragraph 8 of the NDA by Desert Color or prospective breach should an injunction not issue?

6. Has Crystal Lagoons shown a likelihood of irreparable harm to Crystal Lagoons based on any alleged breach of paragraph 2 of the NDA by Desert Color or prospective breach should an injunction not issue?

7. Has Crystal Lagoons shown that the threatened injury of a prospective breach of the NDA outweighs the harm that the preliminary injunctions may cause to Desert Color?

8. Has Crystal Lagoons shown that the injunction, if issued against Desert Color, will not adversely affect the public interest?

9. Has Crystal Lagoons shown that the requested injunction is narrowly tailored to remedy the harm shown?

      a)    <u>Defendants' authority</u>: *Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 961–62 (10th Cir. 2002) ("it is well settled an injunction must be narrowly tailored to remedy the harm shown.")

**B.    Trademark Infringement against Desert Color**

1.    Has Crystal Lagoons shown a likelihood of success that Desert Color used or is using Crystal Lagoons' registered trademark CRYSTAL LAGOONS or a confusingly similar mark without permission in order to cause confusion about association of the lagoon at Desert Color with Crystal Lagoons?

2.    Has Desert Color shown that it is likely that any use by Desert Color of the words "crystal lagoons" was descriptive of and used fairly and in good faith not as a mark?

      a)    <u>Defendants' authority</u>: 15 U.S.C. § 1115(b)(4) (It is not infringement if "the use of the name, term, or device charged to be an infringement is a use … of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin.")
*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004) ("The Lanham Act … [gives] no indication that the statute was meant to deprive commercial speakers of the ordinary utility of descriptive words. 'If any confusion results, that is a risk the plaintiff accepted when it decided to identify its product with a mark that uses a well known descriptive phrase.'") (quoting *Cosmetically Sealed Industries, Inc. v. Chesebrough–Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997)).

3.    If Desert Color used the words CRYSTAL LAGOONS or a confusingly similar mark not in a descriptive sense, has Crystal Lagoons shown such a use is likely to cause confusion among consumers?

4.    Has there been any actual confusion among consumers with respect to any alleged use of the words CRYSTAL LAGOONS or a confusingly similar mark by Desert Color?

5.    Did Desert Color have any intent to confuse consumers through the any alleged use of the words CRYSTAL LAGOONS or a confusingly similar mark?

6.    Has Crystal Lagoons shown that the requested injunction is narrowly tailored to remedy the harm shown?

    a)    <u>Defendants' authority</u>: *Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 961–62 (10th Cir. 2002) ("it is well settled an injunction must be narrowly tailored to remedy the harm shown."

## III.    Plaintiffs' Exhibit List.[1]

| Exhibit No. | Description |
|---|---|
| 01 | Photograph of San Alfonso Del Mar (Exhibit A, Dkt. 11-1) |
| 02 | Photograph of Lago Mar Project in Texas (Exhibit B, Dkt. 11-2) |
| 03 | Photographs of the Balmoral Project in Texas (Exhibit C, Dkt. 11-3) |
| 04 | Photographs of the Windsong Project in Texas (Exhibit D, Dkt. 11-4) |
| 05 | CRYSTAL LAGOONS®, U.S. Registration No. 3,881,936; 5,465,084; 5,454,097; 5,312,449; 5,870,729; and 6,042,995 (Exhibit E, Dkt. 11-5) |
| 06 | Early emails between Crystal Lagoons and Desert Color |
| 07 | Crystal Lagoons and Desert Color signed a Non-Disclosure Agreement (NDA) dated 12/8/2017 (Exhibit F, Dkt. 11-6) |
| 08 | Emails showing back and forth on technical information:<br><br>• Lisa Moore email dated 3/27/2018<br>• Lisa Moore email dated 4/5/2018<br>• Lisa Moore email dated 5/14/2018<br>• Brook Cole email dated 3/7/2019<br>• Brook Cole email dated 3/9/2019 |

[1] Plaintiffs agree to provide copies of their exhibits to Defendants by September 3, 2021.

18

| Exhibit No. | Description |
|---|---|
| | • Lisa Moore email dated 6/19/2019 |
| 09 | Economic Proposal for Desert Color dated 2/15/2019 (Exhibit G, Dkt. 13, Filed Under Seal) |
| 10 | Technical construction methods, which were shared during a visit to Crystal Lagoons' Windsong Ranch in Prosper, Texas on March 8, 2019. |
| 11&11A | Crystal Lagoons' Technology License and Supply Agreement (TLSA) |
| 12 | Lisa Moore email dated 1/12/2018 |
| 13 | City of St. George's Planning Commission's Notice of Meeting to discuss the zoning application filed by Desert Color St. George, LLC. (Exhibit Q, Dkt. 11-17) |
| 14 | Desert Color website pages, posted January 11, 2018 |
| 15 | Desert Color Brochures available online at http://crepromo.com/pmail/thain/sg_desert_color/ and website. (Exhibit I and J, Dkt. 11-9 and 11-10) |
| 16 | Printouts of:<br>• CNBC Real Estate, February 13, 2020, https://www.cnbc.com/2020/02/12/caribbean-like-lagoons-give-homebuyers-beachbenefits-without-risk.html;<br>• https://www.crystal-lagoons.com/press/caribbean-like- lagoons-give-homebuyers-the-benefits-of-the-beach-without-the-risk/<br>• https://windsongranchliving.com/crystal-lagoons-windsong-ranch/<br>• BusinessWire, January 6, 2018, https://www.businesswire.com/news/home/20180606006279/en/Crystal-Lagoons-Announces-21st-Man-made-Lagoon-Project-in-the-U.S. |
| 17 | Freedom of Information Requests ("FOIR") to SWUPHD<br>• FOIR submitted 6/26/2020 (Exhibit O, Dkt. 11-15)<br>• Denial received 7/6/2020 (Exhibit P, Dkt. 11-16)<br>• FOIR submitted 12/14/2020<br>• Denial received 12/28/2020 |
| 18 | Desert Color's Lagoon Amenities website page(s) as of 2/25/2021 |
| 19 | Photograph of the lagoon built by Pacific Aquascape at the Hard Rock Seminole Hotel and Casino in Florida (Exhibit H, Dkt. 11-8) |
| 20 | Photographs taken on or around September 3, 2020, showing the current condition of the Desert Color project in St. George, Utah (Exhibit R, Dkt. 11-18) |
| 21 | CV of Jeff Civins |

| Exhibit No. | Description |
|---|---|
| 22 | Utah Admin Code – Rule R392-302. Design, Construction and Operation of Public Pools |
| 23 | Letter Haynes Boone sent to the SWUPHD on January 13, 2021 (Exhibit S, Dkt. 73-2) |
| 24 | June 15, 2020 Email from Lindsay Kissel to Crystal Lagoons |
| 25 | December 19, 2017 email from Lisa Moore including Concept renderings from Crystal Lagoons |
| 26 | Original concept from Desert Color |
| 27 | Preliminary design from Crystal Lagoons |
| 28 | Windsong Ranch Technical Tour emails (6/19/2019) |
| 29 | 10/22/2019 Eric Cherasia email re future engagements |
| 30 | Desert Color lagoon plans as of 11/15/2019 ( DC0000001-25) |
| 31 | Email correspondence between SWUPHD (Klint Frei) and Sharkey LLC (Shawn Warner), obtained pursuant to FOIA request |
| 32 | Desert Color's Water Stewardship Vision as of June 17, 2020 |
| 33 | Desert Color Brochure as of June 17, 2020 |
| 34 | Desert Color Project Intake form dated September 17, 2017 |
| 35 | Pumphrey email to H. Merrill dated December 4, 2015 |
| 36 | Email re Cabo trip and Meeting April 13, 2016 |
| 37 | St. George Utah Project Water Testing |
| 38 | Desert Color Lagoon Photo 0521 – April 30, 2021 |
| 39 | Desert Color Lagoon Photo 0530 – April 30, 2021 |
| 40 | Forney City Council Meeting September 22, 2020 |
| 41 | Consent Injunction – Carefree Homes and Sullivan Homes |
| 42 | Consent Injunction – AJ Construction |
| 43 | Consent Injunction – Cole West |
| 44 | Civins letter to SWUPHD (Roberts) 12-24-2020 |
| 45 | Civins email to SWUPHD 12-29-2020 re virtual meeting |
| 46 | SWUPHD (Roberts) email reply to Civins 12-29-2020 |
| 47 | Civins email to SWUPHD (Roberts) 12-29-2020 re Sansom |
| 48 | St. George response to GRAMA request 01-21-2021 |
| 49 | Email to SWUPHD (Roberts) with Presentation for CLEHA 01-27-2021 |
| 50 | Civins letter to SWUPHD (Roberts) 02-26-2021 |
| 51 | Crystal Lagoons GRAMA Notice of Appeal and Written Appeal to State Records Committee 03-12-2021 |
| 52 | Crystal Lagoons Petition for Declaratory Order 06-01-2021 |
| 53 | Declaratory Order – Utah Department of Health 07-07-2021 |
| 54 | Civins letter to SWUPHD (Roberts) 07-21-2021 |

| Exhibit No. | Description |
|---|---|
| 55 | FRE 902 Certificate for AJ Construction |
| 56 | FRE 902 Certificate for Cole West |
| 57 | FRE 902 Certificate for Carefree Homes |
| 58 | COLE-WEST000215 |
| 59 | COLE-WEST000345 |
| 60 | COLE-WEST000662 |
| 61 | DJI_0909_July 4 2021_Lagoon Photo |
| 62 | Declaration of Gentry Mikesell 08-31-2021 |
| 63 | The Mikesell Family youtube video_lxCoGPxpnxQ 06-27-2020 |
| 64 | The Mikesell Family youtube video_vZilSaQIkqQ 11-25-2020 |
|  | Those exhibits identified by Defendants. |

## IV.   Defendants' Exhibit List.[2]

| Exhibit No. | Description |
|---|---|
| A | Crystal Lagoons website page(s) |
| B | Colliers flyer available online at http://www2.colliers.com/p-USA1073350 |
| C | Photos of the lagoon at the Hard Rock Hotel and Casino in Florida available on at the Google Maps location for the Hard Rock Hotel and Casino (various dates). |
| D | Photos of the lagoons at the Hard Rock Hotel and Casino in Florida available in the Third Amended Complaint filed on November 16, 2020 in Case No. 2:19-cv-796-BSJ |
| E | Declaration of Javiera de la Cerda, Case No. 2:19-cv-00796-BSJ, Document 45-4 |
| F | Declaration of Javiera de la Cerda, Case No. 2:20-cv-00851-BSJ, Document 11 |
| G | Declaration of Javiera de la Cerda, Case No. 2:20-cv-00851-BSJ, Document 73-2 |
| H | First Amended Complaint (Redacted Version – Exhibit 9 Filed Under Seal) |
| I | First Amended Complaint (Exhibit 9 Filed Under Seal) |
| J | Crystal Lagoons' sworn interrogatory responses, dated August 11, 2021 |
| K | Pacific Aquascapes' construction drawings for the Desert Color lagoon project |
| L | U.S. Patent No. 8,602,514 |
| M | U.S. Patent No. 4,948,296 |
| N | Text message exchange attached as Exhibit 7 to the Complaint. |
| O | "All Seminole and Hard Rock Casinos in Florida Closing for Coronavirus" (available at https://www.nbcmiami.com/news/local/all-seminole-and-hard-rock-casinos-in-florida-closing-for-coronavirus/2208642/) |
| P | "Seminole Hard Rock Hotel & Casino, Guitar Hotel reopening June 12" (available at https://www.sun-sentinel.com/coronavirus/fl-ne-coronovirus-hard-rock-casino-hollywood-reopening-june-12-20200610-a7e577d2xfgy7d67klsaaij63u-story.html) |
|  | Those exhibits identified by Crystal Lagoons |

[2] Defendants agree to provide copies of their exhibits to Plaintiffs by September 3, 2021.

V.    **Witness lists.**

A.    **The Plaintiff.**

1.    <u>**Will call.**</u>

a.    Javiera De la Cerda
b.    Jeffrey Civins

2.    <u>**May call.**</u>

a.    Fernando Fischmann
b.    Lisa Moore
c.    Eric Cherasia
d.    Arlene Courtney
e.    Klint Frei (South West Utah Public Health Department)
f.    Gentry Mikesell
g.    Any witness identified by the Defendants.

B.    **The Defendants.**

1.    <u>**Will call.**</u>

a.    Cory Severson
b.    Mitchell Dansie

2.    <u>**May call.**</u>

a.    Brook Cole
b.    Spencer Holmes
c.    Colin Wright
d.    Tony Hill
e.    Dave Nielsen
f.    Dan Mooy
g.    Shawn Warner
h.    Witnesses identified by Crystal Lagoons, except Jeffrey Civins.[3]

---

[3] Jeffrey Civins is Crystal Lagoons' counsel—not a percipient witness—and has no legitimate reason to be a witness in this matter.

**VI.**   **Depositions.**

No depositions have been taken.

ORDERED this _____ day of September___, 2021.

BY THE COURT:


_____

Honorable Bruce S. Jenkins
U. S. District Court Judge

**APPROVED AS TO FORM**

Date: September 2nd, 2021

By: */s/ Stephen M. Sansom*

Stephen M. Sansom
Brandon T. Christensen
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT  84101
Tel: (801) 799-5897

Anthony R. Zeuli *(Admitted Pro Hac Vice)*
Thomas Johnson *(Admitted Pro Hac Vice)*
Joseph Dubis *(Admitted Pro Hac Vice)*

MERCHANT GOULD P.C.
2200 Fifth Street Towers
150 South Fifth Street
Minneapolis, MN 55402-4247
Tel: (612) 332-5300
Fax: (612) 332-9081

*Counsel for Plaintiffs*
*Crystal Lagoons US Corp and Crystal Lagoons*
*Technologies, Inc.*

Date: September 2nd, 2021

By: */s/ Jared Braithwaite (with permission)*

Jared Braithwaite (Utah Bar No. 12455)
jbraithwaite@mabr.com
MASCHOFF BRENNAN
111 S. Main Street, Ste. 600
Salt Lake City, Utah 84111
Telephone: (801) 297-1850
Facsimile: (435) 252-1361

R. Parrish Freeman (Utah Bar No. 7529)
pfreeman@mabr.com
MASCHOFF BRENNAN
1389 Center Dr., Ste. 300
Park City, Utah 84098
Telephone: (435) 252-1360

Facsimile: (435) 252-1361
*COUNSEL FOR DESERT COLOR ST.*
*GEORGE, LLC; DESERT COLOR MANAGER,*
*LLC; and PACIFIC AQUASCAPE*
*INTERNATIONAL, INC.*