IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CRYSTAL LAGOONS U.S. CORP. and CRYSTAL LAGOONS TECHNOLOGIES INC., <br><br>     Plaintiffs, <br><br> v. <br><br> DESERT COLOR MANAGER et al, <br><br>     Defendants. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:20-cv-00851-RJS-DAO <br><br> Chief District Judge Robert J. Shelby <br><br> Magistrate Judge Daphne A. Oberg |

Before the court are two Motions to Exclude Expert Testimony[1] and a Motion in Limine[2] filed by Defendants Desert Color Manager, LLC, Desert Color St. George, LLC, and Pacific Aquascape International, Inc.  Having reviewed the Motions and associated briefing, the court GRANTS IN PART Defendants' Motion in Limine to Preclude Allegations of Noncompliance with Pool Codes, GRANTS IN PART Defendants' Motion to Exclude Plaintiffs' Expert Christopher D. Lidstone, and GRANTS IN PART Defendants' Motion to Exclude Plaintiffs' Expert Richard F. Bero.

The court received oral argument on these Motions on January 23, 2025.[3]  During the hearing, Plaintiffs made an oral motion seeking to allow their damages expert, Richard F. Bero,

---

[1] Dkt. 315, *Defendant's Motion to Exclude Plaintiffs' Expert Christopher D. Lidstone* (*Lidstone Motion*); Dkt. 307, *Defendant's Motion to Exclude Plaintiffs' Expert Richard F. Bero* (*Bero Motion*).

[2] Dkt. 310, *Defendant's Motion in Limine to Preclude Allegations of Non-Compliance with Pool Codes* (*Pool Code Motion*).

[3] Dkt. 359, *Minute Entry for Proceedings Held before Judge Robert J. Shelby*.

additional time to submit a supplemental expert opinion. For the reasons explained below, that motion is DENIED.

## FACTUAL BACKGROUND

This case involves an alleged breach of a Non-Disclosure Agreement (the NDA) and patent infringement stemming from the management, construction, and operation of a large lagoon in St. George, Utah (the Lagoon) by Defendants.[4] Specifically, Plaintiffs allege that, after agreeing to the terms of the NDA,[5] the Desert Color Defendants breached the NDA by disclosing designs, plans, technical information, and other confidential information to Defendant Pacific Aquascape International, Inc. (Pacific).[6] Plaintiffs then allege all Defendants infringed on U.S. Patent No. 8,062,514 (the '514 Patent) due to their management and construction of the Lagoon, which allegedly employs Crystal Lagoons' patented technology.[7] In its most basic sense, the '514 Patent is a patented structure to contain a large body of water for recreational use.[8] The '514 Patent involves, among other things, the design and construction of a structure to contain a water body larger than 15,000 m³, the use of a plastic liner to cover the bottom and walls of the structure, the use of a recycling system that uses pipes with injectors that also allow the application of chemicals, the use of a water inlet line and inlet chambers through which water is extracted to feed the fresh water feeding pipe system of the structure, and the use of a system of skimmers positioned along the border of the structure.[9]

---

[4] *See* Dkt. 79, *First Amended Complaint* ¶¶ 54, 132–37, 210–23.

[5] *Id.* ¶ 54.

[6] *Id.* ¶ 135.

[7] *Id.* ¶¶ 210–23.

[8] *See* Dkt. 324, *Plaintiffs' Opposition to Defendants' Motion in Limine to Preclude Allegations of Non-Compliance with Pool Codes* (*Pool Code Opposition*) at 1.

[9] *See* Dkt. 315-5, *United States Patent No. US 8,062,0514 B2* at 19:26–40.

Plaintiffs retained Christopher D. Lidstone as an expert to opine on the infringement and validity of the '514 Patent, and they retained Richard F. Bero as an expert to opine on the issue of damages.

## PROCEDURAL BACKGROUND

Plaintiffs originally sued eight defendants[10] and asserted a myriad of state and federal claims against them.[11]  But over the life of the case, all defendants except the Desert Color Defendants and Pacific have been dismissed from the case.[12]  The court also dismissed all claims against Pacific, except the claim for patent infringement.[13]  Later, the parties stipulated to dismissal of several of Plaintiffs' other claims against the Desert Color Defendants,[14] and they agreed that no relief for Count 8 (common law unjust enrichment) could be based on the

---

[10] *See* Dkt. 2, *Complaint*.  The Defendants consisted of Desert Color Manager LLC, Desert Color St. George LLC, AJ Construction, Inc., Tri-State Ventures, LLC d/b/a Carefree Homes – Utah, Cole West Home LLC, Holmes Homes, Inc., and Sullivan Homes LLC, and Pacific Aquascape International, Inc.

[11] *See id.*

[12] *See* Dkt. 74, *Notice of Voluntary Dismissal of Defendant Tri-State Ventures, LLC d/b/a Carefree Homes-Utah*; Dkt. 105, *Notice of Voluntary Dismissal of AJ Construction, Inc.*; Dkt.114, *Order Granting in Part and Denying in Part Defendants Holmes Homes' and Cole West's Motions to Dismiss* at 2. Dkt. 141, *Stipulation of Dismissal of Cole West Homes LLC*.

[13] *See* Dkt. 113, *Order Granting-in-Part and Denying-in Part Desert Color Manger, LLC, Desert Color St. George, LLC, and Pacific Aquascape International, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint*.

[14] *See* Dkt. 299, *Stipulated Dismissal of Certain Claims*.

dismissed causes of action.[15]  At bottom, only the following claims and counterclaims are currently before the court:

    (a)  Count 1: Breach of Contract against the Desert Color Defendants;

    (b)  Count 8: Common Law Unjust Enrichment against the Desert Color Defendants;

    (c)  Count 11: Patent Infringement of the '514 Patent against all Defendants;

    (d)  Counterclaims 5 and 6: Declaratory Judgment of non-infringement and invalidity of the '514 Patent against Plaintiffs.[16]

Defendants filed the present Motions and a Motion for Summary Judgment[17] on July 9, 2024.  The evidentiary Motions implicate the court's consideration of the Motion for Summary Judgment and are fully ripe and ready for review.[18]

## LEGAL STANDARDS

Defendants have filed a Motion in Limine and two Motions to Exclude Expert Testimony.  With respect to motions in limine, the movants seeking pre-trial exclusion of evidence bear the burden of demonstrating that the evidence is inadmissible on any relevant ground.[19]

---

[15] *Id.*

[16] *See* Dkt. 129, *Desert Color Manager, LLC, Desert Color St. George, LLC, and Pacific Aquascape International, Inc.'s Answer, Defenses, and Amended Counterclaims in Response to Plaintiffs' First Amended Complaint* ¶¶ 52–79.

[17] Dkt. 311, *Defendant's Motion for Summary Judgment*.

[18] *Pool Code Opposition*; Dkt. 334, *Defendants' Reply Brief in Support of Motion in Limine to Preclude Allegations of Non-Compliance with Pool Codes* (*Pool Code Reply*); Dkt. 323, *Plaintiffs' Opposition to Defendants' Motion to Exclude Plaintiffs' Expert Christopher Lidstone* (*Lidstone Opposition*); Dkt. 336, *Defendant's Reply Brief in Support of Motion to Exclude Plaintiffs' Expert Christopher D. Lidstone* (*Lidstone Reply*); Dkt. 327, *Plaintiffs' Opposition to Defendants' Motion to Exclude Plaintiff's Expert Richard F. Bero* (*Bero Opposition*); Dkt. 331, *Defendants' Reply Brief to Motion to Exclude Plaintiff's Expert Richard F. Bero* (*Bero Reply*).

[19] *Thomas v. Weber State Univ.*, No. 1:20-CV-00054, 2023 WL 2646905, at *2 (D. Utah March 27, 2023) (citations omitted).

With respect to motions to exclude expert testimony, Rule 702 of the Federal Rules of Evidence and the Supreme Court's decision in *Daubert*[20] impose "on a district court a gatekeeper obligation 'to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'"[21]  Recent amendments to Rule 702 were meant to clarify that there is no presumption of admissibility with respect to expert testimony.[22]  Instead, to be admissible, the proponent of the expert evidence bears the burden to demonstrate it is more likely than not that Rule 702's requirements are satisfied.[23]  The Tenth Circuit draws upon the following framework to determine whether the admission of expert testimony would satisfy Rule 702 and *Daubert*'s requirements.

First, a court must decide "whether the proffered expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion."[24]

Second , the court "must determine if the expert's proffered testimony—whether it concerns scientific, technical, or other special knowledge—has 'a reliable basis in the knowledge and experience of his [or her] discipline."[25]  *Daubert* sets forth several factors, "neither definitive nor exhaustive,"[26] the court may consider in making a reliability determination: "whether a theory has been or can be tested or falsified," "whether the theory or technique has been subject to peer review and publication," "whether there are known or potential rates of error with regard

---

[20] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[21] *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (quoting *Daubert*, 509 U.S. at 589).

[22] Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

[23] Fed. R. Evid. 702.

[24] *Bill Barett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019) (citing Fed. R. Evid. 702).

[25] *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232–33 (10th Cir. 2005) (quoting *Daubert*, 509 U.S. at 592).

[26] *Id.* at 1233 (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150, 152–53 (1999)).

to specific techniques," and "whether the theory or approach has general acceptance."[27]  For experts offering non-scientific opinions based upon personal knowledge or experience, the court asks whether the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[28]  Fundamentally, the reliability analysis is focused not "upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions."[29]

Federal courts both before and after *Daubert* have found other factors relevant in determining whether expert testimony is sufficiently reliable to be considered by the trier of fact.[30]  These factors include: (1) whether the expert is proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying;[31] (2) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion (in other words, whether "there is simply too great an analytical gap between the data and the opinion proffered");[32] (3) whether the expert has adequately accounted for obvious alternative explanations;[33] (4) whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting;[34] and (5) whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would

---

[27] *Daubert*, 509 U.S. at 593–94.

[28] *Kumho Tire Co.*, 526 U.S. at 152.

[29] *Bitler*, 400 F.3d at 1233 (citing *Daubert*, 509 U.S. at 595).

[30] Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

[31] *Id.* (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995)).

[32] *Id.* (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

[33] *Id.* (citing *Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir. 1994)).

[34] *Id.* (citing *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

give.[35]  Recent amendments to Rule 702 also sought to clarify that it is erroneous for courts to

deem "critical questions of the sufficiency of an expert's basis, and the application of the

expert's methodology" as questions of weight instead of admissibility.[36]

Finally, the court determines "whether proposed testimony is sufficiently 'relevant to the

task at hand.'"[37]  In other words, in order to "help the trier of fact"[38] as Rule 702 requires,

"expert testimony must 'fit'—it must relate to a disputed issue in the case."[39]  To make this

determination, the court evaluates "the logical relationship between the evidence proffered and

the material issue that evidence is supposed to support to determine if it advances the purpose of

aiding the trier of fact."[40]  In determining whether expert testimony may aid the trier of fact,

courts may consider several factors, including "whether it is within the juror's common

knowledge and experience" and "whether it will usurp the juror's role of evaluating a witness's

credibility."[41]

## ANALYSIS

## I.    Evidence Regarding Defendants' Noncompliance with Pool Codes Is
Inadmissible Under Federal Rules of Evidence 402 and 403.

Defendants' first Motion in Limine seeks to preclude Plaintiffs from presenting evidence

or arguing that the Lagoon does not comply with Utah's pool codes or any other pool code.[42]

Such references, Defendants argue, are irrelevant to the pending patent infringement claims and

---

[35] *Id.* (citing *Kumho Tire Co.*, 526 U.S. at 151).

[36] *Id.*

[37] *Dodge*, 328 F.3d at 1234 (quoting *Daubert*, 509 U.S. at 597).

[38] Fed. R. Evid. 702(a).

[39] *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1217 (10th Cir. 2016) (quoting *Daubert*, 509 U.S. at 591–92).

[40] *Bitler*, 400 F.3d at 1234.

[41] *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006) (citations omitted).

[42] *Pool Code Motion* at ii.

are presented merely "to incite prejudice against Pacific Aquascape."[43]  Defendants argue this evidence is therefore barred by Federal Rules of Evidence 402, 403, 404, and 609.[44]  The court agrees with Defendants that their alleged noncompliance with pool codes is irrelevant and runs afoul to Rule 403.  However, not all evidence related to pool codes is inadmissible.

Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence.[45]  Under Rule 403, a court may exclude otherwise relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.[46]  "Unfair prejudice in the Rule 403 context 'means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"[47]

The court recognizes from the outset that Defendants are not bound by Utah or any other jurisdiction's pool codes.  Plaintiffs do not dispute how in July 2021, the Utah Department of Health issued an order explaining how there are currently no standards in Utah governing bodies of water like the Lagoon, and until such standards are set, the Department could not possibly deem the Lagoon noncompliant with Utah pool codes.[48]  Thus, to the extent Plaintiffs seek to argue or introduce evidence suggesting Defendants are or were currently in violation of a jurisdiction's pool codes, the Federal Rules of Evidence prohibit it.  The evidence is probative of nothing, let alone a fact of consequence, because it is admittedly untrue.  It is therefore

---

[43] *Id.*

[44] *Id.*

[45] *See* Fed. R. Evid. 401.

[46] Fed. R. Evid. 403.

[47] *U.S. v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001) (citing Fed. R. Evid. 403 advisory committee's note).

[48] *See* Dkt. 310-1, *Decision and Final Agency Order Denying Request for Agency Action (Date Corrected)* at 5–6.

irrelevant.  It is also substantially outweighed by Rule 403's concerns.  It would unfairly prejudice Defendants by suggesting Defendants engaged in improper or illegal conduct when they, in fact, could not.  A jury may be tempted to unfairly view Defendants as careless builders of unsafe water structures, as worthy of punishment, or as more likely to have committed the other wrongs it is accused of committing in the present case.  This evidence would also confuse the issues, confuse a jury, and waste time in an already highly technical patent case.  This evidence is therefore inadmissible.

To the extent Defendants seek to exclude all evidence of pool codes from other jurisdictions, that request is denied.  Evidence may be admissible for one purpose, but not another,[49] and there are potentially relevant and admissible uses of this evidence.  For example, Plaintiffs may seek to use pool codes to demonstrate helpful differences between technology used in traditional swimming structures and technology used in water structures implementing the '514 Patent.  Or they may seek to use pool codes to undermine Defendants' arguments that the Lagoon employs traditional pool technology.[50]  Clearly, the Lagoon's design and use of a filtration system is a fact of consequence as it goes directly to whether Defendants have infringed on the structure-related '514 Patent,[51] and this proposed use of evidence may be admissible.  Indeed, comparing accused technology to what has been traditionally employed and regulated by other jurisdictions does not necessarily imply Defendants' own noncompliance with law.  But, to avoid any prejudice, Plaintiffs should acknowledge Defendants are not subject to the pool codes in question before making such an argument.

---

[49] *See* Fed. R. Evid. 105.

[50] *Pool Code Opposition* at 4.

[51] Multiple claims of the '514 Patent relate to the technology employed to clean the large water body.  *See United States Patent No. US 8,0620,514 B2* at 19:25–20:18.

Tellingly, Defendants rely heavily on evidence of other jurisdictions' pool codes in their concurrently filed Motion for Summary Judgment, suggesting such evidence likely is relevant to the present dispute.[52]  Accordingly, Plaintiffs are not allowed to argue Defendants are or were noncompliant with any jurisdictions' pool codes, but arguments and evidence involving pool code regulations generally are permitted at trial, if they are otherwise admissible.

## II.    Christopher D. Lidstone's Expert Opinions Regarding the Absence of Non-Infringing Alternatives, Long-Felt Need, and Copying Are Inadmissible.

Next, Defendants move to exclude expert testimony of Christopher D. Lidstone, who Plaintiffs hired to opine on the infringement and validity of the '514 Patent.[53]  Recall that the '514 Patent concerns the structural aspects of a water lagoon.

First, Defendants argue Lidstone is a water geologist, not a recreational water structure designer.[54]  As such, he cannot be considered a person of "ordinary skill in the art," which is necessary to opine on the infringement and validity of the '514 Patent.[55]  Plaintiffs respond by pointing to, among other things, Lidstone's 42 years of experience in the field of hydrology; his degrees in Geological Sciences and Geomorphology; his work experience with the design and construction of water supply, water treatment, and storage projects for public water supplies; his

---

[52] *See Defendant's Motion for Summary Judgment* at 21 ("Each of the IAPMO Uniform Pool Code . . . Perkins, and 2004 Florida Rules disclose (1) pool bottoms and walls covered with a plastic liner made of a non-porous material able to be toughly cleaned; (2) pools of at least 2 meters deep; (3) pools with skimmers; (4) pools filled with water by fresh water feeding pipes; and (5) pool vacuums that can be used to clean plastic liner on the bottoms and walls.").

[53] *Lidstone Motion* at ii.

[54] *Id.* at 2.

[55] *See, e.g.*, *Kyocera Senco Indus. Tools Inc. v. ITC*, 22 F.4th 1369, 1377 (Fed. Cir. 2022) (explaining how an expert providing testimony regarding the validity or infringement of a patent must "at least have ordinary skill in the art"); *Sundance, Inc., v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1364 (Fed. Cir. 2008) ("[I]t is an abuse of discretion to permit a witness to testify as an expert on the issues of noninfringement or invalidity unless that witness is qualified as an expert in the pertinent art."); *AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1329 (Fed. Cir. 2007) ("Both the Supreme Court and this court have made clear that the evidence of equivalents must be from the perspective of someone skilled in the art.").

work experience with pools and bathing facilities; his experience with water treatment methods
and water chemistry (including experience analyzing water chemistry in pools); his experience
with the use of liners, geotextiles, and geomembranes in connection with water bodies; his
experience previously serving as a technical expert in other patent cases related to groundwater
storage; his experience teaching courses on the building blocks for pools, like the use of liners,
flocculation, disbursement, cation exchange, water, and concrete; and more.[56]

The court agrees with Plaintiffs that Lidstone has specific, relevant experience related to
the '514 Patent to qualify him as a person of ordinary skill in the art with respect to water
structure design generally, and there is no requirement that Lidstone have specific design
experience with recreational water structures to opine on the validity and potential infringement
of the Patent. After all, the potential for recreational use of these structures is only a small part
of the invention. The '514 Patent involves, among other things, the design and construction of a
structure to contain a water body larger than 15,000 m³, the use of a plastic liner to cover the
bottom and walls of the structure, the use of a recycling system that uses pipes with injectors that
also allow the application of chemicals, the use of a water inlet line and inlet chambers through
which water is extracted to feed the fresh water feeding pipe system of the structure, and the use
of a system of skimmers positioned along the border of the structure.[57] And even though
Lidstone may lack experience with designing water structures primarily used for recreation,
Lidstone's experience with designing other water structures qualifies him to opine on key issues
relevant to the structure-related claims of the '514 Patent.

---

[56] *Lidstone Opposition* at 3.

[57] *See United States Patent No. US 8,0620,514 B2* at 19:26–40.

Second, Defendants argue Lidstone lacks a factual basis for his opinion that the '514 Patent is a "foundational" patent.[58]  Defendants also argue Lidstone never defined what the term "foundational" means, and they emphasize the potential lack of relevance of Lidstone's testimony regarding the nature of the '514 Patent.[59]  Defendants ultimately argue these deficiencies demonstrate Lidstone's testimony on this subject is unreliable and irrelevant to the merits.[60]  The court disagrees.

A review of Lidstone's expert report and deposition testimony demonstrate how Lidstone defined "foundational" and how he relied on an adequate factual basis to make this determination.  In his report, he explained:

> I understand the '514 Patent matured from United States Patent Application No. 12/884,842, which includes the same specification as United States Patent Application No. 11/819,017, which matured into United States Patent No. 7,820,055.  I understand that this was Crystal Lagoons' first United States patent application.  I understand that two U.S. patents that issued from the above application included the structure and process for designing, building and maintaining the invention.  Thus, the original filing of United States Patent Application No. 11/819,017 included the patented process to maintain water bodies larger than 15,000 m³ and the patented structure itself.  In my opinion, both patents that issued from this application, including the '514 Patent are foundational patents because they form the core of Crystal Lagoons' technology.[61]

A plain reading of this paragraph makes clear Lidstone defined "foundational" as being the original, or foundational, patent filed by an applicant directed to a particular subject matter.[62]  Indeed, Lidstone identified the '514 Patent family as the first family of patents filed in the United States by Crystal Lagoons related to this technology, and he acknowledged the fact that other

---

[58] *Lidstone Motion* at 4.

[59] *Id.* at 5.

[60] *Lidstone Reply* at 5–6.

[61] Dkt. 317, *Expert Report of Christopher D. Lidstone, CPG* ¶ 19.

[62] *Lidstone Opposition* at 6 (citing *Bayer Healthcare Pharms., Inc. v. River's Edge Pharms., LLC*, No. 11-CV-01634-LMM, 2016 WL 8609982, at *9 (N.D. Ga. Oct. 26, 2016).

patents issued from the same initial application. Lidstone's conclusions were based on a variety of facts, including (1) his review of the '514 Patent; (2) his personal knowledge of the technology that existed prior to the '514 Patent; (3) his conversations with Crystal Lagoons' founder and a Water Development Manager about the inventions; (4) conversations with Jennifer Norlin (Plaintiffs' water treatment expert in a related case); and (5) his own experience in water treatment and water chemistry.[63] The court finds Lidstone's reliance on and analysis of the available data and facts reliable. The court also finds the testimony relevant to material questions related to secondary considerations, discussed below. Lidstone's opinions related to the foundational nature of the '514 patent are therefore admissible.

Third, Defendants argue Lidstone relied on no data or facts whatsoever to support his opinion that there are no non-infringing alternatives to the technology of the '514 Patent.[64] The court agrees with Defendants and concludes Lidstone's testimony is unreliable on this subject.

"To prove the absence of acceptable, non-infringing alternatives, the patentee may prove either that the potential alternative was not acceptable to potential customers or was not available at the time [of infringement]."[65] This is the second prong of the *Panduit* analysis, which is often used to calculate lost profit damages and is discussed in more detail below.[66] The *Panduit* factors "are not easy to prove," and the second prong, the absence of acceptable non-infringing alternatives, is often considered "the most difficult obstacle for patent holders."[67] In his expert and rebuttal reports, Lidstone does not appear to engage in any separate, "non-infringing

---

[63] *Id.* at 5–6.

[64] *Listone Motion* at 6.

[65] *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1380 (Fed. Cir. 2017) (citation omitted).

[66] *Id.*

[67] *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1286 (Fed. Cir. 2017).

alternatives" analysis, and Plaintiffs cannot identify any such analysis in their briefing.[68] Instead, Plaintiffs point to Lidstone's opinions on the "foundational" nature of the '514 Patent as the basis for this opinion.[69]  It is unclear to the court how this opinion independently constitutes a sufficiently reliable basis for an "absence of non-infringing alternatives" opinion.  The most relevant expert testimony the court could identify potentially relating to this issue is when Lidstone testified how "the technology covered by the '514 Patent constituted a significant departure from the technologies for building and maintaining large bodies of water for recreational purposes available at the time" as it allowed for "the design, construction, and operation of sustainable, clear lagoons of virtually unlimited sizes."[70]  He later testified how prior to Crystal Lagoons' Patents, "there really was not a means—an economic means of handling large lagoons, large bodies of water, and develop them for recreational purposes.  The '514 [P]atent . . . actually provided the foundations for that."[71]

Critically missing from Lidstone's report and testimony, however, are any facts or analysis suggesting how at the time of Defendants' alleged infringement there was an absence of acceptable, non-infringing alternatives.[72]  Indeed, this *Panduit* prong is analyzed "on a customer-by-customer basis,"[73] and there is no analysis of this factor at the time Defendants were customers of Crystal Lagoons.  At best, Lidstone provides an opinion on the novelty of the invention but cabins it to the exact moment Crystal Lagoons first patented its lagoon technology

---

[68] *Lidstone Opposition* at 7.

[69] *Id.*

[70] *Expert Report of Christopher D. Lidstone, CPG* ¶ 21.

[71] Dkt. 317-2, *Videotaped Videoconference Deposition of Chris Lidstone* at 61:11–25.

[72] *See Presidio Components, Inc.*, 875 F.3d at 1381.

[73] *Mentor Graphics Corp.*, 851 F.3d at 1286.

in the United States (in 2007)[74]—he does not opine on the existence of non-infringing alternatives when Defendants allegedly infringed on the Patent by designing and building the accused Lagoon (between 2019 and 2020).[75]  This does not reliably demonstrate how in 2019, at the time of the alleged infringement, there was an absence of acceptable, non-infringing alternatives.  Twelve or more years of technological advancements may have altered the lagoon technology landscape significantly, and it is a crucial consideration for any expert opinion regarding whether non-infringing alternatives existed at the time of infringement.  This expert testimony is unreliable and inadmissible.

Fourth, Defendants argue Lidstone has no factual basis for his opinion that the '514 Patent fulfilled a "long-felt need."[76]  Plaintiffs contend Lidstone's factual basis for this opinion permissibly rests on (1) his opinion that the '514 Patent is a foundational patent, and (2) the increase in demands for lagoons after the '514 Patent was issued.[77]  The court agrees with Defendants.  Evidence of long-felt need "is closely related to the failure of others,"[78] though "they are distinct considerations."[79]  This "[e]vidence is particularly probative of obviousness when it demonstrates both that a demand existed for the patented invention, and that others tried but failed to satisfy that demand."[80]  Lidstone's rebuttal expert report contains only two,

---

[74] *Expert Report of Christopher D. Lidstone* ¶ 19 ("Thus, the original filing of United States Patent Application No. 11/819,017[, which was filed in 2007,] included the patented process to maintain water bodies larger than 15,000 m³ and the patented structure itself.").

[75] *Id.* ¶¶ 38–43.

[76] *Lidstone Motion* at 6.

[77] *Lidstone Opposition* at 8.

[78] *In re Cyclobenzaprine Hydrocholoride Extended-Release Capsule Pat. Litig.*, 676 F.3d 1063, 1082 (Fed. Cir. 2012).

[79] *In re Depomed, Inc.*, 680 F. App'x 947, 952 (Fed. Cir. 2017) (unpublished).

[80] *In re Cyclobenzaprine Hydrocholoride Extended-Release Capsule Pat. Litig.*, 676 F.3d 1063, 1082 (Fed. Cir. 2012) (citation omitted).

conclusory sentences that the '514 Patent "fulfilled a long felt need to develop and treat large bodies of water such as lakes and ponds."[81]  He later testified he based his long-felt-need conclusion on the nature of the patent, the history that predated the patent, and what happened after the patent came into play.[82]  Specifically, Lidstone indicated how, based on his understanding of the relevant pool-related technology, "prior to this patent, there were no large lagoons that had been developed, and subsequent to the patent, lagoons were built,"[83] but he admittedly could not identify any statements or other evidence prior to 2006 indicating a long-felt need.[84]  The court is unpersuaded that merely pointing to some level of eventual demand for a patented product renders reliable expert testimony regarding long-felt but unresolved need.  If this were the case, all patented products that happen to generate sales over the life of the patent would essentially enjoy a presumption of satisfying a long-felt need.  While a rapid increase in demand for the patented product may be suggestive of long-felt need, Lidstone does not analyze the rate of increase of demand for lagoons.  He only analyzed and described Crystal Lagoons' current success in the lagoon industry.[85]  In fact, when deposed about his long-felt need opinion, Lidstone acknowledged that he never took into account the fact that it took Crystal Lagoons eight years from the filing of the '514 Patent to secure its first agreement in the United States and 11 years to build the first lagoon.[86]  Ultimately, Lidstone's lack of any analysis on this subject renders his long-felt need opinion inadmissible.

---

[81] *Amended Invalidity Rebuttal Expert Report of Christopher D. Lidstone, CPG* ¶¶ 65, 73.

[82] *Videotaped Videoconference Deposition of Chris Lidstone* at 120:22–121:2.

[83] *Id.* at 121:14–122:6.

[84] *Id.* at 118:20–25.

[85] *Amended Invalidity Rebuttal Expert Report of Christopher D. Lidstone, CPG* ¶¶ 87–88.

[86] *Videotaped Videoconference Deposition of Chris Lidstone* at 120:12–121:13.

Fifth, Defendants argue Lidstone lacks sufficient facts and data supporting his opinion that the '514 Patent has been commercially successful.[87]  Defendants admit Lidstone takes about a page of his report discussing various indicators of Plaintiffs' commercial success,[88] but they insist Lidstone never analyzed data to reach his opinion that the commercial success *resulted from* the '514 Patent.[89]  Instead, Defendants argue the only part of Lidstone's report demonstrating a causal nexus[90] is the portion stating: "[a]s there are no real practical alternatives to the technology of the '514 Patent, it is my professional opinion that Crystal Lagoons' commercial success is due, in significant part, to the '514 Patent and that there is a nexus between the '514 and Crystal Lagoons' commercial success."[91]

But when, as here, the patented invention is a component of a commercially successful machine or process, the patentee need only "com[e] forward with evidence sufficient to constitute a prima facie case of the requisite nexus," and show "a legally sufficient relationship between that which is patented and that which is sold."[92]  A prima facie case in this context has been defined as when a "judge, using ordinary reasoning, may determine that fact A might reasonably be inferred from fact B."[93]  A patentee meets this deferential burden by merely introducing testimony as to the advantage of using a claimed invention with the commercially

---

[87] *Lidstone Motion* at 7.

[88] *Id.* at 8.

[89] *Id.* at 7.

[90] To demonstrate commercial success for purposes of countering a challenge of obviousness, a patentee must show "that the commercial success of the product *results* from the claimed invention.  Furthermore, the asserted commercial success of the product must be due to the merits of the claimed invention beyond what was readily available in the prior art."  *J.T. Eaton & Co., Inc. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997) (emphasis added).

[91] *Amended Invalidity Rebuttal Expert Report of Christopher D. Lidstone, CPG* ¶ 91.

[92] *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988).

[93] *Id.* (citation omitted).

successful machine or process.[94]  And when the patentee presents prima facie evidence of a nexus, the burden of coming forward with evidence in rebuttal shifts to the challenger, as in any civil litigation.[95]

Lidstone's opinions on this subject are reliable and relevant as they adequately demonstrate and describe how the '514 Patent is advantageous to Crystal Lagoons' commercial success.  Lidstone described various indicators of Crystal Lagoons' ongoing commercial success in his rebuttal report,[96] and he linked the success to the '514 Patent by relying on his previous opinion that the technology of the '514 Patent provides the foundation for Crystal Lagoons' technology to create large bodies of water for swimming and recreational use.[97]  As discussed above, his opinion on this subject is also reliable and admissible.  Moreover, a correct understanding of Crystal Lagoons' business model, which Lidstone understood, also supports his commercial success opinion.  Crystal Lagoons generates revenue by issuing a collective license of all its intellectual property—which necessarily includes the '514 Patent— to lagoon builders for the design, construction, and operation of its lagoon technology.[98]  Notably, Crystal Lagoons does not design, build, and operate artificial water lagoons, nor does it license its Patents and other intellectual property on a patent-by-patent basis; instead, it licenses all of its technology only when it has ongoing involvement in a project such as providing (and getting paid for) its ongoing systems fees services.[99]  Thus, the '514 Patent necessarily forms a part of each sale of

---

[94] *See id.* (citing *R.R. Dynamics, Inc. v. A. Stucki Co.*, 579 F. Supp. 353, 366–67 (E.D. Penn. 1983) where the court held "the testimony as to the advantage of the spaced structure with the biasing spring easily supports the inference that the claimed invention itself was responsible for this success").

[95] *Id.* at 1393.

[96] *Amended Invalidity Rebuttal Expert Report of Christopher D. Lidstone* ¶¶ 87–88.

[97] *Id.* ¶ 90.

[98] *Id.* ¶ 102 (citing Dkt. 307-1, *Expert Report of Richard F. Bero, CPA, CVA* ¶¶ 150–52).

[99] *Expert Report of Richard F. Bero, CPA, CVA* ¶ 150.

the collective license, and likely plays a part in the development of each resulting lagoon.  In other words, there is a clear "relationship between that which is patented and that which is sold,"[100] sufficient to establish the required nexus.  Ultimately, the court finds Lidstone's opinions on this subject to be sufficiently reliable and relevant to be admissible.[101]

An understanding of Crystal Lagoons' business structure and the foundational nature of the '514 Patent also undermines Defendants' next argument.  Defendants argue Lidstone failed to link any "industry praise" to the actual inventions of the '514 Patent.[102]  The court disagrees.  Lidstone's explained how "based on the invention of the technology of the '514 Patent," Mr. Fischmann (the inventor of the '514 Patent), has been honored many times with prestigious international awards, including Entrepreneur of the Year, Innovator of the Year, Businessman of the Year, the Innovation Stevie Award, the Real Innovator Award, the Green Apple Award, and two Guinness World Record Awards related to lagoons built and operated using Crystal Lagoons' technology.[103]  He also explained how hundreds of lagoon projects around the world currently use Crystal Lagoons' technology.[104]  As explained above, these awards presented to Mr. Fischmann for his lagoon-related inventions necessarily relate, at least in part, to the '514 Patent because this Patent is included in each sale of Crystal Lagoons' collective license, and the technology likely forms a part of each resulting lagoon.  Lidstone's analysis and opinions on this subject are reliable and admissible.

---

[100] *Demaco Corp.*, 851 F.2d at 1392.

[101] For nearly identical reasons, Lidstone's opinion that there is a nexus between the '514 Patent and Crystal Lagoons' licensing by others is sufficiently reliable, relevant, and admissible.  *See Lidstone Motion* at 10.

[102] *Lidstone Motion* at 9.

[103] *Amended Invalidity Rebuttal Expert Report of Christopher D. Lidstone, CPG* ¶¶ 92–95.

[104] *Id.* ¶ 87.

Finally, Defendants argue Lidstone fails to provide any factual basis to support his conclusion that Defendants "copied" the '514 Patent.[105]  To rebut this argument, Plaintiffs cite to Lidstone's expert report detailing how the Lagoon infringes on the claim elements of the '514 Patent.[106]  But Plaintiffs erroneously conflate the terms "copying" and "infringement" and attempt to treat the two as the same.

"Copying 'requires evidence of efforts to replicate a specific product,'" which necessarily involves more evidence than mere patent infringement.[107]  Indeed, "[n]ot every competing product that arguably falls within the scope of a patent is evidence of copying.  Otherwise every infringement suit would automatically confirm the nonobviousness of the patent."[108]  Efforts to replicate a specific product may be shown either through "internal documents"; "direct evidence such as disassembling a patented prototype, photographing its features, and using the photograph as a blueprint to build a virtually identical replica"; "or access to, and substantial similarity to, the patented product (as opposed to the patent)."[109]  Here, Plaintiffs do not direct the court to any reliable support for Lidstone's opinions regarding copying of '514 Patent technology; they only argue Lidstone's opinions regarding Defendants' infringement are sufficient to support his copying opinion.[110]  But precedent forecloses this argument.  A review of Lidstone's expert reports and deposition testimony reveals he similarly conflated the terms "copying" and "infringement."  Tellingly, the only explicit support for his copying opinion is his analysis of

---

[105] *Lidstone Motion* at 9.

[106] *See Lidstone Opposition* at 10.

[107] *Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1370 (Fed. Cir. 2011) (citation omitted).

[108] *Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004).

[109] *Id.* (citations omitted).

[110] *Lidstone Opposition* at 10 (citing *Expert Report of Christopher D. Lidstone, CPG* ¶¶ 51–90).

another lagoon's infringement of the '514 Patent in a related case.[111] And when pressed about the basis for his copying opinion, Lidstone testified how "[he] look[ed] at similarities in designs and so forth,"[112] but he admitted, "[w]hat Pacific Aquascape did to get there, I don't know."[113] A reliable copying opinion would have focused on what Defendants "did to get there," i.e., their efforts to replicate a specific product, not on the mere similarities between the accused device and the patent claims. The court therefore concludes Lidstone's opinions and testimony on this subject are unreliable and inadmissible.

### III. Richard F. Bero's Expert Testimony Regarding Infringement Damages is Unreliable and Inadmissible.

Defendants' final motion challenges the admissibility of expert testimony offered by Richard F. Bero, who Plaintiffs retained primarily to opine on issues related to the amount of infringement damages.[114] Defendants dedicate a few sentences of their Motion to argue Bero's opinions regarding commercial success, breach of contract damages, and unjust enrichment

---

[111] *Amended Invalidity Rebuttal Expert Report of Christopher D. Lidstone, CPG* ¶¶ 98–99. And even in the related *Cloward* case, Lidstone only supports his copying opinion by referencing his analysis in the present case where he describes how the Desert Color Lagoon infringes the '514 Patent. *See* Dkt. 372-2, (case no. 2:19-cv-00796), *Invalidity Rebuttal Expert Report of Christopher D. Lidstone, CPG* ¶ 103.

[112] *Videotaped Videoconference Deposition of Chris Lidstone* at 242:10–243:21.

[113] *Id.* 243:20–21.

[114] *Bero Motion* at 1.

damages are unreliable.[115]  But the court finds this testimony sufficiently supported and reliable to be admissible.[116]

The bulk of Defendants' Motion challenges Bero's calculation of infringement damages.[117]  Patent infringement damages are customarily computed by calculating lost profits or a reasonable royalty,[118] and Defendants challenge the admissibility of Bero's testimony with respect to each calculation.  The court agrees with Defendants that Bero's failure to apportion damages combined with his failure to analyze the basis for customer demand renders his damages opinions inadmissible.[119]

The Federal Circuit is clear that "apportionment is an important component of damages law generally, and . . . it is necessary in both reasonable royalty and lost profits analysis."[120] Indeed, upon finding infringement of a valid patent, a patentee is entitled to damages "in no event less than a reasonable royalty for the use made of the invention by the infringer," but such damages "must reflect the value attributable to the infringing features of the product, and no

---

[115] *Id.* at 8–10.

[116] Defendants acknowledge how Bero relied on Lidstone's analysis to support his own commercial success opinion. *Id.*  As explained above, Lidstone's testimony is sufficiently reliable and admissible on this subject; it therefore provides a reliable basis for Bero to form his own opinion. *See Vox Mktg. Grp., LLC v. Prodigy Promos L.C.*, 521 F. Supp. 3d 1135, 1144 (D. Utah 2021) ("[T]here is nothing objectionable about an expert relying upon the work [of] a colleague[.]").  Moreover, Defendants' contract-related arguments are unsupported and hyperbolized.  For example, Defendants claim Bero failed to "cite to a single document or financial statement to support his [unjust enrichment damages] opinion," *Motion* at 10, and failed "to provide any factual data/analysis that [he] relied on or applied for his breach of contract damages," *Bero Reply* at 8.  But the court observes how Bero cited several, detailed financial schedules for his analysis of the economic harm resulting from the alleged breach of contract and unjust enrichment, and he included the schedules in his report. *See Expert Report of Richard F. Bero, CPA, CVA* at 90–122.

[117] *Bero Motion* at 1, 6.

[118] *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) (citation omitted) (explaining how the "two alternative categories of infringement compensation are the patentee's lost profits and the reasonable royalty he would have received through arms-length bargaining").

[119] *Bero Motion* at 5, 7.

[120] *Mentor Graphics Corp.*, 851 F.3d at 1287.

more."[121]  Thus, "in every case" the patentee must "give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented features and the unpatented features."[122]  Expert testimony failing to apportion damages in this way is generally unreliable and inadmissible, unless the expert relies on the entire market value rule.[123]

Under the entire market value rule—which has been described as a "narrow exception" to the apportionment requirement[124] and potentially applies regardless of whether the patentee relies on a reasonable royalty or lost profits calculation[125]—the patentee may rely on the entire market value of the accused product if the patentee demonstrates that "the feature patented constitutes the basis for customer demand."[126]  Importantly, a patentee cannot make such a showing by merely demonstrating how the technology is viewed as valuable, important, or even essential to the use of the product implementing the patented technology.[127]  Nor is it enough to show that the product containing the patented technology would be commercially unviable without it.[128]  Instead, the patentee must demonstrate how "the presence of [the patented] functionality is what motivates consumers to buy a [product] in the first place."[129]  This is

---

[121] 35 U.S.C. § 284; *Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015) (internal quotation marks and citation omitted).

[122] *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018) (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)).

[123] *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) ("To be admissible, expert testimony opining on a reasonable royalty rate must 'carefully tie proof of damages to the claimed invention's footprint in the market place.'" (citation omitted)).

[124] *LaserDynamics, Inc. v. Quanta Comput. Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012).

[125] *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995) (citations omitted).

[126] *LaserDynamics, Inc.*, 694 F.3d at 67 (citation omitted).

[127] *Id.* at 68.

[128] *Id.*

[129] *Id.*

considered a "higher degree of proof,"[130] requiring a party to demonstrate a product is purchased "*because* it had" the particular patented feature.[131]

      Here, Plaintiffs do not sell products. Instead, as explained above, Crystal Lagoons primarily generates revenue by issuing a collective license of all its intellectual property to lagoon developers, which includes the '514 Patent, for the design, construction, and operation of its lagoon technology.[132] Crystal Lagoons does not build the lagoons, but as part of its business Crystal Lagoons has ongoing involvement in the lagoon to ensure the lagoon is built and managed properly.[133] It does not license its Patents or other intellectual property on a patent-by-patent basis; instead, it licenses all of its technology only when it has ongoing involvement in a project such as providing (and getting paid for) its ongoing systems fees services.[134] These license agreements provide customers with a license to the asserted Patents, other additional intellectual property and services, design services, plans, drawings, know-how, equipment, trade secrets, and other assets and services that admittedly "have some value."[135]

      Plaintiffs and Bero acknowledge how Bero never apportioned damages between the '514 Patent and the other basket of intellectual property and services provided in Crystal Lagoons' collective license, as is generally required.[136] But Plaintiffs insist Bero's damages opinions are nonetheless reliable due to his reliance on the entire market rule.[137] Thus, to be admissible,

---

[130] *Id.*

[131] *Id.* at 68–69 (citation omitted) (emphasis in original).

[132] Dkt. 309-1, *Expert Report of Richard F. Bero, CPA, CVA* ¶ 20.

[133] *Id.*

[134] *Id.*

[135] Dkt. 309-5, *Videoconferenced Deposition of Richard Bero Taken via Zoom* at 179:17–180:5.

[136] *Bero Opposition* at 7; *Videoconferenced Deposition of Richard Bero Taken via Zoom* at 179:21–180:5.

[137] *Bero Opposition* at 7, 9.

Bero's testimony and opinions must demonstrate how "the presence of ['514 Patent] is what motivates consumers to buy [Crystal Lagoons' collective license] in the first place."[138]

In his report, Bero dedicated one short paragraph to demonstrate the '514 Patent forms the basis for customer demand:

> The entire market value rule applies in this matter. As addressed, the '514 Patent is a foundational lagoon patent. Without it, building a lagoon is not viable or realistic. There are no viable or realistic lagoon options. The '514 Patent represents the basis for customer demand. It drove the sale of the Desert Color lagoon. The entire market value rule applies here.[139]

Relatedly, in their brief, Plaintiffs' sole argument attempting to bolster Bero's opinion is that "because lagoons of such size and water quality are inoperable and economically unfeasible without using the Structure Patent . . . Bero's application of the entire market value rule was sound."[140] But again, merely showing how the patented technology is viewed as valuable, important, or even essential to the use of the product implementing the patented technology is not enough.[141] This is precisely what Bero does. And the Federal Circuit is clear that merely pointing to the commercial unviability of other alternative lagoons is not enough to justify an expert's reliance on the entire market value rule.[142] This is precisely what Plaintiffs attempt to do.

Here, similar to the *LaserDynamics, Inc.* case, Bero "never conducted any market studies or consumer surveys to ascertain whether the demand for [the collective license] is driven by the ['514 Patent]" in dispute.[143] Bero never points to or acknowledges a specific instance where a

---

[138] *LaserDynamics, Inc.*, 694 F.3d at 68.

[139] *Expert Report of Richard F. Bero, CPA, CVA* ¶ 131.

[140] *Bero Opposition* at 9.

[141] *LaserDynamics, Inc.*, 694 F.3d at 68.

[142] *Id.*

[143] *Id.*

customer purchased Crystal Lagoons' collective licenses because of the inclusion of the '514 Patent.  Instead, Plaintiffs and Bero rely solely on the "foundational" and "core" nature of the '514 Patent, the fact that the '514 Patent is included in every purchase of Crystal Lagoons' collective licenses, and the lack of viable lagoons in the marketplace to make an impermissible inference that the Patent drives consumer demand for all of Crystal Lagoons' intellectual property.[144]  None of these are adequate bases to justify Bero's reliance on the entire market value rule.  For all we know, demand for the Crystal Lagoons' collective license is driven primarily by any one of the technologies or properties included in the license.  For example, demand could be driven primarily by developers' desire to implement Crystal Lagoons' Water Treatment Patents[145] in a structure lacking one or more of the required claim elements articulated in the '514 Patent.[146]

Still, at oral argument, Plaintiffs pointed to *Mentor Graphics Corporation v. EVE-USA, Inc.* for the proposition that an expert's analysis of the *Panduit* factors eliminates the apportionment requirement generally applicable in "both reasonable royalty and lost profits analys[e]s."[147]  The court does not read *Mentor Graphics* as creating such a categorical rule.[148] There was no need to apportion damages in *Mentor Graphics* because "[i]n th[at] case,

---

[144] *Bero Opposition* at 9.

[145] These patents are included in Crystal Lagoons' collective license and are discussed in detail in a related case. *See, e.g.*, Dkt. 380, (case no. 2:19-cv-00796), *Defendant's Consolidated Motion for Summary Judgment* at ii–iii.

[146] The '514 Patent requires, among other things, "a bottom and walls covered with a plastic liner made of a non-porous material able to be thoroughly cleaned," a depth of about 0.5 meters or higher, a system of skimmers for removal of impurities and surface oils, a fresh water feeding pipe system, and a pumping system including a coupling means connected to a moveable suction device for cleaning the plastic liner.  *See United States Patent No. US 8,062,0514 B2* at 19:26–40.

[147] *See Mentor Graphics Corp.*, 851 F.3d at 1287–88.

[148] The Federal Circuit further clarified it did not create such a categorical rule by reiterating how "the basic principle of apportionment . . . [still] applies in all of patent damages" and how "in this case, on these facts, apportionment is achieved [through] the court's use of the *Panduit* factors."  *Id.* at 1283 n.3.

apportionment was properly incorporated into the lost profit analysis and in in particular through . . . *Panduit's* requirement that patentees prove demand for the product as a whole and the absence of non-infringing alternatives . . . ."[149]  And regardless, while Bero's analysis followed the *Panduit* factors, his analysis of the second factor—the absence of non-infringing alternatives—was entirely unsupported.  As described in *Mentor Graphics*, a reliable analysis of this factor is essential to for the *Panduit* factors to encompass the apportionment requirement.[150]  The totality of Bero's opinion on this factor consists of the following statement: "[a]s noted earlier, I understand there are no practical or viable alternatives to the Structure Patent or the patented lagoons at issue."[151]  A review of his expert report reveals how the only evidence supporting this conclusion is a discussion with Chris Lidstone and the "Lidstone Report."[152]  But as discussed above, Lidstone's opinions on this subject are unreliable and inadmissible.  Thus, Bero has no reliable basis for the second *Panduit* requirement, rendering the *Mentor Graphics* approach inapplicable here.

Ultimately missing from Bero's opinions are any sufficiently reliable facts or data suggesting the '514 Patent is what motivates consumers to purchase the Crystal Lagoons' portfolio of property.  And if the patentee cannot satisfy the entire market value rule, as is the case here, then the patentee "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or

---

[149] *Id.* at 1288.

[150] *Id.*

[151] *Expert Report of Richard F. Bero, CPA, CVA* ¶ 90.

[152] *Id.* at 25 n.147.

speculative."[153]  Because there is no dispute Bero never attempted to apportion profits and damages in this way, his testimony regarding a reasonable royalty is unreliable and inadmissible.

Relatedly, at oral argument, Plaintiffs made an oral motion seeking to allow Bero additional time to submit a supplemental expert opinion, which would address some of the deficiencies with his expert report.  This motion is denied.  Because all deadlines related to expert discovery have passed, this motion is governed by Federal Rules of Civil Procedure 6(b)(1)(B) and 16(b)(4), which require Plaintiffs to demonstrate "good cause" and "excusable neglect" to justify an extension of the expert discovery deadline.[154]  But here, neither good cause nor excusable neglect exists to justify an extension.  Good cause requires a showing of diligence by the movant,[155] but Plaintiffs waited an unreasonable amount of time to bring this motion.  Specifically, Plaintiffs waited until long after the expert discovery deadline had passed and until the final minutes of the January 23, 2025 hearing to bring this motion.  This is despite the court apprising the parties of its preliminary intention to rule in favor of Defendants regarding the admissibility of Bero's testimony on January 10, 2025.[156]  On these facts, Plaintiffs cannot demonstrate reasonable diligence.  Moreover, Plaintiffs cannot demonstrate excusable neglect.  When asked about the basis for this motion at oral argument, counsel for Plaintiffs argued only that the apportionment requirement in a lost profits analysis is not a predictable requirement for an expert report.  But this court's review of relevant case law reveals the need to tie damages to

---

[153] *Uniloc USA, Inc.*, 632 F.3d at 1318.

[154] *See, e.g.*, *Taitt-Phillip v. Lockheed Martin Corp.*, No. CV 21-150 DHU/GBW, 2022 WL 1262217, at *1 (D.N.M. Apr. 28, 2022) (citing *Lay v. Wal-Mart Stores E., L.P.*, Civ. No. 20-280 SCY/KK, 2020 WL 6709541, at *2–3 (D.N.M. Nov. 16, 2020) (explaining that a plaintiff must show both good cause pursuant to Rule 16(b)(4) and excusable neglect under Rule 6(b)(1) to obtain the court's leave to disclose a new expert and report after the expert disclosure deadline had passed).

[155] *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).

[156] *See* Dkt. 354, *Instructions for Oral Argument*; Dkt. 355, *[Draft] Memorandum Decision and Order*.

the worth of a product's patented features is well-established, and apportionment is undoubtedly
"an important component of damages law generally" and "necessary in both reasonable royalty
and lost profits analysis."[157]  Federal courts are clear that a movant's ignorance of the law is
insufficient to demonstrate excusable neglect;[158] accordingly, Plaintiffs have not satisfied their
burden under Rules 6(b)(1)(B) and 16(b)(4) to modify the already expired expert discovery
deadline.

## CONCLUSION

For the foregoing reasons, the court orders as follows:

1. Defendants' Motion in Limine to Preclude Allegations of Noncompliance with Pool
   Codes is GRANTED IN PART. [159]  Evidence and arguments suggesting Defendants
   violated a jurisdiction's pool codes are inadmissible.  Other evidence related to pool
   codes is admissible, provided Plaintiffs clarify how Defendants are not required to
   comply with the relevant pool code, when necessary.

---

[157] *Mentor Graphics Corp.*, 851 F.3d 1275 at 1287; *see also VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326
(Fed. Cir. 2014) ("No matter what the form of the royalty, a patentee must take care to seek only those damages
attributable to the infringing features."); *Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295,
1301 (Fed. Cir. 2015) ("[D]amages awarded for patent infringement 'must reflect the value attributable to the
infringing features of the product, and no more.'") (quoting *Ericsson, Inc. v. D–Link Sys., Inc.*, 773 F.3d 1201, 1226
(Fed. Cir. 2014)); *Ericsson*, 773 F.3d at 1226 ("[A]pportionment is required even for non-royalty forms of
damages.").  Indeed, the Federal Circuit has explained that the apportionment requirement dates back to *Garretson
v. Clark*, 111 U.S. 120 (1884), where the Supreme Court held that "[t]he patentee ... must in every case give
evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented
feature and the unpatented features."  *Mentor Graphics Corp.*, 870 F.3d at 1299 (Stoll, J. concurring) (citing
*Garretson*, 111 U.S. at 121).

[158] *See, e.g., Xiong v. McCormick*, 809 F. App'x 496, 498 (10th Cir. 2020) (unpublished) (citing *Marsh v. Soares*,
223 F.3d 1217, 1220 (10th Cir. 2000)); *Krum v. Chubb Ltd.*, No. 20-CV-03616-RM-GPG, 2022 WL 1558883, at *5
(D. Colo. Jan. 10, 2022), *report and recommendation adopted*, No. 20-CV-03616-RM-GPG, 2022 WL 1558885 (D.
Colo. Feb. 10, 2022).

[159] Dkt. 310.

2. Defendants' Motion to Exclude Plaintiffs' Expert Christopher D. Lidstone is GRANTED IN PART.[160]  Lidstone's opinions regarding the absence of non-infringing alternatives, long-felt need, and copying are unreliable and inadmissible.

3. Defendants' Motion to Exclude Plaintiffs' Expert Richard F. Bero is GRANTED IN PART.[161]  Bero may testify regarding the commercial success of the '514 Patent, the damages related to breach of the NDA, and the damages related to unjust enrichment. His opinions related to infringement damages (lost profits and reasonable royalty) are inadmissible.

4. Plaintiffs' oral motion for leave to file a supplemental expert report is DENIED.

SO ORDERED this 4th day of February 2025.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[160] Dkt. 315.

[161] Dkt. 307.