IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CRYSTAL LAGOONS U.S. CORP. and CRYSTAL LAGOONS TECHNOLOGIES INC., <br><br>       Plaintiffs, <br><br> v. <br><br> DESERT COLOR MANAGER et al, <br><br>       Defendants. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:20-cv-00851-RJS-DAO <br><br> Chief District Judge Robert J. Shelby <br><br> Magistrate Judge Daphne A. Oberg |

Before the court is Defendants' Motion for Summary Judgment.[1] Having reviewed the Motion and relevant briefing, the court GRANTS IN PART Defendants' Motion.

**FACTUAL BACKGROUND**

This case involves an alleged breach of a Non-Disclosure Agreement (the NDA) and patent infringement stemming from the management, construction, and operation of a large lagoon in St. George, Utah (the Lagoon) by Defendants.[2] Specifically, Plaintiffs allege that, after agreeing to the terms of the NDA in late 2017,[3] the Desert Color Defendants breached the NDA by disclosing designs, plans, technical information, and other confidential information to Defendant Pacific Aquascape International, Inc. (Pacific).[4] Plaintiffs then allege all Defendants infringed on U.S. Patent No. 8,062,514 (the '514 Patent) due to their management and

---

[1] Dkt. 311, *Defendant's Motion for Summary Judgment* (*Motion*).

[2] *See* Dkt. 79, *First Amended Complaint* ¶¶ 54, 132–37, 210–23.

[3] *Id.* ¶ 54; Dkt. 312-2, *Non-Disclosure Agreement* at 2.

[4] *First Amended Complaint* ¶ 135.

construction of the Lagoon, which allegedly employs Crystal Lagoons' patented technology.[5]  In its most basic sense, the '514 Patent is a patented structure to contain a large body of water for recreational use.[6]  The '514 Patent involves, among other things, the design and construction of a structure to contain a water body larger than 15,000 m³, the use of a plastic liner to cover the bottom and walls of the structure, the use of a recycling system that uses pipes with injectors that also allow the application of chemicals, the use of a water inlet line and inlet chambers through which water is extracted to feed the fresh water feeding pipe system of the structure, and the use of a system of skimmers positioned along the border of the structure.[7]

## PROCEDURAL BACKGROUND

Plaintiffs originally sued eight defendants[8] and asserted a myriad of state and federal claims against them.[9]  But over the life of the case, all defendants except the Desert Color Defendants and Pacific have been dismissed from the case.[10]  The court also dismissed all claims against Pacific, except the claim for patent infringement.[11]  Later, the parties stipulated to dismissal of several of Plaintiffs' other claims against the Desert Color Defendants,[12] and they

---

[5] *Id.* ¶¶ 210–23.

[6] *See* Dkt. 312-1, *United States Patent No.: US 8,062,0514 B2* at 19:27–28.

[7] *See id.* at 19:27–40.

[8] *See* Dkt. 2, *Complaint*.  The Defendants consisted of Desert Color Manager LLC, Desert Color St. George LLC, AJ Construction, Inc., Tri-State Ventures, LLC d/b/a Carefree Homes – Utah, Cole West Home LLC, Holmes Homes, Inc., Sullivan Homes LLC, and Pacific Aquascape International, Inc.

[9] *See id.*

[10] *See* Dkt. 74, *Notice of Voluntary Dismissal of Defendant Tri-State Ventures, LLC d/b/a Carefree Homes-Utah*; Dkt. 105, *Notice of Voluntary Dismissal of AJ Construction, Inc.*; Dkt.114, *Order Granting in Part and Denying in Part Defendants Holmes Homes' and Cole West's Motions to Dismiss* at 2. Dkt. 141, *Stipulation of Dismissal of Cole West Homes LLC*.

[11] *See* Dkt. 113, *Order Granting-in-Part and Denying-in Part Desert Color Manger, LLC, Desert Color St. George, LLC, and Pacific Aquascape International, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint*.

[12] *See* Dkt. 299, *Stipulated Dismissal of Certain Claims*.

agreed that no relief for Count 8 (common law unjust enrichment) could be based on the dismissed causes of action.[13]  At bottom, only the following claims and counterclaims remain:

    (a)  Count 1: Breach of Contract against the Desert Color Defendants;

    (b)  Count 8: Common Law Unjust Enrichment against the Desert Color Defendants;

    (c)  Count 11: Patent Infringement of the '514 Patent against all Defendants;

    (d)  Counterclaims 5 and 6: Declaratory Judgment of non-infringement and invalidity of the '514 Patent against Plaintiffs.[14]

Defendants filed the present Motion for Summary Judgment along with several evidentiary Motions that affect the resolution of the Motion for Summary Judgment on July 9, 2024.[15]  The court ruled on the evidentiary Motions on February 4, 2025.[16]  The Motion for Summary Judgment is fully ripe and ready for review.[17]

## LEGAL STANDARDS

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[18]  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[19]  A fact

---

[13] *Id.*

[14] *See* Dkt. 129, *Desert Color Manager, LLC, Desert Color St. George, LLC, and Pacific Aquascape International, Inc.'s Answer, Defenses, and Amended Counterclaims in Response to Plaintiffs' First Amended Complaint* ¶¶ 52–79.

[15] Dkt. 315, *Defendant's Motion to Exclude Plaintiffs' Expert Christopher D. Lidstone* (*Lidstone Motion*); Dkt. 307, *Defendant's Motion to Exclude Plaintiffs' Expert Richard F. Bero* (*Bero Motion*); Dkt. 310, *Defendant's Motion in Limine to Preclude Allegations of Non-Compliance with Pool Codes* (*Pool Code Motion*).

[16] Dkt. 362, *Memorandum Decision and Order*.

[17] Dkt. 339, *Plaintiffs' Opposition to Defendants' Motion for Summary Judgment* (*Opposition*); Dkt. 341, *Defendant's Reply to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment* (*Reply*).

[18] Fed. R. Civ. P. 56(a).

[19] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

is material if, under the governing substantive law, it could affect the outcome of the suit.[20]

When applying this standard, the court views the evidence and makes all reasonable inferences

in the light most favorable to the nonmoving party.[21]

In the Tenth Circuit, "the moving party carries the burden of showing beyond a

reasonable doubt that it is entitled to summary judgment."[22]  Even though a defendant "does not

have the ultimate burden of persuasion at trial," when moving for summary judgment, a

defendant has "both the initial burden of production . . . and the burden of establishing that

summary judgment is appropriate as a matter of law."[23]  This burden may be met by either

"producing affirmative evidence negating an essential element of the non-moving party's claim,

or by showing that the nonmoving party does not have enough evidence to carry its burden of

persuasion at trial."[24]  When determining whether a nonmovant has provided sufficient evidence,

"the judge's function is not himself to weigh the evidence and determine the truth of the matter

but to determine whether there is a genuine issue for trial."[25]  If the evidence is merely colorable

or is not significantly probative, summary judgment may be granted.[26]  But "[c]redibility

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

facts are jury functions, not those of a judge."[27]  Ultimately, this threshold inquiry ascertains

---

[20] *Id.*; *see also United States v. Simons*, 129 F.3d 1386, 1388 (10th Cir. 1997) ("The substantive law of the case determines which facts are material.").

[21] *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

[22] *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (citation omitted).

[23] *Id.* (citation omitted).

[24] *Id.* (citation omitted).

[25] *Anderson*, 477 U.S. at 249.

[26] *Id.* (citations omitted).

[27] *Id.* at 255.

whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[28]

In ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [that party's] favor."[29]  Nonetheless, "the judge must view the evidence presented through the prism of the substantive evidentiary burden."[30]

## ANALYSIS

In their Motion, Defendants seek summary judgment with respect to noninfringement and invalidity of the '514 Patent, patent-related damages, breach of the NDA agreement, and unjust enrichment.[31]  A natural starting point for the court is addressing the validity of the '514 Patent. Because the court concludes the '514 Patent is valid, the court then addresses Defendants' arguments regarding direct and indirect infringement of the '514 Patent and patent-related damages.  Finally, the court turns to Defendants' arguments related to breach of the NDA and unjust enrichment.

### I.    Validity of the '514 Patent

Defendants first argue the asserted claims of the '514 Patent are indefinite and invalid because they each recite "color, transparency and cleanness similar to swimming pools or tropical seas" without an adequate and objective benchmark for what that phrase means.[32] Plaintiffs contend this language is a nonlimiting portion of the '514 Patent Claim 1 preamble,

---

[28] *Id.* at 250.

[29] *Id.* at 255 (citation omitted).

[30] *Id.* at 254.

[31] *See Motion* at 5, 11, 23, 28, 34.

[32] *Id.* at 11.

which cannot render a claim indefinite.[33]   Still, Defendants insist that even if the language is nonlimiting, the claims are anticipated or obvious as each claim is disclosed in prior art pool references.[34]   For the reasons that follow, the court ultimately determines Defendants are not entitled to summary judgment based on invalidity of the '514 Patent.

The court turns first to the issue of construing the preamble as limiting or nonlimiting. While preamble language is often treated as nonlimiting in nature, "it is not unusual for courts to treat preamble as limiting."[35]   There is no litmus test for determining whether preamble language is limiting.[36]   Indeed, "whether to treat a preamble as a claim limitation is determined on the facts of each case in light of the claim as a whole and the invention described in the patent."[37]  Preamble language that merely states the purpose or intended use of an invention is generally not treated as limiting the scope of the claim.[38]   Similarly, a preamble is not limiting when the claim body describes a structurally complete invention such that deletion of the relevant preamble phrase does not affect the structure or steps of the claimed invention.[39]   But when the preamble recites essential structure that is important to the invention or necessary to give meaning to the claim, the preamble is found to be limiting.[40]   In other words, a preamble is limiting when it is

---

[33] *Opposition* at 20.  Plaintiffs also inaccurately argue the court has already rejected Defendants' indefiniteness argument.  *See id.*  The order cited by Plaintiffs in support of this argument states "[t]he Court declines to address the indefiniteness issue related to patent validity raised by Defendants' Cross-Motion for Claim Construction."  Dkt. 215, *Order Regarding Claim Construction* at 1.

[34] *See Motion* at 20.

[35] *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006).

[36] *Id.* (citation omitted).

[37] *Id.* (quoting *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 831 (Fed. Cir. 2003)).

[38] *Id.* (citations omitted).

[39] *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1358–59 (Fed. Cir. 2010) (citation omitted); *see also Bicon, Inc.*, 441 F.3d at 952 (observing how when the body of the claim sets out the complete invention, the preamble is not ordinarily treated as limiting the scope of the claim).

[40] *Bicon, Inc.*, 441 F.3d at 952.

"necessary to give life, meaning, and vitality to the claim."[41]  Furthermore, "when the limitations

in the body of the claim 'rely upon and derive antecedent basis from the preamble, then the

preamble may act as a necessary component of the claimed invention.'"[42]

 Here, the '514 Patent Claim 1 preamble recites: "A structure to contain a large water

body, including a water body larger than 15,000 m³, for recreational use with color, transparency

and cleanness characteristics similar to swimming pools or tropical seas . . . ."[43]  A plain reading

of this language reveals how the clause beginning with "for recreational use with color" simply

states the purpose or intended use of the invention.  It does no more than provide "context in

which the invention operates,"[44] and it is not so essential that without it the "performance of the

recited steps is nothing but an academic exercise."[45]  Even when the court removes the phrase

from the preamble, the remaining claim language sets out the complete invention.  No limitations

in the body of the claim depend upon or derive antecedent basis from the recreational use, color,

transparency, or cleanness characteristics described in this portion of the preamble.  As such,

Defendants arguments attempting to construe this portion of the preamble as limiting and

indefinite necessarily fail.[46]

 In contrast, the court reads the phrase "[a] structure to contain a large water body,

including a water body larger than 15,000 m³" to be limiting.  It is well established "one part of

---

[41] *Am. Med. Sys., Inc.*, 618 F.3d at 1358 (internal quotation marks and citation omitted).

[42] *Id.* (quoting *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003)).

[43] *United States Patent No.: US 8,062,514 B2* at 19:27–30.

[44] *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1345 (Fed. Cir. 2003).

[45] *Id.*

[46] *See Sunoco Partners Mktg. & Terminals L.P. v. Power Springs Logistics, LLC*, No. 17-1390-LPS-CJB, 2019 WL
4051949, *10 (D. Del. Aug. 28, 2019) *report and recommendation adopted*, No. CV 17-1390-LPS-CJB, 2020 WL
2316016 (D. Del. May 11, 2020) ("In light of the Court's conclusion that these preamble terms are not limiting, no
further construction (or consideration of Defendants' indefiniteness argument) is required.").

[a] preamble [may] be limiting even though another portion is not."[47]  The Federal Circuit is also clear that claims "must be read in view of the specification, of which they are a part" as the specification "is always highly relevant to the claim construction analysis" and is usually dispositive.[48]  Viewing the claim language in light of the invention described in the specification, the court finds defining the size of the water structure is not merely a circumstance in which the method may be useful, but it is "the *raison d'être* of the claimed method itself."[49]  Indeed, the Patent's first heading is entitled "Structure to Contain a Large Water Body of at Least 15,000 m³."[50]  The Patent's description of the invention lists "providing a structure with skimmers able to contain a large water body larger than 15,000 m³" as an essential feature of the process.[51]  This size-related language in the preamble recites an essential structure giving meaning to the remainder of the claim, and all other limitations in the claim build on this language.  This language is limiting.  Without it, the claims' requirements would lose the "essence of the invention."[52]

Still, Defendants argue even if the recited size is a limitation, the claims are anticipated or obvious by prior art pool references because (1) there is no dispute that technology employed in common swimming pools predating the '514 Patent meets most elements of the claims identified by Plaintiffs and (2) the size—the only difference between the '514 Patent and the prior art—is not patentable.[53]  The court is not persuaded.

---

[47] *See Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1370–71 (Fed. Cir. 2020).

[48] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed Cir. 2005) (citations omitted).

[49] *Boehringer Ingelheim Vetmedica, Inc.*, 320 F.3d at 1345.

[50] *United States Patent No.: US 8,062,514 B2* at 1:1–3.

[51] *Id.* at 7:6–7.

[52] *Boehringer Ingelheim Vetmedica, Inc.*, 320 F.3d at 1345.

[53] *Motion* at 20–21.

Anticipation is a question of fact[54] that must be shown by clear and convincing evidence.[55]  To be anticipating, a prior art reference (1) must disclose each and every limitation of the claimed invention, (2) must be enabling, and (3) must describe the claimed invention sufficiently to have placed it in possession of a person of ordinary skill in the field of the invention.[56]  If there is a genuine issue of material fact relevant to any one of these factors, summary judgment is not proper.[57]

Here, Defendants point to prior art references disclosing (1) pool bottoms and walls covered with a plastic liner made of a non-porous material able to be thoroughly cleaned; (2) pools of at least two meters deep; (3) pools with skimmers; (4) pools filled with water by fresh water feeding pipes; and (5) pool vacuums that can be used to clean plastic liners on the bottoms and walls.[58]  But Defendants cannot identify a prior art reference disclosing pools larger than 15,000 m³.  As discussed above, the size requirement described in the preamble is limiting; therefore, it must be disclosed in a prior art reference for Defendants' anticipation argument to succeed.  Moreover, Defendants make no attempt to address the latter two anticipation factors: that the prior art reference is enabling and describes the claimed invention sufficiently to have placed it in possession of a person of ordinary skill in the field of the invention.  Because Defendants failed to address two critical anticipation factors, their invalidity contentions based on anticipation necessarily fail as they cannot establish their entitlement to judgment as a matter of law—especially when they must demonstrate anticipation by clear and convincing evidence.

---

[54] *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006) (citation omitted).

[55] *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000) (citation omitted).

[56] *Id.* (citation omitted).

[57] *Id.*

[58] *Motion* at 21.

Alternatively, Defendants argue that even if the recited size is a limitation, then the '514 Patent claims are still anticipated or obvious because size is not patentable.[59]  Again, because Defendants failed to address two of the three anticipation factors, they have failed to prove anticipation by clear and convincing evidence.  And similarly, Defendants have not met their burden to establish obviousness by clear and convincing evidence at this stage of the litigation.[60]  "[P]recedent clearly establishes that the district court must make *Graham* findings before invalidating a patent for obviousness," which include "four factual inquiries": 1) the scope and content of the prior art; 2) the level of ordinary skill in the art; 3) the differences between the claimed invention and the prior art; and 4) secondary considerations of nonobviousness, which include commercial success, long-felt but unresolved need, failure of others, copying, and unexpected results.[61]  Defendants do not mention these factors in their briefing, and a consideration of these factors has led courts to reject claims of obviousness even when the only difference between the prior art and the claimed invention involved a change in proportion or size.[62]

---

[59] *Id.* at 22.

[60] *United States v. Telectronics, Inc.*, 857 F.2d 778, 785 (Fed. Cir. 1988); *Exxon Rsch. & Eng'g Co. v. United States*, 265 F.3d 1371, 1376 (Fed. Cir. 2001);.*Sonix Tech. Co., Ltd. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017) (citation omitted).

[61] *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662–63 (Fed. Cir. 2000).

[62] *See Fox Factory, Inc. v. SRAM, LLC*, 813 F. App'x 539 (Fed. Cir. 2020) (unpublished) (affirming the finding that claims to a bicycle chain ring were not proven obvious even though the accused infringer argued that the "only difference between the prior art and the claimed invention is the degree to which the widened teeth should fill the outer chain link spaces, measured halfway up the tooth").  The Federal Circuit explained "[w]hile Fox Factory is correct that 'a mere change in proportion . . . involve[s] no more than mechanical skill,' rather than the level of invention required by 35 U.S.C. § 103, . . . the Board found that SRAM's optimization of the X-Sync chainring's teeth, as claimed in the '250 patent, displayed significant invention . . . based [on] . . . secondary considerations that strongly indicated that the X-Sync chainring's success surprised skilled artisans."  *Id.* at 542.  Thus, "[t]he Board did not err in concluding that such evidence defeated SRAM's contention of routine optimization."  *Id.*

Additionally, Defendants present anticipation and obviousness arguments for only Claim 1 of the '514 Patent.[63]  But Crystal Lagoons also asserts dependent Claims 2–4.[64]  Because Claim 1 is an independent claim and has not been shown to be invalid, its corresponding dependent claims cannot be invalidated at this stage of the litigation.[65]

Ultimately, at this stage of the litigation, Defendants have failed to demonstrate by clear and convincing evidence that the '514 Patent is invalid.

## II.    Direct Infringement of the '514 Patent

Next, Defendants argue they are entitled to summary judgment of no direct infringement of the '514 Patent.[66]  A claim for direct infringement involves allegations that either "the [accused product] infringes the Asserted Patents literally—that it contains elements identical to all the limitations of the allegedly infringed patents' claims—or [it infringes] under the doctrine of equivalents—that it 'performs substantially the same function in substantially the same way to obtain the same result.'"[67]  Infringement under the doctrine of equivalents is a question of fact, but "where the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment."[68]  Defendants argue three undisputed facts justify a summary judgment ruling in their favor that they have not directly infringed the '514 Patent.  The court disagrees.

---

[63] *See generally Motion* at 27.

[64] *See Opposition* at 29.

[65] *See RCA Corp. v. Applied Digit. Data Sys., Inc.*, 730 F.2d 1440, 1446 (Fed. Cir. 1984) (explaining how if prior art does not anticipate an independent claim, it cannot anticipate its associated dependent claim).

[66] *Motion* at 5.

[67] *Longhorn Vaccines & Diagnostics, LLC v. Spectrum Solutions, LLC*, 564 F. Supp. 3d 1126, 1133 (D. Utah 2021) (citation omitted).

[68] *U.S. Philips Corp. v. Iwasaki Elec. Co. Ltd.*, 505 F.3d 1371, 1375 (Fed. Cir. 2007) (citations omitted).

First, Defendants argue the Lagoon employs traditional pool filtration technology in which the entire volume of water is filtered about twice a day.[69]  In a related case, Plaintiffs acknowledged in earlier pleadings that the ability "to filter the entire volume of water" in this way "would not infringe Crystal Lagoons patents."[70]  Defendants point to this admission as conclusive proof that the Lagoon, which undisputedly uses such a traditional filtration system, cannot infringe the '514 Patent as a matter of law.[71]  But Plaintiffs' operative pleading in this and the related *Cloward* case contain no such admission, and it is well established that an admission in a prior pleading has no legal effect after a valid amendment.[72]  Moreover, "[i]t is the claims that define the metes and bounds of the patentee's invention,"[73] and here, none of the '514 Patent claims require the absence of a traditional filtration system.  As Plaintiffs have argued previously, the '514 Patent can be infringed regardless of whether there is a filtration system constructed and operated in parallel.[74]  Additional claim language of the '514 Patent supports

---

[69] *Motion* at 6.

[70] *See* Dkt. 2 (case no. 2:21-cv-00507), *Complaint* ¶ 67; Dkt. 11 (case no. 2:21-cv-00507), *First Amended Complaint* ¶ 63.

[71] *Motion* at 6.

[72] *See, e.g., Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." (citations omitted)); *see also e.g., West Run Student Housing Associates, LLC v. Huntington Nat. Bank*, 712 F.3d 165, 171 (3rd Cir. 2013) ("Even if Plaintiffs' allegations in the original complaint constituted judicial admissions, it does not follow that they may not amend them."); *Maloney v. Scottsdale Ins. Co.*, 256 Fed. App'x 29, 32 (9th Cir. 2007) ("When a complaint containing a judicial admission is amended, the information admitted in the original complaint is no longer conclusively established."); *Huey v. Honeywell, Inc.,* 82 F.3d 327, 333 (9th Cir.1996) ("When a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission . . . ."); *Giannone v. U.S. Steel Corp.,* 238 F.2d 544, 547 (3d Cir. 1956) (recognizing that "withdrawn or superseded pleadings" do not constitute judicial admissions); *InterGen N.V. v. Grina,* 344 F.3d 134, 144–45 (1st Cir.2003) ("An amended complaint supersedes the original complaint, and facts that are neither repeated nor otherwise incorporated into the amended complaint no longer bind the pleader."); *188 LLC v. Trinity Indus., Inc.,* 300 F.3d 730, 736 (7th Cir.2002) ("When a party has amended a pleading, allegations and statements in earlier pleadings are not considered judicial admissions."); *Hibernia Nat'l Bank v. Carner,* 997 F.2d 94, 101 (5th Cir.1993) ("To the extent that Hibernia did make a 'judicial confession[ ]' [in its original complaint,] that confession was amended away." (citations omitted)).

[73] *Throner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012).

[74] *See* Dkt. 45, (case no. 2:21-cv-00507), *Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment of Non-infringement* at 36.

this conclusion.  Claim 1 of the '514 Patent begins by reciting that "the structure includes" certain claim elements.[75]  The Federal Circuit "has consistently interpreted 'including' and 'comprising' to have the same meaning, namely, that the listed elements . . . are essential but other elements may be added."[76]  Thus, the fact that a traditional filtration method happens to be used at the Lagoon does not, by itself, conclusively establish non-infringement of the '514 Patent.  It is possible the Lagoon both uses a traditional filtration system and still infringes the '514 Patent.  Defendants have not demonstrated their non-infringement as a matter of law based solely on the existence of the Lagoon's traditional filtration system.[77]

Second, Defendants argue there is no dispute the Lagoon lacks required elements of the following claim language of the '514 Patent: "wherein the structure includes a system of skimmers for the removal of impurities and surface oils, [and] a fresh water feeding pipe system that allows entrance of fresh water and results in water removal by displacement of surface water through the skimmer system."[78]  Specifically, Defendants focus on two Lagoon differences: first, the skimmers do not remove displaced surface water and impurities; instead, they "catch" the impurities and "recycle" the water.[79]  Second, the addition of fresh water does not *result in* water displacement through the skimmer system.[80]  Neither distinction is persuasive.

---

[75] *United States Patent No.: US 8,062,514 B2* at 19:30–31.

[76] *Lucent Techs., Inc. v. Gateway, Inc.*, 525 F.3d 1200, 1214 (Fed. Cir. 2008) (citations omitted).

[77] Defendants also argue Crystal Lagoons admitted no third party is infringing any of its intellectual property in an 8-K filing with the Securities and Exchange commission.  *Motion* at 10.  But Defendants overlook a crucial carveout in the filing where Crystal Lagoons agreed to set forth additional disclosures, which are deemed part of the representations and warranties made in the filing.  *Opposition* at 17 n.7.  These disclosures identify the present litigation.  *Id.*

[78] *United States Patent No.: US 8,062,514 B2* at 19:34–38.

[79] *Motion* at 7.

[80] *Id.*

As to the first argument, the claim language of the '514 Patent is agnostic as to the ultimate fate of the impurities and the water; the Patent claims only require these be "removed" and "displaced" from the water structure via a skimmer system.[81]  This undisputedly occurs in the present Lagoon.  There is no dispute the Lagoon uses skimmers to draw surface water from the Lagoon into a cleaning and filtration system.[82]  These skimmers are similar to skimmers in "all swimming pools that significantly pre-date the '514 Patent,"[83] wherein they are positioned along the borders of the Lagoon, define the operating level of the Lagoon, and catch water, debris, and impurities that flow over the grate-like structure.[84]  Because the water flows into the skimmers and enters a "recycled" state, it is obvious that the water is "removed" from the main body of water filling the swimmable structure for a time.  And, as explained by Defendants' expert, after going through a disinfection process, the water is "recirculated in the [L]agoon via designed water jets or inlets."[85]  The fact that the water must be reinjected into the main body of water is indicative of how it was removed at one point.  Moreover, it is undisputed these skimmers cause surface oils and impurities to be removed from the Lagoon, at least for a time, by "catching" them on a filter before water is recycled and returned to the Lagoon.[86]  This likewise satisfies the removal requirement for impurities.

As to the second argument, the Lagoon admittedly has a freshwater feeding pipe system that allows the entrance of fresh water into the Lagoon.[87]  Defendants' expert, Douglas R.

---

[81] *United States Patent No.: US 8,062,514 B2* at 19:35–37.

[82] *See* Dkt. 312-8, *Expert Rebuttal Report* at 24.

[83] *Id.*

[84] *See* Dkt. 312-4, *Expert Report of Christopher D. Lidstone, CPG* ¶¶ 68–72.

[85] *See* Dkt. 312-8, *Expert Rebuttal Report* at 24.

[86] *Motion* at 7; Dkt. 312-38, *Video-recorded Deposition via Zoom of: Stetson Harris* at 84:14–17 (admitting "the thought process behind [the skimmers]" is to remove the impurities and surface oils from the lagoon water).

[87] *Video-recorded Deposition via Zoom of: Stetson Harris* at 87:4–24.

Ferrell, explained how the pipe feeds water to the Lagoon to make up for water losses due to evaporation, splashed water out of the Lagoon, or other ancillary water losses.[88]  Based on this testimony, and understanding how the skimmers are positioned along the border of the Lagoon and define the operating level of the Lagoon,[89] it is obvious that ongoing influxes of fresh water from the freshwater pipe system eventually result in water removal or recycling through the skimmer system.  Without the freshwater feeding pipe system, the Lagoon's water would continuously deplete due to "ancillary water losses" until the skimmer system would become entirely inoperable.[90]  It is, at least in part, the continuous influx of water from the pipe system that keeps water levels high enough for water to flow into the surrounding skimmers.  Thus, the differences between the Lagoon and the claim language of the '514 Patent highlighted by Defendants are insufficient to demonstrate they are entitled to relief as a matter of law.[91]

Next, Defendants argue the Lagoon is for a water body of 14,871 m³, which is smaller than the '514 Patent requirement of 15,000 m³.[92]  Accordingly , Defendants argue the Lagoon cannot infringe on the asserted claims of the '514 Patent as a matter of law.[93]  The court disagrees.

There is a genuine dispute of fact as to the actual, volumetric capacity of the Lagoon. Defendants' sole evidence demonstrating the Lagoon's smaller capacity are copies of certain "as-

---

[88] *See Expert Rebuttal Report* at 24.

[89] *See* Dkt. 312-4, *Expert Report of Christopher D. Lidstone, CPG* ¶ 70.

[90] *See id.* ¶ 74 ("Freshwater must be introduced into the Lagoon as new makeup water (to compensate for water lost through evaporation and other losses) and maintain the operational water level as described in the plans.  To accomplish this, the Desert Color Lagoon incorporates a freshwater feeding pipe system that allows entrance of freshwater and effectively displaces the surface water through skimmers.").

[91] The court also observes there would be several disputes of fact as to whether the Lagoon's freshwater feeding pipe system and skimmers would satisfy the '514 Patent claim requirements under the doctrine of equivalents, which would also preclude an award of summary judgment in favor of Defendants on this issue.  *See Opposition* at 12–13.

[92] *Motion* at 7.

[93] *Id.* at 9.

built" design plans for the Lagoon.[94]  But these plans plainly contradict earlier design plans for the Lagoon, which showed a volumetric capacity over 15,000 m³.[95]  And, importantly, the "as-built" plans were marked as not being acceptable for construction use.[96]  Thus, there is a dispute of fact as to whether the "as-built" plans were used to construct the Lagoon, and even assuming they were used, there is a dispute of fact as to whether they accurately represent the actual volumetric capacity of the Lagoon.  Furthermore, Defendants do not dispute the Lagoon is capable of holding more than 15,000 m³ of water as the Lagoon's shoreline is approximately 6 inches above the operating waterline, which supports a "net increase in volume of the facility from about . . . 15,630 m³ to 16,388 m³—all greater than 15,000 m³."[97]  And while a water level sensor was contemplated for the Lagoon, in practice, the water level has been manually gauged and controlled based on "visual observation."[98]  The fact that the Lagoon is capable of holding the 15,000 m³ of water and is filled based on subjective observation provides a reasonable inference that the Lagoon may actually be filled in excess of the 15,000 m³ in practice, and it provides additional grounds—legal[99] and factual—to deny Defendants' request for summary judgment.[100]

---

[94] *See id.* at 8.

[95] *Id.* at 9.

[96] *Expert Report of Christopher D. Lidstone, CPG* ¶ 55.

[97] *Id.*

[98] Dkt. 326-1, *Videotaped Deposition of Robert Begay* at 92:23–95:5.

[99] Apparatus claims "require only devices that are capable of" performing a function.  *Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1327 (Fed. Cir. 2018). "[I]nfringement of . . . apparatus claims requires that [the accused] products have the ability to perform . . . infringement does not require actual use."  *Id.* (citation omitted).  The fact that the Lagoon is capable of holding the 15,000 m³ undermines Defendants' attempt to demonstrate noninfringement as a matter of law.

[100] The court also observes the doctrine of equivalents would prevent an award of summary judgment in favor of Defendants on this issue.  *See Opposition* at 16–17.

16

### III.    Indirect Infringement of the '514 Patent

Next, Defendants move for summary judgment with respect to Plaintiffs' indirect infringement claims.[101]  Indirect infringement includes induced and contributory theories of infringement.[102]  But here, Plaintiffs never asserted claims for indirect infringement against Defendants.  To the extent Plaintiffs seek to bring claims of indirect infringement at this stage of the litigation, the court must construe the request as one to amend the complaint pursuant to Federal Rule of Civil Procedure 15.  But making this request in an opposition brief is prohibited by this court's Local Rules.[103]  Accordingly, Defendants' motion with respect to these unasserted claims is denied as moot.

### IV.    Damages

Next, Defendants argue that Crystal Lagoons' claim for damages based on alleged infringement of the '514 Patent should be limited to the time Crystal Lagoons filed suit against Defendants because Crystal Lagoons failed to mark its patented lagoons with the '514 Patent in the manner required by 35 U.S.C. § 287(a),[104] which states:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or by fixing thereon the word "patent" or the abbreviation "pat." together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent[.] . . . In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and

---

[101] *Motion* at 10.

[102] 35 U.S.C. § 271(b)–(c).

[103] *See* DUCivR 7-1(a)(3) ("A party may not make a motion . . . in a response or reply.  Any motion must be separately filed."); DUCivR 15-1(a) (explaining multiple filing requirements for parties moving pursuant to Fed. R. Civ. P. 15(a)(2) for leave to amend).

[104] *Motion* at 23.

continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

Importantly, § 287(a)'s requirements extend to a patentee's licensees, "because the statute extends to 'persons making or selling any patented article for or under [the patentee].'"[105]

Plaintiffs do not dispute that they and their licensees failed to physically mark lagoons employing the '514 Patent pursuant to § 287(a). But Plaintiffs insist they nonetheless complied with § 287(a) by "virtually" marking their licensed lagoons beginning in December 2019 by listing the '514 Patent on the Crystal Lagoons website.[106] As § 287(a) indicates, a patentee may use a website to publicly associate the patent and the patented article. However, the existence of a website is only one part of the required marking. Section 287(a) also requires that the internet address *and* the word "patent" or the abbreviation "pat." be affixed to the physical, patented article.[107] Because Plaintiffs never marked their lagoons employing the '514 Patent technology

---

[105] *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017) (citation omitted). For context, Crystal Lagoons generates revenue by issuing a collective license of all its intellectual property to lagoon builders—which necessarily includes the '514 Patent—for the design, construction, and operation of its lagoon technology. Dkt. 369-1, *Expert Report of Richard F. Bero, CPA, CVA* ¶¶ 20, 154, 178–80. Notably, Crystal Lagoons does not design, build, and operate artificial water lagoons, nor does it license its Patents and other intellectual property on a patent-by-patent basis; instead, it licenses all of its technology only when it has ongoing involvement in a project such as providing (and getting paid for) its ongoing systems fees services. *Id.* ¶ 20.

[106] *Opposition* at 32.

[107] 35 U.S.C. § 287(a).

with such a label, they have not provided the required notice via website publication as a matter of law.[108]

Alternatively, Plaintiffs argue Defendants received actual notice of their infringement (1) during a 2015 presentation where Crystal Lagoons discussed its patented technology; (2) during license negotiations in March 2019; and (3) shortly after Crystal Lagoons filed a similar complaint in a different case in October 2019.[109]  Additionally, at a hearing on the Motion, Plaintiffs urged the court to infer actual notice due to the close relationship between all parties and the relatively small market for lagoon-related technology in the United States.[110]  But as the Federal Circuit has "long explained," § 287(a)'s actual notice requirement "is satisfied when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or

---

[108] The court also observes Plaintiffs would be unable to demonstrate how the Crystal Lagoons website associates the patented article with the number of the patent, as required by 35 U.S.C. § 287(a). Indeed, an adequate marking on a website must provide "a level of notice commensurate with that of physical marking" by associating "the patented article with the number of the patent." *Mfg. Res. Int'l, Inc. v. Civiq Smartscapes, LLC*, 397 F. Supp. 3d 560, 577 (D. Del. 2019) (citing 35 U.S.C. § 287). And "[m]ere direction to a general website listing patents for all the patentee's products does not [suffice]." *Id.* Allowing a patentee to merely list all patents that could possibly apply to a product in this way would "create[] a research project for the public." *Id.* But this is precisely what the Crystal Lagoons website does. The December 2019 iteration of the website states the following: "Innovation is the cornerstone of Crystal Lagoons, which is constantly evolving to provide its clients with the World's Top Amenity in the nature of man-made turquoise lagoons of virtually unlimited sizes for recreational or industrial applications. The following is a non-exhaustive list of pending or registered patents of Crystal Lagoons in the United States. Equivalent patents have been applied for and/or registered in more than 180 countries and territories." Dkt. 312-40, *Declaration of Javiera De La Cerda in Support of Plaintiffs' Opposition to Defendant PAI's Motion for Summary Judgment* at Ex. A, p.4. The website then lists twenty different patents by their patent number, including the '514 Patent, without associating them with any patented articles. *Id.* In fact, besides listing the patent numbers, no other information about the patents is provided. While the webpage does acknowledge one patented article: "man-made turquoise lagoons of virtually unlimited sizes," the webpage also ambiguously indicates there are both "recreational" and "industrial" applications for the listed patents. *Id.* The '514 Patent is only "for recreational use" while Patents 8,454,838, 9,120,689, 8,518,269, and 9,051,193—which are listed on the 2019 website—are related to methods and systems for treating water in industrial processes. *Id.* Moreover, other patents are included on the website and relate to "floating lakes" and the treatment of the water in such lakes, not lagoons. Clearly, not all patents on the website apply to only man-made turquoise lagoons for recreational use, and the '514 Patent was not adequately associated with this patented application as of December 2019.

[109] *Opposition* at 33–34.

[110] Dkt. 365, *Minute Entry for Proceedings Held before Judge Robert J. Shelby*.

otherwise."[111]  It is irrelevant "whether the defendant knew of the patent or knew of his own infringement."[112]  Instead, the § 287(a) notice inquiry focuses "on the action of the patentee, not the knowledge or understanding of the infringer."[113]  And here, similar to *Lubby Holdings LLC*, Plaintiffs cannot show that Crystal Lagoons provided Defendants with "[an] affirmative communication of a *specific* charge of infringement by a *specific* accused product or device"[114] prior to amending their Complaint in February 2021.[115]  It is axiomatic why the 2015 presentation and 2019 license negotiations cannot form the basis of actual notice of alleged infringement as, according to Plaintiffs, no Defendant had engaged in the alleged infringement until *after* the 2019 license negotiations had concluded.[116]  Plaintiffs' only remaining argument is that shortly after Crystal Lagoons filed a Complaint in a related case on October 21, 2019, a defendant in the related case spoke to Mr. Severson (the president of Pacific) about the lawsuit, providing Pacific with actual notice on or about October 21, 2019.[117]  Assuming this argument is factually accurate, it could suggest only Defendants' general awareness of the Patents, which is insufficient under § 287(a).  There is no evidence of affirmative communications from Crystal Lagoons to Defendants about Defendants' alleged infringement of the Patents, nor is there evidence suggesting Mr. Severson or Defendants' employees were aware of a specific charge of infringement by a specific accused product or device.  Therefore, the court grants Defendants'

---

[111] *Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1360 (Fed. Cir. 2021) (quoting *SRI Int'l, Inc. v. Advanced Tech. Lab'ys., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997)).

[112] *Id.*

[113] *Id.* (citation omitted).

[114] *Id.* (alteration and emphasis in original).

[115] *See First Amended Complaint.*

[116] *See id.* ¶¶ 72–77 (explaining how Desert Color and Pacific entered into a contract to build the Lagoon three months after the termination of negotiations with Crystal Lagoons).

[117] *Opposition* at 34–35.

Motion on this issue.  However, the court does not agree with Defendants that because Plaintiffs did not comply with § 287(a), Crystal Lagoons cannot prove damages as a matter of law as it has no calculation of any damages after February 2021.[118]  Plaintiffs' lack of a damages calculation for the correct period is not dispositive.  Indeed, "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty,"[119] and "[a] court is not restricted in finding a reasonable royalty to a specific figure put forth by one of the parties."[120]  Accordingly, because actual notice of the alleged infringement was provided to Defendants at the time of filing the Amended Complaint,

---

[118] *Motion* at 28, 34.

[119] 35 U.S.C. § 284.

[120] *SmithKline*, 926 F.2d at 1168.

damages can only be awarded for potential infringement after the filing of this lawsuit on

February 2, 2021.[121]

### V.    Breach of the NDA and Unjust Enrichment

Finally, the Desert Color Defendants move for summary judgment with respect to

Plaintiffs' claims for breach of contract and unjust enrichment.[122]  Specifically, Defendants argue

(1) there is no evidence to support Plaintiffs' allegation that Desert Color disclosed designs,

plans, technical information and other confidential information belonging to Crystal Lagoons to

---

[121] *See First Amended Complaint* at 71.  Plaintiffs also filed a Notice of Supplemental Authority on February 21, 2025, seeking to provide legal support for several of their § 287(a) arguments made at the hearing.  *See* Dkt. 367, *Plaintiffs' Notice of Supplemental Authority*.  First, they cite *Ralston Purina Co. v. Far-Mar-Co., Inc.*, 772 F.2d 1570, 1577 (Fed. Cir. 1985) for the proposition that "[t]he offering of a license is actual notice" under § 287(a).  But this quote from *Ralston* relates to the issue of the notice required to willfully infringe a patent, not to § 287(a)'s notice requirement.  Moreover, Plaintiffs' *per se* interpretation of *Ralston* was rejected in *SRI Intern., Inc.*, 127 F.3d at 1470.  There, the court cited *Ralston* and explained "[i]t is not controlling whether the patentee threatens suit, demands cessation of infringement, or offers a license under the patent."  127 F.3d at 1470.  Instead, "the actual notice requirement of § 287(a) is satisfied when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise."  *Id.*  Plaintiffs did not direct this court to any evidence of Plaintiffs providing this type of notice to Defendants, even despite the parties' prior license negotiations.  Second, Plaintiffs cite *Wine Ry. Appliance Co. v. Enter. Ry. Equip. Co.*, 297 U.S. 387, 398 (1936) and *Arctic Cat Inc.*, 876 F.3d at 1368 for the proposition that "[t]he notice provisions of § 287 do not apply when a patentee never makes or sells a patented article."  Plaintiffs insist Defendants never met their "initial burden of production to articulate the products [they] believe[] are unmarked 'patented articles' subject to § 287," which forecloses Defendants' § 287 challenge.  *Plaintiffs' Notice of Supplemental Authority* at 1–2 (citing *Arctic Cat Inc.*, 876 F.3d at 1368).  The court is not persuaded.  The initial burden described in *Arctic Cat Inc.* is "a low bar" whereby "[t]he alleged infringer need only put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent."  *Arctic Cat Inc.*, 876 F.3d at 1368.  Defendants did so.  In their Motion, Defendants cited to Plaintiffs' Final Infringement Contentions, which lists Plaintiffs' lagoons "that [admittedly] embody and/or practice the inventions of the asserted claims of the Asserted Patents."  *Motion* at 24 (citing *Expert Report of Christopher D. Lidstone, CPG* at Ex. F).  Next, Defendants described how "Crystal Lagoons claims that each of its lagoons in the United States is patented under the '514 Patent."  *Id.* (citing *Expert Report of Christopher D. Lidstone, CPG* at Ex. F).  Finally, Defendants cited Plaintiffs' answers to certain interrogatories as implicit admissions that Plaintiffs never marked these "lagoons in the United States with the word' patent' or the abbreviation 'pat.' together with the number of the '514 Patent or with an Internet address that associates the lagoon with the number of the '514 Patent."  *Id.* (citing Dkt. 312-16, *Plaintiffs' Objections and Answers to Desert Color Manager, LLC, Desert Color St. George, LLC, and Pacific Aquascape International, Inc.'s Second Set of Interrogatories to Crystal Lagoons U.S. Corp. and Crystal Lagoons Technologies Inc.* at 3–4).  Because Defendants directed Plaintiffs to the lagoons believed to be unmarked patented articles subject to § 287, the burden then shifted to Plaintiffs to direct the court to specific facts showing there is a genuine issue for trial regarding damages.  *Universal Money Centers, Inc.*, 22 F.3d 1527 at 1529 (citations omitted).  Plaintiffs have not done so.  Accordingly, Defendants are entitled to summary judgment on this issue.

[122] *See Motion* at 28.

Pacific;[123] (2) there is no evidence that Defendants used Crystal Lagoons' name or trademarks, which has resulted in Crystal Lagoons' trademark claims being dismissed;[124] and (3) there are no damages for the breach of contract claim as Plaintiffs' expert witness failed to tie his damages opinions to the alleged breaches.[125] Moreover, Defendants argue there is no evidence demonstrating Crystal Lagoons conferred a benefit on Desert Color, which renders Plaintiffs unable to prove unjust enrichment as a matter of law.[126]

Plaintiffs do not address Defendants' second contention—that there is no evidence of Defendants using Crystal Lagoons' name or trademarks—suggesting Plaintiffs have conceded that issue.[127] Instead, Plaintiffs contend they have defined and alleged disclosure of other confidential information, and they argue whether the information is confidential is a disputed fact.[128] But these arguments do not save Plaintiffs' claims.

To survive summary judgment on their breach of contract claim, Plaintiffs, in their opposition, "must set forth *specific facts* showing that there is a *genuine issue* for trial as to those dispositive matters for which [they carry] the burden of proof."[129] Breach is an essential element of a breach of contract claim under Utah law,[130] and here, Defendants challenge Plaintiffs' lack of evidence suggesting Defendants breached the NDA by disclosing what Plaintiffs define as

---

[123] *Id.* at 29.

[124] *Id.* at 33.

[125] *Id.* at 33–34.

[126] *Id.* at 35.

[127] *See Storey v. Seipel*, No. 2:22-CV-00486-RJS-DAO, 2024 WL 4436609, at *3 n.54 (D. Utah Oct. 24, 2024) (gathering citations to support the proposition that failing to contest arguments raised in a motion implies concession of the argument).

[128] *Opposition* at 36.

[129] *Universal Money Centers, Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994) (citations omitted) (emphasis in original).

[130] *See, e.g.*, *Storey*, 2024 WL 4436609, at *7 (citing *Am. W. Bank Members, L.C. v. State*, 342 P.3d 224, 230–31 (Utah 2014)).

"confidential information."[131]  Plaintiffs ultimately carry the burden of proof on the issue of breach of the NDA, and, to survive summary judgment, Plaintiffs are required to direct the court to specific evidence demonstrating Defendants' breach.  Plaintiffs have not done so.

Plaintiffs cite only two pieces of evidence suggesting Defendants disclosed confidential information in violation of the NDA.  The first piece of evidence is their Amended Complaint where Plaintiffs alleged "[a]fter having received extensive technical and proprietary information from Crystal Lagoons that directly related to the Desert Color project, and rather than pay Crystal Lagoons . . . Desert Color contracted with [] [Pacific] to build and commercialize a knock-off lagoon."[132]  The second is a portion of Richard F. Bero's damages report where he explained how he understood Plaintiffs allege "confidential information covered under the NDA . . . was used to build the Desert Color lagoon."[133]  These allegations, without more, are entirely deficient to create a genuine dispute of material fact on the issue of breach at summary judgment. The former does not even allege the Desert Color Defendants disclosed confidential information to Pacific.  The latter is a legal conclusion that merely describes Bero's understanding of Plaintiffs' allegations.  And it is well established that "the party opposing [a] motion for summary judgment 'may not rest upon mere allegations or denials of his pleading'" to demonstrate a genuine issue of material fact.[134]  This is precisely what Plaintiffs attempt to do.

Defendants do much of Plaintiffs' work for them by acknowledging there is only one potential piece of evidence Plaintiffs have used over the life of this lawsuit suggesting

---

[131] *See generally Opposition.*

[132] *Id.* at 38 (citing *First Amended Complaint* ¶ 85).

[133] Dkt. 312-10, *Expert Report of Richard F. Bero, CPA, CVA* ¶ 203.

[134] *Universal Money Centers, Inc.*, 22 F.3d at 1529 (citation omitted).

Defendants may have disclosed confidential information to Pacific.[135]  This piece of evidence is part of a slideshow presentation used by Plaintiffs at a preliminary injunction hearing.[136]  The slide at issue is entitled "Confidential Information Examples," and it displays two pictures of the Lagoon's sloped floor, which has a steady slope from a shallow area to a deeper area.[137]  This slideshow was referenced in Plaintiffs' response to certain interrogatories, and Plaintiffs pointed to it to support their response that the Lagoon "closely resembles confidential designs that were shared with Desert Color."[138]  But this information cannot create a genuine dispute of fact with respect to Defendants' breach because it is not "confidential."  According to the terms of the NDA, Desert Color was prohibited from disclosing "Confidential Information," which does not include "[i]nformation which is, at the time of disclosure or which subsequently becomes, freely available in the public domain" or information "the Recipient can show . . . is known to it prior to the time of disclosure."[139]  As Defendants point out, a nearly identical sloped design was disclosed in Crystal Lagoons' public patent filings.[140]  And because "the information contained within [a patent] is ordinarily regarded as public" after it has issued,[141] the sloped design depicted in the slideshow cannot be considered confidential information.  Ultimately, Plaintiffs have failed to direct this court to any evidence supporting their claim that Defendants breached

---

[135] *See Motion* at 30.

[136] *See* Dkt. 312-35, *Pre-Trial Hearing for Preliminary Injunction* at 24.

[137] *See id.*

[138] *Motion* at 29–30; Dkt. 312-34, *Plaintiffs' Supplemental Answers and Objections to Desert Color Manager, LLC, Desert Color St. George, LLC, and Pacific Aquascape International, Inc.'s First Set of Interrogatories Nos. 1-6* at 9 (listing the confidential information that was shared with Defendants and then stating how "Defendants used this information to create additional plans, designs, and construction details"); *id.* at 11 (describing how a slideshow was prepared that detailed the Lagoon's construction and how it "closely resembles confidential designs that were shared with Desert Color").

[139] *Non-Disclosure Agreement* ¶¶ 3.1–3.2.

[140] *See Motion* at 30–31 (citing Dkt. 36, *United States Patent Pub. No.: US 2020/0074577 A1* at Fig. 2; Dkt. 37, *United States Patent Pub. No.: US 2020/0208424 A1* at Fig. 5, Fig 7).

[141] *On-Line Tech. v. Bodenseewerk Perkin-Elmer*, 386 F.3d 1133, 1141 (Fed. Cir. 2004) (citation omitted).

the NDA by disclosing confidential information. The court grants Defendants' Motion with respect to Plaintiffs' breach of contract claim.

The court grants Defendants' Motion with respect to Plaintiffs' claim for unjust enrichment for identical reasons. To succeed on a claim for unjust enrichment, a plaintiff must prove "(1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value."[142] The basis for Plaintiffs' unjust enrichment claim is the unfairness surrounding Defendants' use of Plaintiffs' confidential information.[143] But because Plaintiffs could not direct this court to any evidence showing Defendants ever disclosed confidential information, the court cannot reasonably conclude there is anything "inequitable" surrounding Defendants' receipt of Plaintiffs' confidential information.

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART Defendants' Motion for Summary Judgment.[144] The court DENIES Defendants' Motion with respect to invalidity and noninfringement of the '514 Patent. The court GRANTS Defendants' Motion with respect to infringement damages only to the extent it seeks to limit damages for potential infringement to after the filing of the Amended Complaint on February 2, 2021. The court DENIES AS MOOT Defendants' Motion with respect to indirect infringement. The court GRANTS Defendants' Motion with respect to Plaintiffs' claims for breach of contract and unjust enrichment.

SO ORDERED this 25th day of February 2025.

---

[142] *Berrett v. Stevens*, 690 P.2d 553, 558 (Utah 1984).

[143] *Amended Complaint* ¶ 197.

[144] Dkt. 311.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge